FILED

NOV 1 8 2002



# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY,
JO ANNE SHATSKY,
individually and as personal representatives
of the Estate of Keren Shatsky,
TZIPPORA SHATSKY,
YOSEPH SHATSKY,
SARA SHATSKY,
MIRIAM SHATSKY,
DAVID SHATSKY,

GINETTE LANDO THALER,
MICHAEL THALER, individually, as
personal representatives of the Estate of
Rachel Thaler and as natural guardians of
plaintiffs Leor Thaler and Zvi Thaler (minors),
LEOR THALER, minor,
ZVI THALER, minor,
ISAAC THALER,


HILLEL TRATTNER,
RONIT TRATTNER,
ARON S. TRATTNER,
SHELLEY TRATTNER,

STEVEN BRAUN,

CHANA FRIEDMAN, minor,
ILAN FRIEDMAN, minor,
MIRIAM FRIEDMAN, minor,
by their next friend and guardian Bella Friedman,
YEHIEL FRIEDMAN,
ZVI FRIEDMAN and
BELLA FRIEDMAN, individually
and as natural guardian of plaintiffs
Chana Friedman, Ilan Friedman
and Miriam Friedman

PLAINTIFFS,

vs.

CASE NUMBER   1:02CV02280

JUDGE: Richard J. Leon

DECK TYPE: General Civil

DATE STAMP: 11/18/2002

**COMPLAINT**

3

THE SYRIAN ARAB REPUBLIC
c/o Foreign Minister Farouk al-Sharaa
Ministry of Foreign Affairs
Shora, Muhajireen
Damascus, Syria

THE SYRIAN MINISTRY OF DEFENSE
Omayad Square
Damascus, Syria

MUSTAFA TLASS
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

SYRIAN MILITARY INTELLIGENCE
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

HASSAN KHALIL
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

ASSEF SHAWKAT
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

ALI DOUBA
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

THE SYRIAN AIR FORCE INTELLIGENCE DIRECTORATE
(aka Idarat al-Mukhabarat al-Jawiyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

IBRAHIM HUEIJI
Syrian Air Force Intelligence Directorate
(aka Idarat al-Mukhabarat al-Jawiyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

THE PALESTINE LIBERATION ORGANIZATION
1717 K Street, N.W., Suite 407
Washington, DC 20006

THE PALESTINIAN AUTHORITY
(aka "The Palestinian Interim Self-Government Authority"
and/or "The Palestinian National Authority")
1717 K Street, N.W., Suite 407
Washington, DC 20006

JOHN DOES 1-99

<div align="center">DEFENDANTS</div>

<div align="center">**INTRODUCTION**</div>

1.      This is an action for wrongful death, personal injury, international terrorism and

related torts pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq.*, the

Antiterrorism Act, 18 U.S.C. §2331 *et. seq.* and supplemental causes of action, brought by

United States citizens, and by the guardians, family members and the personal representatives of

the estates of United States citizens, who were killed and injured by a terrorist bombing caused

and carried out by defendants at a pizzeria in the town of Karnei Shomron, in the Samaria region

of the West Bank, on February 16, 2002.

<div align="center">**JURISDICTION**</div>

2.      This Court has jurisdiction over this matter and defendants The Syrian Arab

Republic, The Syrian Ministry of Defense, Mustafa Tlass, Syrian Military Intelligence, Hassan

Khalil, Assef Shawkat, Ali Douba, The Syrian Air Force Intelligence Directorate and Ibrahim

Hueiji pursuant to 28 U.S.C. §§1330(a), 1331, 1332(a)(2), 1605(a)(7) and 28 U.S.C.A. §1605

<div align="center">3</div>

note, *Civil Liability for Acts of State-Sponsored Terrorism*, which permit civil actions for wrongful death, personal injury and related torts against state sponsors of terrorism and their officials, employees and agents.

3.     This Court has jurisdiction over this matter and defendants The Palestine Liberation Organization, The Palestinian Authority and John Does 1-99 pursuant to 18 U.S.C. §2333, which creates a federal cause of action for acts of international terrorism, and pursuant to the rules of supplemental jurisdiction.

## VENUE

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(d) and 1391(f)(4), and pursuant to 18 U.S.C. §2334(a) since defendants Palestine Liberation Organization and Palestinian Authority maintain an office and agent in this district and are resident in this district

## THE PARTIES

5.     Plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE SHATSKY, at all times relevant hereto are and were American citizens, and the parents, heirs and personal representatives of the estate of Keren Shatsky, a 14 year-old American citizen murdered in a terrorist bombing caused and carried out by defendants at a pizzeria in Karnei Shomron, in the Samaria region of the West Bank, on February 16, 2002 (hereinafter: "the terrorist bombing"). Plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE SHATSKY bring this action individually and on behalf of the estate of Keren Shatsky.

6.     Plaintiffs TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY at all times relevant hereto are and were American citizens and the siblings of decedent Keren Shatsky.

