UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHABTAI SHATSKY, ET AL.,          :      Docket No. CV02-2280
                                  :      (RJL)
                Plaintiffs,       :
                                  :      June 13, 2008
                                  :
v.                                :      4:00 p.m.
                                  :
SYRIAN ARAB REPUBLIC, ET AL.,     :
                                  :
                Defendants.       :
. . . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:          DAVID STRACHMAN, ESQ.
                             McIntyre Tate Lunch & Holt
                             321 South Main Street
                             Providence, Rhode Island 02903

For the Defendants:          RICHARD A. HIBEY, ESQ.
                             TIMOTHY P. O'TOOLE, ESQ.
                             Miller Chevalier
                             655 15th Street, NW
                             Washington, DC 20005

Court Reporter:              PATTY ARTRIP GELS, RMR
                             Official Court Reporter
                             Room 4700-A, U.S. Courthouse
                             Washington, D.C. 20001
                             (202) 962-0200

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          P R O C E E D I N G S

2               COURTROOM DEPUTY:  Calling Shabtai Shatsky, et al.,

3     versus Syrian Arab Republic, et al. Civil Number 02-2280.  Would

4     counsel come forward and identify yourselves for the record?

5               MR. STRACHMAN:  Good afternoon, your Honor, David

6     Strachman for the Plaintiffs.

7               THE COURT:  Welcome back.

8               MR. STRACHMAN: Thank you.

9               MR. HIBEY:  Good afternoon, your Honor Richard Hibey

10    and Timothy O'Toole for the Palestinian Authority, Palestinian

11    Liberation Organization.

12              THE COURT:  Welcome back.

13              MR. HIBEY:  Thank you.

14              THE COURT:  All right.  Well, we are here on the

15    Plaintiff's Motion To Compel.  I don't usually hear oral

16    argument, but I thought this might be one that might be a good

17    one to listen to the counsel and maybe ask some questions.  And

18    my practice is to obviously the moving party gets to go first,

19    but also gets a rebuttal, but a brief rebuttal, so maybe five

20    minutes or something like that, ten at the most. You may go

21    first there, Mr. Strachman.

22              MR. STRACHMAN:  Thank you, your Honor.  Your Honor, we

23    are here after a lengthy procedural record in this case

24    involving two defaults, one on September 11, '03 by the

25    Defendants and one on April 12th of '05.  Last April, the

1   Plaintiffs filed a Motion for entry of default judgment.  The

2   Court had previously given us permission to take the depositions

3   of certain individuals oversees.  We did that.

4       We filed an extensive brief supported by Expert Reports

5   and affidavits seeking entry of default judgment.  The next

6   month in May the Defendants retained their third law firm

7   replacing the  two prior law firms, and they sought discovery

8   against the Plaintiffs on the very Motion for entry of default

9   judgment that we had just filed just prior.

10      And, in fact, the parties engaged in discovery pursuant

11  to an order that they reached which was slightly modified by

12  your Honor in August, and we spent the better part of five

13  months doing discovery.  We produced, the Plaintiffs, produced

14  thousands of pages of documents, 25 sets of Interrogatories, a

15  huge production of documents, expert reports, updated reports,

16  et cetera.

17      All during this period of time the Defendants did not

18  notify the Court nor notify the Plaintiffs that they were

19  intending to file a Motion to vacate the, by then,

20  two-and-a-half year old default, the second default.  So having

21  put my clients, the victims, who as you the families of two

22  children, young girls, who were blown up in a terrorist bombing

23  at the pizzeria as well as their family and other people who

24  were there, we are confronted with the Motion to vacate the

25  default.

1          Now, in the Motion to default -- vacate default, the

2    parties are agreed on a couple of different factors, and one of

3    the things -- the two things that they agree on is that they

4    must provide a meritorious defense.  They have to provide a

5    meritorious defense which according to the cases that they

6    themselves cite has to be supported by evidence. Also they have

7    to provide a verified, a valid verified answer to the case.

