UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, )
et al., )
 )
      Plaintiff, )
 )
v. ) Civ. Action No. 02cv2280 (RJL)
 )
THE SYRIAN ARAB REPUBLIC, )
et al., )
 )
      Defendant. )

**FILED**
JUL 06 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(June 30, 2010) [#77]

Plaintiffs are U.S. citizens, and the guardians, family members and the personal representatives of U.S. citizens, who were the victims of the February 16, 2002 suicide bombing in the West Bank village of Karnei Shomron in Israel. They bring this action against the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO," collectively "defendants") alleging wrongful death, personal injury and related torts under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333. Currently before this Court is defendants' motion to vacate the default entered against them on April 12, 2005. For the reasons set forth below and upon consideration of the pleadings, oral argument and the entire record herein, the Court GRANTS defendants' motion and vacates the entry of default.

1

## BACKGROUND

Plaintiffs filed this lawsuit on November 18, 2002 naming the PA, PLO, John Does 1-99, as well as various Syrian entities and individuals, including the Syrian Arab Republic,[1] as defendants. Compl. ¶¶ 16-27. Plaintiffs allege that in February 2002, the PLO planned and carried out a suicide bombing that targeted and killed two American teenagers, and injured many others, at a pizzeria in the West Bank. Compl. ¶¶ 57, 62-63. Plaintiffs and defendants agree that shortly after this tragic event, a wing of the Popular Front for the Liberation of Palestine ("PFLP") claimed credit for the bombing. Defs.' Mot. to Vacate Clerk's Entry of Default [#77] ("Defs.' Mot."); Pls.' Mem. in Opp'n to Def.'s Mot. to Vacate ("Pls.' Opp'n") at 2. Plaintiffs contend that the PFLP, as a member of the PLO, shared in PLO funding during the relevant period and conspired with the PLO to plan and execute the attack. As such, plaintiffs contend that the PLO bears direct responsibility for the attack under the ATA. Pls.' Opp'n at 2-4. Plaintiffs further allege that the PA, for its part, provided "massive material support and resources" to the PLO for the purpose of "causing and facilitating . . . the terrorist bombing." Compl. ¶ 45.

Initially, the parties actively litigated this action.[2] Indeed, after the Court denied defendants' motion to dismiss for lack of jurisdiction in 2005, *see* Minute Order, Feb. 7,

---

[1] Plaintiffs voluntarily dismissed the Complaint against the Syrian defendants on May 2, 2005. The case against the Syrian defendants was re-filed as a related case on April 21, 2006. *See* Civil Docket No. 06-724 (RJL). That case is still pending before this Court.

[2] Early in the proceedings, default was entered against the PA and PLO defendants, Clerk's Entry of Default as to PLO and PA, Sept. 11, 2003 [#18]; however, the PA and PLO promptly moved to strike the entry, arguing that the clerk had entered default

2005, counsel for the PA and PLO informed the Court at a status conference that the defendants intended only to litigate the question of jurisdiction, possibly through an interlocutory appeal, Status Conf. Tr. at 11:21-12:1, 16:17-20 (Mar. 29, 2005). A motion seeking such an appeal, however, was never filed, and on April 12, 2005, plaintiffs obtained an entry of default against the PA and PLO defendants. *See* Clerk's Entry of Default, Apr. 12, 2005 [#52].

On April 30, 2007, plaintiffs moved this Court for a default judgment. Pls.' Mot. for Default J., Apr. 30, 2007 [#64]. Defendants, having appointed new counsel, opposed plaintiffs' motion, and the parties began discovery on the question of damages. On December 21, 2007, defendants moved to vacate the entry of default. Defs.' Mot. Plaintiffs, in turn, moved to compel continued discovery. Pls.' Mot. to Compel, Apr. 25, 2008 [#93]. After hearing oral argument on June 13, 2008, this Court denied plaintiffs' motion to compel discovery and ordered plaintiffs to respond to defendants' motion to vacate. Mot. Hearing Tr. at 23:3-8 (June 13, 2008). Thereafter, on July 28, 2008, this Court heard oral argument on defendants' motion to vacate, inviting further briefing at the close of argument, which was promptly filed. *See* Mot. Hearing Tr. at 38:8-17 (July 28, 2008).

