**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:02cv02280 (RJL) |
| | ) | |
| THE SYRIAN ARAB REPUBLIC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION OF DEFENDANT THE PALESTINIAN**
**AUTHORITY FOR RETURN OR DESTRUCTION OF**
**AN INADVERTENTLY PRODUCED DOCUMENT**

Defendant The Palestinian Authority ("PA"), by and through counsel, and pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), respectfully moves this Court for an order directing the return or destruction of all copies, notes, translations, summaries of, or quotations from, a two-page attorney-client privileged and attorney work product protected document inadvertently disclosed to Plaintiffs' counsel prior to the September 12, 2012 deposition of the Rule 30(b)(6) deposition of a PA designee, Mr. Ibrahim Dahbour.  In support thereof, Defendant PA submits the accompanying Memorandum of Points and Authorities.

**LOCAL RULE 7(m) CERTIFICATION**

Counsel for Defendants hereby certify, pursuant to United States District Court for the District of Columbia LCvR 7(m), that they have conferred with opposing counsel concerning the relief sought in the Motion in a good faith effort to resolve the issues raised in the Motion and have been unable to do so.

1289115.1

WHEREFORE, Defendant PA respectfully requests that the Court grant this motion and enter an order awarding Defendants the following relief:

1.     Requiring Plaintiffs to destroy, or return to counsel for Defendants, all copies, notes, translations and summaries of the documents marked as Sealed Exhibits 1 and 1A from the September 12, 2012, deposition of Ibrahim Dahbour ("Dahbour Deposition");

2.     Requiring Plaintiffs to destroy the portions of any documents, computer files, or other materials containing notes, translations, summaries of, or quotations from, the documents marked as Sealed Exhibits 1 and/or 1A at the Dahbour Deposition;

3.     Requiring Plaintiffs to destroy, or return to counsel for Defendants, the portion of the Dahbour Deposition transcript, from page 143, line 19 through page 163, line 8,[1] and all other materials containing notes, translations or summaries, that discuss or reference the contents of the documents marked as Sealed Exhibits 1 and 1A;

4.     Requiring Plaintiffs to provide counsel for Defendants with a list of all persons to whom Plaintiffs' counsel distributed any portion, copies, notes, translations or summaries of the documents marked as Sealed Exhibits 1 and/or 1A at the Dahbour Deposition, including the portion of the Dahbour Deposition transcript that discusses the contents of Sealed Exhibits 1 and/or 1A;

5.     Requiring Plaintiffs to submit a declaration to the Court within five business days certifying that the steps described in Paragraphs 1 through 4 above have been taken, and that Plaintiffs, their counsel and anyone identified pursuant to Paragraph 4 above will make no use of

---

[1] This is the portion of the Dahbour Deposition transcript during which the witness answered questions about, or based on, the contents of Sealed Exhibits 1 and 1A.

or disclose the information learned as a result of the inadvertent disclosure of the documents marked as Sealed Exhibits 1 and 1A at the Dahbour Deposition; and

6.     Awarding Defendants such other and further relief as the Court deems just and proper.

A proposed Order is being filed with this Motion.

Dated:  October 31, 2012                              Respectfully submitted,

                                                     /s/Richard A. Hibey
                                                     Richard A. Hibey (No. 74823)
                                                     Mark J. Rochon (No. 376042)
                                                     Charles F. B. McAleer, Jr. (No. 388681)
                                                     Timothy P. O'Toole (No. 469800)
                                                     MILLER & CHEVALIER CHARTERED
                                                     655 15th St., N.W., Suite 900
                                                     Washington D.C.  20005-6701
                                                     (202) 626-5800 (telephone)
                                                     (202) 626-5801 (facsimile)

                                                     *Attorneys for Defendants The Palestinian Authority
                                                     and The Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 31, 2012, a true and genuine copy of the

foregoing was served via ECF on the following:

    Robert J. Tolchin
    The Berkman Law Office, LLC
    111 Livingston Street – Suite 1928
    Brooklyn, NY 11201
    rjt@tolchinlaw.com

    David I. Schoen
    2800 Zelda Road, Suite 100-6
    Montgomery, AL 36106
    dschoen593@aol.com
    Schoenlawfirm@gmail.com

    *Attorneys for Plaintiffs*

       /s/Richard A. Hibey
       Richard A. Hibey

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:02cv02280 (RJL) |
| | ) | |
| THE SYRIAN ARAB REPUBLIC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION OF DEFENDANT THE PALESTINIAN
AUTHORITY FOR RETURN OR DESTRUCTION
OF AN INADVERTENTLY PRODUCED DOCUMENT**

Defendant The Palestinian Authority ("PA"), by and through counsel, and pursuant to

Federal Rule of Civil Procedure 26(b)(5)(B), respectfully submits the following Memorandum of

Points and Authorities in Support of its Motion for Return or Destruction of an Inadvertently

Produced Document, and states as follows:

**INTRODUCTION**

This Motion seeks relief related to an inadvertent production of a privileged document

during the midst of a busy schedule of depositions in the Middle East during September 2012.

