# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| SHABTAI SCOTT SHATSKY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 1:02-CV-02280 (RJL) |
| THE SYRIAN ARAB REPUBLIC, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |




VIDEOTAPED DEPOSITION OF

IBRAHIM DAHBOUR

JERUSALEM, ISRAEL

SEPTEMBER 12, 2012








REPORTED BY:  AMY R. KATZ, RPR

1           Videotaped deposition of IBRAHIM DAHBOUR,

2    taken in the above-entitled cause pending in the

3    United States District Court for the District of

4    Columbia, pursuant to notice, before AMY R. KATZ, RPR,

5    at the American Colony Hotel, Pasha Room, Jerusalem,

6    Israel, on Wednesday, the 12th day of September, 2012,

7    at 9:29 a.m.

8

9

10   APPEARANCES:

11   FOR PLAINTIFFS:

12           LAW OFFICES OF DAVID I. SCHOEN
             By:  DAVID I. SCHOEN, ESQ.
13           2800 Zelda Road
             Suite 100-6
14           Montgomery, Alabama 36106-3700
             (334) 395-6611 / Fax (917) 591-7586
15           dschoen593@aol.com

16

17   FOR DEFENDANTS:

18           MILLER & CHEVALIER CHARTERED
             By:  RICHARD A. HIBEY, ESQ.
19                TIMOTHY O'TOOLE, ESQ.
             655 Fifteenth Street, NW
20           Suite 900
             Washington, DC 20005-5701
21           (202) 626-5800 / Fax (202) 626-5801
             rhibey@milchev.com
22           totoole@milchev.com

23

24

25

```
 1    APPEARANCES (Continued):

 2    ALSO PRESENT:

 3              MITCHELL COOPERSMITH, Videographer

 4              DOV RABINOVITCH, Official Arabic Interpreter

 5              ALBERT AGHAZARIAN, Official Arabic Interpreter

 6              GEORGE HAZOU, Check Arabic Interpreter

 7              MORDECHAI HALLER, Advocate

 8              AVI LEITNER, Advocate

 9              RACHEL WEISAR, Advocate

10              ARIEH SPITZEN

11              NOA MERIDOR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    I N D E X

 2   WITNESS

 3   Ibrahim Dahbour

 4

 5   EXAMINATION                              PAGE

 6   By Mr. Schoen                              10

 7

 8

 9               E X H I B I T S

10   LETTER          DESCRIPTION              MARKED

11   Exhibit A       Extract from GIS File
                     (Bates 07:000051 to 07:000054)   70
12
     Exhibit B       Extract from GIS File
13                   (Bates 07:000063 to 07:000067)   79

14

15          S E A L E D   E X H I B I T S

16   NUMBER          DESCRIPTION              MARKED

17   Exhibit 1       Narrative Statement, Page 1
                     (Retained by Counsel)
18                   (No Bates Number)                139

19   Exhibit 1A      Narrative Statement, Page 2
                     (Retained by Counsel)
20                   (No Bates Number)                139

21

22

23      Q U E S T I O N S   I N S T R U C T E D

24             N O T   T O   A N S W E R

25                    (None.)
```

```
 1                    P R O C E E D I N G S

 2

 3            THE VIDEOGRAPHER:  This is the videotape

 4    deposition of Ibrahim Dahbour, taken by David Schoen,

 5    in the matter of Shatsky versus Syrian Arab Republic,

 6    at the Colony Hotel, Jerusalem, Israel, on September 12,

 7    2012.

 8            The court reporter is Amy Katz.  Mitchell

 9    Coopersmith is the videographer.

10            Will the counsel now state your appearance.

11            MR. SCHOEN:  Yeah, we've also just been saying

12    who else is in the room.

13            So I'll say on our side, I'm David Schoen.

14    Mordechai Haller is here -- excuse me -- Avi Leitner.

15    The translators are here -- I'll just announce that

16    each day -- Albert and Dov.  They're not in the room

17    this second, but they were and they will be.  Two other

18    people, Noa Meridor and Arieh Spitzen.  They've been

19    here for other depositions as well.  Those are the

20    people identified earlier as consulting experts.

21    That's it for our side.

22            MR. HIBEY:  Richard Hibey and Timothy O'Toole,

23    for the defendants, with our check translator, George

24    Hazou.

25            Before we get started, could somebody tell me,
```

1          Any other relevance, those documents, to the

2    Karnei Shomron attack?

3          A.   No.

4          Q.   Now, considering the documents 51 through 54

5    that I showed you earlier, which we called Exhibit A,

6    and the documents that we're calling Exhibit B, 63

7    through 67, are there any other documents that you

8    provided to the defense?

9          A.   No.

10         Q.   Mr. Dahbour, is it your testimony that of

11   all of the files you reviewed in connection with this

12   case, Exhibit A and Exhibit B represent the total body

13   of documents that you provided to the defense?

