## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, et al.,

                Plaintiffs,                Civ. No. 02-2280-RJL

       v.

THE SYRIAN ARAB REPUBLIC, et al.,

                Defendants.

### PLAINTIFFS' MOTION PURSUANT TO RULE 37(c)(1) FOR PRECLUSION OF UNTIMELY DISCLOSED WITNESSES AND DOCUMENTS, AND FOR RELATED RELIEF

For the reasons set forth in the attached memorandum, the plaintiffs hereby respectfully move, pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, for an **ORDER**

(1)    **PRECLUDING** defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"):

    a)    From using their five untimely-disclosed witnesses, Major-General Majed Faraj, Hisham Jarrar, Mahmoud Noful, Col. Iyad al-Aqra, and Brigadier-General Azzam Zakarneh, "to supply evidence on a motion, at a hearing, or at a trial" in this matter; and

    b)    From using the documents untimely disclosed by them, bearing Bates nos. 341-1080, "to supply evidence on a motion, at a hearing, or at a trial" in this matter.

**OR**, **alternatively**,

(2)    **DIRECTING**:

    a)    That defendants shall produce the aforementioned untimely-disclosed witnesses in Jerusalem to be deposed by plaintiffs' counsel, within 30 days;

1

     b)    That defendants shall pay the reasonable travel expenses incurred by plaintiffs' counsel in having to return to Jerusalem for these depositions; and

     c)    That the deadline for plaintiffs' expert disclosures shall be adjourned until 30 days after completion of the aforementioned depositions (or, if such depositions are not ordered, until 30 days after the Court's disposition of this motion).

**AND,**

(3)    **DIRECTING** that defendants pay the reasonable expenses incurred by plaintiffs in making this motion, including attorney's fees; and

(4)    **GRANTING** any other relief the Court finds just, necessary or proper.

Counsel for the plaintiffs hereby certify, pursuant LCvR 7(m), that they have attempted to confer with opposing counsel concerning the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

Plaintiffs, by their Attorneys,

/s/ Robert J. Tolchin
Robert J. Tolchin (NY0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
rjt.berkman@gmail.com

David I. Schoen (DS0860)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
(334) 395-6611
DSchoen593@aol.com

Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHABTAI SCOTT SHATSKY, et al.,

                Plaintiffs,               Civ. No. 02-2280-RJL

     v.

THE SYRIAN ARAB REPUBLIC, et al.,

                Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT**
**TO RULE 37(c)(1) FOR PRECLUSION OF UNTIMELY DISCLOSED**
**WITNESSES AND DOCUMENTS, AND FOR RELATED RELIEF**

**Introduction**

Rule 26(a)(1) and Rule 26(e) of the Federal Rules of Civil Procedure require each party to identify all witnesses and all documents that it "may use to support its claims or defenses." The purpose of these mandatory disclosure rules "is to avoid surprise or trial by ambush." *Lopez v. City of New York*, 2012 WL 2250713 at *1 (E.D.N.Y. June 15, 2012). To further this purpose, Rule 37(c)(1) forbids the delinquent party's use of untimely-disclosed witnesses or documents "to supply evidence on a motion, at a hearing, or at a trial" in the action.

Defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") did not identify *any* defense witnesses prior to the close of fact discovery in this case, on September 19, 2012, even after plaintiffs alerted defendants to their lacuna well prior to the deadline. Instead, several days after the close of fact discovery, defendants suddenly disclosed the names of five defense witnesses, all of whom are senior officers and employees of defendant PA and thus, obviously, were well-known to the defendants all along.

1

In an *ex gratia* attempt to mitigate some of the prejudice caused them by defendants' untimely disclosure of these five defense witnesses, the plaintiffs noticed the depositions of the witnesses, all of whom, as noted, are senior officers of defendant PA. However, defendants have refused to produce any of their untimely-disclosed officer-witnesses for deposition.

Similarly, more than a *month* after the close of fact discovery (and after plaintiffs' expert disclosure deadline) defendants suddenly disclosed 740 documents which they intend to use as defense exhibits in this case – none of which were previously disclosed by defendants, and all of which were well known to and in the possession of defendants for many years.

In sum: defendants have made extensive, untimely disclosures of both witnesses and documents, in blatant violation of Rules 26(a)(1) and Rule 36(e), and have stymied plaintiffs' beyond-the-call-of-duty efforts to ameliorate some of the harm via depositions of the witnesses. Clearly, then, defendants' goals here are "surprise" and "trial by ambush." *Lopez*, at *1.

Therefore, plaintiffs respectfully hereby move for an order pursuant to Rule 37(c)(1), precluding defendants from using their five untimely-disclosed witnesses or their 740 untimely-disclosed documents "to supply evidence on a motion, at a hearing, or at a trial" in this matter. As discussed below, a preclusion sanction is particularly appropriate here in light of defendants' previous pledge to this Court to litigate in good faith if their willful default were vacated, the fact that defendants intentionally delayed these disclosures until after the close of discovery, and defendants' refusal to reduce the harm to plaintiffs by producing the witnesses for deposition.

Alternatively, i.e. if the Court declines to impose a preclusion sanction, the plaintiffs respectfully request that it direct the defendants to produce the five untimely-disclosed witnesses to be deposed by plaintiffs (at defendants' expense), and adjourn plaintiffs' expert disclosure deadline until thirty days after those depositions are completed.

