**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHABTAI SCOTT SHATSKY, *et al*.,

        Plaintiffs,

                                Civil Action No. 02-2280-RJL

v.

THE SYRIAN ARAB REPUBLIC, *et al*.,

        Defendants.

**PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO RULE
37 FOR DEFENDANTS' FAILURE TO DESIGNATE OR PRODUCE 30(b)(6)
<u>WITNESSES ON ALL NOTICED TOPICS AND FOR RELATED RELIEF</u>**

Plaintiffs duly noticed the Palestinian Authority's ("**PA**") 30(b)(6) deposition for dates in mid-August 2012 in Israel. Unhappy with the noticed dates for the depositions, the PA sought and obtained a protective order, effectively postponing the depositions until early September, less than two weeks before the court set deadline for the close of fact discovery (September 19, 2012). At a meet and confer to discuss Plaintiffs' prospective motion to compel the depositions, which the parties conducted prior to Plaintiffs' counsel traveling to Israel to take the depositions, Defendants' counsel assured Plaintiffs' counsel that Defendants would designate and produce a witness on each of the 30(b)(6) topics. Defendants' counsel ultimately designated five witnesses for some of the topics included in the 30(b)(6) notice to the PA, but did not identify these witnesses until Plaintiffs' counsel was already in Israel. In addition, after the depositions were already underway, Defendants made changes to the topic designations and in some cases, modified the topics to their own formulation. Moreover, notwithstanding their express representation at the pre-deposition conference, Defendants' counsel <u>failed to designate any witness at all with respect to</u>, *inter alia*, <u>topics 13, 14, 15, 17 and 18</u>, all of which are crucial to

Plaintiffs' ability to develop their case.[1]  The specific topics at issue will be described in detail in the attached memorandum.

Therefore and for the reasons set forth in the attached memorandum, the plaintiffs hereby respectfully move for an **ORDER**:

(1)     Pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure, **DIRECTING** defendant, the Palestinian Authority ("**PA**"), to produce a witness for examination by deposition testimony with respect to numbered topics 13, 14 and 15 in Plaintiffs' Second Amended Notice to the PA of Taking Depositions Pursuant to Fed. R. Civ. P. 30(b)(6) ( "**Plaintiffs' 30(b)(6) Deposition Notice**");

(2)     With respect to Defendants' failure to produce a 30(b)(6) witness to testify on numbered topic 17 of Plaintiffs' 30(b)(6) Deposition Notice to the PA (i) **SANCTIONING** the PA pursuant to Rule 37(d) by **FINDING** either that relevant documents which the PA claims have been lost, destroyed or removed are in fact being intentionally withheld by the PA, or **ALTERNATIVELY**, that the PA intentionally removed such documents from its possession, custody or control, following the commencement of this litigation; (ii) **ALTERNATIVELY**, pursuant to Rule 37(a)(3) **DIRECTING** the PA to produce a witness for examination by deposition testimony with respect with respect to that topic;

(3)     With respect to Defendants' failure to produce a 30(b)(6) witness to testify on numbered topic 18 of Plaintiffs' 30(b)(6) Deposition Notice to the PA, (i) **SANCTIONING** the PA pursuant to Rule 37(d) by **RELIEVING** Plaintiffs of any obligation to establish the authenticity, admissibility, or the truth of any matters set forth in the documents produced and/or disclosed by the PA in this matter and **PRECLUDING** the PA from challenging the authenticity,

---

[1] They also failed to produce witnesses on topic 9 and 16.  Topic 9 is the subject of a separate motion.

admissibility, or the truth of any matters set forth in such documents; (ii) **ALTERNATIVELY**, pursuant to Rule 37(a)(3) **DIRECTING** the PA to produce a witness for examination by deposition testimony with respect to that topic;

(4)      Pursuant to Rule 37(d), **DIRECTING** the Defendants to pay all costs and expenses associated with convening 30(b)(6) depositions pursuant to this Order, including Plaintiffs' counsel's travel costs;

(5)      Pursuant to Rule 37(d) **DIRECTING** the Defendants to pay a monetary sanction to Plaintiffs in the amount of $18,000 on account of Defendants' failure to designate and produce witnesses on the foregoing topics or to timely move for a protective order with respect thereto;

(6)      **DIRECTING** that Defendants pay the reasonable expenses incurred by plaintiffs in making this motion, including attorney's fees;

(7)      **EXTENDING** the fact discovery deadline pending the Court's ruling on this and other related motions;

(8)      **ADJOURNING** the deadline for expert disclosures to thirty (30) days after completion of the depositions sought in the instant Motion or thirty (30) days after the disposition of this Motion; and

(9)      **GRANTING** any other relief the Court finds just, necessary or proper. Counsel for Plaintiffs hereby certify, pursuant to LCvR 7(m), that they have conferred with opposing counsel concerning the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

Plaintiffs, by their Attorneys,

/s/ Robert Tolchin

Robert J. Tolchin (NY0088)
111 Livingston Street, Suite 1928

3

Brooklyn, New York 11201
(718) 855-3627
rjt.berkman@gmail.com

David I. Schoen (DC Bar # 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHABTAI SCOTT SHATSKY, *et al*.,

        Plaintiffs,

                                Civil Action No. 02-2280-RJL

v.

THE SYRIAN ARAB REPUBLIC, *et al*.,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL AND FOR SANCTIONS PURSUANT TO RULE 37
FOR DEFENDANTS' FAILURE TO DESIGNATE OR PRODUCE 30(b)(6)
<u>WITNESSES ON ALL NOTICED TOPICS AND FOR RELATED RELIEF</u>**

<u>**INTRODUCTION**</u>

This is a civil action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, brought by U.S. citizens, and the guardians, family members and the estates of U.S. citizens – including two teenaged American girls – who were murdered or injured by a terrorist bombing carried out on Saturday night, February 16, 2002, in a packed pizzeria in the Israeli town of Karnei Shomron. The bombing was carried out by a cell of the PFLP terrorist organization headquartered in the nearby Palestinian town of Qalqilya, located within the jurisdiction of defendant PA. The PFLP has been continuously designated by the United States government as a Foreign Terrorist Organization ("FTO") since 1997.[1] It is well established that a defendant's provision of funding or other "material support or resources"[2] to an FTO, such as the PFLP, renders the defendant civilly liable under the ATA to American citizens killed or injured in terrorist attacks

---

[1] *See* 62 Fed.Reg. 52650 (Oct. 8, 1997).

