# David I. Schoen
Attorney at Law

|  | |
|---|---|
| Admitted in<br>Alabama<br>Maryland<br>New York<br>District of Columbia | 2800 Zelda Road<br>Suite 100-6<br>Montgomery, AL 36106<br><br>Telephone<br>334.395.6611 |
|  | Facsimile<br>917.591.7586 |
|  | Email<br>david@schoenlawfirm.com |

December 6, 2012

Honorable Richard J. Leon
United States District Judge
 for the District of Columbia
United States Courthouse
333 Constitution Avenue, NW
Washington, DC 20001     *     Re: *Shatsky et al. v. PLO, et al.*; Civ. No. 02-2280 (RJL)     *

Dear Judge Leon:

I represent the Plaintiffs in the above-referenced case. As Your Honor is aware, we are scheduled to appear tomorrow for a status conference. I entered my appearance in the case about five months ago; so this will be my first appearance before Your Honor.

I am writing today to address a subject that is extraordinarily awkward; but after a great deal of consideration, I have concluded that I am absolutely duty bound to raise it. I am referring to an issue that was raised and seemingly was resolved a few years ago - whether any disqualifying conflict arises from Mr. Hibey's prior representation of Your Honor in a matter years ago. For reasons I will describe here, I believe the issue must be briefly revisited, notwithstanding the awkwardness in my having to so suggest. I will explain:

In September of this year, shortly after I entered this case, I was reviewing the entire file and I came across a reference to this matter - a letter predecessor counsel had written to the Court on May 28, 2007 (attached hereto as Exhibit "A"), which essentially advised Your Honor that counsel had been advised about the fact of the prior representation, did not believe it to constitute grounds for recusal, and indeed, advised Your Honor that counsel would consider Your Honor's recusal "prejudicial to the plaintiffs." The letter provided no details, however, about this rather unusual circumstance; so I inquired of my colleagues about the details and found that they did not know much.

In the course of meeting with clients in the case to introduce myself and discuss the case, I learned that the clients were not aware of it and, rather naturally, were surprised to hear this and had a question as to whether a situation in which opposing counsel had represented the presiding judge as his attorney was problematic for their very important case. I certainly could not advise anyone on the issue without knowing any relevant facts. A significant portion of my practice over many years has focused on a variety of potential and actual conflicts of interests and I am very sensitive to the issues, the various obligations that arise from even potential conflicts, and the extraordinary reticence that usually arises from the prospect of having to raise such issues, for

Honorable Richard J. Leon
December 6, 2012
Page 2

obvious reasons. I was convinced I had to look further to at least ascertain the relevant facts to be able to evaluate the matter at all, to advise my clients, and to determine whether the situation raised the kind of conflict which had to be pursued further.

I will say that, having researched the law and understanding in only the most broad terms that the representation apparently was many years earlier and that it would seem most unlikely to have been in the context of any matter even remotely related to the instant litigation, it seemed to me unlikely that I would be required to pursue the matter further; but again, I could not make any advised evaluation without at least knowing some basic facts - facts which no one on Plaintiffs' end of the case knew.

Accordingly, on September 16, 2012, I sent an email to Mr. Hibey, without copying anyone else, due, again, to the somewhat sensitive nature of the matter, to raise my concerns directly with him and to simply ask him to provide me with the relevant facts so that I could evaluate the matter fully. I committed to getting back to him to elicit his thoughts on my evaluation before I would take any action, but reiterated that I at least needed to know the relevant facts, as I identified them in my email.

On September 18, 2012, Mr. Hibey emailed me his response, in which, rather than providing me with the relevant underlying facts, he provided me with Mr. Strachman's letter (which I had reviewed and referred to in my email to him) and a copy of a transcript from a conference before Your Honor, held on June 25, 2007, in which this issue had been raised before Your Honor and during which Mr. Strachman reiterated his position that Your Honor should not consider recusal.[1]  Mr. Hibey went further, characterizing my actions as an "unwarranted"

---

[1]  I have attached a copy of that transcript as Exhibit "B" to this letter. As that record reflects, while Your Honor independently had considered the matter and concluded that no recusal would be required, in "an abundance of caution" Your Honor wanted to address the issue openly and obtain the parties' views. Your Honor appropriately inquired of Plaintiffs' counsel to confirm that the matter had been discussed with the clients and that neither the Plaintiffs nor counsel had any objection to proceeding with Your Honor presiding. Mr. Strachman answered "yes" to the question, but then explained that he was told about the representation, without any details, and that he "immediately" wrote to the Court to indicate no objection and, in fact, that he felt Your Honor should, indeed, continue on the case, especially in light of the posture of the case at that time (which he referred to as "rounding third") (Exhibit "B" at 4-5).

