**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHABTAI SCOTT SHATSKY, et al.,

          Plaintiffs,                Civ. No. 02-2280-RJL

     v.

THE SYRIAN ARAB REPUBLIC, et al.,

          Defendants.

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTIONPURSUANT**
**TO RULE 37(c)(1) FOR PRECLUSION OF UNTIMELY DISCLOSED**
**WITNESSES AND DOCUMENTS, AND FOR RELATED RELIEF (DE 175)**

Plaintiffs respectfully submit this Reply in further support of their Motion for Sanctions Pursuant to Rule 37(c)(1) and for Related Relief [DE 175] and in response to defendants' Opposition thereto [DE 191].

**Introduction**

Defendants are clearly adherents of the maxim that "a good offense is the best defense." The overwhelming majority of their 33-page opposition, consists essentially of attacks on plaintiffs for their purported sins in a slew of irrelevant contexts. *Alden v. Mid-Mesabi Assoc. Ltd Partnership*, 2008 WL 2828892, *12 (D. Minn. July 21, 2008) (proper course of action for a party who believes it is victim of discovery abuses is to file a motion to compel or for sanctions and party cannot defend its own discovery violations by attacking the other side). Obviously, defendants intend this tactic to distract the Court from the actual issues. This Court should not, and the plaintiffs will not, be so distracted.[1] Therefore, this replywill first address the few

---

[1] Plaintiffs will note for the record that defendants' complaints about discovery are entirely of their own creation.  Plaintiffs have diligently sought discovery from defendants throughout the discovery

substantive arguments raised by defendants, and only then, and only as necessary, defendants' other, non-merits arguments and assertions.

This is a classic case for preclusion under Rule 37(c). Indeed, preclusion is mandated here because defendants failed to comply with Rules 26(a)(1) and (e) and disclosed the witnesses and documents that are the subject of the  motion [DE 175] after the close of fact discovery. The purpose of the mandatory disclosure rules "is to avoid surprise or trial by ambush." *Lopez v. City of New York*, 2012 WL 2250713 at *1 (E.D.N.Y.June 15, 2012). Directly contrary to this purpose, defendants waited until the very last day of fact discovery to disclose five new witnesses *in the guise of response to an interrogatory that did not even ask for the identities of any witnesses*. DE 175:7.  All of these newly identified witnesses are senior PA official who were clearly known to them all along.  Then, defendants refused to produce any of these untimely disclosed witnesses for deposition on the grounds that fact discovery was closed. Defendants are not entitled to withhold the identity of their witnesses until after the discovery deadline and then use the discovery deadline as an excuse to deprive plaintiffs of the opportunity to depose those witnesses.

In addition, with respect to at least three of the witnesses – Colonel Iyad al-Aqra, Mahmoud Noful and Hisham Jarrar – the descriptions of their potential testimony in defendants' interrogatory response is significantly broader than what they say these witnesses will be used for in their filed opposition [DE 191:17-22] to the motion. While plaintiffs maintain that the

---

and have supplemented their initial disclosures on an ongoing basis as new information has become known to them.  Defendants, however, waited until the very end of the discovery period to serve their first interrogatories and requests for production of documents and did not supplement their initial disclosures until the very last day of fact discovery.  They also unilaterally carved out an entire month from the 12 month discovery period, refusing to produce any witnesses during that month, and delayed the 30 (b)(6) depositions plaintiffs noticed for August.  Therefore, they cannot complain that plaintiffs are responsible for any delays.

witnesses should be precluded entirely under Rule 37(c) or plaintiffs should be permitted to depose them, at the very least their testimony should be limited to the topics listed by defendants in their filed opposition.

Even worse, defendants waited until more than one month after the close of fact discovery (and after plaintiffs' expert disclosure deadline) to suddenly disclose 740 documents which had been known to them for years and which they intend to use as defense exhibits in this case, depriving plaintiffs of any opportunity to conduct follow up discovery or have their experts utilize the material.

Defendants have not provided any explanation of a triggering event that prevented them from timely disclosing either the witnesses or the documents prior to the close of fact discovery and that necessitated their extremely harmful and prejudicial late disclosures. At best, defendants conduct evinces a reckless indifference to their obligations under the Federal Rules and, at worst, an intent to deprive plaintiffs of their rights to cross examine the witnesses and have their experts consider the documents.