7.     Plaintiffs GINETTE LANDO THALER and MICHAEL THALER at all times

relevant hereto are and were the parents, heirs and personal representatives of the estate of Rachel Thaler, a 15 year-old American citizen murdered in the terrorist bombing. Plaintiff MICHAEL THALER at all times relevant hereto is and was an American citizen. Plaintiffs GINETTE LANDO THALER and MICHAEL THALER bring this action individually, on behalf of the estate of Rachel Thaler and on behalf of their minor children, plaintiffs LEOR THALER and ZVI THALER.

8.     Plaintiffs LEOR THALER, minor, ZVI THALER, minor, and ISAAC THALER at all times relevant hereto are and were American citizens and the siblings of decedent Rachel Thaler.

9.     Plaintiff HILLEL TRATTNER was severely injured in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

10.     Plaintiff RONIT TRATTNER was severely injured in the terrorist bombing, and at all times relevant hereto is and was the spouse of plaintiff HILLEL TRATTNER.

11.     Plaintiffs ARON S. TRATTNER and SHELLEY TRATTNER at all times relevant hereto are and were American citizens and the parents of plaintiff HILLEL TRATTNER.

12.     Plaintiff STEVEN BRAUN was severely injured in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

13.     Plaintiff CHANA FRIEDMAN, minor, was severely injured in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

14.     Plaintiffs ILAN FRIEDMAN, minor, MIRIAM FRIEDMAN, minor, YEHIEL FRIEDMAN and ZVI FRIEDMAN at all times relevant hereto are and were American citizens and the siblings of plaintiff CHANA FRIEDMAN.

15.     Plaintiff BELLA FRIEDMAN at all times relevant hereto is and was an American

citizen and the mother of plaintiff CHANA FRIEDMAN. Plaintiff BELLA FRIEDMAN brings this action individually and on behalf of her minor children, plaintiffs CHANA FRIEDMAN, ILAN FRIEDMAN and MIRIAM FRIEDMAN.

16.     Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. 2405(j)). Syria provided material support and resources for the commission of acts of extrajudicial killing (within the meaning of 28 U.S.C. 1605(a)(7)) including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

17.     Defendant The Syrian Ministry of Defense (hereinafter "SMD") is, and at all times relevant hereto was, responsible for operating and controlling Syria's armed forces and intelligence services.  Within the scope of its agency and office, SMD provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

18.     Defendant Mustafa Tlass (hereinafter "Tlass") is, and at all times relevant hereto was, the Syrian Minister of Defense and an official, employee and agent of Syria and SMD. Within the scope of his office, employment and agency, Tlass provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

19.     Defendant Syrian Military Intelligence, also known as Shu'bat al-Mukhabarat al-'Askariyya, (hereinafter "SMI") is, and at all times relevant hereto was, Syria's military intelligence agency.  Within the scope of its agency and office, SMI provided material support

6

and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

20.    Defendant Hassan Khalil (hereinafter "Khalil") is, and at all times relevant hereto was, the commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Khalil provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

21.    Defendant Assef Shawkat (hereinafter "Shawkat") is, and at all times relevant hereto was, the deputy commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Shawkat provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

22.    Defendant Ali Douba (hereinafter "Douba") is the former commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Douba provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

23.    Defendant The Syrian Air Force Intelligence Directorate, also known as Idarat al-Mukhabarat al-Jawiyya, (hereinafter "SAFID") is, and at all times relevant hereto was, an agency of defendant Syria specifically assigned to plan, fund, facilitate and carry out terrorist attacks. Within the scope of its agency and office, SAFID provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other

actions that caused the terrorist bombing and harm to the plaintiffs.

24.     Defendant Ibrahim Hueiji (hereinafter "Hueiji") is, and at all times relevant hereto was, the commander of SAFID and an official, employee and agent of Syria, SMD and SAFID. Within the scope of his office, employment and agency, Hueiji provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs.

25.     Defendant The Palestine Liberation Organization (hereinafter "PLO") is, and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331. Defendant PLO planned and executed the terrorist bombing that caused harm to the plaintiffs.

26.     Defendant The Palestinian Authority, also known as The Palestinian Interim Self-Government Authority and/or The Palestinian National Authority, (hereinafter "PA") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331.  Defendant PA committed acts of international terrorism (within the meaning of 18 U.S.C. 2331) that facilitated and caused the terrorist bombing and harmed the plaintiffs.

27.     Defendants John Does 1-99 are natural and/or juridical persons who/which are organs and/or agents and/or employees and/or officers of defendant PLO.  Defendants John Does 1-99 conspired and acted in concert with the other defendants to plan and carry out the terrorist bombing, and carried out the terrorist bombing pursuant to the directives, instructions, authorization, solicitation and/or inducement of the other defendants and/or utilizing massive aid, assistance and material support and resources provided for that purpose by the other defendants.