8          With respect to the meritorious defense, we have agreed

9    that the -- the parties agreed the defense cannot just be a bald

10   statement, a statement without any back up to it, without any

11   facts, without any evidence.  It can't be an invention or

12   fiction.  It can't be a lawyer saying we didn't do it or my

13   clients didn't do it.  There has to be some meat on the bone, if

14   you will, and it can't be a simple denial.

15         In fact, the defense that their Motion largely relies

16   on is the defense that the faction of the PLO that did the

17   attack, which we are agreed on did the attack, the PLFP, they

18   accepted responsibility for the attack and, in fact, they

19   published a newspaper advertisement 48 hours after the attack

20   lauding the individuals who perpetrated this heinous act.

21         We are in agreement that the PLFP, which is a faction

22   of the PLO, performed the attack and their defense relies in

23   large measure on this notion -- it is a two-fold notion.  One is

24   that there is a subfaction to this faction so the PLFP they

25   claim is further divided up into sort of a terrorist faction.

1   Sort of akin to saying the Ku Klux Klan has a, you know,  picnic

2   faction and then has the lynching faction.  You know, there is

3   these two separate wings of the same organization.  That's one

4   issue.  The second issue is that they were outlawed and they

5   allege and that's what this Defendants say in their brief that

6   they were outlawed.  The PA outlawed this faction.

7        Now, I use that word outlaw because that's the word

8   that they use throughout their brief.  They don't say they had a

9   parting of ways, that like different terrorist organizations or

10  different entities sometimes have a falling out.  They didn't

11  say they had a falling out.  They said that they were outlawed.

12  And they understand and we are in agreement that they have to

13  support that position.  They can't just make the bald statement.

14  They support it.

15       They go out of their way to support it.  What they

16  support it with is reports from CNN of all places and newspaper

17  articles effectively, news reports.  In one article I believe

18  there is no  mention of the source and the other article there

19  is an anonymous source, an anonymous Palestinian individual.

20       Now, the concern that brings us here today in our

21  Motion and the discovery that we filed, the two Interrogatories,

22  the two requests for production of documents, and the three

23  admissions is the fact that this statement now that they are

24  outlawed which we hear about for the first time in six years of

25  litigation which directly contradicts the evidence as we

1    understand it which directly -- the statement that they are

2    outlawed to the press directly violates what President Bush and

3    his staff said to the press about the nature of the PLO's

4    activity during this very period of time saying that Yasser

5    Arafat lied to President Bush specifically about the terrorism

6    that he was and his organization was engaging in and conducted

7    during this very period of time in 2002.

8         It flies in the face of the representation of the PLFP

9    itself that it in fact committed the attack.  So we are

10   confronted now with newspaper articles that are not evidence, as

11   the Court knows, and could not never be admitted in evidence.

12   They are not only bad evidence, but it is bad journalism.  It

13   doesn't attribute this outlawing to a specific source.

14        It doesn't point to a decision of an organization or an

15   entity.  It doesn't come up with minutes of a meeting that says

16   they were outlawed, but that's the crux of their defense.

17        So what we have done is we have asked for some

18   discovery, very extremely narrow discovery, not on the 40 or 50

19   pages of their brief, but basically on this specific statement,

20   the evidence that suggests that they are outlawed, that they

21   outlawed this entity, the PLFP.  Now, instead of providing it to

22   us which if in fact they were really outlawed and there was some

23   sort of decision somewhere that the PA made, they have fought us

24   now for the last several months on providing this information.

25        The more they protest, the more I think apparent it is

1   that it is vital and that this information is crucial for the

2   Court to consider.  The Court has to consider whether they have

3   a meritorious defense, not a defense that someone found on CNN

4   or a defense that someone did a Google search and happened to

5   find a newspaper article.

6           Don't forget, your Honor, the Defendants allege that

7   they are a Government, they are an authority, they were created

8   by the PLO and by the state of Israel, and they have

9   governmental authority.  They are akin under law to a municipal

10  government.  They have ministers and presidents and Grand

11  pubahs,  but what they don't have and what they won't show us is

12  the information that suggests that what they are saying in their

13  brief is true and not something that they just found on CNN on a

14  Google search about this attack.

15          If in fact they are the responsible governmental entity

16  that they suggest, they would have an administrative ruling, a

17  decision, a decree by somebody actually outlawing this entity.