---

prematurely, and, indeed, no default had occurred. Mot. to Strike Default, Sept. 25, 2003 [##21, 22]. Plaintiffs did not oppose, and this Court granted the motion. *See* Minute Order, June 23, 2004.

## ANALYSIS

Default judgments are disfavored by our Circuit. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Generally, "courts are . . . reluctant to enter and enforce judgments unwarranted by the facts." *Id.* Thus, under Rule 55(c), an entry of default may be vacated for "good cause" shown. Fed. R. Civ. P. 55(c). Although the decision to set aside a default lies within the discretion of the district court, our Circuit has outlined the following factors that should be taken into account: (1) whether the default was willful, (2) whether a set-aside would prejudice the plaintiff, and (3) whether the defaulting party has presented a meritorious defense. *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980). The Rule 55(c) standard is notably less strict than the standard for vacating a default judgment under Rule 60(b). *Jackson*, 636 F.2d at 835. Nonetheless, "[o]n a motion for relief from the entry of a default or a default judgment, all doubts are resolved in favor of the party seeking relief." *Id.* at 836.

Here, defendants argue that they meet the good cause standard. In particular, defendants contend that the default was not willful, and, in any event, was excusable, that plaintiffs will not suffer any prejudice from proceeding on the merits, and that defendants have set forth a meritorious defense. Further, defendants highlight various practical and political considerations, including the size of defendants' potential liability, which favor resolution on the merits. In response, plaintiffs contend that defendants do not meet the good cause standard because: (1) the default was both willful and strategic; (2) the motion to vacate was egregiously untimely; (3) plaintiffs will suffer incurable prejudice;

4

and (4) defendants have failed to state a meritorious defense. Unfortunately for plaintiffs, I find good cause, for the following reasons, to set aside the default.

## I.   *The Willfulness of the Default*

The Rule 55(c) good cause factors must be analyzed in light of our Circuit's *clear* preference for a resolution on the merits. *Jackson*, 636 F.2d at 835. Accordingly, although I may deny a motion to vacate based solely on a finding that the default was willful, *see Biton v. Palestinian Interim Self-Gov't Auth.*, 252 F.R.D. 1, 2 (D.D.C. 2008), such a denial is not required, *see Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104 (D.D.C. 2009); *see also Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 10 n.5 (D.D.C. 2005) ("Although the Sudan defendants' delay appears to have been at least somewhat willful, that concern is overridden in this case by the absence of significant prejudice, the potential of a meritorious defense, and the strong presumption against an entry of default judgment against a foreign state.").

Indeed, it seems overwhelmingly clear that defendants' default in this case was willful. I am not persuaded in the least bit by defendants' arguments that their default was the result of regional turmoil, the lack of an institutional decision-making mechanism, or defendants' inability to understand the Court's jurisdiction. *See* Defs.' Mot. at 23-29. Those arguments are flatly contradicted not only by their counsel's own statements, *see* Status Conf. Tr. at 11:21-12:1, 16:17-20 (Mar. 29, 2005) (indicating that defendants only intended to litigate jurisdiction and nothing more), but also by defendants' conduct in parallel cases, *see, e.g., Knox v. Palestinian Liberation Org.*, 248

F.R.D. 420, 426 (S.D.N.Y. 2008) (citing to an August 15, 2005 letter sent by the PA and PLO counsel, "expressly conveying Defendants' intent to default"); *Gilmore*, 675 F. Supp. 2d at 104; *Biton*, 252 F.R.D. at 2; *Saperstein v. Palestinian Auth.*, 2008 U.S. Dist. LEXIS 110375, at *39 (S.D. Fla. Sept. 29, 2008); *see also* Pls.' Opp'n, Ex. I. Notably, *Knox, Gilmore, Biton* and *Saperstein* each involved the same defense counsel (both former – Mr. Ramsey Clark – and current – Mr. Richard Hibey) and the same types of claims under the ATA. It is informative, therefore, that a variety of courts have *unanimously* found, based on defense counsel's conduct and statements, that defendants' default was, in fact, willful. *Knox*, 248 F.R.D at 426; *Gilmore*, 675 F. Supp. 2d at 104; *Biton*, 252 F.R.D. at 2; *Saperstein*, 2008 U.S. Dist. LEXIS 110375, at *39. Finally, defendants' argument that they did not understand this Court's jurisdiction must fail in the face of this Court's clear denial of defendants' jurisdictional challenge. *See Gregorian v. Izvestia*, 871 F.2d 1515, 1525 (9th Cir. 1989) (holding that it is no longer reasonable for a foreign entity to assume immunity once it has "received a definitive indication to the contrary from the United States courts").