As will be clear from the below, the Defendants made an inadvertent and mistaken production of

this document when the envelope in which it was located was mistakenly used to provide

additional, non-privileged documents to Plaintiffs.  In Defendants' view, Plaintiffs took unfair

advantage of this inadvertent production at the time it was made, because the nature of the

privileged document was apparent.  However, and in any event, upon being directly advised of

the inadvertent production, Plaintiffs have refused to abide by their obligations in such a

situation, have apparently failed to destroy or properly sequester their copies of the document, and have continued to rely on its contents in communications with Defense counsel on other discovery issues.  In order to preserve their rights, therefore, Defendants are forced to file the instant motion for appropriate relief.

## **BACKGROUND**

On September 10, 2012, while counsel for Plaintiffs were conducting depositions related to this case in Jerusalem, Defendants produced 17 pages of Arabic-language documents to Plaintiffs in response to their discovery requests.[1]  As described in an email sent to Plaintiffs later that same day,[2] Defense counsel noted that they had only recently received the documents from their client; in fact, most had been received that same day.  Some of the documents were responsive to Plaintiffs' First Request for Production of Documents; however, most were responsive to Plaintiffs' Second Request for Production of Documents, the deadline for which was not for over a week later, on September 19, 2012.  Defendants nonetheless produced all of the documents to Plaintiffs immediately in order to ensure that Plaintiffs could utilize them during the depositions on September 11 and 12.  Indeed, as a courtesy to Plaintiffs' counsel, Defendants' email to Plaintiffs later that day also indicated those of the deponents who could provide testimony related to the documents.

At a deposition the following morning (of an official in the PA's Ministry of Land Planning), Plaintiffs' counsel requested that Defense counsel produce, or make available for inspection or scanning, better copies of the documents, asserting that some of the pages produced

---

[1] *See* Email from Charles F.B. McAleer, Jr. to Robert J. Tolchin (September 10, 2012, 10:11 a.m. EST) (Ex. 1).

[2] *See* Email from Charles F.B. McAleer, Jr. to David I. Schoen (September 10, 2012, 4:42 p.m. EST) (Ex. 2).

by Defendants on September 10 were illegible.  That request was followed the same afternoon by an email requesting that Defendants provide "[]legible" copies of these documents "immediately."[3]  To respond to Plaintiffs' request as quickly as possible, Defendants decided to provide the documents for inspection the next morning (September 12, 2012) at the deposition of Ibrahim Dahbour, an officer in the Palestinian General Intelligence Service ("GIS") in Qalqilya.

On the morning of September 12, one of Defendants' attorneys, John C. Eustice, put into what he believed was an empty envelope Defense counsel's copies from which the September 10 document production email was made.  *See* Declaration of John C. Eustice ¶ 11 (October 31, 2012) (Ex. 4) ("Eustice Decl.").  Mr. Eustice's intention and assumption was that the envelope would contain only the copies of the September 10 document production.  Eustice Decl. ¶ 12.

However, the envelope he picked up was not, in fact, empty.  It was identical in style and color to the one he intended to use but, unbeknownst to him, contained at the bottom a folded, unnumbered working copy of a client communication to Defense counsel, created in April 2012, which also contained Mr. Eustice's blue-ink handwritten margin notes taken by him based on conversations with representatives of the client.  Eustice Decl. ¶¶ 5, 8.  The document was a two-page memorandum that had been prepared in April 2012, at counsel's direction, by Major Ziad Abu Hamid, an official within the PA's General Intelligence Service, in the course of investigating the underlying issues in the case, and which also contained blue-ink handwritten margin notes taken by Mr. Eustice during a conversation with the client (the "GIS Qalqilya Memorandum").  Declaration of Ziad Abu Hamid ¶¶ 5-6 (October 16, 2012) (Ex. 5) ("Hamid Decl."); Eustice Decl. ¶¶ 5, 8.  Thus, unlike the rest of the documents in the envelope, the GIS

---

[3] *See* Email from Mordechai Haller, Plaintiffs' Israeli counsel, to Charles F.B. McAleer, Jr. (September 11, 2012, 8:59 a.m. EST, which is 3:59 p.m. local time in Ramallah) (Ex. 3).

Qalqilya Memorandum was folded in half and contained handwritten notes in English – written in blue ink.  Also unlike the rest of the envelope's contents, the GIS Qalqilya Memorandum obviously was not a contemporaneous intelligence record, as it explicitly referenced events that allegedly occurred years after the incident itself.

Mr. Eustice had to remain in Ramallah on September 12 for a second, video-conference deposition scheduled for later that day.  Eustice Decl. ¶ 11.  Therefore, he gave the envelope to one of the other attorneys for Defendants, Mr. Timothy P. O'Toole, to give to Plaintiffs' counsel before the start of the Dahbour deposition.  *Id.*  Mr. Eustice told Mr. O'Toole that the envelope contained copies of the September 10 document production, and Mr. O'Toole assumed that the envelope only contained those documents.  *See* Transcript of Deposition of Ibrahim Dahbour at 127[ll.24-25] (Ex. 6) ("Dahbour Dep. Tr.") (Statement by Timothy P. O'Toole).  Mr. O'Toole gave counsel for Plaintiffs the envelope from Mr. Eustice, telling Plaintiffs that the envelope contained the copies from which the September 10 document production email was made.  Mr. O'Toole said that he would need the documents to be returned following the deposition.