14         A.   Yes.

15         MR. SCHOEN:   Then I have to ask Mr. Hibey

16   if you know -- as I say, this morning, courtesy of

17   Mr. O'Toole, we were provided with what we were told

18   were the originals of the documents that were provided

19   to us on September 10, 2012.

20         There is -- I'll represent there is a

21   document in there that is not in among the documents

22   we were given on September 12 -- September 10, 2012,

23   and the originals don't have Bates stamps on them

24   anyway.  But a comparison of that document with the

25   face of the documents that we were given indicates

1    that it was not a document that was given to us.

2            I just assume it was inadvertently left out

3    of the documents that were given to us.  But I'd like

4    to examine the witness about it, and I don't have Bates

5    stamped copies of it.

6            MR. HIBEY:  I -- I'm a little confused by what

7    you've just said.  You're telling me that, on September

8    10th, when we provided you with documents, there was one

9    less document in it than what we brought to you today?

10           MR. SCHOEN:  There was -- on September 10

11   you all provided documents.  Mr. McAleer provided

12   documents Bates stamped 51 to 67, which I think is

13   about 17 pages of documents.  We see originals in the

14   file that Mr. O'Toole gave us of the originals of those

15   17 pages.

16           And then there is an additional document,

17   which I'm assuming to be a document that you all

18   intended to turn over to us, because it's in the group

19   of originals of the documents that were turned over.

20           MR. O'TOOLE:  Could we review that document?

21           MR. SCHOEN:  Yes.

22           MR. O'TOOLE:  It may have been inadvertent.

23           MR. SCHOEN:  Yes.  I believe it's a two-page

24   document.  (Indicating.)

25           MR. HIBEY:  Maybe we need to step outside.

1          MR. O'TOOLE:  Can we go off the record?

2          MR. SCHOEN:  Go off -- go off the record.

3          THE VIDEOGRAPHER:  Going off the record at

4     1:25.

5          (Brief discussion held off the record.)

6          THE VIDEOGRAPHER:  Back on the record at 1:26.

7          MR. HIBEY:  Mr. Schoen, I appreciate your

8     bringing this to our attention.  Indeed, it is

9     inadvertent.

10          These are the notes in ink, on the right-hand

11    side, of one of our colleagues, John Eustice, whom you

12    met yesterday.  This is an inadvertent turnover of two

13    pages that were given to us.  In other words, it was

14    created for us, and it would appropriately be the

15    subject of a privilege log.

16          So I understand this was inadvertent.  But

17    I'm telling you that this should not have been turned

18    over to you.

19          MR. SCHOEN:  Let me ask you a question by

20    way of full disclosure.

21          I have asked someone to summarize that

22    document in the limited period of time we've had

23    available today.  So I am aware to some degree, in

24    summary fashion, of what that document provides.

25          It certainly, in my view -- I'm characterizing

1    it -- provides information that would be directly

2    relevant to this examination.  And it provides a great

3    deal more information about the bomber, Mr. Hafez, and

4    his PFLP membership, from sources of information that

5    we simply have not seen, because we haven't seen that

6    information yet.

7            I would ask that that document be marked as

8    an exhibit and then sealed, if that's what the defense

9    wants.  But for whatever purpose it might be used in

10   the future, I believe it ought to be marked.  And if

11   the defense wants it to be sealed, it can be sealed.

12           Because I'm very troubled that we haven't

13   been provided with the underlying information that's

14   reflected in that document, as I understand the document

15   to reflect, from the summary I was given of it.

16           I'm -- I'm also willing, by the way, to

17   the extent the defense wants to cover up hand notes

18   or something like that, to agree to that for these

19   purposes.

20           I suppose I'd like to understand better.  Are

21   you saying that this is not a document -- no part of

22   this document is a document produced from a file -- all

23   of this document is some person on the defense team's --

24           MR. O'TOOLE:  It's a document created by a

25   client to report to attorney requests.

1              MR. SCHOEN:  All right.  So -- I mean, I

2     understand, of course, why the defense would consider

3     that to have a privileged nature.

4              On the other hand, I hope the defense

5     understands why I would be very troubled that the

6     client, whose depositions we've been trying to take,

7     would have such information, which, in our view, if

8     we understand the summary we have been provided, would

9     clearly have been the subject of outstanding discovery

10    requests due previously and these depositions.  And I

11    was, frankly, quite surprised to see that information

12    in there.

13             That's why I would like to have it marked

14    for possibly future litigation.  But I understand,

15    because the defense feels it's a privileged document,

16    why sealing that document would be appropriate.

17             MR. HIBEY:  Well, I would prefer that we

18    retain the copy, as well as be assured that no copy

19    has been made of this during the time the document

20    has been in your possession.  And I think you can be

21    assured that the document will be retained -- this

22    document which you handed me, which we inadvertently

23    provided to you today -- retained by us for purposes

24    of additional litigation you wish to wage concerning it.