2

Finally, because this motion arises from defendants' dilatory conduct and recalcitrance, defendants should be ordered to pay plaintiffs' costs on the motion, including attorney's fees.

<u>**RELEVANT BACKGROUND**</u>

**A.  The Terrorist Bombing and the Promise**

This is a civil action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, brought by U.S. citizens, and the family members and the estates of U.S. citizens – including two teenaged American girls – who were murdered or maimed in a terrorist bombing carried out on Saturday night, February 16, 2002, in a crowded pizza parlor in the Israeli town of Karnei Shomron. The pizzeria bombing was carried out by a cell of the PFLP terrorist faction headquartered in the Palestinian town of Qalqilya, located nearby, but within the jurisdiction of defendant PA.

Evidence unearthed by plaintiffs through discovery in this case (primarily internal documents and testimony prised from the PA and PLO themselves) show that the bombing was organized by an officer in defendant PA's National Security Service ("NSS"), Captain Raed Nazal, who also served as one of the leaders of the PFLP cell, and that defendant PA funded the PFLP cell's headquarters in Qalqilya in the period immediately preceding the bombing.[1]

In their motion to vacate default in this case defendants falsely claimed that the "PA has no relationship to the PFLP" – intentionally concealing from the Court the fact that the bombing was planned by a PA security officer who was part of a PFLP cell funded by the PA. DE 77 at 5.

---

[1] Internal PA records obtained by plaintiffs from the defendants (after months of resistance and delay) show that during the period prior to bombing, the defendants were fully aware that Captain Nazal was involved in PFLP terrorist activities while employed by the PA as an officer in the NSS. Indeed, the PA *hired* Nazal as an officer shortly after he was released from prison in 1999, after serving a lengthy sentence for brutally torturing to death his cellmate (whom he suspected of being an informer for Israel). And the PA *promoted* Nazal to the rank of Major after the bombing.

But that was not the only misrepresentation contained in defendants' motion to vacate: defendants also promised this Court that if their willful default were vacated, they would abandon their dilatory tactics and litigate "in a cooperative manner." *Id.* at 3 (emphasizing that this promise was sworn under oath and so is "entitled to special consideration" by the Court).

However, as shown *infra* (and as is also reflected in the other discovery motions plaintiffs have been constrained to file), defendants have high-handedly violated that pledge to this Court.

**B.  Defendants Disclosed No Witnesses At All Prior to the Close of Fact Discovery**

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure obligates each party to make initial disclosures at the outset of a case. Such initial disclosures must include, *inter alia*, the name, contact information and subject areas for each individual likely to have discoverable information that the party "may use to support its claims or defenses," and a copy or description of all documents that may be used by that party "to support its claims or defenses." Rule 26(a)(1)(A)(i)-(ii). "The mandatory disclosure requirements under Rule 26(a)(1) are designed to accelerate the exchange of basic information, help focus the discovery that is needed, facilitate preparation for trial or settlement, and eliminate surprise." *Digital Ally v. Z3 Technology*, 2012 WL 2402771 at *2 (D.Kan. June 26, 2012) (citing 1993 Advisory Committee Notes).

Specifically with respect to the disclosure of witnesses, the purpose of this requirement is "to assist other parties in deciding which depositions will actually be needed." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 5 (D.D.C. 2009) (citing 1993 Advisory Committee Notes); *White Cap Constr. Supply, Inc. v. Tighton Fastener and Supply Corp.*, 2010 WL 148430 at *1 (D.Neb. Jan. 12, 2010) (same); *see also Deakins v. Pack*, 2012 WL 1957795 at *2 (S.D.W.Va. May 31, 2012) (noting that purpose of providing contact information is to assist parties in contacting witnesses for interviews and depositions).

4

In addition, each party is required to supplement its initial disclosures in a timely manner if it decides that it may use additional new witnesses or documents. Fed.R.Civ.P. 26(e).

Defendants served their initial disclosures on October 28, 2011, but did not identify therein *any* individuals whom they "may use to support [their] claims or defenses." Rule 26(a)(1)(A)(i). Exhibit A, *passim*. In other words, defendants did not disclose the names and contact information of *any* potential defense witnesses, as required by Rule 26(a)(1)(A)(i).[2]

Nor did defendants supplement their initial disclosures by identifying potential witnesses at any time during the fact discovery period, which closed on September 19, 2012, pursuant to this Court's scheduling order. DE 136 at ¶ 5.