[2] The phrase "material support or resources" is a term of art defined in 18 U.S.C. § 2339A which includes virtually every type of asset, goods or service imaginable, including financial support.

subsequently carried out by that FTO.[3]  Thus, a major factual issue in this case is the nature and extent of any "material support" which Defendants provided to the PFLP.

Throughout the discovery process in this case, Plaintiffs have attempted to obtain relevant documents and information through each available discovery tool, but have been thwarted at every turn by Defendants' improper gamesmanship and dilatory tactics.  Not only have Defendants failed to properly respond to Plaintiffs' Requests for Production of Documents and Interrogatories (each the subject of separate motions), but Defendants have treated their obligations and their express commitments to produce a 30(b)(6) witness on each topic noticed by Plaintiffs for the PA and PLO with utter disdain.[4]

Defendants successfully delayed the 30(b)(6) depositions until less than two weeks prior to the preset deadline for the close of fact discovery in this case.  At a meet and confer before Plaintiffs' counsel travelled to Israel to take the depositions and approximately two weeks before the depositions were set to commence, Defendants' counsel assured Plaintiffs' counsel  that they would designate and produce a witness to testify on each and every topic of Plaintiffs' 30(b)(6) deposition notices.   However, Defendants did not identify any of the witnesses who were to testify until the eve of the depositions and continued to change the schedule and the topic

---

[3] *See, e.g. Owens v. Republic of Sudan*, 412 F. Supp.2d 99, 108 (D.D.C. 2006) (allowing or encouraging terrorist organization to operate by providing safe haven constitutes material support under the ATA); *Linde v. Arab Bank*, 384 F. Supp.2d 571 (E.D.N.Y. 2005) (provision of funds to an FTO renders the provider civilly liable under the ATA for terror attacks carried out by that FTO); *Weiss v. National Westminster Bank*, 453 F. Supp.2d 609 (E.D.N.Y. 2006) (same); *Strauss v. Credit Lyonnais*, 2006 WL 2862704 (E.D.N.Y. 2006) (same); *Goldberg v. UBS*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009) (same); *In re Chiquita Brands Intern., Inc. Alien Tort Statute and Shareholder Derivative Litigation*, 690 F.Supp.2d 1296 (S.D. Fla. 2010) (same); *Abecassis v. Wyatt*, 785 F.Supp.2d 614 (S.D. Tex. 2011).

[4] In this regard, Plaintiffs note that Defendants unilaterally carved out the entire month of Ramadan from the discovery period and refused to participate in any depositions during that time.

designations even after the depositions commenced.  Moreover, notwithstanding their express commitment and representation, Defendants did not designate a witness for several of Plaintiffs' duly noticed 30(b)(6) deposition topics.  Now Defense counsel is taking the position that they will not agree to extend discovery or to produce witnesses for any additional depositions, notwithstanding this clear misconduct.

This cavalier approach to their discovery obligations is part of a pattern of intentional conduct designed to cheat Plaintiffs of information to support their claims and is a blatant abuse of the discovery process.  As will be discussed in greater detail herein, this conduct is causing Plaintiffs substantial harm by preventing them from being able to follow up on discovery and to fully develop their case, as well as causing Plaintiffs to incur significant additional expenses. Plaintiffs anticipated that Defendants dilatory tactics would ultimately lead to their inability to complete discovery by the deadline and warned Defendants' counsel of this on many occasions throughout the discovery process in attempts to encourage Defendants to cooperate. Unfortunately, Plaintiffs were not successful in attaining Defendants' cooperation and as a result of their flagrant abuses, there is now a need to extend the deadlines for fact and expert discovery so that Plaintiffs will have the opportunity to fully and adequately prepare their case.

### RELEVANT BACKGROUND

As set forth in greater detail herein, the PA wholly failed to designate a witness for topics 13, 14, 15, 17 and 18.  In addition, at no time did Defendants seek a protective order with respect to any of those topics.

**A.** **Facts Concerning the 30(b)(6) Notice and Depositions**

1. The 30(b)(6) Topics

On August 2, 2012, Plaintiffs served their 30(b)(6) Deposition Notice on the PA (attached hereto as **Exhibit A**). Plaintiffs scheduled the depositions to commence on August 16, 2012 and designated a total of 19 specific topics for 30(b)(6) deposition testimony by the PA, including the following:

> **PA Notice Topic 13**: The full details and substance of all communications between the PA (including any employee, agent, or attorney of the PA) and the PFLP (including any employee, agent, or attorney of the PFLP) concerning the instant case.

> **PA Notice Topic 14**: The full details and substance of all communications between the PA (including any employee, agent, or attorney of the PA) and the Ahmad Saadat (including any attorney for Ahmad Saadat) concerning the instant action and/or concerning Ahmad Saadat's deposition in this case.

> **PA Notice Topic 15**: The full details and substance of all communications between the PA (including any employee, agent, or attorney of the PA) and Abdel Rahim Malouh (including any attorney for Malouh) concerning the instant action and/or concerning Malouh's deposition in this case.

Topics 13-15 seek highly relevant information to support Plaintiffs' claim that the PA provided material support to the PFLP, the terrorist group that carried out the Karnei Shomron bombing. Ahmad Saadat and Abdel Rahim Malouh are the PFLP's top leaders, and as discussed in Section B below, were each also deposed separately. It should be noted, however, that at Defendants insistence, Malouh's deposition was limited to his capacity as a member of the PLO's executive committee.

> **PA Notice Topic 17**: If the PA contends that any documents or information responsive to any discovery request served by plaintiffs in this action have been lost, destroyed, or removed from the PA's possession, custody, or control since the date of the filing of this action, the full identifying details of any and all such documents or information, and the full details of when and how such documents or information were lost, destroyed, or removed from the possession, custody, or control of the PA.

Topic 17 relates to Defendants' claim raised as early as October 28, 2011 in its Rule 26 Initial Disclosures ("**Defendants' Initial Disclosures**," attached hereto as **Exhibit B**) that relevant documents had been destroyed. In their Initial Disclosures, Defendants listed as the

subject areas for those individuals likely to have discoverable information, information concerning the "removal and/or destruction" of records by the IDF.[5]  This claim concerning the loss of documents has been raised repeatedly by Defendants as an excuse for their paltry document productions.  Indeed, some of the 30(b)(6) witnesses relied on this claim to excuse their utter lack of knowledge about their designated topics (to be addressed in a separate motion).[6]

> **PA Notice Topic 18**: In respect of all documents produced or disclosed by the PA in this action prior to the deposition: (i) when and how the document produced or disclosed came into the possession, custody or control of the PA, the locations in which the document was kept and/or located since it came into the possession, custody or control of the PA, and the identities, titles and positions of all custodians of the document since it came into the possession, custody, or control of the PA; (ii) whether the document produced or disclosed is an authentic copy of an original document; (iii) when and how such original document came into the possession, custody or control of the PA; (iv) the date and place that such original document was created and/or generated; (v) the circumstances in which and reasons that such original document was created and/or generated; (vi) the identities, titles and positions of all persons who took part in creating and/or generating such original document, and the role or part of each such person in creating and/or generating such original document; (vii) the locations in which such original document was kept and/or located since its creation and/or generation; (viii) the identities, titles and positions of all custodians of such original document since its creation and/or generation.