Your Honor clearly raised the issue and made the inquiry Your Honor felt was appropriate, obtaining an answer Your Honor clearly and reasonably thought answered the question and resolved the issue, all after Your Honor even provided a thumbnail sketch of the fact that Mr. Hibey had represented Your Honor sometime, probably in either 1996, '97. or '98, represented others with you, and that the case was dismissed. However, having learned that, in

Honorable Richard J. Leon
December 6, 2012
Page 3

"impugn()(ing)" of his integrity and of Your Honor's integrity and he issued the admonition in closing that he "trust(s)" that we would not "further engage on this issue."[2]

I replied to Mr. Hibey by email on September 18, 2012, respectfully disagreeing with his position, further explaining why I believe I needed to have the facts to satisfy my independent ethical duty and imploring him to reconsider and simply provide the facts.  I wrote again on September 20, 2012, noting that I had not received a response and did not want to impose any obligation on Mr. Hibey, explaining that if he chose not to respond, I would have to respect whatever decision he made on my request, but that I needed to know in order to evaluate how to proceed.

Later that day, Mr. Hibey replied, advising that he did not "intend to engage (me) further on the subject ...," explaining, in effect, that he considered the matter resolved already.  The bottom line is, Mr. Hibey refused to provide me with any of the underlying facts concerning the representation and relationship and refused to discuss the matter any further, leaving me completely unable to in any way meaningfully evaluate the matter or advise my clients.  Mr. Hibey dealt with the matter as he felt was appropriate I am sure.

Your Honor, I believe it most likely that we would conclude, after knowing the facts and discussing the matter with our clients, armed with all relevant facts, that there is no disqualifying conflict here and that there would be nothing further to pursue; but I cannot come to such a conclusion in any kind of meaningful way - and certainly not in the discreet way I sought to obtain the facts, through counsel, rather than having to raise it with the Court, without having the facts.  The law is quite clear that each participant in this process has an independent duty to ensure the integrity of the process, including conflict free proceedings.  I know that the Court has satisfied itself on this front and that is most important of course; but I still must satisfy my own independent duty to the process and to my clients and to do that I at least need to have facts so that it is an informed decision.  I had hoped to be able to do that informally with Mr Hibey; but his refusal to give me the facts and, worse, his assertion that I am impugning his integrity and the

---

fact, the clients never were consulted and that the position counsel reached and advised the Court about on his view of the issue was reached without knowing the underlying facts, I concluded, on my own and after expert consultation, that I had an absolute duty to at least ascertain all relevant facts for myself.

[2] My intention in writing directly to Mr. Hibey was to try to avoid carrying the matter any further and I do not write emails for the purpose of later publishing them to anyone else.  However, to give a full accounting of my efforts in this matter and to avoid any claim of mischaracterization from defense counsel, in this rather exceedingly contentious litigation, I believe there is no alternative but to provide the Court with the actual emails and I have attached them hereto collectively as Exhibit "C."

Honorable Richard J. Leon
December 6, 2012
Page 4

integrity of the Court even by pursuing the matter, just highlights the reticence lawyers face in seeing that such issues are aired, the awkwardness of the issue, and discounts the very considerations the law has recognized in this area.

Finally, a fair question is why the matter needs to be revisited. Surely, that is not answered just by the fact that I am new to the case. Rather it is a function of a few factors. First, on entering the case I had an independent obligation to inquire once I learn of a possible conflict. Secondly, upon inquiry, I learned that the Plaintiffs' position was presented without having all of the facts. Perhaps in large part this is explained by the procedural posture of the case at that time - thought to be almost concluded, given the earlier entered default. Third, I learned that the clients had not been consulted and I thought that was particularly important, given both the importance Your Honor had recognized in getting their input and the relevance the law places on such a factor, along with the objective appearance considerations surrounding such an issue.

Then, as things progressed in the case, and especially without the benefit of the facts, our belief that we needed more facts grew from certain events that we identified. These included a series of emails from one of the defense attorneys which we took to be an especially inappropriate effort at intimidation by suggesting defense counsel knew how Your Honor would view certain things. Counsel later assured us that he had not meant what we understood him to mean; but it was unsettling given the specter of this potential conflict that we just did not know enough about. Then, we raised a question as to why it was that all of the interaction in the case, almost without exception, was with another defense attorney, but Mr. Hibey was signing all pleadings before this Court, in contrast to our experience with a case of a similar nature before a different court. This again, was a function of knowing this issue was out there and that the facts were unknown, such that we felt the appearances at least raised a legitimate question.