Defendants' other arguments (including their claim that plaintiffs did not meet and confer) are baseless. Therefore, plaintiffs' motion should be granted on the merits.

## ARGUMENT

### A. Defendants Should Be Barred from Using the Five Untimely-Disclosed Witnesses or the 740 Pages of Untimely-Disclosed Documents to Supply Evidence in this Case

Rule 26(a)(1)(A) requires a party to disclose all witnesses and documents that it "may use to support its claims or defenses," and Rule 26(e) requires the party to supplement its disclosures of witnesses and documents "in a *timely* manner." (Emphasis added). A "supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made *as soon as possible* after the party learns that its response was inaccurate or incomplete." *Insight Technology, Inc. v. SureFire, LLC*, 2009 WL

3242557 at *2 (D.N.H. 2009) (emphasis added).*See also e.g. Elion v. Jackson*, 544 F.Supp.2d 1, 7 (D.D.C. 2008) ("Rule 26(e) imposed a duty to disclose [the witness'] identity *as soon as it became known* to defendant.") (emphasis added).

All of defendants' disclosures, after the close of fact discovery – both witnesses and documents – are therefore untimely and should be precluded. *Walls v. Paulson*, 250 F.R.D. 48, 53-55 (D.D.C. 2008) (addressing exclusion of late disclosed witnesses); *Elion v. Jackson*, 2006 WL 2583694, at *1 (D.D.C. Sept. 8,2006))(same); *Elion v. Jackson*, 544 F.Supp.2d 1, 7 (D.D.C. 2008) (addressing exclusion of late disclosed documents). According to the plain language of Rule 37(c) such preclusion is automatic and mandatory. *Elion*, 2006 WL 2583694, at *1; *Walls*, 250 F.R.D. at 53-55.

Solely in the alternative, *i.e.* if the Court declines to bar the testimony of the untimely-disclosed witnesses, it should compel defendants to produce them to be deposed by the plaintiffs. *See, e.g.*, *Sherwin v. Infinity Auto Ins.*, 2012 WL 1947910 (D.Nev. 2012) (re-opening discovery to permit depositions of late disclosed witnesses); *John McClelland & Associates v. Medical Action Industries*, 2007 WL 2789945 (D.Kan. 2007) (granting request to depose late disclosed witness); *Stone v. Deagle,* 2006 U.S. Dist. LEXIS 90430 at *24 (D. Col. 2006) (extending discovery deadlines due to late disclosure).

In order to avoid preclusion, it is *defendants' burden* to establish that their delay was substantially justified or harmless. *Elion*, 544 F. Supp. 2d at 6. They have not made such a showing. Clearly, the delays were not harmless here. *Defendants disclosed the witnesses in an interrogatory response that was not even asking for identification of witnesses, which was dated on the last day of fact discovery* and received by plaintiffs some five days later, with the full knowledge that plaintiffs, thereby, would be deprived of the right to depose the witnesses.

4

*Jackson v. American Family Mut. Ins. Co.*, 2012 WL 845646 at *3 (D.Nev. 2012) (disclosure on last day of extended discovery is not harmless); *Caribbean I Owners v. Great American Ins.*, 2009 WL 857439 at *2 (S.D. Ala. 2009) (disclosure after close of discovery not harmless).Moreover, defendants refused to mitigate the harm by consenting to plaintiffs' deposition notices for those witnesses and, instead, took the position that *they would not comply with the deposition notices because fact discovery was already closed.*DE 175:9, Ex.I and J.

Defendants' conduct with respect to the documents is even more outrageous, waiting to disclose them until more than one month after the close of fact discovery and after the plaintiffs' expert disclosures deadline.

Defendants' delays were also not substantially justified for all of the reasons set forth below.