## STATEMENT OF FACTS

28.     Since its establishment in the 1960s and until the present day, defendant PLO has funded, planned and carried out thousands of terrorist bombings and shootings, resulting in the

deaths of hundreds of innocent civilians and the wounding of thousands more. Dozens of United States citizens have been murdered, and scores more wounded, by terrorist attacks carried out by defendant PLO. At all times relevant hereto, the PLO has carried out and utilized these terrorist attacks as an established and systematic policy and practice, as a means of advancing and achieving its political goals.

29.    Defendant PLO has rarely, if ever, carried out terrorist attacks in its own name. Rather, at all times relevant hereto, the PLO has funded, planned and carried out terrorist attacks through its officials, agents and employees, who are and were organized into various units, cells and groups which plan and execute terrorist attacks on behalf of and for the PLO, and/or as agents and/or as organs and/or as instrumentalities and/or as alter egos of the PLO, using various and sundry appellations and *noms de guerre*.

30.    At all times relevant hereto, defendant PLO and its officials, employees, organs, instrumentalities and agents including John Does 1-99, conspired with one another to carry out acts of extrajudicial killing and international terrorism (within the meaning of 18 U.S.C. 2331) and knowingly aided, abetted, funded and provided a wide range of explosives, weapons, training and other substantial material support and resources to one another for the execution of acts of extrajudicial killing and international terrorism, all with the specific intention of causing and facilitating such acts.

**PROVISION OF MATERIAL SUPPORT AND RESOURCES BY SYRIAN DEFENDANTS TO THE PLO AND ITS AGENTS FOR THE COMMISSION OF ACTS OF EXTRAJUDICIAL KILLING AND INTERNATIONAL TERRORISM**

31.    Since 1979 until the present time, defendant Syria has been designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. 2405(j)).

9

32.     During the period relevant hereto, defendants Syria, SMD, Tlass, SMI, Khalil, Shawkat, Douba, SAFID and Hueiji ("Syrian defendants") provided defendants PLO and John Does 1-99 with material support and resources within the meaning of 28 U.S.C. §1605(a)(7) with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.  Such support was provided routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria.

33.     The material support and resources provided by the Syrian defendants to defendants PLO and John Does 1-99 at all times relevant hereto included, inter alia: massive financial support; explosives, firearms and other weapons; specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training"); training bases and facilities; safe haven; lodging; means of communication and communications equipment; financial services, including banking and wire transfer services and means of transportation.

34.     At all times relevant hereto, the Syrian defendants provided defendants PLO and John Does 1-99 with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by the Syrian defendants, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of the Syrian defendants acting within the scope of their agency and employment and under the express command and authorization of the Syrian defendants.

10

35.     In addition, at all times relevant hereto, the Syrian defendants provided terrorist training and other types of material support and resources to defendants PLO and John Does 1-99 by and through the agency of terrorist organizations which received material support and resources from the Syrian defendants, and which acted as instrumentalities, agents and proxies of the Syrian defendants for the purpose of providing terrorist training and other material support and resources to defendants PLO and John Does 1-99.

36.     At all times relevant hereto, the Syrian defendants provided defendants PLO and John Does 1-99 and their agents, employees, officials and operatives, with lodging, safe haven and shelter, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered.

37.     The Syrian defendants gave substantial aid, assistance and encouragement to one another and to defendants PLO and John Does 1-99 and provided massive material support and resources to and otherwise aided and abetted defendants PLO and John Does 1-99, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing. The Syrian defendants aided, abetted and provided material support and resources to defendants PLO and John Does 1-99 with actual knowledge that the PLO and John Does 1-99 had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to defendants PLO and John Does 1-99.

38.     The Syrian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with defendants PLO and John Does 1-99, in pursuance of a common plan and design, to cause and facilitate the commission of acts of extrajudicial killing

11

and international terrorism including the terrorist bombing.  The Syrian defendants conspired with defendants PLO and John Does 1-99 with actual knowledge that the PLO and John Does 1-99 had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with defendants PLO and John Does 1-99.

39.     At all times relevant hereto, defendants SMD, SMI and SAFID were agencies, instrumentalities and/or offices of defendant Syria, and performed acts on behalf of defendant Syria, in furtherance of the interests and policy of defendant Syria and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C. §1605 note, which caused the terrorist bombing and harm to the plaintiffs in that defendants SMD, SMI and SAFID implemented and acted as conduits and instrumentalities for Syria's provision of funds, terrorist training and other material support and resources to defendants PLO and John Does 1-99 for the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.

40.     Defendant Syria authorized, ratified and approved the acts of defendants SMD, SMI and SAFID.

41.     Accordingly, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

42.     At all relevant times, defendants Tlass, Khalil, Shawkat, Douba and Hueiji were agents, officers and employees of defendants Syria, SMD, SMI and SAFID, and performed acts on behalf of defendants Syria, SMD, SMI and SAFID, in furtherance of the interests and policy of defendant Syria, SMD, SMI and SAFID and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C. §1605 note, which caused the

12

terrorist bombing, in that defendants Tlass, Khalil, Shawkat, Douba and Hueiji authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Syria, SMD, SMI and SAFID to defendants PLO and John Does 1-99 for the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.