18  It would be unimaginable if a local municipality, the Government

19  of the District of Columbia, for instance, were sued and the

20  defense was, well, tack a look, you know, at the Washington Post

21  and there is an article that is suggesting we took some action,

22  you know, the governmental authority took some action.

23          The issue would be where is that, you know, where is

24  that statement? Where is that ruling? Where is that order or

25  decision? And they can't produce it, and they won't produce it.

1   And the elephant in the room here is really where did this whole

2   argument come from? Is it something that was created because

3   researchers or paralegals or attorneys or someone did a Google

4   search, or is it something that came from the Defendants

5   themselves?

6          Now, if it came from the Defendants themselves, there

7   will be a file.  They take the file and show us the document and

8   we wouldn't be here today. As they refuse to do this, it causes

9   even more concern.  The elephant in the room is where did this

10   argument come from? I would ask the Court to direct them to tell

11   us today where did this come from?  Is this something that the

12   lawyers found and decided is there defense, or is this something

13   that their clients gave to them and said here is our defense.

14          Now, if that were so, a diligent lawyer would go back

15   and say show me the paperwork.  Maybe it is a good defense.

16   Maybe it is not, but you are saying they are outlawed.  Show us

17   the paperwork.

18          They refuse to do that.  So I would ask that the Court

19   put that question directly to them and to ask them what is the

20   source of that statement that they were outlawed? Surely it

21   can't be simply a CNN article.

22          Now, the reason that's also important is because of

23   this idea that this Court has discretion in granting a Motion to

24   vacate.  All of the cases say the Court has wide discretion, but

25   the Court in exercising that discretion can't simply rely on

1    triple hearsay, can't rely on official purported events that

2    can't be documented. The Court doesn't have to be blind to the

3    facts and to reality especially when the law of this case is and

4    the  law of all the PLO cases in the United States has been up

5    until now that they have made misstatements to the Courts

6    repeatedly, that the President -- the administration has said

7    that, and we have cited it in our brief, the statements made by

8    the administration that the PA and the PLO, specifically Mr.

9    Arafat, lied to the administration on this very topic, on the

10   topic of terrorism.

11         So the Court should not just suspend its disbelief

12   because of a newspaper article when the glaring lacuna in this

13   case is this -- whatever that would give rise to this statement

14   that they are outlawed.

15         THE COURT:  All right.

16         MR. STRACHMAN:  Now, in addition to that, your Honor,

17   we have also asked for discovery with respect to the verified

18   complaint.  Now, the verified complaint is verified by a Mr.

19   Jadallah J A D A L L A H who is purportedly or was purportedly

20   at the time of the signing of the verified complaint a member of

21   the staff of the Ministry of Finance, not the Terrorism

22   Ministry, not the ministry involved with supervising the people,

23   the terrorists, and the entities who are involved in all these

24   different activities, but some Finance Ministry functionary.

25         Now, he says just above his signature that he is

1    verifying the answer quote, "based on my knowledge, information

2    and belief."  So they are saying this is not just somebody who

3    happens to work for this entity.  This is someone with some

4    information.  Query why he is  from the Ministry of Finance and

5    not some of the other ministries that seem to be more

6    appropriate, but we have asked to find out what the source of

7    that information is, number one, and, two, some very simple

8    questions about his background.

9          Was he working for the PA and the PLO in 2002? He may

10   have not even have been in the Palestinian Authority.  He may

11   even have been abroad at the time. And, of course, we are

12   resisted at every front on even this simple discovery about his

13   background and the information that he looked at.  Now, this

14   is --

15         THE COURT:  Wouldn't discovery like this be more

16   appropriate after a Motion to Vacate has been granted? Obviously

17   if it is not granted, then, you know, you don't need any new

18   evidence to seek through the discovery process, but if the

19   Motion to Vacate were to be granted, then would there not be or

20   should there not be an opportunity at that point for you to do

21   follow up discovery there as opposed to in this context where

22   the Court is just entertaining a Motion to Vacate?