Despite defendants' willful default, however, this Court is now convinced that they are truly committed to litigating this matter. Further, as explained below, I find that plaintiffs will not suffer any prejudice by proceeding on the merits and that defendants

have asserted a meritorious defense. As such, defendants' willfulness alone does not, on balance, preclude vacatur here.[3]

## II. Prejudice to Plaintiffs

In determining whether a plaintiff has suffered prejudice, delay alone is not sufficient. *Keegel*, 627 F.2d at 373. Instead, courts look to tangible harms that may have resulted from the delay. *Gilmore*, 675 F. Supp. 2d at 104. Tangible harms may include "'loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.'" *Gilmore*, 675 F. Supp. 2d at 109 (quoting *Fed. Dep. Ins. Corp. v. Francisco Inv. Corp.*, 873 F.2d 474, 479 (1st Cir. 1989)); *Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389, 394 (D.D.C. 2005) (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003)).

Here, plaintiffs claim two sources of prejudice resulting from defendants' default: (1) the inability to obtain evidence in the Gaza Strip; and (2) the imminent dissolution of the PA. Specifically, plaintiffs claim that a potential body of evidence was lost in 2007 when "the PA was driven out of Gaza by Hamas." Pls.' Opp'n at 28. Plaintiffs explain that in 2002, the PA and PLO operated in two distinct regions, the West Bank and the Gaza Strip. *Id.* at 27. Because the PA no longer exercises authority in Gaza, any materials or witnesses, which were located there, would no longer be available in

---

[3] This Court fully recognizes that a willful default cannot be excused without sanction. Unless a settlement on this issue is agreed to by the parties, this Court will entertain a motion seeking attorneys' fees and other damages that have resulted from defendants' dilatory conduct.

discovery. *Id.* at 28. Plaintiffs additionally argue that, because of contemporaneous events relating to the creation of a Palestinian state, the PA, which is an interim governmental body, will soon cease to exist. *Id.* at 32. Because a new Palestinian state would not inherit the legal obligations of the PA, plaintiffs would lose the ability to bring their claims. *Id.* at 33.

Defendants, to the contrary, contend that plaintiffs' assertions are purely speculative. Indeed, they claim, this case "has nothing to do with Gaza." Defs.' Reply at 13. The suicide bombing here occurred in the West Bank and a Syrian-based wing of the PFLP took credit for the bombing. *Id.* Further, plaintiffs have not identified any materials or witnesses that were, in fact, lost because of the loss of Gaza. With respect to the PA, defendants argue that there is no certainty regarding whether, or when, the PA will cease to exist. *Id.* at 15. Prejudice based on so many possible contingencies is insufficient to preclude vacatur. *Id.* Finally, defendants volunteer that any additional harms are mitigated by defendants' concession that plaintiffs may be reimbursed for reasonable costs and by defendants' offer of a $1 million bond, which will serve to ensure their continued participation in this suit. I agree.