After receiving the materials, Plaintiffs' counsel reviewed them, and then some members of Plaintiffs' team began consulting with experts who were there to attend the deposition.  Four hours later, near what appeared to be the end of questioning, counsel for Plaintiffs suddenly announced on the record that he was about to begin questioning on a document from the envelope that, as he made clear, he knew was not in the September 10, 2012 production.

> Q.  MR. SCHOEN:  Now, considering the documents 51 through 54 that I showed you earlier, which we called Exhibit A, and the documents that we're calling Exhibit B, 63 through 67, are there any other documents that you provided to the defense.
>
> A.  MR. DAHBOUR:  No.

Q.  Mr. Dahbour, is it your testimony that of all of the files you reviewed in connection with this case, Exhibit A and Exhibit B represent the total body of documents that you provided to the defense?

A.  Yes.

MR. SCHOEN:  Then I have to ask Mr. Hibey if you know – as I say, this morning, courtesy of Mr. O'Toole, we were provided with what we were told were the originals of the documents that were provided to us on September 10, 2012.

There is – I'll represent there is a document in there that is not among the documents we were given on September 12 – September 10, 2012, and the originals don't have Bates stamps on them anyway.  But a comparison of that document with the face of the documents that we were given indicates that it was not a document that was given to us [on September 10, 2012].

Dahbour Dep. Tr. at 114[4-19]; *see also* 124 [[ll.13-14] (Mr. Schoen:  "I think we all agree [the document] was not among the documents that Mr. McAleer emailed to us on September 10, 2012."]; *see also* 133[ll.21-25] (Mr. Schoen:  "I do know the reason that I first raised this with you before I showed it to the witness.  The reason is because it didn't appear, as I compared the documents with the Bates stamped documents, that this was one of those documents.").

Plaintiffs' counsel then claimed that, rather than assuming the document, which contained handwritten notes in blue ink, had been inadvertently *included* in the envelope, he supposedly assumed it had been inadvertently *excluded* from the September 10, 2012, production, notwithstanding the blue-ink margin notes in English that appeared on the document:

MR. SCHOEN:  I just assume it was inadvertently left out of the documents that were given to us [on September 10, 2012].  But I'd like to examine the witness about it, and I don't have Bates stamped copies of it.

MR. HIBEY:  I – I'm a little confused by what you've just said.  You're telling me that, on September 10th, when we provided you with documents, there was one less document in it than what we brought today?

MR. SCHOEN:  There was – on September 10 you all provided documents.  Mr. McAleer provided documents Bates stamped 51 to 67, which I think is about 17

pages of documents.  We see originals in the file that Mr. O'Toole gave us of the originals of those 17 pages.

And then there is an additional document, which I'm assuming to be a document that you all intended to turn over to us, because it's in the group of originals of the documents that were turned over.

MR. O'TOOLE:  Could we review that document?

MR. SCHOEN:  Yes.

MR. O'TOOLE:  It may have been inadvertent.

MR. SCHOEN:  Yes.  I believe it's a two-page document.  (Indicating.).

MR. HIBEY:  Maybe we need to step outside.

MR. O'TOOLE:  Can we go off the record.

MR. SCHOEN:  Go off – go off the record."

VIDEOGRAPHER:  Going off the record at 1:25 p.m.

Dahbour Dep. Tr. 115[l.2]-116[l.4].

After handing the document to Defense counsel, a short recess occurred.  Defense counsel then immediately confirmed that the disclosure had been inadvertent, explaining that "[t]hese are the notes of one of our colleagues, John Eustice whom you met yesterday.  This is an inadvertent turnover of two pages that were given to us.  In other words, it was created for us and it would appropriately be the subject of a privilege log.  So I understand this was inadvertent but I'm telling you this should not have been turned over to you."  Dahbour Dep. Tr. at 116[ll.10-18].  Defense counsel also explained that the document was "created by a client to report to attorney requests."  *Id.* at 117[ll. 24-25].[4]

---

[4]  Plaintiffs' counsel subsequently acknowledged this notice from Defense counsel: "I understand you to have described this delivery to us as the inadvertent delivery of a privileged document, privileged because it is a document created by your client for you."  *Id.* at 124[ll.15-18].

Although Plaintiffs' counsel sought to preserve its position to the contrary,[5] Plaintiffs' counsel recognized the potentially protected nature of the document, stating that he had "asked someone to summarize that document in the limited period of time we've had available today" and that he "was aware to some degree, in summary fashion, of what the document provides." *Id.* at 116 [ll.21-24]. Plaintiffs' counsel conceded that he could "understand, of course, why the defense would consider that [document] to have a privileged nature." *Id.* at 118[ll.1-3]; *see also id.* at 142[ll.16-23] (in which Plaintiffs' counsel acknowledges that the blue-ink margin notes on the document were "certainly" work product that Plaintiffs could not use). After repeatedly refusing to answer Defense counsel's questions regarding whether the document had been copied by Plaintiffs' counsel and to how many people the copies had been given,[6] Plaintiffs' counsel ultimately disclosed that Plaintiffs' counsel had "distributed [copies of the document] to members of the plaintiffs' team as a matter of course." *Id.* at 123[ll.20-22; 124[ll.7-8]; 130 [ll.18-23].