25             So my first question is:  Have you copied this

1   document during the time it was in your possession?

2            MR. SCHOEN:  I'm not prepared to answer that

3   at this time.

4            MR. HIBEY:  Yeah.

5            MR. SCHOEN:  I don't know the answer to that

6   at this time.

7            MR. HIBEY:  Well, perhaps you can consult

8   with your local counsel and give me an answer, because

9   I think that's important to know.

10           MR. SCHOEN:  My first question is:  Would you

11  agree to mark the document for preservation purposes?

12           MR. HIBEY:  I agree to mark the document for

13  preservation purposes.  I am not agreeable to it being

14  out of our possession.

15           So it can be marked, and it would be retained

16  by us on the representation that we've made that it will

17  be retained for purposes of any future litigation.

18           But my other question remains unanswered at

19  this time:  Has this document been copied by your side

20  during the time it has been in your possession?

21           MR. SCHOEN:  Would you agree to turn the

22  document over to a third party for custody?

23           MR. HIBEY:  Well, I think I need to consider

24  that only after I know the answer to the question I put

25  to you.  I put it to you three or four times.

1          I am prepared to infer that you have copied

2   it.  And I take it by your silence that you are

3   affirming that the document has been copied.

4          MR. SCHOEN:  Sir, you have no right to take

5   anything from my silence.  I've already told you that

6   I don't know the answer to the question.  So to infer

7   otherwise is, quite frankly, to me, offensive.

8          MR. HIBEY:  This is not -- no.  It shouldn't

9   be offensive.

10          MR. SCHOEN:  Okay.

11          MR. HIBEY:  It should be obvious to you that

12   we've been here together for a number of hours, during

13   which time you have had possession of this document.

14   You cannot sit here across the table and plead ignorance

15   to me about its disposition while it's been in the hands

16   of your people.

17          You've got Mr. Haller there, and you've got

18   a gentleman who apparently has been assisting in this

19   particular examination.  I want to know if you gentlemen

20   have copied it.

21          Now, that's a pretty straightforward question,

22   and I think the silence on that is deafening.

23          MR. SCHOEN:  Again, you're entitled to think

24   whatever you think.  I don't intend silence to be any

25   kind of answer at any time.

1          MR. HIBEY:  Well, good for you.  But I think

2    you understand that, in the circumstances, the record

3    can easily be read to infer that you have copied this

4    document.

5          MR. SCHOEN:  The record should infer that I

6    refuse to answer your question at this time, not that

7    there is any affirmative inference from that.  I have

8    told you I don't know the answer.  So you shouldn't

9    draw any affirmative inference from my silence.

10          MR. HIBEY:  And I am imploring -- this is

11    not personal, Mr. Schoen.  You've got a side.  I am

12    imploring you -- you are surrounded by lawyers and

13    consultants and somebody in the corner who is probably

14    a lawyer as well.  Talk to them.  Ask them the question.

15          MR. SCHOEN:  I may certainly be willing to do

16    that.  You said you're inferring an affirmative response

17    from my silence.

18          MR. HIBEY:  Only because I've asked it five

19    times of your side, not of you.

20          MR. SCHOEN:  I have no obligation to answer

21    any question you ever ask me, with all due respect.

22          MR. HIBEY:  All right.  All right, then.

23    That's the position you take.  I just needed to

24    understand that very clearly on this record.

25          MR. SCHOEN:  Now, I am willing to go off

1    the record and discuss it with the other people at

2    the table here.

3              MR. HIBEY:   Thank you.

4              THE VIDEOGRAPHER:   Going off the record at

5    1:35.

6              (Recess from 1:35 p.m. to 1:45 p.m.)

7              THE VIDEOGRAPHER:   Back on the record at 1:45.

8              MR. SCHOEN:   Mr. Hibey, I'm -- I'm now going

9    to provide you with a full account of what I understand

10   transpired with respect to the document we're talking

11   about and our position on it.   Mr. O'Toole certainly

12   is here with us to correct anything I've said that's

13   wrong factually.

14             We were given the documents this morning

15   in an envelope by Mr. O'Toole.   Mr. O'Toole gave it

16   to Mr. Haller.   We understood these documents to be

17   the originals of the documents that Mr. McAleer --

18   Mr. O'Toole, you're not recording this on there, are

19   you?

20             MR. O'TOOLE:   I'm not recording this.

21             MR. SCHOEN:   Okay.   Is someone else on the

22   telephone?

23             MR. O'TOOLE:   No, I'm actually looking at the

24   Federal Rules of Civil Procedure 26(b).

25             MR. SCHOEN:   Not my business.   What is it?

1          MR. O'TOOLE:  I'll talk about it when you're

2     done.

3          MR. SCHOEN:  Sure.  We were given the

4     documents -- let me back up.