Accordingly, on August 16, 2012, more than a month before the close of fact discovery, plaintiffs' counsel reminded defendants' counsel by email that "[t]he initial disclosures served by defendants … fail to identify any [potential witnesses] and fail to provide any of the additional

---

[2] Defendants' disclosures do list several *categories* of potential witnesses, without identifying or naming (much less providing contact information for, any specific individuals). Exhibit A at 3-4. But it is well established that listing such categories of witnesses is wholly *ineffective* under Rule 26. "The parties must provide the specific names of the individuals they might use as witnesses. It is not sufficient to identify them through the use of a collective description, such as 'employees or representatives of the defendant.'" 6 Moore's Federal Practice, § 26.22[4][a][i] (citing *Hernandez-Torres v. Intercontinental Trading*, 158 F.3d 43, 49-50 (1st Cir. 1998)). *See also Labadie v. Dennis*, 2008 WL 5411901 at *2 (W.D.Mich. 2008) ("Plaintiff lists generic categories of persons, such as 'all members of plaintiff's family,' or 'all investigating persons.' This is patently insufficient and amounts to a non-disclosure."); *Smith v. Pfizer*, 265 F.R.D. 278, 283 (M.D.Tenn. 2010) ("The plaintiff points out that she stated in her initial Rule 26 disclosure that 'friends and family of the deceased' possessed discoverable information. Similarly, her previous supplemental disclosures identified general categories of the defendants' employees. But these broad categories of witnesses do not satisfy the disclosure requirements of Rule 26 … The plaintiff's noncompliance with Rule 26 is not excused by her earlier disclosure of these broad, generic categories of witnesses.").

In any event, there is no substantive correlation between the categories listed in defendants' initial disclosures, and the untimely-disclosed witnesses who are the subject of this motion.

information required by Rule 26," and noted that plaintiffs would be seeking appropriate relief in respect thereto. Exhibit B.

In response, defendants' counsel stated baldly that they would "oppose such a motion" – but did not attempt to explain or justify their failure to identify any witnesses; nor did they state – or even *hint* – that defendants intended to remedy or supplement their disclosures. Exhibit C.

## C. Defendants Untimely Disclose Witnesses in the Guise of a Discovery Response

Instead of identifying their witnesses in their October 2011 initial disclosures, as required by the Federal Rules and the Court's scheduling order, or after receiving the email reminder from plaintiffs on August 16, 2012 – which would have been grossly tardy, but at least would have enabled plaintiffs to depose the new witnesses prior to the September 19, 2012 fact discovery deadline – defendants *intentionally* waited nearly another six weeks, i.e. until the September 19 deadline had passed, before disclosing their witnesses to the plaintiffs, as explained below:

On September 24, 2012, plaintiffs' counsel received by mail "Defendants' Objections and Answers to Plaintiffs' Second Set of Interrogatories (Nos. 2-12)" and "Defendants' Objections and Responses to Plaintiffs' Second Request for Production of Documents," which discovery requests plaintiffs had served on August 19, 2012. Defendants' Responses and Answers were accompanied by a September 19, 2012, cover letter from defendants' counsel (also received by plaintiffs on September 24, 2012), which stated in relevant part:

> To the extent applicable, the persons, information and documents referenced in the enclosed Responses and Answers, including, without limitation, the persons, information and documents referenced in Defendants' Answer to Interrogatory No. 4, shall also be deemed supplemental disclosures of Defendants pursuant to Rule 26(a)(1) and 26(e).

Exhibit D.

Thus, by this letter, mailed on the September 19, 2012 discovery deadline and received by plaintiffs on September 24, 2012, defendants purported to supplement their Rule 26(a)(1) disclosures with "the persons, information and documents referenced" in defendants' discovery responses, including, particularly, in defendants' Answer to plaintiffs' Interrogatory No. 4. [3]

Plaintiffs' Interrogatory No. 4 required defendants to: "Detail in full all facts supporting the *affirmative defenses* set forth in defendants' answer to the complaint in this action." Exhibit G at p. 16 (emphasis added). Plaintiffs propounded this interrogatory because defendants' answer asserts a number of affirmative defenses. *See* DE 128. Again: this interrogatory sought only the *facts* supporting the *affirmative defenses* asserted by defendants in their answer – it did not seek any information regarding any *other* types of defenses, nor did it seek the identity of any *person*.

But in a ham-handed attempt to slip untimely Rule 26(a)(1) witness disclosures into a response to an interrogatory on a different topic entirely, defendants intentionally *modified* the language of Interrogatory No. 4 – which mentioned only "affirmative defenses" – and served an Answer containing a list of: "Persons with knowledge and information relating to Defendants' affirmative *and factual* defenses." Exhibit G at 17 (emphasis added).

---

[3] As noted, defendants' cover letter and accompanying discovery responses were served by mail on September 19, 2012, and received by plaintiffs on September 24, 2012. Notably, plaintiffs' counsel (who had no idea the discovery responses would include Rule 26 disclosures and were anxious to receive the responses themselves) attempted to send a courier to the offices of defendants' counsel to pick up the materials on the due date, September 19, 2012, but were rebuffed by defendants' counsel, who *refused* to hand the materials over to the courier and insisted on sending them by mail (for no apparent reason but to generate further delay). *See* Exhibits E-F ("[W]e do not intend to engage with any messenger you send.").

Of course, even if defense counsel had not superciliously refused to "engage" with the courier on September 19, 2012, plaintiffs would have had no opportunity to depose the witnesses before the close of fact discovery that same day. The point is, that defendants intentionally delayed disclosure of these witnesses for yet *another* five days (from September 19th to the 24th), which both evidences their bad faith and bars any self-serving claim (which would be practically meaningless in any event) that their witness disclosures were made on the last day of fact discovery.