Topic 18 is a critically important topic designed to require the production of custodians to provide necessary foundational testimony for many of Plaintiffs' evidentiary submissions in connection with a motion for summary judgment and trial, if necessary.  Plaintiffs have no other way to obtain this foundational testimony.   This topic also specifically addresses the position

---

[5] Plaintiffs also note that Defendants did not identify any individuals likely to have discoverable information by name, but instead listed generally "representative" of four different PA government offices and the designated subject area for each of those "representatives" was identical.

[6] However, this claim that all documents from the relevant time period were destroyed has been proven false in multiple contexts, most recently at the 30(b)(6) deposition of Ibrahim Dahbour who admitted to the existence of PA General Intelligence files on all of the individuals relevant to this case. *Dahbour Deposition Testimony 9/12/12 at 56:21-58:1,* attached hereto as **Exhibit C**.

taken by Defendants that they will not concede the admissibility of any of the documents produced by them. In Defendants' responses to Plaintiffs' Requests for Production of Documents (dated April 12, 2012 and September 19, 2012, relevant portions attached hereto as **Exhibit D and E**), Defendants included the following boilerplate statement: "In making a document production, Defendants are not conceding that particular documents are those of the PA or PLO." *See Preliminary Statement of each response*, ¶ 4. Likewise, in their responses to Plaintiffs' Interrogatories (dated May 31, 2012 and September 19, 2012, relevant portions attached hereto as **Exhibit F and G**), Defendants refused to concede that any information or documents referenced therein are admissible for trial. *See Preliminary Statement of each response*, ¶ 4.

### 2.   Scheduling the 30(b)(6) Depositions

In email correspondence between the parties dated July 30 through August 3, 2012 (attached hereto as **Exhibit H**), Defendants' counsel indicated that it would be serving "objections" to Plaintiffs' 30(b)(6) Deposition Notice. Plaintiffs' counsel immediately responded by referring Defendants' counsel to the language in Rule 37(d) providing that the only way to preserve objections to deposition notices is to file a motion for a protective order. *See e-mails dated August 1, 2012 at 11:19 AM and August 3, 2012 at 7:39 AM*, attached as part of **Exhibit H**.

On August 7, 2012, Defendants filed a Motion for Protective Order, but the relief sought in that motion related solely to the proposed dates for the depositions, and not to the substance of Plaintiffs' 30(b)(6) Deposition Notices or to any one topic in particular. The Court granted that motion by a minute order entered on August 28, 2012. As a result, the depositions were delayed

by one month and rescheduled at Defendants' counsel's demand[7] to commence on September 6, 2012, <u>less than two weeks before the September 19 deadline</u> set by the Court for the close of fact discovery in this case.

Completely disregarding the proper procedure for handling deposition objections and Plaintiffs' email admonishments regarding the same, on August 10, 2012, Defendants served Plaintiffs with general "objections" to Plaintiffs' 30(b)(6) Deposition Notice, attached hereto as **Exhibit I**.  These so-called "objections" contained generic, form objections of the type that are often included with objections to requests for production of documents or interrogatories and raised issues concerning, *inter alia*, the time frame covered by the Deposition Notice, phrases contained in the Deposition Notice such as "all facts" and "full details," which Defendant contended were overly broad, the relevance of the topics and other general objections.

Plaintiffs were concerned that Defendants might not produce a 30(b)(6) witness on all topics.  Accordingly, they advised Defendants of their intent to file a motion to compel.  On or about August 21, 2012, before counsel traveled to Israel to take the 30(b)(6) depositions, counsel for the parties held a telephonic meet and confer with respect to Plaintiffs' prospective motion to compel the depositions.  At that conference, counsel for the PA claimed that its "Objections" were merely with respect to the scope of the topics and not to the substance of any particular topic.  In addition, in order to stave off Plaintiffs' prospective motion, Defendants' counsel assured Plaintiffs' counsel that Defendants would present a witness on each of the designated topics.  However, Defendants did not identify any of the witnesses or the final dates for the depositions until Plaintiffs' counsel was already in Israel.  In addition, even after the depositions

---

[7] Defense counsel insisted unyieldingly that the Court's minute order granting their motion for protective order on scheduling meant that the depositions had to be scheduled on the schedule defense counsel unilaterally imposed.

commenced, Defendants made changes to the topic designations and in some cases, modified the topics to their own formulation.

Defendants ultimately designated a total of five witnesses to testify on specific topics included in Plaintiffs' 30(b)(6) Deposition Notice to the PA – Jawad Amawi, Nadime Barahme, Ibrahim Dahbour, Raed Taha Amayra, and Abdel Majid Swailem.  Contrary to their express representation at the August 21 pre-deposition conference, Defendants failed to designate a 30(b)(6) witness with respect to, *inter alia*, topics 13, 14, 15, 17 and 18 of the 30(b)(6) notice to the PA.

By e-mail dated October 3, 2012, Plaintiffs' counsel attempted to confer with the PA's counsel specifically with respect to its utter failure to produce a witness on several topics. However, Defendants counsel responded that they would oppose any motion related to the foregoing.

### B.    Additional Facts Concerning Deposition Topics 13-15

Plaintiffs attempted to obtain information concerning topics 13-15 from other sources. Separate and apart from the 30(b)(6) depositions, Plaintiffs had scheduled the depositions of (i) Abdel Rahim Malouh ("**Malouh**"), the Deputy Secretary General (*i.e.*, the second most senior leader) of the PFLP, and a member of the executive committee of Defendant PLO and (ii) Ahmed Saadat ("**Saadat**"), the Secretary General of the PFLP (*i.e.*, the top leader), who is currently serving time in an Israeli prison for being a leader of the PFLP.  Those depositions took place on September 5 and 9, 2012, respectively.  However, at Defendants' insistence and pursuant to a protective order (DE 162), Malouh's deposition was limited to testimony solely in his capacity as a member of the PLO executive committee.  Neither of the witnesses cooperated at the their depositions.