Still, I was reticent to raise the issue, especially having to expect, from his email, that Mr. Hibey would respond by characterizing my effort at pursuing the matter as "impugning" his integrity and the Court's integrity. Indeed, the very attending circumstances which I believe require me to pursue the inquiry at the same time made me concerned that by raising it I would be doing my clients a greater disservice, if indeed, Mr. Hibey's view on the implications of raising it were accurate. This is a classic quandary counsel faces in such circumstances; but I believe the duty must prevail and I can only hope the risk that arises from following that duty does not surface.

The most recent developments that made me conclude firmly that the subject just has to be aired arises from Mr. Hibey's central role in the events surrounding the production of a document during a deposition he was defending, with Mr. Hibey providing one explanation for the source of the document and a claim of privilege at the time, while putting forward a completely irreconcilable account of its source and the basis for the claim of privilege six weeks later in a filing before this Court. That issue is the subject of pending litigation in this case with

Honorable Richard J. Leon
December 6, 2012
Page 5

very important consequences and so, with Mr. Hibey at the center of the matter, it seemed clear to me that we no longer could avoid the issue out of concern for the kind of thing Mr. Hibey had written in his email (i.e. that we would be portrayed as "impugning" his or the Court's integrity).

Your Honor, I saw this as a relatively straightforward matter when it first came to my attention and I just wanted to get all of the facts to be able to satisfy my clear independent duty under the law as a participant in this process and to my clients. I fully expected to hear facts from Mr. Hibey that would lead me to the conclusion that no further inquiry or action would be required and the matter would just go away, after full disclosure to my clients. But that cannot be the case now, given Mr. Hibey's refusal to simply explain to me the relevant facts that I do not have, and that I expressly requested of him (e.g. the nature of the matter, the time frame of the representation - how long, rather than what years - was Mr. Hibey personally involved or just his firm? were there relevant client confidences and secrets shared that could in any way impact on his relationship with Your Honor?, did a relationship continue after the representation ended? and so on, as outlined in my email).

The law in this area turns so strongly on the facts. There are, of course, cases in which judicial disqualification was determined to be appropriate based on an attorney's prior representation of a judge before whom he currently is appearing, even when the prior representation was unrelated. And there are cases, of course, that do not require or even advise disqualification in the prior representation circumstance. I think it fair to say that the latter reflects the weight of the authority in this area. Frankly, in my view, such factors as the likely unrelated nature of the prior representation here (I say "likely" because the instant case is of an unusual nature), and the passage of time from that prior representation, without something more to the relationship, would lead to a conclusion that the law would not even favor, let alone require, disqualification and the matter would simply end there. I would be happy to brief the issue if Your Honor so directs; but I just do not think it would be necessary. I seek only the relevant facts that would enable me to come to that conclusion or, if warranted by the facts, to a different conclusion and, if the latter, to then bring our substantive position on the question to the Court's attention in the form of a motion for the Court to consider. I just cannot do that under these circumstances and certainly have no intention of assuming there is a basis for recusal, when the facts most likely would reveal nothing of the kind.

I am terribly sorry to have to trouble the Court with this matter. I feel very awkward for having to do so; but I do feel that I have to do so under these circumstances. I just wish it were not so. I would ask Your Honor, respectfully, to consider dealing with this matter at the outset of the Conference so that it can be aired and hopefully fully put to rest on an informed basis as soon as possible. I would just want an opportunity to apprise the clients of the facts, if Your Honor concludes that it is appropriate for us to have the facts, and then I would immediately report back to Your Honor with our position.

Honorable Richard J. Leon
December 6, 2012
Page 6

I thank Your Honor for the Court's consideration of this matter and of my request.[3]

Respectfully,

David Schoen
Counsel for Plaintiffs

cc: Richard Hibey, Esq. (By hand-delivery to his office)

---

[3] I am raising the matter by letter, rather than by ECF filing because of its nature and because I see that this is how it was raised earlier in the case, notwithstanding my understanding that under Local Rule 5.1, letters to the Court are not generally permitted. I am happy to file the matter in pleading form by ECF if Your Honor finds that to be more appropriate or to withdraw the letter and simply discuss it orally at the Conference.