1. The September Dates of the 30(b)(6) Depositions is not an Excuse for Defendants' Failure to Disclose These Witnesses Until After the Close of Fact Discovery

Defendants are now claiming that three of the untimely disclosed witnesses (Colonel Iyad al-Aqra, Mahmoud Noful and HishamJarrar) are being disclosed, at least in part, to respond to some of the deposition testimony of the PA's *own* 30(b)(6) witnesses. DE 191:17-22. To the extent this is the case, it certainly is not an excuse for disclosing the witnesses after the close of fact discovery when plaintiffs would be deprived of any opportunity to depose these witnesses and thus severely prejudiced.[2]

---

[2]Defendants' suggestion that the reason for their delay is somehow the fault of plaintiffs for taking 30(b)(6) depositions too close to the fact discovery deadline misses the point entirely. Plaintiffs noticed the depositions for August, expressly to be able to do any follow-up, and the depositions were only delayed until September at defendants' demand.  Indeed, defense counsel insisted unyieldingly that the Court's minute order granting their motion for protective order on scheduling meant that the depositions had to be scheduled on the schedule defense counsel unilaterally imposed.

*First*, as it relates to Colonel Iyad al-Aqra, defendants admit that they had knowledge of his significance no later than August 10, 2012[3] when they received the Mohamed WasifNazal[4]statement from plaintiffs[5]. DE 191:17. The Mohamed Wasif Nazal statement is an extremely important document as it implicates the PA's Raed Nazal in the bombing and identifies Colonel al-Aqra as one of Raed Nazal's weapons suppliers. DE 191:18. Defendants have not even attempted to explain why they failed to disclose Colonel al-Aqra as a witness during the more than five weeks remaining in the fact discovery period at that time and instead waited until after the deadline, knowing that this would result in plaintiffs being deprived of the right to depose him.

*Second*, even if defendants were unable to identify these new witnesses until the 30(b)(6) depositions, which is clearly not the case because they had notice of all of the deposition topics as of August 2, 2012, defendants were duty bound to identify them immediately thereafter, *i.e.*, no later than within one day of the 30(b)(6) deposition to which the witness is intended to respond.  Here, defendants deliberately waited for more than one week after the last 30(b)(6) deposition – until after the fact discovery deadline – to disclose these witnesses. Such a disclosure is not timely and should be precluded. *Commissioner of the Department of Planning*

---

[3]Although not relevant to this motion, defendants' suggestion that there was anything improper about the August 10, 2012 date of plaintiffs' disclosure and production of the Mohamed Wasif Nazal statement is completely unfounded.  Plaintiffs produced that document to defendants as soon as they discovered it and with close to six weeks remaining in the fact discovery period.

[4]There is another PFLP operative named Mohammed Shuki Nazal, who is also relevant to this case. Therefore, plaintiffs are employing their middle names to avoid any confusion between the two.

[5]While this statement was produced in its original form in Arabic (as is the parties' practice), Arabic is the native language of defendants and they also have local counsel who speaks Arabic. Therefore, they should have been able to learn the contents of the Mohamed Wasif Nazzal statement within 24 hours of receiving it and they do not claim otherwise.

*and Natural Resources v. Century Aluminum Company*, 2012 WL 2135287 at *3 (D.V.I. June 13, 2012) (waiting to identify witnesses until last day of fact discovery is not timely).

*Third*, defendants were required to produce the most knowledgeable 30(b)(6) witness for each topic. *Myrdal v. District of* Columbia, 248 F.R.D. 315, 317 (D.D.C. 2008). For example, if the PA chose to designate Nadime Barahme instead of Mahmoud Noful on PA topic 8 concerning the tax implications of the transaction pursuant to which Mohammed Zeid rented an apartment to the PFLP for its Qalqilya headquarters and the PA's financing of the PFLP's rent obligations to Mr. Zeid [DE 191:19-21], then the PA had a duty to fully educate Barahme with respect to that topic and it is now bound by his testimony. *See, e.g.*, *Id.*(discussing duty to prepare 30(b)(6) witnesses); *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003) (same); *Great American Ins. Co. of New York v. Vegas Construction Company*, 251 F.R.D. 534, 538-40 (D. Nev. 2008) (same).  Even if, after any of the 30(b)(6) depositions, the PA felt there was a need to designate an additional witness to supplement the testimony, it should have done so immediately, with enough time for plaintiffs to depose such new witness prior to the close of fact discovery. Clearly, the PA had the ability to identify each of these three witnesses, all senior PA officials, well before the close of fact discovery and certainly in response to plaintiffs August 2, 2012 30(b)(6) notice.