43.    Defendants Syria, SMD, SMI and SAFID authorized, ratified and approved the acts of defendants Tlass, Khalil, Shawkat, Douba and Hueiji.

44.    Accordingly, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba and Hueiji.

## COMMISSION OF ACTS OF INTERNATIONAL TERRORISM BY DEFENDANT PA

45.    During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with massive material support and resources with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing. Such support was provided routinely and in furtherance and as implementation of a specific policy and practice established and maintained by defendant PA.

46.    The material support and resources provided by the PA to defendants PLO and John Does 1-99 at all times relevant hereto included, inter alia: massive financial support; specialized and professional military training for the planning and execution of terrorist attacks; explosives, firearms and other weapons; training bases and facilities; safe haven; lodging; means of communication and communications equipment; financial services, including banking and wire transfer services and means of transportation.

47. At all times relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with terrorist training at paramilitary training bases, camps and facilities operated and/or funded and/or controlled by the PA, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through PA paramilitary and intelligence officials, and other agents, employees and officials of the PA acting within the scope of their agency and employment and under the express command and authorization of the PA.

48. In addition, at all times relevant hereto, defendant PA provided terrorist training and other types of material support and resources to defendants PLO and John Does 1-99 by and through the agency of terrorist organizations which received material support and resources from the PA, and which acted as instrumentalities, agents and proxies of the PA for the purpose of providing terrorist training and other material support and resources to defendants PLO and John Does 1-99.

49. During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 and their agents, employees, officials and operatives, with lodging, safe haven and shelter, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism including the terrorist bombing, freely and unhindered.

50. During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with tens of millions of dollars annually with the specific intention and express purpose of causing, funding and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.

14

51.     During the period relevant hereto, defendant PA offered and provided agents, employees and officers of defendant PLO and John Does 1-99 with financial and material incentives to commit acts of international terrorism and extrajudicial killing, and financial and material awards for the commission of such acts.  Defendant PA offered and provided these incentives and awards with the specific intention and express purpose of soliciting, inducing, causing, funding and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.

52.     Defendant PA gave substantial aid, assistance and encouragement to defendants PLO and John Does 1-99 and provided massive material support and resources to and otherwise aided and abetted defendants PLO and John Does 1-99, all for the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.  Defendant PA aided, abetted and provided material support and resources to defendants PLO and John Does 1-99 with actual knowledge that the PLO and John Does 1-99 had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of the PA's aiding, abetting and provision of material support and resources to defendants PLO and John Does 1-99.

53.     Defendant PA knowingly and willingly conspired, agreed and acted in concert with defendants PLO and John Does 1-99, in pursuance of a common plan and design, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing. Defendant PA conspired with defendants PLO and John Does 1-99 with actual knowledge that the PLO and John Does 1-99 had killed and injured numerous U.S.

citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of the PA's conspiracy with defendants PLO and John Does 1-99.

54.     The officials, agents and employees of the PA who conspired with and provided material support and resources to defendants PLO and John Does 1-99 did so on behalf of defendant PA, in furtherance of the policies and goals of defendant PA, with the authorization, ratification and approval of the PA and while acting within the scope of their office, employment and agency.

**THE TERRORIST BOMBING**

55.     In the months prior to February 16, 2002, PLO spokesmen, acting within the scope of their agency and employment as officials, agents and employees of the PLO, publicly called for and threatened terrorist attacks against American targets. In response to these PLO threats, the United States Department of State publicly demanded that defendants Syria and PA take action to prevent the threatened terrorist attacks against U.S. citizens.

56.     Defendants Syria, SMD, Tlass, SMI, Khalil, Shawkat, SAFID, Hueiji and PA brazenly ignored the U.S. demand, and continued to conspire with and systematically provide massive material support and resources to the PLO and John Does 1-99 with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism by the PLO and John Does 1-99, and with actual knowledge that the PLO and John Does 1-99 were planning to carry out terrorist attacks against U.S. citizens and that the material support and resources provided would facilitate and cause the extrajudicial killing of U.S. citizens and other innocent civilians.

57.     Further to and as implementation of the prior decision and threats by the PLO to attack U.S. citizens, defendants PLO and John Does 1-99, at an unknown date or dates before

February 16, 2002, jointly planned, conspired, acted in concert and made preparations to carry out a terrorist bombing at a crowded public place frequented by U.S. citizens. Defendants PLO and John Does 1-99 chose to carry out the terrorist bombing on February 16, 2002, in the town of Karnei Shomron in the Samaria region of the West Bank, where hundreds of American citizens live, work and shop daily.