23         MR. STRACHMAN:  That's an excellent point, your Honor.

24         THE COURT:  That's why I asked it.

25         MR. STRACHMAN:  It is clear that after were the Court

1   to grant the Motion to Vacate, we would have the right to this

2   discovery so all the more so we should have the right to have it

3   now.  This isn't something, by the way, none of this information

4   that we are seeking is difficult to find.  All of this could be

5   done in one afternoon -- where this guy worked, how he could

6   verify what he verified, how he can make certain statements.

7        And the reason it is important is because when Rule

8   7(g) of the local rule says you have got to file a verified

9   complaint, it can't just be any old staffer at this entity, the

10  Palestinian Authority and the PLO can sign and verify.  It has

11  got to be someone with knowledge.  Verification has to mean

12  something.  It has got to mean something. Verification has to

13  mean something. Otherwise, the rule, you know,  is gutted and

14  nullified.

15       So the simple answer and I would -- and the answer here

16  is I would expect that they would want to show this information.

17  Sure, this is the guy with the terrorism portfolio or this is

18  the guy who knows the most about this case, about this

19  information, this -- you know, these issues and, therefore,

20  let's bolster our case and let's show the Court in our Motion to

21  Vacate that not only is this a guy who works there, but this is

22  the guy.  This is the guy with the most information, and the

23  Court should find him the most credible because of that, but

24  they refuse to do that.  They refuse to give us any information

25  about this person.

1          Verification has to mean something.  He has to be able

2     to show, to tell us why this outlawing occurred.  He has to tell

3     us how he knows what he knows.  Now, I am not saying he has to,

4     and we haven't asked, for every file that they have on this

5     issue.  We have asked specifically about his verification.  How

6     does he know this?

7          The Court doesn't have to -- and, of course, this

8     directly contradicts, his verification directly contradicts the

9     statements of the PLFP.  It contradicts the statements made by

10    President Bush's own spokesman who said that they lied about

11    their terrorist activities, specifically lied to the President.

12    Secretary of State Rice said similar kinds of statements as we

13    have quoted.

14         According to them, they don't really have to give us

15    any information and not only that, but they could provide a

16    verification of virtually anyone.  I mean from their perspective

17    if it can't be tested, then it doesn't mean anything.  If it

18    can't be tested, then they could literally have someone who is

19    in a Palestinian Authority insane asylum come in and sign off

20    and say, well, that's a verification.  We have got somebody to

21    sign on the dotted line.

22         That can't be what Rule 7(g) says.  It can't just be a

23    formality.  It has to be something more substantive.

24         THE COURT:  Let's hear what they got to say, and you

25    will get a chance to respond briefly.

1           MR. STRACHMAN:   Thank you, your Honor.

2           THE COURT:   Thank you.   Mr. Hibey.

3           MR. HIBEY:   All right. Your Honor, as I understand it,

4    we are here on a Motion To Compel and not some rump activity to

5    begin to argue a Motion that's not before the Court.

6           So if we focus on the issue at hand --

7           THE COURT:   Right.

8           MR. HIBEY:   -- there is one fundamental proposition

9    that we absolutely disagree with and the case law as set forth

10   in the pleadings supports.   It is this.

11          That the pleading standard is the standard of

12   sufficiency and not a fact based standard that needs to be

13   proved out at this time when we are dealing with the question of

14   a meritorious defense.

15          THE COURT:   Right.

16          MR. HIBEY:   What I am saying is we need only assert a

17   defense proveable at trial.   If we are articulate a defense

18   that's proveable at trial, then we have a meritorious defense.

19   I mean that is rubric.   It is not a question of whether there is

20   a contest to be made about a particular piece of evidence as Mr.

21   Strachman has teed it up for you, but rather whether in the

22   context of our articulating our defense in a Motion to Vacate,

23   that articulation of the defense need not be proved at that

24   moment; but if it is sufficient as a matter of pleading, and you

25   have to assume the truth of it just like you would if we were

1    filing -- if we were contesting a Motion to Dismiss, then it is

2    enough.