First, the facts of this case bear little, if any, connection to Gaza. In fact, plaintiffs' exact argument has already been squarely rejected in *Knox*. *Knox*, 248 F.R.D at 429. The *Knox* Court found that with respect to any potential loss of evidence, plaintiffs and defendants had a duty to preserve evidence from the moment that they were on notice that the evidence would be relevant to a litigation. *Id.* A speculative loss of

potential documents, therefore, was insufficient to create prejudice. *See id.* For the same reasons, I agree with defendants that "the years of active litigation that occurred before April 2005 make it unlikely that Plaintiffs would suffer any prejudice from delay." *See* Defs.' Mot. at 31. This is true particularly in light of plaintiffs' inability to identify any specific evidence that was lost in Gaza. In addition, the prejudice arising out of the imminent dissolution of the PA is even more speculative. Plaintiffs' argument was largely based on contemporaneous negotiations between the Palestinians and Israelis that have since broken down. *See* Pls.' Opp'n at 32. Simply put, rank speculation that evidence *may* be lost or *may* have been lost is insufficient to preclude vacatur.

With respect to any additional harms, in light of my authority to oversee discovery and impose appropriate sanctions, I find that the delay in this case will not cause significant prejudice to plaintiffs. *See Keegel*, 627 F.2d at 373.

### III. *Meritorious Defense*

The third and final factor to be considered under Rule 55(c) is whether defendants have asserted a meritorious defense. Defendants need not prove their defense. *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995). Instead, "[d]efendants' allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (internal quotation omitted). Ultimately, the proffered defense "need not be . . . persuasive at this stage," but must only "give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (internal quotations omitted). As plaintiffs themselves

9

concede, therefore, a meritorious defense is "extremely easy to present." Pl. Opp'n at 34. Not surprisingly, defendants have done so here.

Specifically, defendants contend that the suicide bombing was, in fact, carried out by a militant wing of the PFLP. Defs.' Mot. at 35. The PFLP, in turn, is an organization that had "suspended its participation in the PLO" at the time of the Oslo Accords in 1993 and had been outlawed by the PA several months prior to the attack. Defs. Reply at 5-6. Furthermore, in 2002, the PA and PLO leadership *detained* the leader of the PFLP, thereby verifying the schism between the entities. Defs.' Mot. at 37. In short, defendants argue that these facts show that the PA/PLO had broken with the PFLP and did not share or support PFLP's continued use of violence. Notwithstanding plaintiffs' contentions to the contrary, *see* Mot. Hearing Tr. at 34: 23-25 (July 28, 2008), I find that defendants have presented more than a "mere general denial" of plaintiffs' allegations. *See Whittaker v. District of Columbia*, 228 F.R.D. 378, 381 (D.D.C. 2005). Indeed, I find defendants' assertions are sufficient to constitute a defense against plaintiffs' allegations that the PA and PLO were responsible for the attacks through their wide-ranging support of and conspiracy with the PFLP. *See Keegel*, 627 F.2d at 374.[4]

---

[4] Plaintiffs' argument regarding the inadequacy of defendants' defense is inapposite. Plaintiffs argue that because defendants do not specifically deny plaintiffs' factual allegations, they have somehow failed to assert a meritorious defense. *See* Pl. Opp'n at 35. Nothing in our Circuit precedent requires such a showing. Plaintiffs allege in their Complaint that the PA and the PLO are responsible for various harms under the ATA. Defendants need only show, with more than a general denial, that they were not, in fact, responsible for those harms. *See Keegel*, 627 F.2d at 374; *Whittaker*, 228 F.R.D. at 381. Defendants have done so here.

## *IV. Conclusion*

On balance, defendants have shown good cause to set aside the default entered against them. *See* Fed. R. Civ. P. 55(c). Although the default was willful at the time,[5] they have clearly demonstrated their commitment to engaging in this litigation. Further, the practical and political considerations alleged by defendants resonate with this Court. Plaintiffs seek $300 million dollars in this case, which may be trebled under the ATA. Imposing such liability on a struggling government – even if that government is not a recognized state – is not something this Court takes lightly. Given our Circuit's clear preference under these circumstances that this case be resolved on the facts, this Court finds that it is appropriate to vacate the default and allow the parties to proceed on the merits.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendants' Motion to Vacate Clerk's Entry of Default [#77]. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5] This Court also agrees with plaintiffs that waiting three years to attempt to vacate an entry of default may be egregious and subject to sanction. However, even if the Court finds that it is egregious, without a cognizable prejudice, the delay is simply insufficient to defeat defendants' motion here. *See Keegel*, 627 F.2d at 374.