Plaintiffs' counsel refused to destroy or return the copies and ultimately asserted instead that the copies should be sequestered and maintained as confidential under the terms of the confidentiality order in this case:

> MR. SCHOEN: And what we would propose to do is – I've already asked you to make the document an exhibit to this deposition, kept under seal, if you like. We also would like to have this document – maintain this document in a confidential

---

[5] *Id.* at 124[l.19]-125[l.7] ("After a review of the document, we believe, respectfully, that the document is not properly a privileged document and what occurred was the inadvertent disclosure of a non-privileged document which we believe on its face – perhaps with the exception of what you have described as the handwritten notes of Mr. Eustice – and there clearly are what appear to be handwritten notes in blue ink on the top right margin of the document. We believe it to be a pre-existing document that should have been disclosed to us and that contains important material information supportive of the plaintiffs' case that has been improperly withheld from us, both the document itself and the underlying information.").

[6] *See, e.g., id.* at 119[ll. 2-3, 5-6; 120[ll.5-6]; 121[ll.5-9]; 121[ll.20-21].

manner.  And this case is subject to a confidentiality order already.  We would keep it in a manner consistent with the terms of that confidentiality order, in order, among other things, to litigate the propriety or impropriety of having withheld this document from us and the propriety or impropriety of our having this document and the underlying information.

*        *        *        *

I've tried to make this point in my remarks that I made.  But, in any event, when I say we would keep the document in a confidential manner, we certainly would be amenable to having the document sequestered, as that term is used in the Federal Rules, and specifically in Rule 26, I believe is the relevant rule.  I think I'm referring to 26(b)95)(B). . . We would sequester the document and keep it certainly sequestered, and in all regards, subject to the confidentiality order.  That's all I have to say about it.

*See Id.* at 126[ll.14-23]; 127[ll.1-7,10-12].

MR. SCHOEN:  Our proposal is to sequester the document as a remedy, not to destroy the document.  We intend to litigate this issue.  As I say, we intend to litigate the issue in the context of a sanctions motion and our entitlement to the document, among other issues.  So we are not willing to destroy the document.  We are willing to sequester the document, as the term is used in the applicable Federal rule.

*        *        *        *

I don't think the rule expresses a preferable remedy between sequestration and destruction. But, in any event, to the extent it does, we believe the rule gives us a choice.  We believe the appropriate and only appropriate choice in this case would be sequestration [of the copies of the document] until this matter is resolved and certainly keeping the document in all regards subject to the confidentiality order.

*Id.* at 131[ll.18-25]; 132[ll.5-13].

In response, Defense counsel demanded, pursuant to Fed. R. Civ. P. 26(b)(5)(B), that

Plaintiffs' counsel return the inadvertently produced document (which was ultimately marked as

Sealed Exhibits 1 and 1A for identification),[7] along with all copies Plaintiffs had made of the

document:

> MR. O'TOOLE:  We were not aware that this document was among the
> documents that was included in the file.  Any disclosure was completely
> inadvertent and related to a document that we believed to be attorney/client
> privileged.  Immediately after we learned of the inadvertent disclosure, when you
> told us, we immediately have notified you that the disclosure was inadvertent, that
> the privilege – that the documents, we believed, were privileged.
>
> And we are now requesting, after being notified, that you promptly return – well,
> you have returned the document – and sequester or destroy the specified
> information in any copies it has, that you cannot use or disclose the information
> until the claim is resolved, and you must take reasonable steps to retrieve any
> information, if the party has disclosed the information beyond – to others before
> being notified, which it sounds like form your description you may have done
> with respect to your consulting experts.

*Id.* at 127[l.24]-128[l.19].

> MR. HIBEY:  We think that the rule, as Mr. O'Toole has quoted it, governs this
> situation.  And therefore, on this record, we are requesting that you return all
> copies of this document, which we maintain was inadvertently turned over to you,
> so that we may have all copies of the questioned material.
>
> MR. O'TOOLE:  Can I add one point here?  To the – to the extent that the rule
> permits sequestration, the rule is also very clear that any party who sequesters
> cannot use or disclose the information and has to take reasonable steps to make
> sure that it is not used or disclosed.  And so I think I want to make very clear, this
> is – this is a document that you can't look at this point.  The only thing you can do
> is retrieve copies and put it in an envelope to the – because that is sequestration.
> It's not you keep it and hang on to it for what – for whatever use you want to
> make of it.  The rules are very clear.  You can't use it.
>
>                     *            *            *            *
>
> We believe that destruction [of the copies] would be the better remedy.  But,
> obviously, we're not going to be able to forcibly take the documents from you, so
> I think we'll have to litigate.