5          I understand that yesterday a request

6     was made to Mr. O'Toole to provide the originals

7     of the documents that Mr. McAleer e-mailed to us on

8     September 10th, because certain of the documents we

9     received were illegible.  And it was our hope that

10    the originals would be more legible.

11         Mr. O'Toole, as I understand it, agreed to

12    that request and, this morning, handed Mr. Haller an

13    envelope which he represented to be the originals of

14    the documents that Mr. McAleer had e-mailed to us on

15    September 10, 2012.

16         When mister -- the understanding was,

17    Mr. Haller had, that Mr. O'Toole not only intended for,

18    but told Mr. Haller, that these documents should all be

19    copied, with the originals to be returned to the defense

20    team.  Mr. Haller then copied all of the documents.  And

21    the documents, as a matter of course, were distributed

22    to other members of the defense team.

23         MR. HIBEY:  Of the --

24         MR. SCHOEN:  Of the defense team.

25         MR. HIBEY:  Distributed here to other members

1    of the plaintiffs' team?

2              MR. SCHOEN:  Oh.

3              MR. O'TOOLE:  "Plaintiffs."

4              MR. SCHOEN:  I absolutely misspoke on the

5    record.  I meant to say the plaintiffs' team.  I'm

6    used to being on the other side and doing defense work.

7              They were distributed to members of the

8    plaintiffs' team as a matter of course.

9              You and Mr. Hibey have now advised us that

10   this document we're talking about, this two-page

11   document, was a document that was not among the

12   documents -- you believe was not among the documents --

13   and I think we all agree was not among the documents

14   that Mr. McAleer e-mailed to us on September 10, 2012.

15             I understand you to have described this

16   delivery to us as the inadvertent delivery of a

17   privileged document, privileged because it is a

18   document created by your client for you.

19             After a review of the document, we believe,

20   respectfully, that the document is not properly

21   a privileged document and what occurred was the

22   inadvertent disclosure of a non-privileged document,

23   which we believe on its face -- perhaps with the

24   exception of what you have described as the handwritten

25   notes of Mr. Eustice -- and there clearly are what

1    appear to be handwritten notes in blue ink on the top

2    right margin of the document.  We believe it to be a

3    pre-existing document that should have been disclosed

4    to us and that contains important material information

5    supportive of the plaintiffs' case that has been

6    improperly withheld from us, both the document itself

7    and the underlying information.

8         We would like to show this document to the

9    witness and ask the witness if he can identify the

10   document and ask the witness with a -- I don't know

11   what language the document's written in.  I think the

12   document is written in Arabic.  If the document is

13   written in Arabic, I would ask the witness to identify

14   the document, if he can.  And in any event, I would

15   like to examine him about the contents of this document,

16   because I believe the document reflects non-privileged

17   fully relevant information that properly ought to be

18   the subject of this examination.

19        And one reason that I say we believe the

20   document to be a pre-existing document and a document

21   of non-privileged character is that, in form and in

22   content, to a great degree, it resembles other documents

23   that have been disclosed in this case.  And I say

24   just in form and in character.  I don't speak about

25   the substance of it.  It appears to be similar to

1    or identical to the nature and character and form of

2    other documents that we understand to be pre-existing

3    documents taken from the files and produced to us from

4    the defense.

5          We would like to examine the witness about

6    the document.  We believe we are entitled to it and

7    that we will be prejudiced if we're not able to on this

8    occasion.  If we're not permitted to examine the witness

9    on this document, we certainly intend to seek sanctions,

10   including a reconvening of the deposition with the

11   payment of all associated expenses by the defense.

12         And what we would propose to do is -- I've

13   already asked you to make the document an exhibit to

14   this deposition, kept under seal, if you like.  We

15   also would like to have this document -- maintain this

16   document in a confidential manner.  And this case is

17   subject to a confidentiality order already.

18         We would keep it in a manner consistent with

19   the terms of that confidentiality order, in order, among

20   other things, to litigate the propriety or impropriety

21   of having withheld this document from us and the

22   propriety or impropriety of our having this document

23   and the underlying information.

24         If you just give me one second, I'll see

25   if there's anything else I wanted to say about this.

1          I've tried to make this point in my remarks

2     that I made.  But, in any event, when I say we would

3     keep the document in a confidential manner, we certainly

4     would be amenable to having the document sequestered, as

5     that term is used in the Federal Rules, and specifically

6     in Rule 26, I believe is the relevant rule.  I think I'm

7     referring to 26(b)(5)(B).

8          MR. O'TOOLE:  Correct.

9          (Court reporter clarification.)

10         MR. SCHOEN:  We would sequester the document

11    and keep it certainly sequestered, and in all regards,

12    subject to the confidentiality order.