The individuals whom defendants purported to disclose as witnesses in their Answer to Plaintiffs' Fourth Interrogatory, and their areas of knowledge, include the following:

- **Major General Majed Faraj** (Head of the PA General Intelligence Service, Major General Faraj possesses knowledge concerning the PA's efforts and abilities to control militant activities in the West Bank during the period in which the bombing at issue in the case occurred).

- **Hisham Jarrar** (Legal Advisor in the PA General Intelligence Service, Mr. Jarrar possesses knowledge concerning the nature of the PA's intelligence services and the laws and statutes that govern the dissemination of information gained through intelligence activities).

- **Mahmoud Noful** (General Director for Property Taxes and Business Permits at the PA Ministry of Finance, Mr. Noful possesses knowledge concerning certain properties used by the PFLP in the West Bank at certain periods of time).

- **[Colonel] Iyad al-Aqra** (Employee[4] in the PA Preventive Security Service in Qalqilya who was also an employee during the period in which the bombing at issue in the case occurred, Mr. al-Aqra possesses knowledge concerning certain persons in Qalqilya, including Raed Nazzal and Shaher Ali al-Rai, as well as the PA's efforts and ability to control militant activities in Qalqilya during the period in which the bombing at issue in the case occurred).

- **Brigadier General Azzam Zakarneh** (Director of PA General Intelligence Service Headquarters in Ramallah and former head of the PA General Intelligence Service in Qalqilya during the period in which the bombing at issue in the case occurred, Brigadier General Zakarneh possesses knowledge concerning the PA's efforts and ability to control militant activities in Qalqilya during the period in which the bombing at issue in the case occurred).

Exhibit G at 18-19.[5]

---

[4] While defendants' Answer misleadingly identifies Iyad al-Aqra as a mere "Employee" in the PA's Preventive Security Service, defendants' counsel subsequently admitted, in response to an inquiry from plaintiffs' counsel, that Iyad al-Aqra is in fact a *Colonel* in the PA. *See* Exhibit H.

[5] Defendants' Answer also discloses six other witnesses. This motion does not seek any relief in respect to those other witnesses, who were defendants' Rule 30(b)(6) designees.

Defendants own descriptions, quoted above, make clear that all five of these late-disclosed witnesses are senior officers of defendant PA, who were obviously known to defendants all along, and therefore could and should have been disclosed in October 2011 in defendants' initial disclosures or, at the very latest, in response to plaintiffs' August 16, 2012, email, which pointed out defendants' failure to disclose any witnesses.

Nevertheless, rather than immediately burdening themselves and the Court with a motion for preclusion of these witnesses under Rule 37(c) (which forbids the use of untimely-disclosed witnesses "to supply evidence on a motion, at a hearing, or at a trial" in the action), plaintiffs first attempted to limit the prejudice caused them by the untimely disclosure – and so avoid motion practice – by noticing depositions of the witnesses for October 25-31, 2012. Exhibit I.

But the deposition dates have passed and the defendants have refused to produce the witnesses – whom, as noted, were first disclosed by defendants only September 24, 2012 – on the grounds "the period for conducting fact discovery closed on September 19, 2012." Exhibit J. Thus, according to defendants, they are entitled to withhold the identity of their witnesses until after the discovery deadline, but the plaintiffs cannot then depose those witnesses, because the discovery deadline has passed.

This claim is not only the apogee of gall, it is legally baseless: a party is perfectly free, without leave of court, to respond to discovery requests served after the discovery deadline. *See e.g. Slomiak v. Bear Stearns & Co.*, 1985 WL 410 at \*1 (S.D.N.Y. 1985). ("Of course, the parties may agree to continue or complete discovery after the deadline; there is no reason why a trial court should be so rigid as to foreclose actions which no litigant opposes."). Thus, if defendants had any desire to reduce the prejudice to plaintiffs caused by the untimely disclosure of these five witnesses, and to avoid the instant motion, they could and should have produced the

witnesses for the depositions noticed by the plaintiffs. But defendants spurned this last-chance opportunity (which is further evidence that they withheld the identity of these witnesses until after the discovery deadline *specifically for the purpose* of preventing plaintiffs from deposing them) and plaintiffs are therefore constrained to bring the instant motion for Rule 37(c) relief.

### D.  Defendants Disclose 740 Documents a Month After the Discovery Deadline

On October 21, 2012, defendants produced documents responsive to a handful of plaintiffs' outstanding discovery requests. Defendants also produced to plaintiffs (bundled along with the responsive documents) another 736 pages of documents, marked as Bates 341-1076, which are not responsive to any of plaintiffs' discovery requests and which in fact constitute 42 *complete trial exhibits* that were submitted to another federal court in 2010 by the instant defendants, the PA and PLO, in the matter of *Saperstein v. PA*, Civ. No. 04-20225 (S.D.Fla.).

Specifically, the pages marked Bates 341-1076, that were produced by defendants on October 21, 2012, constitute defendants' Exhibits 1-5, 7-12, 16-20, 22-23, 25-26, 30-34, 36, 38-44, 48, 51-54 and 58-60 in *Saperstein*, as detailed and described in the attached "Defendants' Exhibit List" filed by the PA and PLO in the *Saperstein* action on July 13, 2010. Exhibit K. Indeed, these documents still bear "Defendant's Exhibit" stickers from *Saperstein*. Exhibit L.[6]

Defendants' October 21, 2012, production also included four pages marked Bates 1077-1080, which are documents published by defendants' official news agency, Wafa, in 2001. Though the documents are in Arabic, the 2001 publication dates are in English. Exhibit M.