It is clear from e-mail correspondence between Plaintiffs' counsel and Defendants' counsel that communications exist which fall squarely within PA 30(b)(6) topics 13, 14 and 15. In particular, e-mail correspondence between and among counsel shows that Defendants' counsel communicated with Adv. Mahmoud Hassan, the personal attorney for both Saadat and Malouh, in connection with the scheduling of, and preparation for, those two depositions. *See e-mail communications dated July 23 and 24, 2012, August 5 and 31, 2012* (attached hereto as **Exhibits J, K and L**). Mr. Hassan as much as admitted that he was coordinating strategy on behalf of his client, Saadat, with Defendants' attorneys in a message he left on the voice mail box of Mordechai Haller, Israeli co-counsel for Plaintiffs, on July 30, 2012 at 12:59 pm. In that message, Mr. Hassan informed Mr. Haller that the filing of his *ex parte* motion (which had been granted) to adjourn the Saadat deposition had been coordinated with the Defendants' Israeli counsel, Osama Saadi.

The fact that Malouh and Saadat, together with Mr. Hassan, coordinated preparation for their depositions with Defendants' Israeli and United States counsel is further supported by the record from Malouh's deposition. Indeed, that deposition was taken by video conference, while Plaintiffs' counsel was in Petach Tikvah and Malouh and his attorneys, including Michael Rochon, the PA's United States Counsel, Osama Saadi, the PA's Israeli counsel and Mahmoud Hassan, Malouh's personal attorney, were in Ramallah. Malouh also testified that he had conferred with Messrs. Rochon and Saadi the previous day in preparation for the deposition. *See Malouh Deposition Testimony 9/5/12 ("Malouh")* (attached hereto as **Exhibit M**) *at 21:5-15.*

At his deposition on September 5, 2012, Malouh was uncooperative, argumentative and evasive, in many instances simply refusing to answer questions. [8]   Like Malouh, Saadat was uncooperative.   At his deposition on September 9, 2012, Saadat categorically refused to answer

---

[8] Below are some examples of Malouh's uncooperative approach to the deposition, asked and answered in his capacity as a PLO executive committee member:

- Malouh refused to answer any questions about whether he receives a salary from the PLO (Q. Are you paid a salary by the PLO? A. I did not come here in order to respond to such kind of questions. Q. Do you refuse to tell me whether you're paid a salary by the PLO? A. I refuse to answer any such question and this is already a response.).  *Id.* at p. 43:11-18*; see also id* at 39:20-22; 40:8-10; 60:10-21; 79:2-80:23, attached hereto as **Exhibit N**.

- Malouh refused to answer any questions about his bank account (…Q. Where do you have your bank account, Mr. Malouh? A. When you decide to deposit funds for my favor I will go open a bank account and inform you about its number…). *Id.*  at 47:11-15, attached hereto as **Exhibit O**.

- Malouh, as an officer of the PLO, claimed that he lacks knowledge as to whether the PLO makes payments to the PFLP.  *Id.* at p. 61:3-9.  He also refused to identify who has knowledge concerning the PFLP's bank accounts or its budget.  *Id.* at 162:1-163:9;  171:7-20, attached hereto as **Exhibit P**.

- Malouh was evasive and argumentative in response to questions concerning requests by the PFLP to the PLO for funding.  (Q. … I'm asking you in all of the time that you have served on the PLO executive committee, are you aware of any request being made by or on behalf of the PFLP for the PLO or the PNA to pay to or for the benefit of the PFLP? … A. I already answered this question. Q. I'm asking it again then.  Are you aware of any request? A. I say I already responded to this question more than once…).  *Id.* at 65:2-66:25, attached hereto as **Exhibit Q**.  Of course, in truth, he never responded to it.

- Malouh applied a similar approach to questions concerning whether he has ever approved payments to or requested anything on behalf of the PFLP.  (Q. Have you, as a member of the PLO Executive Committee, ever requested the payment of any money to the PFLP or any other faction? A. I already responded to this question. Q. Respond to it again please. A. You have it recorded, and you can go and read it. …  Q. ... is it your testimony that, as a member of the PLO Executive Committee, you have never requested anything from the PLO or PNA for the benefit of the PFLP? A. I testified that the questions are targeting something other than the questions. Q. Can you answer my question, please? A. Related to that, I tell you goodbye.  The redundancy of the question does not solve the problem. …) *Id. at 75:25-79:1*, attached hereto as **Exhibit R**.

any questions and instead took the opportunity to make self serving statements about the political situation.  *Saadat Deposition Testimony 9/9/12 ("Saadat") at 6:23-7:2; 8:22-9:9; 9:14-20,* attached hereto as **Exhibit S**.  Since Saadat is currently serving time in an Israeli prison, his deposition took place in the Jerusalem Magistrate Court.  At a certain point, Plaintiffs' counsel requested an order from the judge on call at the court house directing Saadat to respond to the questions.  Even after the judge issued the order (copy and translation attached hereto as **Exhibit T**), Saadat refused to cooperate.

In this regard, Plaintiffs note that in their most recent document production on October 21, 2012 (more than one month after the fact discovery deadline), Defendants provided Plaintiffs with documents showing that the PA is, and for years has been paying Saadat benefits as a convicted terrorist.  The existence of these documents further supports Plaintiffs' conclusion that Saadat's refusal to testify may have been coordinated with Defendants' counsel, as Plaintiffs surely would have questioned Saadat about any payments he receives from the PA and the reasons for such payments.

For the reasons set forth herein, Plaintiffs bring the instant motion.

<u>**ARGUMENT**</u>

Corporate bodies may be subpoenaed pursuant to Rule 30(b)(6), which sets forth the duties of the party deposed, in relevant part, as follows:

> The named organization ***must then designate one or more*** officers, directors or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify…  The persons designated ***must testify about information known or reasonably available to the organization***.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  Thus, according to this Rule and as discussed below, the subpoenaed party must designate a witness for each noticed topic.

### A.   Defendants' Objections to the Depositions Are Waived and So Precluded

As an initial matter – one that should greatly simplify the Court's disposition of the PA's failure to produce a witness on particular topics – Plaintiffs note that the PA is not entitled to oppose any of their Rule 30(b)(6) deposition topics and that those topics should thus be summarily compelled.  If the PA wanted to limit the scope of the Rule 30(b)(6) notice it had to obtain a protective order <u>in advance</u>. It was not entitled to unilaterally pick and choose the topics for which it would provide witnesses. Nor is the PA allowed to now seek to excuse its non-compliance <u>after the fact</u>.