*Fifth*, to the extent Rule 26 permits a party not to disclose a witness who is being used *solely for impeachment*, that is not what is being done here.  Based on defendants' description of the topics for each of the above three witnesses (which, as noted above, are more specific than the descriptions that appear in their response to plaintiffs' fourth interrogatory) it is clear that the witnesses are being designated *to supplement the testimony of defendants' own 30(b)(6) designees* and not to impeach or rebut, as they say. DE 191:17-22. Moreover, putting aside

7

whether defendants even have the right to impeach their own 30(b)(6) designees, whose testimony is the equivalent of *party admissions*, the very idea that they would take a position contrary to their own 30(b)(6) designees is absurd.

   2. Defendants Offer no Explanation for Their Deliberate Delay in Disclosing Brigadier
      General Izzam Zakarneh and Major General MajedFaraj as Witness

Defendants excuse for their untimely disclosure of Brigadier General Izzam Zakarneh and Major General Majed Faraj is even more outrageous. They claim that these two witnesses, who are named for their knowledge about the general security situation in Qalqilya (Zakarneh) and the West Bank (Faraj) in 2002, are intended to respond to matters that plaintiffs have not yet disclosed. DE 191:22-24. Brigadier Zakarneh and Major General Faraj are high level PA officials who clearly have been known to the PA from day one in this case. The PA has provided no explanation as to what changed after the close of fact discovery that led it to suddenly disclose these witnesses at that time and why it could not have disclosed these witnesses in its October 28, 2011 initial disclosures. *See, e.g.*, *Ferreri v. City of Strongville*, 2011 WL 2457404 at *2 (N.D.Ohio2011)(because the witnesses had been "known to the Defendants for months" there was "no valid reason justifying the late disclosure."). Indeed, defendants acknowledge that the late disclosure was not prompted by any conduct of plaintiffs – as they claim it is due to their "anticipation" of something they believe plaintiffs will do in the future, but based on what, they do not say.

In addition, defendants admit their longstanding knowledge of Major Faraj because they offered him for deposition in another case -*Klieman v. Palestinian Authority*, Case No. 04-civ-1173 (PLF)(JMF) - on the exact same issue on which they intend to offer him here. DE 191:23. Defendants' use of this witness in another case, involving different plaintiffs, cannot support their baseless claim that these plaintiffs, represented by different counsel, had any knowledge

that defendants intended to rely on that witness in this case.[6] If anything, defendants' failure to identify Faraj as a witness in this case would suggest that they did not intend to rely on Faraj's testimony here. Thus, defendants untimely disclosure of Faraj (along with Zakarneh) after the close of fact discovery supports the obvious conclusion that defendants deliberately waited to disclose these witnesses until it would be too late for plaintiffs to depose them.

   3.   Defendants Offer no Explanation as to Why They Dumped Some 740 Documents on Plaintiffs More Than One Month After the Close of Fact Discovery

Similarly, defendants' Bates 341-1080, which defendants disclosed only on October 21, 2012, were not disclosed "as soon as [they] became known to defendant[s]." *Elion*, 544 F.Supp.2d at 7. On the contrary, as discussed in the motion, Bates 341-1076 are documents submitted by defendants as trial exhibits in *Saperstein v. PA*, Civ. No. 04-20225 (S.D.Fla.) in 2010 and Bates 1077-1080 were published by defendants in 2001. DE 175:10-11. Defendants' claim that their untimely disclosure of these documents is somehow due to plaintiffs "late-initiated discovery" is completely baseless. DE 191:24. None of these documents are responsive to any of plaintiffs' document production requests.[7]

Defendants' suggestion that the documents were produced in response to matters that came up at the 30(b)(6) depositions in September [DE 191:25] is not an excuse for disclosing

---

[6] This is not the kind of situation that the *Kapche* court addressed. DE 191:23. In that case, unlike here, the defendant had produced a document referencing the late disclosed witness and plaintiff had conducted follow up discovery concerning that individual. *Kapche v. Holder*, 677 F.3d 454, 468 (D.D.C. 2012). Here, defendants did not produce any documents referencing any of the late disclosed witnesses or suggest in any way that defendants might seek to rely on testimony from such witnesses until after the close of fact discovery.