58.     Like countless American teenagers and young people everywhere, decedents Rachel Thaler and Keren Shatsky, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN decide to spend Saturday evening, February 16, 2002, at a pizza parlor.

59.     Between approximately 6:30 and 7:55 P.M. on February 16, 2002, decedents Rachel Thaler and Keren Shatsky, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN arrived at a pizza parlor located in an outdoor shopping mall in Karnei Shomron, ordered pizza and took seats at the banks of tables arrayed in front of the pizzeria. Several dozen other diners, most of them teenagers and young people, filled the tables and surrounding area.

60.     At approximately 7:55 P.M. on February 16, 2002, an agent and/or employee of the PLO and of John Does 1-99 known as Sadek Abdel Hafez (hereinafter: "the terrorist bomber") arrived at the Karnei Shomron pizzeria in order to murder and injure the American and Israeli citizens eating at the pizzeria by means of a powerful explosive device with which he was provided for this specific purpose by the PLO and John Does 1-99.

61.     At the time that the PLO terrorist bomber arrived at the pizzeria, decedent Rachel Thaler and plaintiffs LEOR THALER and CHANA FRIEDMAN were sitting together at one of the tables arrayed in front of the pizzeria, speaking animatedly and distinctly in English.

Decedent Keren Shatsky and plaintiffs HILLEL TRATTNER, RONIT TRATTNER and STEVEN BRAUN were nearby. The PLO terrorist bomber made directly for the table where decedent Rachel Thaler and plaintiffs LEOR THALER and CHANA FRIEDMAN were sitting and speaking in English, and detonated the explosive device he was carrying when he reached their table.

62.     As a result of the explosion, decedents Keren Shatsky and Rachel Thaler were killed, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN suffered severe burns, shrapnel wounds and other serious injuries. The explosion also killed an Israeli teenager, and injured dozens of others.

63.     The terrorist bombing on February 16, 2002, was planned and carried out by defendant PLO, and by its agencies, instrumentalities, officials, organs, agents and/or employees, including John Does 1-99, acting within the scope of their agency and employment, and pursuant to the authorization, instructions, ratification and directives of defendant PLO.

64.     Defendants PLO and John Does 1-99 conspired with and acted in concert in pursuit of a common goal and design with the Syrian defendants and defendant PA to carry out the terrorist bombing, and the terrorist bombing was carried out by defendants PLO and John Does 1-99 further to and as implementation of their conspiracy with the Syrian defendants and defendant PA.

65.     Defendants PLO and John Does 1-99 constructed the explosive device used in the terrorist bombing and carried out the terrorist bombing utilizing funds, explosives, terrorist training and other material support, resources, aid and assistance provided by the Syrian defendants and defendant PA for the specific purpose of carrying out the terrorist bombing and other such acts of extrajudicial killing and international terrorism.

**FIRST COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF PLAINTIFFS SHABTAI SCOTT SHATSKY, JO ANNE SHATSKY,**
**TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY,**
**DAVID SHATSKY, GINETTE LANDO THALER, MICHAEL THALER, LEOR**
**THALER, ZVI THALER, ISAAC THALER AND THE ESTATES OF KEREN**
**SHATSKY AND RACHEL THALER**
**WRONGFUL DEATH**

66.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

67.     Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the terrorist bombing.

68.     Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of international terrorism and extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the plaintiffs herein.

69.     Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the terrorist bombing and the deaths of decedents Keren Shatsky and Rachel Thaler.

70.     The murders of Keren Shatsky and Rachel Thaler were extrajudicial killings within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605 note.

71.     At the time of her death, decedent Keren Shatsky was 14 years of age, enjoying good health, was industrious and in possession of all her faculties.

72.     The murder of Keren Shatsky caused decedent, her estate and plaintiffs SHABTAI

SCOTT SHATSKY, JO ANNE SHATSKY, TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

73.     At the time of her death, decedent Rachel Thaler was 15 years of age, enjoying good health, was industrious and in possession of all her faculties.

74.     The murder of Rachel Thaler caused decedent, her estate and plaintiffs GINETTE LANDO THALER, MICHAEL THALER, LEOR THALER, ZVI THALER and ISAAC THALER severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

75.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

76.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## SECOND COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF PLAINTIFFS
### THE ESTATES OF KEREN SHATSKY AND RACHEL THALER
### PAIN AND SUFFERING

77.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

78.     As a result of the terrorist bombing caused by defendants' actions described herein, decedent Keren Shatsky, prior to her death, sustained great, severe, and permanent

injuries to her body, head, and limbs, became sick, sore, lame and disabled. From the time of the bombing until her death, decedent Keren Shatsky suffered great conscious pain, shock and physical and mental anguish.

79.     Defendants are therefore jointly and severally liable to the estate of decedent Keren Shatsky for the full amount of decedent's damages, in such sums as may hereinafter be determined.