3          And if it is enough, therefore, the notion that he is

4    trying to develop discovery which you quite properly recognize

5    as discovery that would be appropriate after a vacatur has been

6    granted is putting the cart before the horse.

7          Now, the situation is not being accurately portrayed

8    respectfully because he focuses on one particular fact which we

9    have asserted sufficiently to the effect that the PA,

10   Palestinian Authority, had before these attacks had taken place,

11   I believe several months before those attacks, outlawed the PFLP

12   military wing and arrested 33 of its members.

13         Now, what he then does is attempt to create an

14   architecture for proof.  What is the sufficient proof of that? I

15   say to you that should await  appropriate consideration at

16   trial, not now.  On its own the articulation of that statement

17   is sufficient evidence to warrant consideration that we have a

18   meritorious evidence here -- but what I -- a meritorious

19   defense.

20         But what I want to stress with you at this point is

21   that's not the only fact put before you.  There are other

22   articulated facts laid out in the brief that you should take

23   into consideration in understanding that there is a meritorious

24   defense, and let's move on to the question of whether there

25   should be vacatur rather than derail for what he considers a

1    discrete and limited type of discovery when in truth and in fact

2    as a matter of practicality there is no way you could stop at

3    just that particular point because there are other facts that

4    have been asserted here.

5         A month before the attacks the PA arrested the leader

6    of the PFLP who he asserts is the faction involved here.  As a

7    result of this man's arrest, the military wing of the PFLP

8    threatened to kill Palestinian Authority, its security chief, if

9    these people that were arrested weren't released by the

10   Authority.

11        In June of '02 responding a petition for the leader's

12   release, the one that was arrested by the PA, the Palestinian

13   High Court of Justice ordered the intelligence service to

14   immediately release Sadat because no evidence had been presented

15   against him, but the PA continued to detain Sadat through 2005.

16        His arrest brought to head the breach between the PA

17   and the PLO on the one hand and the PFLP on the other.  The

18   breach dates back to 1993 when the Oslo Accords were entered.

19   The PFLP refused  to recognize Israel, continued to support our

20   resistance to the Israeli occupation.  There are 12 bullet

21   points.  They appear on pages 8 and 9 of the last pleading we

22   filed, but it is to give you a sense that this isn't some kind

23   of ad in a newspaper, which he would suggest, or as he goes on

24   to tell you about the anonymity of people.

25        We are asserting these things.  We are doing it in good

1    faith, and we understand that that is sufficient to constitute

2    legally a meritorious defense.  Once this judgment hopefully is

3    vacated, then the proof or the discovery can begin and, if he

4    thinks he can debunk these facts, then he is welcome to it, but

5    right now the limited issue before the Court is what is the

6    quantum of information we have asserted and, if it is proven,

7    does it constitute a meritorious defense? And we submit that it

8    does.

9            And for that reason and according to that standard

10   which is flatly articulated in these cases and most recently by

11   Judge Marrero in the Knox case where he set aside a default

12   judgment conditionally, but set aside a default judgment

13   recognizing that in that context a meritorious defense.  "The

14   Defendant," and I am quoting, "need not prove that they will

15   ultimately prevail in order to receive vacatur but, rather, must

16   present evidence of facts that if proven" -- notice he didn't

17   say present proven facts -- "but evidence of facts," which we

18   have done here, "that if proven would constitute a complete

19   defense."  That's what we have here.

20           So this notion of running in with a fire extinguisher

21   that's loaded with a couple of questions and a request for a

22   couple of documents should take care of business, it is simply

23   not consistent with the law, not at all to be recognized as the

24   legal approach to this, the issue that's really before the

25   Court.

1        The issue that's really before the Court is not this

2   discovery interlude.  It is whether the Court will decide the

3   vacatur Motion, and that's what we think you should be about.

4        Now, this business of the verification of the

5   complaint, Mr. Strachman is treating this thing as if it were

6   some kind of auto accident where, you know, the answer is likely

7   to come from the other party to the accident and, if you have a

8   verified complaint, it should be met with a verified answer.