---

[7]  The two-page GIS Qalqilya Memorandum was marked as Sealed Exhibits 1 and 1A at the Dahbour
deposition.  *Id.* at 139 [ll. 16-20].  Plaintiffs' counsel acknowledged that "if the defense wants it to be
sealed, it can be sealed."  *Id.* at 117[ll.10-11]; *accord id.* at 118[ll.14-16] ("But I understand, because the
defense feels it's a privileged document, why sealing that document would be appropriate.").

*Id.* at 130[l.24]-131[l.17]; 132[ll.1-4]; *see also id.* at 132[ll.14-20] (Mr. Hibey: "Well, insisting on sequestration on your part is only one aspect of this.  The information contained therein cannot be used and cannot be disseminated.  And, therefore, that is simply what shall be the case until such time as this issue is resolved by the court or resolved otherwise.").

Plaintiffs then proposed that they be allowed to conduct questioning on the document with both sides preserving their positions on the confidentiality of the document for later review; otherwise, if questioning did not occur, Plaintiffs announced they would seek, as sanctions, payment of any travel costs expended by the need to reconvene the deposition for further questioning after the privilege issue was resolved by the Court.  *Id.* at 126[ll.5-11].[8]

Given this threat, and because  Defense counsel believed that the document had been prepared by Mr. Dahbour of the Qalqilya office of the GIS, Defense counsel accordingly suggested that preliminary questioning of Mr. Dahbour would conclusively establish privilege (indicating that the examination should relate to "the nature of this document, not its content, put to the witness in aid of an ultimate determination as to whether these pages are privileged."  *Id.* at 137[ll.1-3].  However, as it turned out, Mr. Dahbour testified that he had no knowledge of the document, as it had in fact been prepared by others in the Qalqilya office of the GIS, and Plaintiffs' counsel initially "object[ed] to any further questions on this document once the witness has said he doesn't recognize the document.  *Id.* at 141[ll.2-4].  At that point, while maintaining the claim of privilege, Defense counsel accepted Plaintiffs' proposal that they be permitted to conduct some provisional questioning about the document.  Because Mr. Dahbour

---

[8]  As stated by Plaintiffs' counsel: "We would like to examine the witness about the document.  We believe we are entitled to it and that we will be prejudiced if we're not able to on this occasion.  If we're not permitted to examine the witness on this document, we certainly intend to seek sanctions, including a reconvening of the deposition with the payment of all associated expenses by the defense."  *Id.  See also id.* at 136[ll.10-13].

did not prepare the document and had no knowledge of it, Plaintiffs' counsel's "questioning" consisted of having Mr. Dahbour read the contents of the document into the deposition record. *Id.* at 143[ll.9-18]. At all times, however, Defense counsel maintained their claim of privilege and expressly insisted on compliance with the provisions of Fed. R. Civ. P. 26(b)(5)(B) governing inadvertent disclosure. *See, e.g., Id.* at 163[ll.19]-164[l.3].

After the deposition ended, Defense counsel made inquiries and determined that another GIS officer in the Qalqilya office, Mr. Ziad Abu Hamid, not Mr. Dahbour, had prepared the contested memorandum in response to Defense counsel's request. Counsel accordingly had Mr. Abu Hamid prepare a declaration describing how and why he had written the document, which is attached hereto as Exhibit 5. The genesis of Mr. Abu Hamid's memorandum, and the unintentional nature of its disclosure to Plaintiffs, is described in further detail in the accompanying declaration of defense counsel John C. Eustice, which appears as Exhibit 4 to this Motion.

Upon receiving the signed declaration of Mr. Abu Hamid, Defense counsel reiterated to Plaintiffs their intent to seek recovery of the inadvertently produced document and asked Plaintiffs to state whether Plaintiffs' position regarding the document had changed. Plaintiffs never indicated that their position had changed. In fact, several days later, in a subsequent email regarding other discovery issues, Plaintiffs made clear that their position had not changed and referenced the contents of the document in an effort to obtain actions from Defendants on other discovery issues. *See* Email from Robert J. Tolchin to Charles F.B. McAleer, Jr. (October 24, 2012, 7:32 a.m. EST). This misuse of the document was in contravention of Plaintiffs' obligations under Fed. R. Civ. P. 26(b)(5)(B) and the understanding reached at the Dahbour deposition, as Defense counsel notified them. *See* Email from Charles F.B. McAleer, Jr. to

Robert J. Tolchin (October 30, 2012, 3:47 p.m. EST).  The substantive email exchange between counsel on that topic is attached as Exhibit 7.

## ARGUMENT

The legal issues presented by this Motion are straightforward.  First, the Court must determine whether the document at issue is privileged or work-product protected.  Second, the Court must determine whether the document remains privileged and protected despite the inadvertent disclosure.  Finally, if the Court determines the document is privileged or work-product protect and that the inadvertent disclosure does not alter said protections, the Court must determine the proper remedy.  As discussed below, the answers to these questions are also straightforward:  The document is an attorney-client privileged and work-product protected communication, it remains privileged and protected despite the inadvertent disclosure, and the proper remedy is the destruction of all copies of the document and an order forbidding any use of the information in it by Plaintiffs.