13         That's all I have to say about it.

14         MR. O'TOOLE:  I think, first, just to correct

15    a couple of things with respect to what happened that

16    I'm sure were inadvertent.

17         But I believe yesterday, during the

18    deposition, Mr. Haller asked Mr. Eustice to provide

19    these copies.  Because of the logistics today with

20    the possible deposition in Ramallah, Mr. Eustice

21    prepared a -- Mr. Eustice prepared a file in response

22    to Mr. Haller's request.  I delivered the file to

23    Mr. Haller this morning.

24         We were not aware that this document was

25    among the documents that was included in the file.

1   Any disclosure was completely inadvertent and related

2   to a document that we believed to be attorney/client

3   privileged.

4          Immediately after we learned of the

5   inadvertent disclosure, when you told us, we immediately

6   have notified you that the disclosure was inadvertent,

7   that the privilege -- that the documents, we believed,

8   were privileged.

9          And we are now requesting, after being

10  notified, that you promptly return -- well, you have

11  returned the document -- and sequester or destroy the

12  specified information in any copies it has, that you

13  cannot use or disclose the information until the claim

14  is resolved, and you must take reasonable steps to

15  retrieve any information, if the party has disclosed

16  the information beyond -- to others before being

17  notified, which it sounds like from your description

18  you may have done with respect to your consulting

19  experts.

20         And we would suggest that we would mark this

21  and, to the extent that any claim is raised disputing

22  our claim of privilege, that we will promptly present

23  this document under seal to the court for determination

24  of the claim.

25         MR. SCHOEN:  Two brief things in response.

1          I think you just misspoke.  You said that

2    Mr. Haller asked Mr. Eustice for these copies.  I think

3    you meant the originals.

4          MR. O'TOOLE:  For the originals, to the

5    extent that we have them.  Because I think we gave you

6    the documents we were given.  But I believe that those

7    documents were probably copies.

8          MR. SCHOEN:  Yes.  Yes, I understand.

9          MR. HALLER:  I actually asked Mr. McAleer.

10   I think I e-mailed you all and asked for better copies.

11   And then Mr. Eustice approached me and said that the

12   copies will be brought today.

13         MR. O'TOOLE:  I think that's -- I'm sure

14   that's accurate.  I wasn't involved in it until this

15   morning, when I delivered the envelope.

16         MR. SCHOEN:  It seems to me, if we were

17   to narrow our differences, the differences, as I

18   could identify them, would be that, among other

19   things, you're asking us to destroy all copies of

20   the document that we have.  And I don't think that

21   would be appropriate, especially when what you would

22   have proposed and all you're willing to do in response

23   to my request is to mark the document as an exhibit and

24   to deliver the document to a third party.  It certainly

25   would not be appropriate for us to destroy the document.

1          Again, what we're willing to do is sequester

2     the document, maintain it in a fully confidential form,

3     fully subject to the confidentiality order in this case

4     in all regards.

5          But what we're not willing to do -- again,

6     especially because what we believe the nature of the

7     document to be and what we believe to be the impropriety

8     of withholding this document and the contents of this

9     document, we would not be comfortable in knowing that

10    all copies other than the physical document that sits

11    before you right now had been destroyed.

12          MR. HIBEY:  Do you have a copy of this

13    document?

14          MR. SCHOEN:  Does the -- does our team have

15    a copy of this document?  Is what you're asking?

16          MR. HIBEY:  Yes.

17          MR. SCHOEN:  Yes.

18          MR. HIBEY:  Do you have multiple copies of the

19    document?

20          MR. SCHOEN:  The document has been distributed

21    to other members on the defense team.

22          MR. HIBEY:  On the --

23          MR. SCHOEN:  The plaintiffs' team.

24          MR. HIBEY:  We think that the rule, as

25    Mr. O'Toole has quoted it, governs this situation.

1   And therefore, on this record, we are requesting

2   that you return all copies of this document, which

3   we maintain was inadvertently turned over to you, so

4   that we may have all copies of the questioned material.

5           MR. O'TOOLE:  Can I add one point here?

6           To the -- to the extent that the rule

7   permits sequestration, the rule is also very clear

8   that any party who sequesters cannot use or disclose

9   the information and has to take reasonable steps to

10  make sure that it is not used or disclosed.

11          And so I think I want to make very clear,

12  this is -- this is a document that you can't look at

13  at this point.  The only thing you can do is retrieve

14  copies and put it in an envelope to the -- because that

15  is sequestration.  It's not you keep it and hang on to

16  it for what -- for whatever use you want to make of it.

17  The rules are very clear.  You can't use it.

18          MR. SCHOEN:  Our proposal is to sequester

19  the document as a remedy, not to destroy the document.

20          We intend to litigate this issue.  As I say,

21  we intend to litigate the issue in the context of a

22  sanctions motion and our entitlement to the document,

23  among other issues.  So we are not willing to destroy

24  the document.  We are willing to sequester the document,

25  as the term is used in the applicable Federal rule.

1          MR. O'TOOLE:  We believe that destruction

2    would be the better remedy.  But, obviously, we're not

3    going to be able to forcibly take the documents from

4    you, so I think we'll have to litigate.