---

[6] Due to ECF filing limitations plaintiffs have submitted as Exhibit L the first page of each of the exhibits constituting Bates 341-1076, which bear "Defendant's Exhibit" stickers from *Saperstein*.

Along with the documents produced by them on October 21, 2012, defendants provided a cover letter stating that: "To the extent applicable, the enclosed documents shall also be deemed supplemental disclosures of Defendants pursuant to Rule 26(a)(1) and 26(e)." Exhibit N. In response to that letter, plaintiffs wrote to defendants on October 22, 2012, as follows:

1) The documents that you produced yesterday Bates-stamped 341-1080 do not appear to be responsive to any of our document requests. Please indicate which of our document requests, if any, you believe those documents to be responsive to.

2) In the attached cover letter defendants purport to supplement their mandatory disclosures by stating that: "To the extent applicable, the enclosed documents shall also be deemed supplemental disclosures of Defendants pursuant to Rule 26(a)(1) and 26(e). Please immediately and specifically identify all the documents with which defendants are purporting to supplement their disclosures.

Exhibit O.

In response to this query defendants' counsel refused to identify any document requests to which (according to them) Bates 341-1080 are responsive and, moreover, *admitted* that "these are documents that Defendants may use in some aspect of their defense in this case." Exhibit P. But as shown above, Bates 341-1076 are documents that defendants designated as trial exhibits in the *Saperstein* matter in 2010, and Bates 1077-1080 are documents published by defendants' own news agency back in 2001. Thus, defendants' October 21, 2012, disclosure of these documents, which have been in their possession for many years, is grossly untimely; indeed, it appears clear that defendants intentionally delayed disclosure of these documents until more than a month after the close of discovery on September 19, 2012.

Therefore, plaintiffs bring the instant motion under Rule 37(c), to preclude defendants' use of those documents "to supply evidence on a motion, at a hearing, or at a trial" in this case.

## ARGUMENT

**A. Defendants Should Be Barred from Using the Five Untimely-Disclosed Witnesses or the 740 Pages of Untimely-Disclosed Documents to Supply Evidence in this Case**

Rule 26(a)(1)(A) requires a party to disclose all witnesses and documents that it "may use to support its claims or defenses," and Rule 26(e) requires the party to supplement its disclosures of witnesses and documents "in a *timely* manner." (Emphasis added).

The "'timely manner' inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner." *Hysitron Inc. v. MTS Systems Corp.*, 2010 WL 55987 at *7 (D.Minn. 2010).

Therefore, a "supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made *as soon as possible* after the party learns that its response was inaccurate or incomplete." *Insight Technology, Inc. v. SureFire, LLC*, 2009 WL 3242557 at *2 (D.N.H. 2009) (emphasis added). *See also e.g. Elion v. Jackson*, 544 F.Supp.2d 1, 7 (D.D.C. 2008) ("Rule 26(e) imposed a duty to disclose [the witness'] identity *as soon as it became known* to defendant.") (emphasis added).

Defendants blatantly violated these provisions. The five witnesses disclosed by defendants on September 24, 2012, are all senior officers of the PA (*see* Exhibit G at 18-19) whom defendants could and should have identified in their initial disclosures, or at least soon thereafter, or at the *very* latest after receiving plaintiffs' August 16, 2012 reminder (Exhibit B) that defendants had not disclosed any witnesses. Instead, defendants intentionally waited until the close of the discovery period to disclose these witnesses. That disclosure is untimely: "Identifying new witnesses for the first time on the last day of the period for deposing such witnesses is not timely for the purposes of Rule 26(e) because it deprives the disclosing party's

12

adversary of the opportunity to use the discovery process to learn what testimony the named witnesses might give." *Commissioner of the Department of Planning and Natural Resources v. Century Aluminum Company*, 2012 WL 2135287 at *3 (D.V.I. June 13, 2012).

Similarly, defendants' Bates 341-1080, which they disclosed only on October 21, 2012, were not disclosed "as soon as [they] became known to defendant[s]." *Elion*, 544 F.Supp.2d at 7. On the contrary, as discussed above, Bates 341-1076 are documents submitted by defendants as trial exhibits in *Saperstein* in 2010 and Bates 1077-1080 were published by defendants in 2001, and it is therefore clear that defendants should have disclosed these documents in their initial disclosures and that they willfully delayed disclosure until a month after the discovery deadline. Accordingly, the October 21, 2012, disclosure of these documents was grossly untimely.

Rule 37(c) provides in relevant part, as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1).

Rule 37(c)(1) "is a self-executing sanction, and the motive or reason for the failure is irrelevant. It therefore is unnecessary to decide whether the [party] acted in bad faith or was simply sloppy in its search for relevant documents and in assisting its litigation counsel in responding to interrogatories." *Norden v. Samper*, 544 F.Supp.2d 43, 49 (D.D.C. 2008) (quoting *Elion v. Jackson*, 2006 WL 2583694, at *1 (D.D.C. 2006)) (ellipsis omitted).