That is because instead of seeking protective orders in response to Plaintiffs' 30(b)(6) Deposition Notice, Defendants served "objections."[9] But under the Federal Rules, a party opposing a deposition cannot file "objections" and must seek a protective order. *See e.g. V.S. v. Muhammad*, 2009 WL 3273909 at *1 (E.D.N.Y. Oct. 9, 2009) ("Unlike the rules relating to responses to interrogatories and document requests, the rule concerning depositions does not provide for objections to a deposition notice ... Instead, the federal rules provide for two means by which a party may seek relief with respect to a properly noticed deposition. First, it may seek a protective order … Second, a party dissatisfied with a deposition notice may make "[a]n objection *at the time of the examination* ... to any ... aspect of the deposition ... *but the deposition still proceeds*; the testimony is taken subject to any objection." Fed.R.Civ.P. 30(c)(2) (emphasis added)"); *New England Carpenters Health Benefits Fund v. First DataBank*, 242 F.R.D. 164, 165-166 (D. Mass. 2007) ("[T]here is no provision in the rules which provides for a party whose deposition is noticed to serve objections so as to be able to avoid providing the requested discovery until an order compelling discovery is issued ... a party who for one reason or another

---

[9] It is emphasized that even the purported "objections" did  not raise specific objections with respect to any of the topics discussed herein.

does not wish to comply with a notice of deposition must seek a protective order."); *Nelson v. Capital One Bank*, 206 F.R.D. 499, 500, n. 1 (N.D.Cal. 2001) ("There is no analogue in the context of deposition notices to the filing of objections to interrogatories or requests for production of documents."); *U.S. v. Health Alliance of Greater Cincinnati*, 2009 WL 5227661 (S.D.Ohio Nov. 20, 2009) (same); *see also Covad Communs. Co. v. Revonet, Inc.*, 267 F.R.D. 14, 28-29 (D.D.C. 2010) (failure to appear at deposition is not excused unless the party failing to act has a pending motion for a protective order).

Moreover, the protective order must be sought <u>prior</u> to the deposition date, not after the fact. *See e.g. V.S. v. Muhammad*, 2009 WL 3273909 at *1 (where party subject to deposition notice failed to file motion for protective order, it could not defend against motion to compel using arguments that should have been raised in context of protective order motion) *New England Carpenters*, 242 F.R.D. at 165 (same); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 191 (E.D. Pa. 2008) (motion for protective order should be filed prior to the deposition, not after); *Totton v. Keller*, 2005 WL 2035226 at *5 (M.D.Pa. Aug. 10, 2005) (same); *Carson v. De Vries*, 1985 WL 4862 at *1 (N.D.Ill. Dec. 6, 1985) (same).

Indeed, under the Federal Rules, even the filing of a motion for a protective order does not excuse compliance with a deposition notice– only a court order granting the motion does so. *See e.g. Alexander v. FBI,* 186 F.R.D. 78, 86 (D.D.C. 1998); ("the failure to appear at a deposition constitutes a violation of Rule 37(d) regardless of whether a motion for protective order has been filed"); *Vipre Systems v. NITV*, 2007 WL 3202439 at *1 (M.D.Fla. Oct. 26, 2007) ("The pendency of a motion for a protective order does not excuse the moving party from...answering questions posed during a deposition.") (citing *Hepperle v. Johnson*, 590 F.2d 609 (5th Cir. 1979)).  While Defendants did file a Motion for Protective Order with respect to

Plaintiffs' 30(b)(6) Deposition Notice prior to the depositions, that motion was limited to scheduling and did not object to, or seek to limit in any way, any of the topics discussed herein. Therefore, any objections to those topics now would be untimely and have been waived.

The preclusion of any further objections by Defendants to Plaintiffs' 30(b)(6) Deposition Notice is particularly appropriate here because Defendants' failure to comply with the rules is not due to oversight but demonstrably intentional and tactical.  In *Saperstein v. PA*, Civ. No. 04-20225 (S.D. Fla.) the instant Defendants – represented by the same counsel – responded to deposition notices served by the *Saperstein* plaintiff by improperly serving "objections" – just as they have done in this case. The *Saperstein* court found (in reliance on *New England Carpenters*, cited herein *supra*) that by filing "objections" and failing to seek a protective order, defendants had waived any challenge to the deposition. *See* Tr. 4/29/10 in *Saperstein* (**Exhibit U**) at 67:24-68:2 ("THE COURT: … You should have filed a motion for a protective order before the deposition is what I am finding. You did not. Therefore, you waived any objection to this."); *see also id*. at 65:2-68:3.  Thus, Defendants and their counsel are well aware that "objections" to a deposition notice are improper and of no effect, and that their remedy was to seek a protective order.  Moreover, in e-mail correspondence related to Plaintiffs' 30(b)(6) Deposition Notice in this case referenced above, Plaintiffs' counsel reminded Defendants' counsel that objections to deposition notices are not recognized under Rule 37 and the only way to preserve such objections would be to a file a motion for protective order.  (*See e-mails dated August 1 and 3, 2012*, attached hereto as part of **Exhibit H**)

Accordingly, Defendants service of nugatory "objections" to Plaintiffs' deposition notices and their failure to seek much less obtain a protective order with respect to the topics that are the subject of this Motion  is clearly willful.  Apparently, Defendants have refrained from

moving for protective orders, in order to avoid creating the impression that they are being resistant to, or uncooperative with, discovery, while this Motion shows their conduct is just the opposite.  In any event, Defendants' motives are irrelevant because they knowingly failed to properly seek relief from Plaintiffs' 30(b)(6) Deposition Notice.[10]

### B.  The Court Should Compel Defendants to Designate a 30(b)(6) Witness for Topics 13, 14 and 15

Clearly, communications between the PA and the PFLP concerning this case (topic 13) are extremely important to Plaintiffs' ability to prove their ATA claims, particularly the nature and extent of material support provided by the PA to the PFLP.  Likewise, communications between the PA and Saadat, the PFLP's Secretary General (*i.e.*, its top leader) (topic 14) and between the PA and Malouh, the PFLP's Deputy Secretary General (*i.e.*, its second in charge) (topic 15) concerning this case are relevant.  Moreover, such communications undoubtedly exist as evidenced by the July and August 2012 e-mail communications between counsel, attached hereto as **Exhibits J, K and L**, and the July 30, 2012 voicemail message from Mr. Hassan informing Mr. Haller that he had coordinated his *ex parte* motion to adjourn Saadat's deposition with the PA's Israeli attorneys. Tellingly, the PA has not denied the existence of such communications, but has simply remained silent with respect thereto.  Such silence further implies that responsive communications do exist.[11]

---

[10] Preclusion is also proper because upon moving to vacate default in this case, Defendants solemnly represented under oath that if default were vacated they would "participate fully in this … litigation in a cooperative manner, including complete participation in the discovery process." [DE 136].  Defendants should therefore be held to the same rules as every other litigant.