[7] Immediately upon receiving the documents, plaintiffs asked defendants to identify which document requests they were responsive to, but defendants' counsel refused to identify any such document requests and *admitted* that "these are documents that Defendants mayuse in some aspect of their defense in this case." DE 175:11, Ex. O and P.

information after the close of fact discovery and *after the plaintiffs' expert disclosures deadline*. All of these documents were known to defendants well before their October 28, 2011 initial disclosures and the last 30(b)(6) deposition was on September 12, 2012 – one week before the close of fact discovery and some 5-6 weeks before defendants actually disclosed the documents. Moreover, based on defendants' prior use of most of these untimely disclosed documents in *Saperstein*, they could and should have anticipated that they would want to use the documents in this case, and disclosed them in their October 28, 2011 initial disclosures.

Contrary to defendants' claim, the only reasonable conclusion plaintiffs could have reached from defendants' use of these documents in another case involving different plaintiffs and their failure to disclose them in this case, is that defendants did not intend to use these documents here.[8] DE 191:26. Obviously, if defendants had intended to use the documents they should have disclosed them in their initial disclosures as required by the Rules.  Thus, it is patently clear that defendants willfully delayed disclosure until one month after the fact discovery deadline and after plaintiffs' expert disclosures deadline to deprive plaintiffs of the opportunity to engage in any follow up discovery or to have their experts consider these documents.

---

[8]*Farmland Industries, Inc. v. Morrison-Quirk Grain Corp*., 54 F.3d 478 (8th Cir. 1995) cited by defendants [DE 191: 26] has absolutely no bearing on this issue. That case involved an attempt to exclude one aspect of an expert designee's testimony where the expert had been properly disclosed and the party seeking exclusion had deposed the expert.  None of the late disclosed witnesses were known to plaintiffs prior to defendants' disclosure and plaintiffs certainly never deposed any of them. As it relates to the documents, plaintiffs had no basis to guess that defendants would use exhibits from another case involving different plaintiffs in this case since it did not include the documents in its initial disclosures.  *In re Omeprazole Patent Litig*., 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) [DE 191:25] is likewise inapposite.  In that case, the court *excluded* a late disclosed document because it would have been prejudicial to plaintiff and there was no time to allow plaintiff to take follow up discovery.  The documents that the court did allow had all been disclosed in the case in which they were being used, *not to parties in a different case*.

**B.  Plaintiffs Have Satisfied Their Meet and Confer Obligations**

Defendants' claim that plaintiffs failed to comply with their meet and confer obligations is both baseless and made in bad faith [DE 191:12-15]:

It is *baseless* because the record shows, as set forth in plaintiffs' motion and the exhibits thereto, that for over a month after the new witnesses were first disclosed, plaintiffs attempted to obtain more information about them and to depose them without judicial compulsion, but to no avail.

Moreover, it is instructive to compare plaintiffs' weeks of efforts here with defendants' approach to their "meet and confer" duties (i.e., leaving a voice message for plaintiffs' counsel one business day before filing), as detailed in plaintiffs' responses to defendants' recent motions [DE 192-193] incorporated herein by reference. The point is not that because defendants did not comply with their obligations plaintiffs' conduct is irrelevant; rather the point is one of *a fortiori* logic: *i.e.*, defendants cannot be heard to argue that plaintiffs' meet and confer efforts were inadequate, when those efforts infinitely exceeded defendants' own efforts which, defendants will be the first to assert, were sufficient.

Indeed, there is something surreal about defendants' entire "meet and confer" argument: defendants have completely opposed plaintiffs' motion; which proves clearly that any further "meeting and conferring" would have served no purpose but to generate further delay.

Therefore, defendants' arguments in this vein should be rejected.

**C.  Plaintiffs' Requests for Deadline Enlargements and Costs Should be Granted**

The witnesses and documents that are the subject of this motion should have been disclosed long ago and certain well before the fact and expert discovery deadlines in this case. It is elementary that a party is entitled to have his expert witnesses review documents and

11

information obtained during the fact discovery period, the scheduling order in this case reflects that right and there is no reason to deny plaintiffs this right. For the same reason, the costs requested should be imposed. Plaintiffs should not have to police defendants in the first place, and they certainly should not have to absorb the cost of doing so. Costs are also in order in light of the vicious, vitriolic tone of defendants' opposition, which is dominated by extraneous matters totally unrelated to the issues raised in plaintiffs' motion.

Plaintiffs, by their Attorneys,

/s/ David I. Schoen (391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com

Robert J. Tolchin (NY0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
rjt.berkman@gmail.com

Counsel for Plaintiffs