80.     As a result of the terrorist bombing caused by defendants' actions described herein, decedent Rachel Thaler, prior to her death, sustained great, severe, and permanent injuries to her body, head, and limbs, became sick, sore, lame and disabled. From the time of the bombing until her death 12 days later on February 27, 2002, decedent Rachel Thaler suffered great conscious pain, shock and physical and mental anguish.

81.     Defendants are therefore jointly and severally liable to the estate of decedent Rachel Thaler for the full amount of decedent's damages, in such sums as may hereinafter be determined.

82.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### THIRD COUNT
### AGAINST DEFENDANTS PLO, PA AND JOHN DOES 1 - 99
### ON BEHALF OF ALL PLAINTIFFS
### INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. §2333

83.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

84.     The acts of defendants PLO, PA and John Does 1-99 constitute a violation of the criminal laws of the United States and of the several States, or would constitute criminal violations if committed within the jurisdiction of the United States and of the several States. The actions of defendants PLO, PA and John Does 1-99 violate, or if committed within U.S. jurisdiction would violate literally scores of federal and state criminal statutes prohibiting, inter alia and without limitation: homicide, battery, assault and the construction and use of explosive devices; as well as the criminal prohibitions against aiding and abetting, serving as an accessory to, solicitation of and conspiracy to commit these and other such felonies.

85.     The acts of defendants PLO, PA and John Does 1-99 described herein were performed pursuant to and as implementation of an established policy of utilizing terrorist attacks in order to achieve their goals. Specifically, the acts of defendants PLO, PA and John Does 1-99 described herein were intended to terrorize, intimidate and coerce the civilian population in Israel and the West Bank into acquiescing to these defendants' political goals and demands, and to influence the policy of the United States and Israeli governments in favor of accepting these defendants' political goals and demands. Moreover, these defendants, themselves and through their respective officials, representatives, spokesmen, communications media and other agents: a) repeatedly admitted to committing acts of terrorism and violence against the civilian population in Israel and the West Bank and expressly stated that these acts were intended both to intimidate and coerce that civilian population into acquiescing to defendants' political goals and demands and to influence the policy of the United States and Israeli governments in favor of defendants' political goals and demands, and (b) expressly threatened the further occurrence of such terrorist acts if their political goals and demands were not achieved. The acts of defendants PLO, PA and John Does 1-99 described herein therefore appear to be and were in fact intended to intimidate

22

and coerce a civilian population, and to influence the policy of a government by intimidation or coercion, within the meaning of 18 U.S.C. §2331

86.     The acts of defendants PLO, PA and John Does 1-99 were dangerous to human life, by their nature and as evidenced by their consequences.

87.     The acts of defendants PLO, PA and John Does 1-99 occurred outside the territorial jurisdiction of the United States.

88.     The acts of defendants PLO, PA and John Does 1-99 are therefore "acts of international terrorism" as defined under 18 U.S.C. §§2331 and 2333. The behavior of defendants PLO, PA and John Does 1-99 also constitutes aiding and abetting acts of international terrorism, and conspiracy to commit acts of international terrorism.

89.     As a direct and proximate result of the acts of international terrorism committed by defendants PLO, PA and John Does 1-99, and which these defendants aided and abetted and/or conspired to commit, decedents Keren Shatsky and Rachel Thaler were killed and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN were severely injured, thereby causing the decedents and all plaintiffs severe harm including: pain and suffering; pecuniary loss and loss of income; loss of guidance, society and companionship; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

90.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

91.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

**FOURTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF PLAINTIFFS LEOR THALER, HILLEL TRATTNER, RONIT**
**TRATTNER, STEVE BRAUN AND CHANA FRIEDMAN**
**BATTERY**

92.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

93.     The terrorist bombing caused plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN severe physical and psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of present and future income.

94.     The terrorist bombing constituted a battery on the persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN.

95.     As a result of the severe injuries inflicted on them by the terrorist bombing, plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN required hospitalization and medical treatment.

96.     Plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN continue to suffer from permanent injuries caused by the terrorist bombing.

97.     The terrorist bombing was an act of extrajudicial killing within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605 note.

98.     Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the terrorist bombing and the battery on the persons of plaintiffs

LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA

FRIEDMAN and the injuries plaintiffs suffered thereby.

99.    Defendants are therefore jointly and severally liable for the full amount of

plaintiffs' damages, in such sums as may hereinafter be determined.

100.    Defendants' conduct was outrageous in the extreme, wanton, willful and

malicious, and constitutes a threat to the public warranting an award of punitive damages.

<div align="center">

### FIFTH COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF PLAINTIFFS LEOR THALER, HILLEL TRATTNER, RONIT
### TRATTNER, STEVE BRAUN AND CHANA FRIEDMAN
### ASSAULT

</div>

101.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

102.    The terrorist bombing and the ensuing carnage caused plaintiffs LEOR THALER,

HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN fear

and apprehension of harm and death, and actual physical harm, and constituted an assault on the

persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE

BRAUN and CHANA FRIEDMAN.