9   You don't have that here.

10        You have a situation which is far more complex, and the

11   case law recognizes that.  The case law understands that a

12   certification can't be by a person who doesn't have immediate

13   personal knowledge of all the facts but who is representing on

14   behalf of the party the willingness to contest the facts.

15        We don't need then, in short, a person with personal

16   knowledge to come in against a verified complaint and give a

17   verified answer.  That too is amply recognized in the case law,

18   and it is embodied in our brief.

19        The D.C. Circuit has explained the context of verified

20   Answers to Interrogatories, for example.  And this appears in

21   our brief at entitled -- that was filed Document 87 on page

22   nine, "The Federal Rules expressly permit a representative of a

23   corporate party to verify the corporation's answers without

24   personal knowledge of every response."  Well, if you can do that

25   in discovery on Interrogatories, you should be able to do that

1    at the -- on the occasion of the filing of a complaint.

2           And certainly that's what this is about.  And so the

3    question about whether Mr. Jadallah was there and whether he was

4    standing next to these people who committed the acts atrocity

5    against the victims here is -- it is not even -- I don't think

6    it is a red herring.  I think it is nonsense, to be honest with

7    you.

8           So I commend to your attention, therefore, the case law

9    that has been set forth in our briefs in Document 87 on this

10   business of the answer and in the last brief we filed which is

11   Document 94 to identify -- wherein we identify a whole range of

12   facts.

13          The last thought I want to leave with you is if our

14   allegations were embodied in a pleading that is subject to the

15   traditional Motion to Dismiss, you would have to assume the

16   truth of everything we articulate here in order to determine the

17   question not of whether the evidence  we are alleging is

18   sufficient, but -- as evidence, but rather whether it is if

19   proven sufficient.

20          So you assume the truth of our allegations, and I would

21   respectfully request that the Court look at all of these

22   allegations, not simply the one of the allegation concerning the

23   outlawing of the PFLP, but the others regarding the arrests of

24   its leader, the threats to kill that have been -- that were

25   levied, the rejection of the PFLP of the recognition of Israel

1   and the others that we have laid out a dozen of them that

2   come -- that have been laid out here when considering the

3   question.

4          So that, in short, the Motion To Compel should be

5   denied.  There should be no discovery taken in aid of his

6   challenge to our position on the vacatur.  The vacatur should

7   be, if it hasn't been, I can't remember now whether -- because

8   we have so many of these cases -- whether he has actually

9   opposed this one yet; but if he hasn't, he ought to and let's

10  get on with the argument regarding whether the default should be

11  vacated and we can proceed with the litigation of the case

12  mutual, not unilateral which is what he wants here now,

13  discovery and get to the ultimate decision on the claims.

14          THE COURT:  All right.  Thank you, Mr. Hibey.

15          MR. HIBEY:  Thank you, your Honor.

16          THE COURT:  Mr. Strachman. Why don't you start off with

17  that last point about where the vacatur stands at the moment.

18          MR. STRACHMAN:  Well, your Honor, has effectively in

19  the conference that we have had stayed the response to deal with

20  the discovery, and your Honor had indicated that if you granted

21  the discovery Motion, you said that we would come back to deal

22  with the discovery itself on another day and, if you denied the

23  discovery, you would issue an order giving us I believe your

24  Honor said 30 days to file a response brief.

25          What I think for the first time in my career, Judge, I

1  have been criticized for not asking for enough discovery.  Mr.

2  Hibey criticizes us for asking for discovery on only two points

3  in their entire brief.  That would suggest that to me the

4  requests that we have are proper.  We have not asked to

5  challenge every fact.  We don't concede every fact, but we can

6  meet those facts in other fashions.  These facts we need from

7  them.