**A.      The GIS Qalqilya Memorandum Is An Attorney-Client Privileged and Work-Product Protected Memorandum, As It Is A Confidential Communication Made To Counsel For The Purpose Of Assisting In The Defense Of The Litigation.**

In *Upjohn Co. v United States*, 449 U.S. 383 (1981), the Supreme Court described the scope and purpose of the attorney-client privilege in federal cases:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  8 J. Wigmore, Evidence 2290 (McNaughton rev. 1961).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51 (1980):  "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  And in *Fisher v. United States*,

425 U.S. 391, 403 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys."  This rationale for the privilege has long been recognized by the Court, see *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

*Upjohn*, 449 U.S. at 389.

In *Upjohn*, the Supreme Court addressed the attorney-client privilege in the organizational context, when counsel conducts an investigation into the underlying facts of an incident, and seeks information from organizational employees.  *See generally id.*  Under such circumstances, where an employee communicates with counsel for the purpose of helping counsel conduct a factual investigation into the subject matter of the litigation, all communications by the client and client's employees to the lawyers fall within the coverage of the attorney client privilege.  *Id.* at 394.

The memorandum at issue here falls directly within the scope of this rule.  Major Abu Hamid's memorandum is a direct communication from the PA General Intelligence Service for which he works to American counsel prompted when, earlier this year, during Defense counsel's investigation of this lawsuit, Defense counsel requested information from Mr. Abu Hamid's employer.  Hamid Decl. ¶ 5.  In response, Major Abu Hamid conducted an investigation pursuant to his official duties, and prepared a two-page report for Defense counsel's review.  *Id.* ¶ 6. There can be no meaningful doubt that this communication from a client to lawyer, at the lawyer's direction, for the purpose of assisting counsel in the handling of the litigation is protected by the attorney-client privilege.  The Supreme Court's decision in *Upjohn* emphatically holds as much.

In addition, the memorandum is also protected work product (as Plaintiffs' counsel conceded at the Dahbour deposition, *see* discussion above), and properly withheld from disclosure for that reason.  As Federal Rule of Civil Procedure 26 makes clear, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A); *see also United States v. Nobles*, 422 U.S. 225, 239 n.13 (U.S. 1975) ("The sole issue in *Hickman* related to materials prepared by an attorney, and courts thereafter disagreed over whether the doctrine applied as well to materials prepared on his behalf.  Necessarily, it must.  This view is reflected in [] Federal Rule[] of Civil Procedure [26] . . . .").

Here, the memorandum at issue was created by an employee of Defendant PA in April 2012, during the pendency of this litigation at the request of counsel defending the PA in this case.  Eustice Decl. ¶ 5.  It is therefore a document prepared "in anticipation of" this litigation by a party and for that party's "representative," meaning Rule 26(b)(3)(A) applies.

Moreover, the document is also "opinion" work product, deserving of special protection by the Court, as it (1) reveals counsel's impressions about what facts at issue in this case require further investigation to prepare the defense, (2) reveals the methods by which Defendant's counsel is investigating those facts in consultation with the client, and (3) contains the handwritten notes of Defendant's attorney about the contents of the memorandum, further revealing counsel's mental impressions about this case.  *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("We hold [] that where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently in mind for that document to qualify as attorney

work product.") (internal quotation marks omitted); *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("At some point [] a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."); *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) ("This type of work product, which is often described as opinion work product, is virtually undiscoverable.") (internal quotation marks omitted).

For these reasons, the attorney-client privilege and work-product protection apply, and the memorandum, including the margin notes, is therefore outside the scope of proper discovery.

**B.  Even though It Was Inadvertently Disclosed, The Memorandum From Major Abu Hamid To Defense Counsel Remains Privileged And Protected.**

There also can be no meaningful dispute that the GIS Qalqilya Memorandum retains the protection of the privilege despite the inadvertent disclosure.   Federal Rule of Evidence 502(b) limits the scope of any waiver in the case of inadvertent disclosure, providing:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B).[9]

Fed. R. Evid. 502(b).  All three elements of this standard are met here.

---

[9] As Magistrate Judge Facciola has noted, Rule 502 "overrides the long-standing strict construction of waiver in this Circuit" by protecting from waiver "a privileged document that has been disclosed inadvertently."  *Amobi v. District of Columbia*, 262 F.R.D. 45, 52 (D.D.C. 2009).

First, the disclosure was inadvertent.  Plaintiffs requested clearer copies of documents already produced and were told when they received the envelope that that is exactly what they were getting.  This sequence makes clear that no additional documents were supposed to be included, but if there were any doubt, the attached declaration of Mr. Eustice describes how he meant to place the already-produced documents into an empty envelope but mistakenly put them into an identical envelope containing his folded, working copy of the privileged document. Eustice Decl. ¶ 12.  The face of the document itself also is a clear indicator of inadvertence because, unlike any of the other documents produced to Plaintiffs in the course of this entire litigation, it was folded and contained blue-ink handwritten notes in English on it.