5          MR. SCHOEN:  I don't think the rule

6    expresses a preferable remedy between sequestration

7    and destruction.  But in any event, to the extent it

8    does, we believe the rule gives a choice.

9          We believe the appropriate and only

10   appropriate choice in this case would be sequestration

11   until this matter is resolved and certainly keeping the

12   document in all regards subject to the confidentiality

13   order.

14         MR. HIBEY:  Well, insisting on sequestration

15   on your part is only one aspect of this.  The

16   information contained therein cannot be used and

17   cannot be disseminated.  And, therefore, that is

18   simply what shall be the case until such time as

19   this issue is resolved by the court or resolved

20   otherwise.

21         I don't think you can take from this document

22   or from the record that we've attempted to make here

23   that this is any document other than what we represented

24   it to be.  And it is clear to me that there is a strong

25   suggestion on your part that it is as we construe it,

1    because you most kindly brought it to our attention.

2            MR. SCHOEN:   Let me respond to that again,

3    Mr. Hibey.

4            You continue, it seems to me, to engage

5    in the practice of trying to read my mind or infer

6    something that's simply neither accurate nor fair.

7            I explained to you when I disclosed the

8    document to you --

9            MR. HIBEY:  Perhaps --

10           MR. SCHOEN:  Let me finish, please -- why I

11   disclosed the document to you.  It seemed --

12           MR. HIBEY:  Perhaps -- I'm sorry.  Go ahead.

13           MR. SCHOEN:  You go ahead.

14           MR. HIBEY:  Perhaps I should always say "you

15   all" when I speak to you, Mr. Schoen.  I don't speak

16   to you personally.  I'm talking about the side.

17           MR. SCHOEN:  In this case -- I appreciate

18   that.  But, in this case, I wasn't responding

19   personally.  I was responding as a side.

20           I don't know, frankly, what's in anybody

21   else's mind.  I do know the reason that I first

22   raised this with you before I showed it to the witness.

23   The reason is because it didn't appear, as I compared

24   documents with the Bates stamped documents, that this

25   was one of those documents.  My conclusion from that

1    was to, in my view, give you the benefit of the doubt.

2    I didn't believe it was a privileged document.

3            I thought that, when you folks gave us

4    documents, you carefully reviewed whatever documents

5    were given to us and that those documents were documents

6    you believed had been given to us.

7            And, therefore, if I didn't examine on that

8    document, would take the position that we had all of

9    the information that's contained in that document and

10   that, if we had wanted to examine this witness on that

11   information, we should have done it.  After all, it was

12   in the envelope of documents we gave to you today, and

13   we wouldn't have given you documents unless we intended

14   for you to see those documents.

15           So that's why, as a precaution, I simply asked

16   you first, drew it to your attention, but not because

17   I believed it to be a privileged document.  And I don't

18   think it's either fair or appropriate for you to infer

19   some kind of mal intent or some kind of belief that you

20   have no basis for making.

21           I've explained to you, and to the extent you

22   come to any other conclusion, you're simply questioning

23   my representation, which you're entitled to do.

24           MR. HIBEY:  Well, I'm trying hard not

25   to question your representation, because I'm still

1  grateful for the fact that you brought this matter

2  to our attention.

3          But, unfortunately, now that the point has

4  been pressed as it has been in the colloquy that we've

5  been having, I think it's important for your side to

6  advise the record as to when, after we arrived here

7  this morning and turned these materials over to you,

8  it was realized by your side that there were two pages

9  more than what we have otherwise indicated or otherwise

10 provided you on the 10th of September.  And --

11          MR. SCHOEN:  Well --

12          MR. HIBEY:  Just hear me out.

13          MR. SCHOEN:  Yes.  Sure.

14          MR. HIBEY:  It would seem to me that at that

15 point -- at that point, someone who realized that there

16 were two pages more might have brought this to our

17 attention, rather than causing somebody on your side

18 who can read Arabic to read it, to copy it, and then,

19 only hours later, bring it to our attention in the

20 fashion that it was done.

21          MR. SCHOEN:  Two things.  I can assure you

22 this document was not copied and distributed before

23 anyone realized that it was anything other than what

24 we understood it to be, that is, a set of originals

25 of the documents we had been provided.  It was handed

1    as a set.   That set was copied and distributed.   I'm

2    not going to inquire of every member of the team as

3    to when each person recognized there were two extra

4    documents.

5           We approached this document in the manner

6    we believe appropriate.   We're suggesting a remedy we

7    believe appropriate.   And from our perspective, that's

8    the end of it.

9           MR. HIBEY:   Well, you have our position.

10          MR. SCHOEN:   Sure.   Okay.   I'd now like to

11   show the document to the witness and examine the witness

12   about the document that we've been discussing.

13          MR. HIBEY:   I'm not altogether comfortable

14   with that at this time.   I would like to take time off

15   the record to consider the request.