Thus, the exclusion of documents and witnesses not timely disclosed pursuant to Rules 26(a) and 26(e) is "automatic and mandatory," unless the party to be sanctioned can show that its violation was justified or harmless by pointing to "unusual or extenuating circumstances." *Elion*,

2006 WL 2583694 at *1 ("the overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating circumstances") (citations omitted); *Walls v. Paulson*, 250 F.R.D. 48, 53-55 (D.D.C. 2008) (same); *see also Gawanmeh v. Islamic Saudi Academy*, 274 F.R.D. 329, 331-2 (D.D.C. 2011) ("Rule 37(c)(1) states that if a party does not make the requisite disclosure, the party is not allowed to use that witness; it admits of no discretion to do anything besides either imposing the sanction of precluding the witness from testifying or imposing one of the sanctions specified in Rule 37(b)(2)(A)(i)-(vi)"). This principle applies equally whether the improper disclosure relates to witnesses or documents. *See e.g. Elion*, 2006 WL 2583694 at *1-2 (excluding late disclosed document and testimony with respect thereto); *Elion*, 544 F. Supp. 2d at 7 (excluding late disclosed witness).

Moreover, the "burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Elion*, 544 F. Supp. 2d at 6. Since the untimely-disclosed witnesses are long-time officers and employees of the PA, and since the untimely disclosed documents have been in defendants' possession for many years, and were even used by them as trial exhibits in other cases, defendants cannot possibly meet this burden. *See e.g. Gawanmeh*, 274 F.R.D. at 331 ("Plaintiff cannot be seriously suggesting that prior to her deposition she had no reason or opportunity to identify for her lawyer those witnesses who would support her claim of discrimination and with whom she had worked"); *Ferreri*, 2011 WL 2457404 at *2 (N.D.Ohio 2011) (because the witnesses had been "known to the Defendants for months" there was "no valid reason justifying the late disclosure."); *Jackson v. American Family Mut. Ins. Co.*, 2012 WL 845646 at *3 (D.Nev. 2012) ("Plaintiff's disclosure of these three witnesses is not timely … these three witnesses, who were disclosed on the last day of the extended discovery cutoff, are friends of the Plaintiff.")

14

The timing of the belated disclosures here, after the close of fact discovery in this case, is clearly prejudicial and harmful to plaintiffs, who now cannot depose these witnesses. *Elion*, 544 F. Supp. 2d at 6 ("defendant cannot make that showing [*i.e.*, harmlessness] because defendant's failure to disclose Ms. Higgins prevented plaintiff from preparing to meet Ms. Higgins' testimony"); *Ferreri*, 2011 WL 2457404 at *2 (defendants could not show that their late disclosure of witnesses was harmless because plaintiffs were "highly prejudiced" by the lack of an opportunity to depose the witnesses); *Caribbean I Owners v. Great American Ins.*, 2009 WL 857439 at *2 (S.D.Ala. 2009) ("Mr. Franklin was not identified as a possible witness until after discovery had closed. As a result, Plaintiff was denied the opportunity to not only depose him, but also of the opportunity to follow-up on any information he may have provided during the discovery deposition [therefore] Defendant's failure to identify Mr. Franklin during discovery is not harmless and that Plaintiff would be unfairly prejudiced by the late disclosure."); *Commissioner of the Department of Planning*, 2012 WL 2135287 at *3 ("Identifying new witnesses for the first time on the last day of the period for deposing such witnesses … deprives the disclosing party's adversary of the opportunity to use the discovery process to learn what testimony the named witnesses might give.").

Furthermore, a preclusion sanction is highly appropriate here for five additional reasons:

*First*, plaintiffs reminded defendants of their failure to disclose any witnesses on August 16, 2012 (Exhibit B) but instead of making their disclosures then (which would have allowed plaintiffs to depose the witnesses before the September 19, 2012 deadline) defendants intentionally waited more than another month, and until after the close of the discovery period, to do so. And even then, defendants purposely delayed the disclosures for an additional five days. *See* Exhibits E-F ("[W]e do not intend to engage with any messenger you send.").

15

***Second***, defendants did not disclose the witnesses in an open and forthright manner, but instead sought to improperly "slip" these late disclosures into a response to an interrogatory that asks about something else entirely, as shown *supra*. This underhanded tactic highlights the fact that defendants are well aware of the untimeliness of their disclosures and evidences their bad faith, which constitutes further grounds for a preclusion sanction pursuant to Rule 37(c).

***Third***, defendants thwarted plaintiffs' *ex gratia* attempt to minimize the prejudice caused them by the disclosure of these witnesses after the discovery deadline, by refusing to produce the witnesses for deposition on the stunningly galling grounds that the discovery deadline had passed. Thus, defendants spurned the last opportunity to limit the harm they caused the plaintiffs.

***Fourth***, the untimely-disclosed documents, Bates 341-1076, are not "garden-variety" documents of which defendants were aware, that should have disclosed earlier; rather, these are *trial exhibits* submitted by defendants, via the same counsel, in another case two years ago. It is difficult to imagine a more egregious example of an intentionally untimely document disclosure.