[11] To the extent the PA had a valid basis to assert that any of these communications were protected by the attorney client privilege or should otherwise have been withheld, the PA should have made that claim in a motion for protective order prior to the 30(b)(6) depositions. *See legal discussion in Section A supra.*

Aside from the PA's utter failure to produce a 30(b)(6) witness with respect to topics 13, 14 and 15, the two witnesses whose communications with the PA were the subject of those topics were wholly uncooperative in their own depositions.  At one point Malouh walked out of his deposition and stated that he was refusing to answer any more questions and at another point he announced that he would not give a "yes" or "no" answer (Q.   I'm looking here for a "yes" or no."    "Yes" or "no," are you or have you ever been paid a salary by the PLO?  "Yes" or "no"? A.   No one specifies to me "yes" or "no."…"  *Malouh at 79:18-80:8*, attached hereto as part of **Exhibit N**).  As noted above, Saadat absolutely refused to testify, even after being ordered by an Israeli judge to do so.  In addition, while Malouh did testify, he refused to provide coherent answers to direct questions designed to elicit testimony concerning basic elements of Plaintiffs' ATA claims, including, *inter alia*, (i) the knowledge of the PLO and/or the PA about the PFLP's goals and activities and (ii) the provision of material support and resources by the PA and/or PLO to the PFLP.

When viewed in context, the facts that: (i) communications falling within notice topics 13, 14, and 15 undeniably exist, (ii) these communications show that the Malouh and Saadat depositions were clearly coordinated between their personal lawyer and the PA's Israeli and United States lawyers, (iii) the PA did not designate a 30(b)(6) witness with respect to topics 13, 14 and 15 and (iv) both Malouh and Saadat were recalcitrant and uncooperative at their depositions, these facts strongly suggest that Defendants and Malouh and Saadat are deliberately withholding relevant information, which is not favorable to them.  *See Discussion in Section C. 1. infra*.

Defendants' failure to produce a witness on these topics is prejudicing Plaintiffs by preventing them from being able to fully develop their case.  In short, Plaintiffs respectfully

16

request the Court to compel the PA to designate a 30(b)(6) witness with respect to PA topics 13-15.

### C.   The Court Has Broad Discretion to Impose Rule 37(d) Sanctions For Failure to Appear

At the outset, it must be emphasized that for purposes of Rule 37(d) sanctions, 30(b)(6) witnesses that are not prepared are viewed as having "failed to appear".  *See, e.g., In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 173 (D.D.C. 2003) (adopting decision of special master compelling a second deposition where 30(b)(6) designee was inadequately prepared and awarding attorneys' fees and costs); *JBS micro, Inc. v. QBE Ins. Corp.*, 2010 U.S. Dist. LEXIS 56000, *6-7 (N.D. Cal. May 14, 2010) (awarding 37(d) sanctions for failure to prepare 30(b)(6) witness); *U.S. v. Taylor*, 166 F.R.D. 356, 360-363 (M.D.N.C. 1996) (discussing duty of corporation to prepare 30(b)(6) witness).  It is only logical then that the failure to designate a witness for particular topics must also constitute a failure to appear with respect to those topics.

Sanctions pursuant to Rule 37 have three main objectives: "to ensure that a party will not benefit from its own failure to comply, to serve as a specific deterrent to obtain compliance with a specific order, and to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Manigaulte v. C.W. Post of Long Island Univ.*, 2012 U.S. Dist. LEXIS 109401, *14-15 (E.D.N.Y. Feb. 1, 2012) (*citations and internal quotations omitted*).

This Court has broad discretion to determine the appropriate sanction for Defendants' failure to appear with respect to PA topics 13-15, 17 and 18 of Plaintiffs' duly noticed 30(b)(6) deposition. *See, e.g.*, *Am. Prop. Construction Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 11-12 ("Under  Rule 37(d), district courts have the discretion to impose sanctions where 'a party . . . fails, after being served with proper notice, to appear for that person's deposition,' and, where

appropriate, the Court may select from a range of sanctions including exclusion and dismissal");

*Blum, Frank & Kamins Companies, Inc. v. Marzullo*, 1991 U.S. Dist. LEXIS 10253, *5-6

(D.D.C. July 25, 2001) (noting court's discretion pursuant to Rule 37(d)); *see also Gonzalez v.*

*Sawyer*, 2012 U.S. Dist. LEXIS 14078, *10-12 (N.D.N.Y. Jan. 6, 2012) ("The court's broad

discretion to impose sanctions pursuant to Rule 37(b)(2) is limited only by the requirement,

expressly stated in the rule, that the sanction selected be "just" and that it relate to the particular

claim to which the discovery order was addressed.") *citing Insurance Corp. of Ireland v.*

*Compagnie des Bauxites*, 456 U.S. 694, 707 (1982).  The sanction imposed should be

"proportionate to the party's violation."  *Wilson v. Sunstrand Corp.*, 2003 U.S. Dist. LEXIS

14356, *46 (N.D. Ill. Aug. 18, 2003) (*citations omitted*).

> **1. As it Relates to the PA's Failure to Produce a 30(b)(6) Witness on PA Topic 17, the Court Should Find That Any Relevant Documents Not Produced Are Being Intentionally Withheld or Were Intentionally Removed from the PA's Possession, Custody or Control**

Defendants themselves have recognized in their Initial Disclosures that it is their duty to

produce all relevant documents or, if they contend such documents were lost or destroyed, to

provide an explanation of what happened to such documents.  Indeed, the duty to preserve

potentially relevant documents applies from the date litigation is anticipated – even before it is

commenced; and by failing to preserve evidence, a party runs the risk of being justly accused of

spoliation.  *See, e.g., Zhi Chen v. District of Columbia*, 839 F. Supp.2d 7, 12 (D.D.C. 2011)

(citations omitted); *D'Onforio v. SFX Sports Group, Inc.*, 2010 U.S. Dist. LEXIS 86711, *13-14

(D.D.C. Aug. 24, 2010) (citations omitted); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212,

216-217 (S.D.N.Y. 2003).