103.    The terrorist bombing and assault on their persons, which were direct and

proximate results of defendants' actions, caused plaintiffs LEOR THALER, HILLEL

TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN extreme mental

anguish and actual physical injury and pain and suffering.

104.    Defendants are therefore jointly and severally liable for the full amount of

plaintiffs' damages, in such sums as may hereinafter be determined.

105.    Defendants' conduct was outrageous in the extreme, wanton, willful and
malicious, and constitutes a threat to the public warranting an award of punitive damages.

<div align="center">

**SIXTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF PLAINTIFFS SHABTAI SCOTT SHATSKY, JO ANNE SHATSKY,
TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY,
DAVID SHATSKY, GINETTE LANDO THALER, MICHAEL THALER, LEOR
THALER, ZVI THALER, ISAAC THALER, HILLEL TRATTNER, RONIT
TRATTNER, ARON S. TRATTNER, SHELLEY TRATTNER, CHANA FRIEDMAN,
ILAN FRIEDMAN, MIRIAM FRIEDMAN, YEHIEL FRIEDMAN, ZVI FRIEDMAN
AND BELLA FRIEDMAN**
**LOSS OF CONSORTIUM AND SOLATIUM**

</div>

106.    The preceding paragraphs are incorporated by reference as though fully set forth
herein.

107.    As a result and by reason of the death of Keren Shatsky, which was caused by the
actions of defendants described herein, plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE
SHATSKY have been deprived of the services, society, consortium and solatium of their
deceased daughter, and have suffered and will continue to suffer severe mental anguish,
bereavement and grief, and injury to their feelings.

108.    As a result and by reason of the death of Keren Shatsky, which was caused by the
actions of defendants described herein, plaintiffs TZIPPORA SHATSKY, YOSEPH SHATSKY,
SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY have been deprived of the
services, society, consortium and solatium of their deceased sister, and have suffered and will
continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

109.    As a result and by reason of the death of Rachel Thaler, which was caused by the
actions of defendants described herein, plaintiffs GINETTE LANDO THALER and MICHAEL
THALER have been deprived of the services, society, consortium and solatium of their deceased

<div align="center">26</div>

daughter, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

110.    As a result and by reason of the death of Rachel Thaler, which was caused by the actions of defendants described herein, plaintiffs LEOR THALER, ZVI THALER and ISAAC THALER have been deprived of the services, society, consortium and solatium of their deceased sister, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

111.    As a result and by reason of the injuries caused to LEOR THALER by the actions of defendants described herein, plaintiffs GINETTE LANDO THALER and MICHAEL THALER were deprived of the services, society, company and consortium of their son, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

112.    As a result and by reason of the injuries caused to LEOR THALER by the actions of defendants described herein, plaintiffs ZVI THALER and ISAAC THALER were deprived of the services, society, company and consortium of their brother, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

113.    As a result and by reason of the injuries caused him by the actions of defendants described herein, plaintiff LEOR THALER was deprived of the services, society, company, guidance and consortium of his parents and brothers, and has suffered and will continue to suffer severe mental anguish, grief, and injury to his feelings.

114.    As a result and by reason of the injuries caused to HILLEL TRATTNER by the actions of defendants described herein, plaintiff RONIT TRATTNER was deprived of the services, society, company and consortium of her husband, and has suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

115.    As a result and by reason of the injuries caused to HILLEL TRATTNER by the actions of defendants described herein, plaintiffs ARON S. TRATTNER and SHELLEY TRATTNER were deprived of the services, society, company and consortium of their son, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

116.    As a result and by reason of the injuries caused him by the actions of defendants described herein, plaintiff HILLEL TRATTNER was deprived of the services, society, company, guidance and consortium of his wife and parents, and has suffered and will continue to suffer severe mental anguish, grief, and injury to his feelings.

117.    As a result and by reason of the injuries caused to CHANA FRIEDMAN by the actions of defendants described herein, plaintiff BELLA FRIEDMAN was deprived of the services, society, company and consortium of her daughter, and has suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

118.    As a result and by reason of injuries caused to CHANA FRIEDMAN by the actions of defendants described herein, plaintiffs ILAN FRIEDMAN, MIRIAM FRIEDMAN, YEHIEL FRIEDMAN and ZVI FRIEDMAN were deprived of the services, society, company and consortium of their sister, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

119.    As a result and by reason of the injuries caused her by the actions of defendants described herein, plaintiff CHANA FRIEDMAN was deprived of the services, society, company, guidance and consortium of her parents and siblings, and has suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

120.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

28

121.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### SEVENTH COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS
### NEGLIGENCE

122.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

123.    Defendants foresaw, or should have reasonably foreseen, that their actions and/or their failure to take actions and fulfill duties and obligations, incumbent upon them under law, would create unreasonable risk of injury to persons such as the decedents and the plaintiffs.