8          We also didn't here from Mr. Hibey where this document

9  is.  Where is the beef? Where is that piece of paper that

10  suggests that what they say in their brief and what was reported

11  in CNN is true and instead of coming to Court and simply just

12  saying here it is and our clients gave it to us, it is not

13  something we invented on our own in Washington, but it is

14  something that is true because it occurred, we get this idea

15  that, you know, no one needs discovery because this is a

16  pleading standard.  There are no cases that say this is a

17  pleading standard.  In fact, the Court has discretion --

18          THE COURT:  But there also are no cases, are there,

19  where Judges have granted discovery in the context of an

20  outstanding Motion to Vacate?

21          MR. STRACHMAN:  Both sides found no cases in D.C. on

22  that issue.  We showed several cases in our briefs from the

23  Second Circuit and from New York, the Court of Appeals and from

24  New York itself where not only was discovery ordered and

25  allowed, but the Court had evidentiary hearings on the issue of

1  meritorious defense.  Now --

2       THE COURT:  What about Judge Marrero?  He is Southern

3  District of New York, isn't he?

4       MR. STRACHMAN:  The very quote that Mr. Hibey just read

5  from says there has to be evidence, there has to be a provision

6  of evidence.  You can't just -- and CNN articles are not

7  evidence.  It could never be admitted in Court.  This is akin to

8  a Motion to Dismiss in the sense that the Court has to look at

9  this evidence.  Evidence here is an issue.

10      The Court -- they would have the Court believe that

11 anything they tell the Court is sufficient merely because they

12 tell it to the Court and because it is alleged, and that's not

13 what it says.  That's not what meritorious defense means.  It

14 has to mean more than that, and that's why all the cases

15 including Judge Marrero's case as Mr. Hibey just said requires

16 that there be evidence.  There has to be some meat on the bone.

17      Granted it may not have to be proven definitively at

18 this stage, but there has to be something there.  The linchpin

19 of their case is this outlawing, and they refuse to provide any

20 information on this outlawing when no corporate Defendant would

21 be allowed.  There is no corporate Defendant would be allowed to

22 rely on what CNN reports they did in their business as opposed

23 to a business record that surely they can find and, if they

24 really came up with this argument from their clients and not

25 from themselves searching on the internet, then they would have

1    it in their file.  They could disclose it, and we would be done.

2    Thank you, your Honor.

3            THE COURT:  All right.  I am going to deny the Motion

4    To Compel.  I am going to give you 30 days to respond to the

5    Motion to Vacate; and should the Motion to Vacate be granted,

6    then at that time if there is going to be discovery further in

7    the case, we can address what if any discovery along the lines

8    you are seeking here is appropriate at that time.

9            We will deal with it under those circumstances, again,

10   if the Motion to Vacate is granted.  I don't want to prejudge

11   that.  We will wait and see.  My guess is you will both be back

12   here for the argument on the Motion to Vacate in a relatively

13   short time because I think this case is just, it has gone on too

14   long and I think we just need to stay on top of it.

15           So I am going to give you until July 12th to file your

16   response to the Motion to Vacate and that's -- let's see what

17   date that is -- actually that's a Saturday.  So I will give you

18   until the 11th.

19           Mr. Hibey, can you get your reply in by within a week?

20           MR. HIBEY:  We will do it.

21           THE COURT:  All right.  That's the 18th.  And then we

22   will probably set it down for an oral argument maybe the week of

23   July, let's see here, 28th.  Are you all available that week?

24           MR. HIBEY:  We will make ourselves available, your

25   Honor.

1          MR. STRACHMAN:  Yes.

2          THE COURT:  Mr. Strachman, does that work?

3          MR. STRACHMAN:  Yes,  your Honor.

4          THE COURT:  Very good.  Why don't we set it down for

5    Monday, I think I have that free, Monday afternoon on the 28th

6    for 2:30, and we will have the oral argument on the Motion to

7    Vacate that day and we will move this case forward, get a

8    decision and let's get to the next stage of wherever we are

9    going here.  Thank you, counsel.

10          MR. STRACHMAN:  Thank you.

11          THE COURT:  I appreciate your time.  We will stand in

12   recess.

13          (Whereupon, at 4:41 p.m., the proceedings were

14   concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                     CERTIFICATE OF REPORTER

2

3           I, Patty A. Gels, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9                                    _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25