Second, the holder of the privilege also took reasonable steps to prevent disclosure.  In the first place, the *holder* of the privilege is The Palestinian Authority, and it took reasonable steps to prevent disclosure by retaining experienced counsel to represent them, and by providing this communication only to counsel with the understanding that it would be kept confidential.  In addition, counsel themselves took reasonable steps to avoid disclosure by establishing and maintaining a regularized process for collecting and producing only that discovery that was non-privileged and relevant during the course of this litigation.  That process has functioned in an extremely effective manner, despite the substantial difficulties posed by the logistics of conducting discovery thousands of miles from the courthouse in connection with a client that is relatively new to the demands of American discovery procedures.  Indeed, this system worked precisely as it should have here prior to the inadvertent disclosure.   The privileged memorandum was not included in the original production to Plaintiffs.  It has not been disclosed to any person outside the defense team, except for the inadvertent disclosure.  Its production, moreover, occurred only through a chain of unfortunate events transpiring when Defense counsel attempted

to provide Plaintiffs, as a courtesy and on a few hours' notice, with clearer copies of discovery

materials during a week's worth of overseas depositions using a method of production that was

outside the realm of normal discovery procedures.  While counsel deeply regrets that the

disclosure occurred at all, reasonable steps were taken to prevent it, and certainly the holder of

the privilege, the PA, acted reasonably to prevent an inadvertent disclosure.

Third, Defense counsel took immediate steps to rectify the error, including immediately

invoking the provisions of Federal Rule of Civil Procedure 26(b)(5)(B), which provides as

follows:

> (B) *Information Produced*: If information produced in discovery is subject to a
> claim of privilege or of protection as trial-preparation material, the party making
> the claim may notify any party that received the information of the claim and the
> basis for it.  After being notified, a party must promptly return, sequester, or
> destroy the specified information and any copies it has; must not use or disclose
> the information until the claim is resolved; must take reasonable steps to retrieve
> the information if the party disclosed it before being notified; and may promptly
> present the information to the court under seal for a determination of the claim.
> The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).  The rule makes clear (a) that it applies not only to attorney-client

privileged materials, but also work-product protected materials; (b) that, upon receiving notice of

the inadvertent production, the receiving party has only three options: return, destroy or

sequester the inadvertently produced material; (c) that the receiving party's obligation not to use

the inadvertently produced material attaches upon notice of the inadvertent production and

continues until the claim of privilege is resolved by the Court; (d) that, if the receiving party

sequestering the inadvertently produced material wishes to challenge the claim of privilege, it

must "present the information to the court under seal for a determination of the claim"; and (e)

that, pending a determination of the claim of privilege by the Court, the party who inadvertently

produced the material must continue to maintain the privileged or protected nature of the material.

As further explained in the Official Comment to this rule, the producing party's "notice" obligation can be satisfied orally during a deposition. *See* Official Comment, Subdivision (b)(5), ¶ 3 (2006). The Comment reinforces the notion that "[n]o receiving party may use or disclose the information pending resolution of the privilege claim," and, even in presenting the issue to the court for determination, "may use the content of the information only to the extent permitted by the applicable law of privilege, protection for trial-preparation material, and professional responsibility." *Id.* ¶ 4. The Comment also emphasizes that, if the receiving party "disclosed the information to non-parties before receiving notice of a claim of privilege or protection as trial-preparation material, it must take reasonable steps to retrieve the information [from the non-parties] and to return it, sequester it until the claim is resolved, or destroy it." *Id.* ¶ 5.

Within minutes of learning of the inadvertent disclosure, Defense counsel informed Plaintiffs' counsel of the precise requirements of the Rule, demanded that the GIS Qalqilya Memorandum appear only as a sealed exhibit to the deposition, demanded return of the documents and all copies, and informed Plaintiffs' counsel that the Rule would not permit them to use the document or its contents in any way until the privilege issue had been resolved by the Court. *See* discussion above. Defendant PA has also continued to maintain the privileged and protected nature of the GIS Qalqilya Memorandum, including the margin notes of counsel, since learning of the inadvertent production and notifying Plaintiffs of the claim of privilege and protection. Defendants PA and its counsel, therefore, took all required and reasonable steps in accordance with Fed. R. Evid. 502 and Fed. R. Civ. P. 26(b)(5)(B).

In short, under Federal Rule of Evidence 502, this document retains its privileged and protected nature despite the inadvertent disclosure.

### C. The Proper Remedy Here Is The Return Or Destruction Of The Privileged And Protected Material By Plaintiffs' Counsel.