16          MR. SCHOEN:   Of course.

17          MR. HIBEY:   We don't need much time, but --

18          MR. SCHOEN:   Of course.

19          THE VIDEOGRAPHER:   Going off the record at

20   2:05.

21          (Recess from 2:05 p.m. to 2:16 p.m.)

22          THE VIDEOGRAPHER:   Back on the record at 2:16.

23          MR. HIBEY:   We've had the opportunity to

24   consult.

25          We think that there ought to be questioning

1    regarding the nature of this document, not its content,

2    put to the witness in aid of an ultimate determination

3    as to whether these pages are privileged.  That being

4    the case, I propose that questioning of the witness at

5    this time on that subject be made.

6            In addition, since it is we who are asserting

7    the privilege, I propose to be the first to ask the

8    witness questions concerning the document.

9            MR. SCHOEN:  My response is this:  First

10   of all, I would not concede in any regard that

11   these questions and answers would be the ultimate

12   determination, as I believe you put it, as to whether

13   the document is privileged.  And I also believe that

14   we should be able to conduct the examination, since

15   it's our deposition, and go first.

16           I was wondering -- I wanted to ask you two

17   questions if I could, Mr. Hibey.  Obviously, you're

18   under no obligation to answer.

19           MR. HIBEY:  Yes.

20           MR. SCHOEN:  One would be:  When you obtained

21   this document?  And the second would be:  Who has had

22   access to the document and who translated it for

23   Mr. Eustice to make those handwritten notes?

24           MR. HIBEY:  Yes.  I believe this document

25   came into our possession at around the time of the

1   materials which had been turned over for use.

2           MR. SCHOEN:  Around September 10th?

3           MR. HIBEY:  Yes.

4           Secondly, the translation that is reflected

5   here was part of our attempting to understand this, the

6   content of this material.

7           MR. SCHOEN:  My question was:  Who provided

8   that translation in order for mister -- you said, I

9   believe, those are Mr. Eustice's handwritten notes.

10          MR. O'TOOLE:  We believe they are.

11          MR. SCHOEN:  Yes.  I don't believe Mr. Eustice

12  reads and understands Arabic.

13          MR. HIBEY:  No, I'm not saying he was the

14  translator.  He was the benefit of the translation.

15  And sitting here right now --

16          MR. O'TOOLE:  I'm not sure about the answer

17  to that, and I wouldn't want to speculate.

18          MR. HIBEY:  I'm not sure I know.

19          Now, I don't think that the fact that this

20  is a noticed deposition on your part justifies your

21  going first and asking questions of the witness, since

22  the burden is going to be on us in court, if it comes

23  to that.  And that's what I meant by the ultimate

24  determination.  If it comes to that, the burden is

25  on us.  So I would like very much to be the first

1   to inquire of the witness regarding these two pages.

2            MR. SCHOEN:  The concern -- the concern is

3   that leading questions will be put to the witness that

4   really can't be retracted and that the --

5            MR. HIBEY:  Let me ask you something.

6            Is that your -- now I'm being personal.  Is

7   that your concern?

8            MR. SCHOEN:  Number one, I would never

9   disclose if there were -- I don't know about "ever."

10  I'm not disclosing whether any differences in our

11  team exist, but that's my position.

12           MR. HIBEY:  I'm going first.  This is my

13  burden.

14           MR. SCHOEN:  I don't agree to that.  But

15  I can't stop you, I don't think.

16           MR. HIBEY:  All right.  Let's mark this

17  as Sealed Exhibit Number 1.

18           Is that fair?

19           (Court reporter clarification.)

20           (I. Dahbour Sealed Exhibits 1 and 1A marked.)

21           MR. HIBEY:  You had a question of me, sir?

22           MR. SCHOEN:  Yeah.

23           MR. HIBEY:  Please place that before the

24  witness.

25           MR. SCHOEN:  I just want to ask you a

1    question, if you feel free to respond.

2                Is it your position that this witness

3    generated this document and had it provided to you?

4                MR. HIBEY:  It is my understanding that the

5    witness provided the information that is contained on

6    this document.

7                MR. SCHOEN:  To someone else who then --

8                MR. HIBEY:  To our investigator, yes, who is

9    part of our --

10               MR. SCHOEN:  If you insist on going forward

11   and asking your question, go ahead and ask your

12   question.

13               MR. HIBEY:  Sure.

14               I want to show you, Mr. Dahbour, Sealed

15   Exhibit 1 and 1A.

16               CHECK INTERPRETER HAZOU:  Dov, can you raise

17   your voice, please?

18               OFFICIAL INTERPRETER RABINOVITCH:  I will.

19               CHECK INTERPRETER HAZOU:  Thank you.

20               MR. HIBEY:  I'm going to ask you to read it

21   to yourself.