***Fifth***, defendants were released from a willful intentional default in this case, and so have already had their "second chance" and do not deserve further consideration. Moreover, upon moving to vacate that default, defendants promised this Court, under oath, to litigate "in a cooperative manner." DE 77 at 3. Defendants' conduct, outlined herein, violates that pledge, and exhibits a cavalier disregard for their obligations under the Federal Rules.

Therefore, the Court should preclude defendants from using the five untimely-disclosed witnesses (Major-General Majed Faraj, Hisham Jarrar, Mahmoud Noful, Colonel Iyad al-Aqra, and Brigadier-General Azzam Zakarneh) or the untimely-disclosed documents (Bates 341-1080) "to supply evidence on a motion, at a hearing, or at a trial" in this matter. Rule 37(c)(1).

**B. Alternatively, Defendants Should Be Ordered to Produce the Untimely-Disclosed Witnesses for Deposition at Their Expense, and Plaintiffs' Expert Disclosure Deadline Should Be Adjourned Until After the Depositions**

Solely in the alternative, i.e. if the Court declines to bar the testimony of the untimely-disclosed witnesses, it should compel defendants to produce them to be deposed by the plaintiffs. And because those witnesses could have been deposed (had they been timely disclosed) between September 2-14, 2012, when plaintiffs' counsel was already in Jerusalem conducting other depositions in this case, defendants should be ordered to pay the travel expenses that will be incurred by plaintiffs' counsel in returning to Jerusalem for the depositions. Additionally, if the Court allows defendants to avoid a preclusion sanction by producing the witnesses for deposition, plaintiffs' expert disclosure deadline should be adjourned until 30 days after the depositions are completed, so that plaintiffs' experts can respond to the witnesses' testimony.

a.   <u>If the Witnesses Are Not Precluded They Should Be Produced for Deposition</u>

As the cases discussed above demonstrate, the untimely disclosure of a witness cannot be "harmless" when it prevents the opposing party from deposing the witness. For that reason, when federal courts decline to impose a preclusion sanction under Rule 37(c), they typically re-open discovery to enable depositions of the witnesses who were not timely disclosed. For example, in *John McClelland & Associates v. Medical Action Industries*, 2007 WL 2789945 (D. Kan. 2007), the defendant improperly disclosed a witnesses after the close of discovery and then – just like the defendants here – refused to produce him for deposition on the grounds that discovery had closed. *Id.* The plaintiff then moved to bar the witness' testimony or, alternatively to compel his deposition. *Id.* The court found the defendant's refusal to produce the untimely-disclosed witness for deposition on the ground that discovery had closed to be "disingenuous," and granted the motion for reasons fully applicable here:

> [T]he court finds that plaintiff's request to depose Mr.
> Satin should be granted. First, trial in this case is more
> than two months away. There is ample time for plaintiff
> to depose Mr. Satin before trial. Second, although
> defendant opposes the request, <u>defendant's refusal to
> produce Mr. Satin after the close of discovery is
> disingenuous. … defendant did not … disclose him as a
> witness until after the close of discovery</u>. Defendant's
> late designation of Mr. Satin hindered plaintiff's …
> ability to depose Mr. Satin before discovery closed. …
> Third, any prejudice to defendant by having to produce
> Mr. Satin is outweighed by the prejudice plaintiff will
> suffer if it is not allowed to depose Mr. Satin before trial.

*John McClelland*, 2007 WL 2789945 at *1. *See also Icangelo v. Georgetown Univ.,* 272 F.R.D.

233, 234 (D.D.C. 2011) (suggesting that possible remedy for late disclosure of supplemental

expert report would have been to reopen discovery for deposition, if delay had not been so

significant, but finding that supplemental report should be stricken under the circumstances);

*Watts v. Healthdyne, Inc.*, 1995 WL 409022 at *2 (D.Kan. 1995) ("[D]efendants could be

prejudiced at trial if Fisher is permitted to testify without having been previously deposed by

defendants. Without question, plaintiff's tardy disclosure of her intent to use Fisher as a witness,

after the close of discovery, effectively foreclosed defendants' opportunity to depose Fisher.

Rather than exclude Fisher as a witness, the court will reopen discovery to permit defendants to

take Fisher's deposition."); *Sherwin v. Infinity Auto Ins.*, 2012 WL 1947910 (D.Nev. 2012) (re-

opening discovery to permit depositions of late disclosed witnesses); *Stone v. Deagle,* 2006 U.S.

Dist. LEXIS 90430 at *24 (D. Col. 2006) (extending discovery deadlines due to late disclosure).

So, too, here: plaintiffs will "be prejudiced at trial if [the untimely-disclosed witnesses

are] permitted to testify without having been previously deposed." *Watts*, at *2. Therefore, if the

Court declines to exclude these witnesses (as plaintiffs request in the first instance) it should

"reopen discovery to permit [plaintiffs] to take [their] deposition." *Id.*

b.   <u>The Costs of the Depositions Should Be Borne by Defendants</u>

Counsel for the parties were in Israel during the first two weeks of September 2012 to conduct a series of depositions in this case. If defendants had timely disclosed the untimely witnesses, plaintiffs' counsel could and would have taken their depositions in early September when he was already in Israel in order to participate in the other depositions.