There is no question that the PA had a duty to preserve evidence as of the date of the

bombing, February 16, 2002, and certainly no later than the filing of the complaint in the instant

proceedings, November 18, 2002.  As early as October 2011, in their Initial Disclosures, Defendants claimed that relevant documents had been lost or destroyed, apparently placing the blame on Israel.  Interestingly, Defendants have not claimed that all relevant documents disappeared; and, in fact, produced a small number of relevant documents, which appear on their face to be from official PA files.[12]  Thus, Plaintiffs noticed topic 17 in their 30(b)(6) Deposition Notice in an attempt to understand the nature and extent of loss or destruction of relevant documents and the contents of such documents.  This is a highly fact specific inquiry, appropriate for deposition testimony.  Yet Defendants simply failed to produce a 30(b)(6) witness on this topic, notwithstanding the express representation of their counsel that they would present a witness for every topic, as noted above.

These facts present a clear case of spoliation, which allows the court to make an adverse evidentiary inference that the destroyed (or withheld) documents are not favorable to the spoliator.  *See, e.g.*, *D'Onforio* at *15; *see also Zhi Chen* at 12.  An adverse inference is warranted if the injured party establishes:

> (1)  the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Id.* at 13. *Citing Mazloum v. District of Columbia Metro. Police Dep't*, 530 F. Supp.2d, 282, 291 (D.D.C. 2008).

There is no issue with regard to the first or third elements.  Defendants themselves concede in their Initial Disclosures, both their duty to preserve and produce relevant documents

---

[12] Plaintiffs view with great skepticism Defendants' claim that they are unable to locate relevant documents as they have clearly demonstrated their ability to find and produce documents that benefit them.

and the relevance of the documents purportedly lost or destroyed.  In any event, for purposes of the adverse interest inference, relevance can be presumed if the spoliator acted with at least gross negligence.  *See, e.g., Zhi Chen* at 15 (*citations omitted*).

With regard to the second element, the law in the District of Columbia is that the spoliation need not be purposeful, "negligent spoliation may suffice."  *Id.* at 12. (defendant's gross negligence in failing to preserve viable copy of relevant security camera footage sufficiently established culpability); *Mazloum*, 530 F. Supp. 2d 282, 292 (same); *More v. Snow*, 480 F.Supp.2d 257, 274-5 (D.D.C. 2007) (same); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2nd Cir. 2002) (noting that culpability can be established through negligence as well as knowing or intentional conduct).

The PA's conduct here – in claiming relevant documents existed but were lost or destroyed, producing some relevant documents which facially appear to be from the PA's files and failing to provide a 30(b)(6) witness to explain the circumstances of the loss of other relevant documents – is well beyond negligence.  Such a cavalier approach to its discovery obligations is evidence of intentional, or at the very least, reckless or grossly negligent conduct by the PA.  *See, e.g., Bogosian v. All American Concessions*, 2011 U.S. Dist. LEXIS 109082, *25 (E.D.N.Y. Sept. 26, 2011) (defendant's unexplained failure to respond to discovery requests "reflects a conscious decision deliberately to disregard his duties as a litigant, thus meeting the 'culpable state of mind' requirement."); *PSG Poker, LLC v. DeRosa-Grund*, 2008 U.S. Dist. LEXIS 4225, *41-42 (S.D.N.Y. Jan. 22, 2008) ("DeRosa-Grund's repeated failure to either produce relevant documents or a credible story regarding their whereabouts -- despite the admonitions of this Court and repeated requests from the plaintiffs -- can only be interpreted as an intentional and willful act.").

Indeed, the facts here strongly suggest that any relevant documents which have not been produced <u>were not lost or destroyed, but are being intentionally withheld</u>.  Moreover, Plaintiffs are being significantly prejudiced here because they are being deprived of relevant documents based on Defendants' unsubstantiated claim that documents were destroyed while at the same time Defendants have refused to produce a 30(b)(6) witness to explain what happened to the documents.  Thus, pursuant to Rule 37(d), Plaintiffs request the Court to find that Defendants are intentionally withholding relevant documents, or in the alternative, that to the extent such relevant documents are no longer in Defendants' possession, Defendants intentionally removed such documents from their possession, custody or control after the commencement if the instant lawsuit.  On this basis, Plaintiffs will be entitled to an adverse interest inference that any documents not produced by Defendants are not favorable to them.

In the alternative, Plaintiffs respectfully request the Court to enter an order pursuant to Rule 37(a)(3) compelling the PA to produce a 30(b)(6) witness to testify with respect to PA topic 17.

**2.   <u>With Respect to PA Topic 18, the Court Should Preclude the PA From Objecting to the Admissibility of Any Documents Produced or Disclosed by the PA</u>**

As discussed above, topic 18 is critically important to the development of Plaintiffs' case because there is no competent witness within the subpoena power of the Court to provide foundational testimony on the admissibility of evidence at trial.  While the documents produced by Defendants appear on their face to be from the PA's own files, Defendants have refused to concede the admissibility of any of the documents or information provided to Plaintiffs in response to Plaintiffs' discovery requests.  Moreover, in flagrant disregard of the Federal Rules and their own express commitments at a pre-deposition conference, the PA failed to produce a

30(b)(6) witness to provide basic record's keeper testimony pursuant to Plaintiffs' request in PA topic 18.  Defendants' utter disregard for their discovery obligations was made even more pronounced when they waited until more than one month after the close of fact discovery and the conclusion of the 30(b)(6) depositions to produce highly relevant documents from their intelligence files, completely depriving Plaintiffs of any opportunity to authenticate such documents.  As a result of this abusive conduct, Plaintiffs are being greatly handicapped in their ability to prepare their case.

Therefore, the most appropriate sanction here would be a Court order relieving the Plaintiffs of any obligation to establish the authenticity, admissibility, or the truth of any matters set forth in the documents produced and/or disclosed by the PA in this matter and precluding Defendants from challenging the authenticity, admissibility, or the truth of any matters set forth in such documents.  *See, e.g., Wilson*, 2003 U.S. Dist. LEXIS 14356 at *47-48 (where defendant's counsel had obstructed plaintiffs' counsel's efforts to obtain testimony concerning the admissibility of documents during the deposition of defendant's 30(b)(6) designee, court ordered, pursuant to Rule 37(d), that defendant would be precluded from opposing the admission into evidence of such documents); *see also Linde v. Arab Bank, PLC*, 2009 U.S. Dist. LEXIS 52510, *38 (E.D.N.Y. June 1, 2009) (where defendant failed to serve amended answer to requests for admission, court deemed the requests admitted pursuant to F.R.C.P. 36(a)(6) and, in that context, ordered that "to the extent the requests for admissions asked that the defendant confirm the authenticity of the defendant's records obtained from other sources, those records should be deemed admissible as authentic business records of the defendants."); *General Atomic Co. v. Exxon Nuclear Co., Inc*., 90 F.R.D. 290, 308 (S.D. Cal. 1981) (imposing Rule 37 sanctions, court found that certain documents which would be difficult for Exxon to authenticate

"must be made *effectively* available to Exxon by deeming them admissible in evidence as a partial remedy to overcome the prejudice caused by the absence of the withheld Canadian documents.").