124.    As a result of the aforementioned negligent behavior of defendants, decedents Keren Shatsky and Rachel Thaler were killed and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVE BRAUN and CHANA FRIEDMAN were severely injured, thereby causing the decedents and all plaintiffs severe harm including: pain and suffering; pecuniary loss and loss of income; loss of guidance, society and companionship; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

125.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

126.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

**EIGHTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

127.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

128.   Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

129.   Defendants intended to and did in fact terrorize the plaintiffs and cause them egregious emotional distress.

130.   Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

131.   Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

**NINTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

132.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

133.   Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

134.    Defendants' conduct terrorized the plaintiffs and caused them egregious emotional distress.

135.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

136.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

<div align="center">

**TENTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**CIVIL CONSPIRACY**

</div>

137.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

138.    Defendants knowingly and willingly conspired, agreed and acted in concert with each other in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the terrorist bombing in which plaintiffs were harmed.

139.    As a result of the terrorist bombing caused, resulting from and facilitated by defendants' conspiracy, plaintiffs suffered the damages enumerated herein.

140.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

141.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

<div align="center">31</div>

**ELEVENTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**AIDING AND ABETTING**

142.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

143.    Defendants Syria, SMD, Tlass, SMI, Khalil, Shawkat, Douba, SAFID, Hueiji and PA provided the PLO and its organs, agencies, instrumentalities, officials, agents and employees including John Does 1-99 with material support and resources within the meaning of 28 U.S.C. §1605(a)(7), and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the terrorist bombing in which plaintiffs were harmed.

144.    Defendant PLO provided its organs, agencies, instrumentalities, officials, agents and employees including John Does 1-99 with material support and resources and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the terrorist bombing in which plaintiffs were harmed.

145.    As a result of the terrorist bombing caused, resulting from and facilitated by defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

146.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

32

147.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

<div align="center">

**TWELFTH COUNT**
**AGAINST DEFENDANT PA**
**ON BEHALF OF ALL PLAINTIFFS**
**INDUCEMENT**

</div>

148.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

149.    Defendant PA offered and provided officials, agents and employees of the PLO including John Does 1-99 with substantial material and pecuniary inducements and incentives to plan, organize and execute acts of international terrorism, extrajudicial killing and personal injury including the terrorist bombing in which plaintiffs were harmed. Defendant PA did so knowing that the acts for which it provided inducements and incentives were illegal and/or tortious, and that it would have been directly liable had it performed those acts itself.

150.    As a result of the terrorist bombing caused, resulting from and facilitated by the substantial material and pecuniary inducements and incentives offered and provided by defendant PA, plaintiffs suffered the damages enumerated herein.

151.    Defendant PA is therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

152.    Defendant's conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## THIRTEENTH COUNT
## AGAINST ALL DEFENDANTS
## ON BEHALF OF ALL PLAINTIFFS
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

153.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

154.    At all relevant times, defendant Hueiji was an agent, officer and employee of defendants Syria, SMD and SAFID acting within the scope of his agency, office and employment. Defendant Hueiji engaged in the actions described herein within the scope of his agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SAFID.

155.    At all relevant times, defendants Tlass, Khalil, Shawkat and Douba were agents, officers and employees of defendants Syria, SMD and SMI acting within the scope of their agency, office and employment. Defendants Tlass, Khalil, Shawkat and Douba engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SMI.

156.    Defendants Syria, SMD, SMI and SAFID authorized, ratified and/or condoned the actions described herein of defendants Tlass, Khalil, Shawkat, Douba and Hueiji.

157.    Therefore, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba and Hueiji.

158.    At all relevant times, defendants SMD, SMI and SAFID were agents and/or offices of defendant Syria acting within the scope of their agency and/or office. Defendants SMD, SMI and SAFID engaged in the acts described herein within the scope of their agency and/or office and to further the interest of defendant Syria.

34

159.    Defendant Syria authorized, ratified and/or condoned the conduct of defendants SMD, SMI and SAFID.

160.    Therefore, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

161.    At all relevant times, defendants John Does 1-99 were agents and/or officers and/or employees and/or organs of defendant PLO acting within the scope of their agency, office and employment. Defendants John Does 1-99 engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendant PLO.

162.    Defendant PLO authorized, ratified and/or condoned the actions described herein of defendants John Does 1-99.

163.    Therefore, defendant PLO is vicariously liable for the acts of defendants John Does 1-99.

164.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

165.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against the defendants jointly and severally, as to each of the above counts and causes of action, as follows:

A.    Compensatory damages against all defendants, jointly and severally, $300,000,000.00 (THREE HUNDRED MILLION DOLLARS);

B.    Punitive damages;

35

C.    Reasonable costs and expenses;

D.    Reasonable attorneys' fees;

E.    Treble damages, costs and attorneys fees as provided in 18 U.S.C. 2333; and,

F.    Such further relief as the Court finds just and equitable.

<div style="margin-left:50%">

Plaintiffs,
by their Attorney,

David J. Strachman
D.C. Bar No. D00210
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

</div>