As federal case law makes plain, the remedy in a situation like this is clear-cut:  Plaintiffs must be prevented from retaining or otherwise making any use of the inadvertently disclosed document.  *See, e.g., United States ex rel Bagley v. TRW Inc.*, 204 F.R.D. 170, 187 (C.D. Cal. 2001) (ordering plaintiff to "(1) return all copies of the inadvertently produced privileged documents to defendant; [] (2) destroy the relevant portions of documents or computer files containing summaries of, or quotations from, the inadvertently produced documents" and directing plaintiff  (3) "not to mention, use, or disclose the documents or their contents in any way or for any purpose"); *Transportation Equip. Sales Corp. v. BMY Wheeled Vehicles*, 930 F. Supp. 1187 (N.D. Ohio 1996) (ordering "immediate return of the document to defendant's counsel," and requiring a certification from plaintiffs' counsel detailing all persons who received the document and all steps taken to ensure "no improper use of the information learned as a result of the inadvertent disclosure . . . can or will be made during the course of this litigation"); *Milford Power Ltd. Partnership v. New Eng. Power Co.*, 896 F. Supp. 53, 58-59 (D. Mass. 1995) ("The Court will order that all copies of the documents be destroyed, and that New England will not be able to rely on them in the future."); *Resolution Trust Corp. v. First of Am. Bank*, 868 F. Supp. 217, 221 (W.D. Mich. 1994) (ordering plaintiff to immediately "(a) destroy the original and all copies of the subject correspondence; (b) destroy all copies of all notes, entries or other materials relating to the subject correspondence; [] (c) certify that the acts required in subparagraphs 1(a) and 1(b) have been accomplished," and directing that "[t]he subject

correspondence shall not be directly used during any deposition or during the presentation of evidence in this case").

In proposing that they "sequester" the document, the Plaintiffs were thereby recognizing that they should not use the document for any purpose until the issue was resolved. Indeed, Fed. R. Civ. Proc. 26(b)(5)(B) makes clear that upon being notified of the claim or privilege, a party "must not use or disclose the information until the claim is resolved." Hence, even in failing to return the document, Plaintiffs were still prohibited from using it. Indeed, the rule makes clear that in addition to not using the document, the Plaintiffs were also obligated to "take reasonable steps to retrieve the information if [they] disclosed it before being notified." And, most significantly, to the degree Plaintiffs were not in agreement as to the privileged nature of the claim, they should have pursued the matter with the Court.

Instead, the Plaintiffs have not confirmed to Defendants that they took "reasonable steps to retrieve" all copies, notes or summaries of Sealed Exhibits 1 and 1A" and, in the absence of returning or destroying the material to Defense counsel, have physically sequestered the materials, as required by the rule and demanded by Defense counsel. In fact, as evidenced in recent email communications regarding other discovery issues, Plaintiffs have continued to use the document, necessitating Defendants' filing of the instant motion.

Accordingly, the Court should direct Plaintiffs' counsel to take the following steps here:

- Destroy, or return to counsel for Defendants, all copies, notes, translations and summaries of the documents marked as Sealed Exhibits 1 and 1A from the September 12, 2012 deposition of Ibrahim Dahbour ("Dahbour Deposition");

- Destroy the portions of any documents, computer files, or other materials containing notes, translations, summaries of, or quotations from, the documents marked as Sealed Exhibits 1 and/or 1A at the Dahbour Deposition;

- Destroy, or return to counsel for Defendants, the portion of the Dahbour Deposition transcript, from page 143, line 19 through page 163, line 8,[10] and any additional notes, translations or summaries that discuss or reference the contents of the documents marked as Sealed Exhibits 1 and 1A;

- Provide counsel for Defendants with a list of all persons to whom Plaintiffs' counsel distributed any portion, copies, notes, translations or summaries of the documents marked as Sealed Exhibits 1 and/or 1A at the Dahbour Deposition, or portion of the Dahbour Deposition transcript, or any additional notes, translations or summaries that discuss the contents of Sealed Exhibits 1 and 1A; and

- Submit a declaration to the Court within five business days certifying that these steps have been taken, and that Plaintiffs and their counsel will make no use of the information learned as a result of the inadvertent disclosure of the documents marked as Sealed Exhibits 1 and 1A of the Dahbour Deposition.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Return or Destruction of an

Inadvertently Produced Document should be granted.


Dated:  October 31, 2012                          Respectfully submitted,

                                                  /s/Richard A. Hibey
                                                  Richard A. Hibey (No. 74823)
                                                  Mark J. Rochon (No. 376042)
                                                  Charles F. B. McAleer, Jr. (No. 388681)
                                                  Timothy P. O'Toole (No. 469800)
                                                  MILLER & CHEVALIER CHARTERED
                                                  655 15th St., N.W., Suite 900
                                                  Washington D.C.  20005-6701
                                                  (202) 626-5800 (telephone)
                                                  (202) 626-5801 (facsimile)

                                                  *Attorneys for Defendants The Palestinian Authority and The Palestine Liberation Organization*

---

[10] This is the portion of the Dahbour Deposition transcript during which the witness answered questions about, or based on, the contents of Sealed Exhibits 1 and 1A.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on October 31, 2012, a true and genuine copy of the foregoing was served via ECF on the following:

Robert J. Tolchin
The Berkman Law Office, LLC
111 Livingston Street – Suite 1928
Brooklyn, NY 11201
rjt@tolchinlaw.com

David I. Schoen
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
dschoen593@aol.com
Schoenlawfirm@gmail.com

*Attorneys for Plaintiffs*

/s/Richard A. Hibey
Richard A. Hibey