22               First of all, do you recognize that document?

23               THE WITNESS:  (Examining.)  No.

24               MR. HIBEY:  Does it contain --

25               THE WITNESS:  As a document, no.  As a

1    document, no, I'm not familiar.

2              MR. SCHOEN:  I would object to any further

3    questions on this document once the witness has said

4    he doesn't recognize the document.

5              MR. HIBEY:  I understand.

6              Your answer was "as a document, no."

7              Do you have any other information to state

8    regarding your understanding of the material contained

9    in that document?

10             MR. SCHOEN:  Objection.  Objection as to form.

11   Vague and otherwise objectionable.

12             THE WITNESS:  Shall I answer?

13             MR. HIBEY:  Yes.

14             MR. SCHOEN:  First of all, I'm not in a

15   position to direct him not to answer.  I don't have

16   that authority.

17             MR. HIBEY:  Please answer.

18             THE WITNESS:  After I read these two pages

19   in front of me, most of the information is available

20   within our security files.

21             There are maybe additional details about

22   his brothers, his sisters.  But he was being with

23   Jamal Al-Hindi and Ra'ed Nazzal, accompanied by.

24   And Rafi Nasura -- he was like a picture by Rafi.

25   His pictures were taken by Rafi Nasura before the

1   operation was conducted.

2           MR. HIBEY:  Okay.  We're going beyond where

3   I want to be.

4           OFFICIAL INTERPRETER AGHAZARIAN:  "We are

5   going beyond where I want to be."

6           MR. HIBEY:  We're not going to stand in the

7   way of your questioning of the witness regarding this

8   document.  We -- we know, as lawyers, how it was

9   created.  And I am telling you that it is a document

10  that was created for us.  But since the witness cannot

11  identify the document per se as a document, then I am

12  afraid we will go forward.

13          MR. SCHOEN:  Thank you, Mr. Hibey.

14      Q.   BY MR. SCHOEN:  Mr. Dahbour, if you would,

15  please, take the first page of that document --

16          MR. HIBEY:  By the way, the marginalia, we

17  agree, is definitely our work product?

18          MR. SCHOEN:  Certainly.  First of all, it's

19  not readable.  But I certainly wasn't going to examine

20  on it.

21          MR. HIBEY:  You can't read it.

22          MR. SCHOEN:  But we're certainly not going to

23  use that.

24          THE WITNESS:  I don't know English -- I'm

25  reading -- that well.

1        Q.   BY MR. SCHOEN:  If you do know English, don't

2   look at what's written in English on the side.  Okay?

3        A.   I'm ready.  Please go ahead.

4        Q.   Tell me -- describe the document for me,

5   starting from the top.

6             MR. HIBEY:  Oh, excuse me.  You just -- you

7   made a very trenchant statement earlier that this is

8   a document he cannot identify.

9             MR. SCHOEN:  No.  I don't mean describe the

10  contents of the document.  I'm asking him to tell me

11  what the document says.

12       Q.   BY MR. SCHOEN:  Tell me what the document

13  says, specifically.  Read the document.  That's the

14  easiest thing.  Read the Arabic on the document.

15       A.   I may read the content in Arabic, but I don't

16  know where this document comes from.

17       Q.   Fine.  I'm not asking you where it comes from.

18  I'm asking you what it says.


**REDACTED**

**REDACTED**

 9            MR. SCHOEN:  Okay.  I don't have any -- I

10    don't have any further questions.

11            MR. HIBEY:  All right.  If you give me a

12    minute to consult, and we'll go from there.

13            THE VIDEOGRAPHER:  Going off the record at

14    3:09.

15            (Recess from 3:09 p.m. to 3:11 p.m.)

16            MR. HIBEY:  All right.  We have no questions.

17            THE VIDEOGRAPHER:  Going back on the record

18    at 3:11.

19            MR. HIBEY:  We still have no questions.

20            We reserve the right to continue to contest

21    the use of the document that was the subject of the

22    discrete inquiry here in the middle of this man's

23    deposition.  And so you are on notice that that's

24    our position.

25            MR. SCHOEN:  Respectfully, we disagree with

1   the validity of that position.

2            That's all I have to say.  Thank you.

3            MR. HIBEY:  All right.  I think we're done.

4            MR. SCHOEN:  Now, do we need to discuss

5   housekeeping on the record or not?

6            THE VIDEOGRAPHER:  That concludes the video

7   deposition at 3:12.

8            (Brief discussion held off the record.)

9            MR. HIBEY:  Back on the record.  And it's okay

10  if this is not on the video record.

11           The court reporter will please note that the

12  contested exhibit, Sealed Deposition Exhibit 1 and 1A,

13  will be retained by defense counsel pendente lite.

14           MR. SCHOEN:  And to be consistent, it is our

15  position it should be retained by the court reporter,

16  just our position, as I said earlier.

17           (The deposition concluded at 3:14 p.m.)

18

19

20

21

22

23

24

25