The five untimely-disclosed witnesses are residents of the West Bank, and may be unable to travel to the United States for deposition. Plaintiffs have no objection in principle to deposing these witnesses in Jerusalem, but there is no reason that plaintiffs should incur the expense of flying their counsel back to Israel for these depositions, when they could and would have taken them when their counsel was already there taking other depositions in September.

Accordingly, if the Court allows defendants to produce these witnesses for deposition in lieu of a preclusion sanction (and if defendants do not agree to produce the witnesses in the United States) it should also order defendants to pay the out-of-pocket travel expenses that will be incurred by plaintiffs' counsel in returning to Jerusalem for these depositions. This Court is expressly empowered to issue such an order by Rule 37(c)(1)(A), which provides that the Court "may order payment of the reasonable expenses … caused by the failure" to disclose timely. *See also e.g. Guantanamera Cigar Co.*, 263 F.R.D. at 7 (awarding defendants' deposition costs for having to take depositions of witnesses not properly identified pursuant to Rule 26(a)(1)); *Wilkening v. Veolia Es Evergreen Landfill*, 2011 U.S. Dist. LEXIS 113491 (M.D. Ga. 2011) (where court reopened discovery to allow deposition of late disclosed witness, the party responsible for delay was ordered to pay deposition costs).

c.  Plaintiffs' Expert Disclosure Deadline Should Be Adjourned

Under the scheduling order in force in this case, plaintiffs' expert disclosures were due on October 19, 2012. *See* DE 136 at ¶¶ 5-6. Plaintiffs have moved to adjourn that deadline due to numerous other discovery delays by defendants. If the Court directs depositions of the untimely-disclosed witnesses rather than the preclusion of their testimony, it should also adjourn plaintiffs' expert disclosure deadline until 30 days after those depositions are completed.

An opposing party's failure to make a production or disclosure constitutes grounds to enlarge the deadline for expert disclosures because, obviously, it prevents the other party from knowing what expert testimony is even *necessary*. "Delays as to fact discovery likely caused a cascading effect on the completion of expert discovery (which often cannot go forward in a productive way when fact discovery remains outstanding)." *Kinetic Concepts, Inc. v. Convatec Inc.*, 2010 WL 1418312 at *4 (M.D.N.C. 2010) *See also Cedar Rapids Lodge & Suites v. JFS Development*, 2010 WL 5070484 at *3-4 (N.D.Iowa 2010) (Agreeing that "until [fact] discovery is obtained from all Defendants, it is not possible for an expert to opine regarding whether [defendant] breached its obligations" and adjourning plaintiffs' expert disclosure deadline because "[a]s a consequence of Defendants' failure to provide discovery, Plaintiffs were unable to disclose their expert witnesses, complete with the experts' opinions, by the … deadline.").

Indeed, the mutually agreed case schedule in this action, which was adopted by the Court, provides for expert disclosures 30 days after the "completion of fact discovery."  DE 136 at ¶ 6. The purpose of that 30-day period after *completion* of fact discovery was to enable plaintiffs to gather all fact evidence and present it to their experts so the latter can include it in their analyses.

That purpose will be thwarted entirely if plaintiffs are not afforded an opportunity to obtain expert testimony in response to the testimony to be provided by the untimely-disclosed witnesses, as will be reflected in their deposition testimony.

Therefore, if the Court orders the depositions of these witnesses, plaintiffs respectfully request that the Court adjourn their expert disclosure deadline until 30 days after the completion of the depositions.

Plaintiffs have acted in an abundance of good faith in seeking the depositions of these witnesses, even after defendants disclosed them untimely, and the plaintiffs should not be penalized for doing so. Therefore, if the Court declines to order the depositions, it should adjourn plaintiffs' expert disclosure deadline until 30 days after the disposition of this motion.

### C.  Defendants Should Bear the Costs of This Motion

Rule 37(c)(1)(A) provides that the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" to make a timely disclosure, and Rule 37(a)(5)(A) provides that when a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Thus, whether the Court imposes a preclusion sanction or orders the depositions of the witnesses, it can and should also direct defendants to pay plaintiffs' costs in bringing the instant motion, including attorney's fees.

Such an award is more than warranted here, given defendants' intentionally dilatory and obstructionist conduct, detailed in full above.

Therefore, plaintiffs respectfully request that the Court order defendants to pay the plaintiffs' reasonable expenses incurred in making this motion, including attorney's fees, and direct plaintiffs to submit an itemization of those expenses and fees. *See e.g. Guantanamera Cigar Co.*, 263 F.R.D. at 7 (awarding defendants' reasonable attorney's fees in bringing motion regarding witnesses not properly identified pursuant to Rule 26(a)(1)); *Stone v. Deagle*, 2006 U.S. Dist. LEXIS 90430 (D. Col. 2006) (requiring plaintiffs to pay fees of defendant in bringing motion to strike where plaintiffs were late in making expert disclosures in violation of Rule 26(a)(2)(B) and court's scheduling order).

**WHEREFORE**, the instant motion should be granted.

Plaintiffs, by their Attorneys,

/s/ Robert J. Tolchin
Robert J. Tolchin (NY0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
rjt.berkman@gmail.com

David I. Schoen (DS0860)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com

Counsel for Plaintiffs