In the alternative, Plaintiffs request the Court to enter and order pursuant to Rule 37(a)(3) compelling the PA to produce a 30(b)(6) witness to testify with respect to topic 18.

### 3.   The Court Should Impose Monetary Sanctions on Defendants

Plaintiffs are entitled to an award of their costs in bringing this Motion.  Such an award of costs to the prevailing party pursuant to Rule 37(a)(5) is required unless one of the exceptions enumerated in the rule applies, which is not the case here.  *See, e.g., Moore v. Napolitano*, 2009 U.S. Dist. LEXIS 69319, *26 (D.D.C. Aug. 7, 2009) (award of costs pursuant to 37(a)(5) is mandatory); *Arabalo v. City of Denver*, 2012 U.S. Dist. LEXIS 124069, *6-8 (D. Col. Aug. 31, 2012) (same); *Parker v. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 100363, *2 (N.D. Fla. Sept. 6, 2011) (same); *Graham v. MacKethan*, 2008 U.S. Dist. LEXIS 23208 (E.D. Pa. March 24, 2008) (same).  Moreover, Plaintiffs counsel traveled to Israel for an extended stay of approximately two weeks in reliance on the express representation of Defendants' counsel that Defendants would produce a witness on each of the 30(b)(6) topics.

The fee award to compensate Plaintiffs for additional deposition expenses is also mandated - by Rule 37(d) ("the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure…").  *See also Fudali v. Pivotal Corp.*, 2011 U.S. Dist LEXIS 3709, *6 (D.D.C. Jan. 14, 2011) (awarding expenses pursuant to Rule 37(d) due to failure to appear for deposition); *Am. Prop. Constr. Co.*, 274 F.R.D. 1, 11-12 (D.D.C. 2011) (same); *Vitamins,* 216 F.R.D. at 174

(same).  Indeed, the cost of taking these depositions the first time was substantial and having to retake them is costing Plaintiffs valuable time and resources.

A further monetary sanction in the amount of $18,000 is warranted in this case due to the PA's failure to appear for its 30(b)(6) depositions with respect to PA topics 13-15, 17 and 18 or to timely move for a protective order.   Sanctions may be imposed to deter future abusive practices as well as to compensate the opposing party.  *See, e.g., In re Rezulin Prods. Liab. Litig.,* 223 F.R.D. 109, 112 (S.D.N.Y. 2004) (monetary penalties may be imposed as sanction for non-compliance with discovery obligations); *Serrano v. Orange*, 1991 U.S. App. LEXIS 11749, *2 (9th Cir. May 31, 1991) (noting that monetary sanctions may be awarded to deter future abusive practices).  Such a "deterrent" sanction is justified here, particularly because the PA knowingly served improper "objections" instead of filing a motion for protective, after having been sanctioned for this same conduct in another case and after having been reminded of the proper procedure by Plaintiffs' counsel.  The conduct of the PA and its counsel was made even more egregious after they expressly represented in a pre-deposition conference that a witness would be presented on each of the notice topics and then inexplicably failed to carry through on that representation.

### D.   The Court Should Extend the Fact and Expert Discovery Deadlines

Under the scheduling order in force in this case, Plaintiffs' expert disclosures were due on October 19, 2012. *See* DE 136 at ¶¶ 5-6. However, because of Defendants' baseless failure to designate any witness with respect to topics 13, 14, 15, 17 and 18, Plaintiffs' liability experts are unable to fully and accurately assess Plaintiffs' claims, and Plaintiffs are therefore unable to complete and make their expert disclosures.  Indeed, until Plaintiffs complete testimony on each of their 30(b)(6) topics, it is unclear which testifying experts plaintiffs will need in this action.

It is well established that an opposing party's failure or refusal to cooperate with discovery constitutes grounds to enlarge the deadline for expert disclosures. *See e.g. Cedar Rapids Lodge & Suites, LLC v. JFS Development, Inc.*, 2010 WL 5070484 at *3-4 (N.D.Iowa Dec. 6, 2010) (Agreeing that "until [fact] discovery is obtained from all Defendants, it is not possible for an expert to opine regarding whether [defendant] breached its obligations" and adjourning plaintiffs' expert disclosure deadline because "[a]s a consequence of Defendants' failure to provide discovery, Plaintiffs were unable to disclose their expert witnesses, complete with the experts' opinions, by the … deadline."). *See also Kinetic Concepts, Inc. v. Convatec Inc.*, 2010 WL 1418312 at *4 (M.D.N.C. April 2, 2010) ("Delays as to fact discovery likely caused a cascading effect on the completion of expert discovery (which often cannot go forward in a productive way when fact discovery remains outstanding).").

Indeed, the mutually agreed case schedule in this action, which was adopted by the Court, provides for expert disclosures 30 days after the "completion of fact discovery." DE 136 at ¶6. The fact and expert discovery deadlines were tied together out of necessity- the purpose of that 30-day period after *completion* of fact discovery was to enable plaintiffs to gather all fact evidence and present it to their experts so the latter can include it in their analyses. That purpose has been thwarted by Defendants' egregious conduct with respect to the 30(b)(6) depositions. Those depositions were delayed until close to the end of the fact discovery period at Defendants' request and due to the Court's grant of Defendants' Motion for Protective Order. Moreover, Defendants' counsel willfully and intentionally misled Plaintiffs' counsel when they unequivocally represented that they would produce a witness for each noticed topic. The lack of any testimony at all on 30(b)(6) topics 13, 14, 15, 17 and 18 has made it impossible for Plaintiffs to gather and analyze all relevant facts for their experts.

Therefore, plaintiffs respectfully request that the Court adjourn their expert disclosure deadline until 30 days after completion of the 30(b)(6) depositions.

Plaintiffs have acted in good faith in seeking the relief requested herein and in seeking to enlarge the time for their expert disclosures, and should not be penalized for doing so. Accordingly, in the event that Court declines to compel further depositions, it should adjourn Plaintiffs' expert disclosure deadline until 30 days after the disposition of this motion.

**WHEREFOR**E, the instant motion should be granted.

Dated: November 20, 2012                              Plaintiffs, by their Attorneys,

/s/ Robert Tolchin
Robert J. Tolchin (NY0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
rjt.berkman@gmail.com

David I. Schoen (DC Bar # 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com

Counsel for Plaintiffs