**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————
                                                    )
SHABTAI SCOTT SHATSKY, *et al.*,      )
                                                    )
                         Plaintiffs,            )
                                                    )
v.                                                  )      Civil Action No. 1:02cv02280 (RJL)
                                                    )
THE SYRIAN ARAB REPUBLIC, *et al.*,   )
                                                    )
                         Defendants.         )
———————————————————)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
"MOTION TO COMPEL, FOR EXPANSION OF THE FACT AND EXPERT
REPORT DEADLINE, AND FOR RELATED RELIEF" (DE 202)**

Defendants The Palestinian Authority ("PA") and The Palestine Liberation Organization

("PLO") (collectively, "Defendants"), by and through counsel, hereby oppose Plaintiffs'

"Motion To Compel, For Expansion of the Fact and Expert Report Deadline and for Related

Relief" (DE 202) ("Sixth Motion to Compel" or "Motion to Compel" or "Motion"), and state as

follows:

**INTRODUCTION**

Having failed to conduct discovery timely during the twelve-month fact discovery period,

Plaintiffs embarked on a strategy of manufacturing discovery disputes in an attempt to persuade

the Court to re-open the deadlines for fact and expert discovery which had expired when

Plaintiffs did not bother even to file a motion to extend them. After the Plaintiffs had filed more

than seven inches of discovery pleadings, asserting all measure of supposed "violations," the

Court convened a conference on December 7, 2012, in which it denied a number of Plaintiffs'

pending discovery motions and confirmed that the fact and expert discovery is, and has been,

closed. The Court then provided Plaintiffs with a final opportunity to articulate compelling

1297119.1

reasons why they should, despite the expiration of these deadlines, be permitted to take at least some limited, final depositions.  In doing so, the Court laid out clear rules governing final disposition of discovery issues, which consisted essentially of the following[1]:

- The Plaintiffs would have one week to file a final discovery motion identifying any additional depositions they say they needed;

- Any additional depositions would only be granted upon a showing of new and compelling circumstances;

- Defendants would have a week to respond to Plaintiffs' filing;

- The Court would rule by Christmas; and

- If the Court were to allow any additional depositions, those must be completed no later than the February 14, 2013 deadline the Court had already set for the completion of Plaintiffs' depositions and medical examinations (which were not completed only because Plaintiffs refused to be deposed in the jurisdiction where they had filed suit before the original fact-discovery cut-off).

Despite these clear instructions, on December 14, 2012, Plaintiffs submitted a 466 page filing that goes well beyond the targeted requests the Court plainly expected.  Plaintiffs seek a complete re-opening of fact and expert discovery, and they do so based on the same arguments and invective Plaintiffs have already inundated the Court with over the past few months.   As Defendants have already demonstrated in their opposition filings, DE 171, 173, 185, 191, Plaintiffs' motions (some of which the Court has already denied) lack merit.  So does the

---

[1] We have used the words "essentially" because, due to circumstances beyond the control of the Court reporter, no transcript of the hearing is yet available.  Counsel is accordingly relying on their memory and notes in describing what occurred at the hearing.

Plaintiffs' repackaging of those same arguments here.[2]   Given that the Plaintiffs' response to the "last chance" provided by the Court was simply to file their old motions again and ignore the Court's guidance and prior rulings, it is clear the discovery process has finally run its course. Plaintiffs have obtained all of the information to which they were conceivably entitled.  The Court should deny Plaintiffs' groundless motion.

## BACKGROUND

Too much paper has been devoted to these discovery matters.  The Court is already more than familiar with this history, but if it desires an opportunity to refresh its recollection, an extensive procedural history of the discovery period in this case is set forth in Defendants' November 5, 2012 Opposition (DE 173) to one of Plaintiffs' multitudinous motions to compel (DE 169).  Other pertinent summaries of the precise discovery matters at issue here are also available in Docket Entries 185 and 191.

## ARGUMENT

For the reasons set forth below, Plaintiffs' Motion should be denied.

**A.      Plaintiffs' Attempt In This Filing To Seek An Order To Compel Regarding Three Document Requests Is Improper And Baseless For Many Reasons.**

With Plaintiffs already having filed five motions to compel after the September 19, 2012 close of fact discovery and having threatened many more, the Court made clear at the December 7, 2012 hearing that it would not entertain a further litany of ill-founded discovery motions from Plaintiffs.  Indeed, after declaring that fact discovery had closed on September 19, 2012 and Plaintiffs' deadline for disclosing all of its expert witnesses had passed on October 19, 2012, the

---

[2] Defendants have included, as Exhibit 1, a chart identifying where each form of relief requested in this motion was previously requested in one of Plaintiffs' earlier discovery motions.  For ease of reference, and to save additional paper, Defendants will simply incorporate their earlier arguments on these same topics where appropriate below.

Court focused on what *depositions* Plaintiffs would argue they needed to take that they had not taken during the fact discovery period.  Plaintiffs mentioned only a few such potential depositions at the December 7, 2012 hearing, and did not even raise any document production issues, let alone the three that Plaintiffs have now raised in their December 14, 2012 filing.  *See* DE 202-1 at 17-20 (seeking to compel the production of additional documents responsive to Document Request No. 104 in Plaintiffs' August 20, 2012 Second Request for Production of Documents and Document and Request Nos. 1 and 4 of Plaintiffs' March 9, 2012 First Request for Production of Documents).  Regardless, Plaintiffs' repetitive and untimely complaints about Defendants' responses to their requests for production wholly lack merit.

      1.      **Plaintiffs' Motion to Compel Regarding Request No. 104 of Plaintiffs' August 20, 2012 Second Request for Production of Documents Has Already Been Denied By The Court.**

If Plaintiffs' motion to compel regarding Request No. 104 looks familiar to the Court, that is because it is.  On October 19, 2012, Plaintiffs filed a motion seeking to have this Court compel additional production to a number of document requests, including Plaintiffs' Document Request No. 104, making some of the same arguments they make here.  DE 169 (seeking to compel production in response to, *inter alia*, Document Request No. 104).  On November 5, 2012, Defendants filed an opposition, demonstrating why Plaintiffs were not entitled to the relief they sought, including the fact that Plaintiffs' counsel had failed to engage in appropriate meet and confer communications with Defense counsel and had even threatened to file a Bar complaint against Defense counsel over a discovery dispute.  DE 173.  On December 7, 2012, during the status conference, this Court denied Plaintiffs' motion, as reflected in a subsequent Minute Order.  *See* Minute Entry of December 8, 2012 (denying DE 169).

At the very least, the Court's recent order indisputably resolves Plaintiffs' serial attempt to compel production to Document Request No. 104, which involved twelve individual sub-part requests related in one way or another to Raed Nazal, a person who was assassinated by the Israelis on April 26, 2002 and whose name does not appear in Plaintiffs' complaint, Plaintiffs' initial Rule 26(a)(1) disclosures, or Plaintiffs' answers to Defendants' interrogatories.  As Defendants demonstrated in their opposition papers, DE 173 at 28-29, they have fully complied with this request, producing payment and employment records related to Mr. Nazal, a deponent to answer questions about those records, an interrogatory answer concerning Mr. Nazal, a security employee from the governate in which Mr. Nazal lived and a number of other documents concerning Mr. Nazal from various security and finance offices. In response, the Court denied Plaintiffs' previous motion to compel a response to this very same document request, and necessarily rejected all of Plaintiffs' arguments.  Having placed that issue before the Court and received an unfavorable ruling on precisely this document request, the Plaintiffs cannot simply raise the issue again, particularly without addressing the earlier ruling.

For these additional reasons, the Court should reject Plaintiffs' December 14, 2012 filing to the extent it relates to and seeks relief regarding Document Request No. 104.

2.      Plaintiffs' Motion to Compel Regarding Request Nos. 1 and 4 of Plaintiffs' March 9, 2012 First Request for Production of Documents Are Untimely and Baseless.

Plaintiffs also have included in their December 14, 2012 filing two document requests from their March 9, 2012 First Request for Production of Documents to Defendants as to which they never moved to compel during the six months between the service of the requests and the close of fact discovery but as to which they now (three months *after* the close of fact discovery) seek to compel additional production:  Document Request No. 1, which seeks information

relating to the bombing itself, and Document Request No. 4, which seeks information about payments made to relatives of the person who allegedly carried out the bombing.  But this motion to compel should fare no better than any of the earlier ones.

*First*, Plaintiffs' complaints are extraordinarily untimely.  Defendants served objections and responses in April 2012, and conducted a meet and confer on those objections and responses in May 2012.  Following that, Defendants produced responsive documents in May, June and July, 2012.  After the July 2012 production, Plaintiffs failed to raise any complaint about Defendants' objections, responses and production of documents until now – three months after expiration of the deadline for fact discovery.  Since they did not even see fit to include this in the *five* motions to compel Plaintiffs already filed in the case before this one, the Court should deny the motion to compel on timeliness grounds alone.  If, as it seems, Plaintiffs are seeking leave to file a discovery motion after the fact discovery deadline set by the Court, their request fails to meet the exacting "good cause" and "due diligence" standards mandated in Fed. R. Civ. P. 16(b)(4).   *See* Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's consent"); *see also* Fed. R. Civ. P. 16(b) advisory committee's note (the "good cause" standard in the rule requires a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension.")

*Second*, Plaintiffs' argument fails on the merits; indeed, they have shown absolutely no reason to compel a production order, essentially telling the Court that "There simply must be more."  *See* DE 202-1 at 5.  For this argument, Plaintiffs rely on two sources.  The first is the inadvertently produced memorandum, which is the subject of a pending motion for return.  *See* DE 170 and 198.  As discussed more fully below and in previous filings, Plaintiffs' attempted use and reliance on this memorandum for any purpose, including as a platform for additional

discovery, clearly violates both the extant protective order entered by this Court and the Federal Rules of Civil Procedure.  DE 170 at 19-21; DE 198 at 2-13.  But even if it were proper to rely on this document, the inadvertently disclosed memorandum does nothing to support their tardy claim for the production of additional documents as it does not suggest the existence of additional documents beyond those Defendants have produced.  *See infra* at § B; *see also* DE 170 and DE 198.

Nor does the deposition testimony from a PA 30(b)(6) witness, General Intelligence Service officer Ibrahim Dahbour, suggest the existence of any additional, responsive documents either.  With respect to Mr. Dahbour, Plaintiffs seek to capitalize on the portion of his deposition in which he estimated the size of the GIS file on Raed Nazal file.  But what Plaintiffs fail to address is that, in response to their inquiries on this subject, Defense counsel travelled to Qalqilya and personally reviewed the Raed Nazal file and others to re-confirm that Plaintiffs had received everything to which they were entitled.  DE 202-13.  Moreover, defense counsel spoke with Mr. Dahbour about his estimate in his deposition and determined that "Mr. Dahbour's estimates of the size of the files in which the Raed Nazal and Sadek Abdel Hafez documents were kept, were based on his estimates of the size of the standard-issue box files in which those documents were kept, not an estimate of the page contents in those files." *Id.*  In short, this issue has been completely run to ground, which is presumably why Plaintiffs did not raise it in their previous five motions to compel and did not, for that matter, engage in any actual meet and confer discussions with Defendants regarding this information following Defense counsel's re-confirmation regarding the GIS files.  Plaintiffs have received the discovery to which they are entitled and the Court should deny their groundless request, after the fact, to extend the fact discovery deadline to seek documents that do not exist.

**B.**     **Plaintiffs' Improper Attempt To Secure Additional Information Related To Major Abu Hamid Should Be Denied**.

Plaintiffs also ask this Court to compel the production of additional information related to Major Abu Hamid of the Qalqilya office of the General Intelligence Service, including ordering Defendants to produce him for deposition.  DE 202-1 at 15-17.  As Plaintiffs readily admit, however, Major Abu Hamid's identity is known to them only through the inadvertent disclosure of a memorandum, which occurred during a September 2012 deposition, and which is currently the subject of Defendants' motion seeking return of the inadvertently disclosed document on grounds of privilege.  *See* DE 170.  The full circumstances of the inadvertent disclosure and the grounds for its return are set forth both in the motion itself and in Defendants' reply.  *See* DE 170 and DE 198.[3]  Those filings make clear that Plaintiffs have no right to the inadvertently disclosed privileged document, much less any entitlement to depose the person who prepared it at the behest of counsel months after the discovery cut-off has expired.

---

[3] Further adding to the needless volume of paper in this matter, Plaintiffs recently filed a "Motion to Strike Reply, Or in the Alternative, for Leave to File Surreply" (DE 201) regarding Defendants' Reply (DE 198) ("Motion to Strike").  Defendants' opposition to the Motion to Strike is due on December 31, 2012.  Defendants will be timely filing their opposition unless, in the meantime, the Court grants Defendants' motion for return or destruction and denies Plaintiffs their request for further discovery based on the inadvertently produced privileged document.  Defendants' opposition will likely include, *inter alia*, the following arguments in response to Plaintiffs' contentions in the Motion to Strike:  (1) the protective order does not need to be "invoked" by any party; rather, it is a Court order that imposes affirmative obligations on all parties; (2) paragraph 9 of the protective order applies to inadvertently produced privileged documents, and its obligations are triggered upon a party's request for return of the inadvertently produced privileged document; (3) it is undisputed that Defense counsel requested the return or destruction of the inadvertently produced privileged document on the record at the September 12, 2012 deposition of Ibrahim Dahbour; (4) it is indisputable that Plaintiffs have violated the protective order by refusing to return or destroy the copies they made of the inadvertently produced privileged document; and (5) Plaintiffs' argument that Defendants had to claim the document as "confidential" under the protective order is disingenuous because, by its terms, the confidentiality designation provisions of the protective order only apply to documents that the producing party intends to  produce, not to inadvertently produced privileged and protected documents.  Thus, the inadvertently produced document is protected from disclosure by the attorney-client privilege and work product doctrine, which means paragraph 9 of the protective order governs this situation.

Indeed, as Plaintiffs' request relies entirely on an inadvertently disclosed privileged memorandum that is the subject of pending litigation for its return, Plaintiffs' request itself violates both Section 9 of the extant protective order entered by this Court, and Federal Rule of Civil Procedure 26(b)(5)(B), which provides that, while a motion seeking a determination regarding the status of an inadvertently produced document is pending, the recipient party "must not use or disclose the information until the claim is resolved."  The filings already before the Court make clear that both of these provisions prohibit a party in receipt of an inadvertently produced document from challenging the privilege based on disclosure of the very document or divulging the contents.  DE 170 at 19-21; DE 198 at 2-13.  Plaintiffs do *both* here, going so far as to flaunt their continued possession of the document by filing it,[4] and relying on its contents and author as the source of substantive arguments for additional discovery.  It is difficult to conceive of any lawful or ethical basis for such conduct, and the Court should not countenance it.[5]

Nor is there any legitimate basis to convene such a deposition or provide additional discovery related to Major Abu Hamid.  He prepared a privileged memorandum for counsel defending this case.  He is not a fact witness.  He knows nothing about this matter separate and apart from a review of the applicable GIS files (the responsive, relevant and non-privileged contents of which have been produced to Plaintiffs already *(*DE 198 at 6) and a search of publicly available documents he conducted ten years after the incident, through a request made

---

[4] But for the need to preserve the privilege, Defendants would have no objection to the Court reviewing the sealed memorandum.  On its face, the memo proves the inadvertent nature of the disclosure because it is an Arabic document containing handwriting in blue ink by one of the defendants' lawyers.  Nor is there anything in the content of the memorandum that remotely helps Plaintiffs' case; they are simply trying to capitalize on the inadvertent disclosure in order to keep discovery alive as long as possible.

[5] Defendants will not belabor the point regarding Plaintiffs' continued misuse of the inadvertently produced document by citing to each of the many emails Plaintiffs have sent making use of, referencing and seeking additional discovery based on the inadvertently produced document, all in violation of Section 9 of the protective order and Fed. R. Civ. P. 26(b)(5)(B).

by lawyers defending his employer in pending civil litigation.  To the extent Major Abu Hamid might be able to provide any non-privileged testimony about his review of particular documents in conducting an investigation into the litigation at the behest of counsel – a highly debatable proposition – any such testimony would be entirely unnecessary.  It would also likely be irrelevant and inadmissible in this case.  As Defendants have already demonstrated, they have produced all responsive, non-privileged documents in the GIS Qalqilya files to Plaintiffs in this matter, *see* DE 198 at 6 (identifying produced files), and Plaintiffs are completely capable of reviewing these same documents themselves rather than convening a deposition to ask Major Abu Hamid about them.  Nor would there be any legitimate purpose for convening a deposition to permit Plaintiffs to question Major Abu Hamid about information he may or may not have reviewed in the public record or available on the internet, as Plaintiffs can easily replicate that sort of search themselves as well.

**C.      Plaintiffs' Untimely Request To Extend The Fact-Discovery Deadline To Depose Jamal Al- Hindi Should Be Denied.**

There is also no merit to Plaintiffs' request to take the deposition of Jamal al-Hindi. Like many of the other discovery requests contained in Plaintiffs' most recent filing, the request to depose Mr. al-Hindi is already before the Court, in a motion filed by Plaintiffs at Docket Entry 197.  In that request, filed on December 7, 2012, Plaintiffs sought to begin a testimonial process authorized by the Hague Convention, through which the Court would issue a request to the Israeli court system to have Mr. al-Hindi (whom Plaintiffs represent to be an Israeli prisoner) produced for a deposition in this case.  DE 197 at 1-4.  According to Plaintiffs, they first learned of Mr. al-Hindi's supposed relevance to this case on September 12, 2012 through the inadvertent disclosure by Defendants of the same privileged memorandum referenced above, which was at the behest of counsel as part of this litigation.  DE 197 at 3-4.  Improperly using the inadvertently

produced document as a platform for seeking additional discovery, all in explicit violation of Section 9 of the Protective Order in this case (DE 157-2) and Fed. R. Civ. P. 26(b)(5)(B), Plaintiffs then argue in their December 7, 2012 motion that this supposedly late disclosure justifies their waiting to seek the deposition of Mr. al-Hindi until now and likewise justifies reviving and extending their long-expired opportunity to make their expert disclosures until after the deposition.  DE 197 at 1-5.  In their most recent filing, Plaintiffs repeat these arguments.  DE 202-1 at 20-21.

For many reasons, the Court should reject Plaintiffs' untimely attempt to depose Mr. al-Hindi.  In the first place, as made clear *supra* at Section B, the manner in which Plaintiffs seek to use and rely on an inadvertently disclosed privileged document violates both Federal Rule of Civil Procedure 26 and the extant protective order in this case.  DE 170 at 19-21; DE 198 at 2-13.  Permitting Plaintiffs to bootstrap tardy discovery requests from an inadvertently produced privileged document that Plaintiffs have impermissibly continued to possess would eviscerate the protections afforded by the protective order and Rule 26(b)(5)(B).

But even if they could properly rely on such documents, by their own representations, Plaintiffs *knew* of this information before the expiration of the fact discovery deadline, but waited three months before even *commencing* the Hague Convention process for Mr. al-Hindi's deposition.  Nowhere in Plaintiffs' filings do they even attempt to explain this admitted three month delay, which itself is reason to deny their untimely request.

And it is likely that the actual delay by Plaintiffs was substantially greater.  Plaintiffs almost certainly knew of Mr. al-Hindi's purported relationship to the Qalqilya PFLP long before the discovery cut-off.  In July 2012, Plaintiffs sent emails to defense counsel indicating they were aware of a 1995 incident in which Mr. al-Hindi and other alleged members of the Qalqilya

PFLP (Shaher al-Rai and Yousef al-Rai) had been implicated, and suggested that they intended to rely on that incident as part of their case.  Exhibit 2 (July 2012 emails from Plaintiffs' counsel disclosing reports describing 1995 incident).[6]  While the emails and related documents themselves did not identify Mr. al-Hindi by name,[7] his purported involvement in the incident and his membership in the Qalqilya PFLP were matters of public record, easily found on the internet and in the Israeli media.  *See* Exhibit 3 (Levinson: SHIN BET TO COMPENSATE PFLP MEMBER FOR TORTURING HIM, HAARETZ, (Dec. 17, 2010) (describing al-Hindi as a PFLP member from Qalqilya, and describing how Mr. al-Hindi received a monetary settlement from the Israeli Shin Bet because he had been tortured into falsely confessing to 1995 incident, for which he had long been imprisoned)).[8]  Thus, it is almost certain that Plaintiffs have known about Mr. al-Hindi's membership in the Qalqilya PFLP for an extended time and certainly since at least July 2012, completely undercutting their own claim that they learned of any relevance he might have to the case through the inadvertent production of a memorandum on September 12, 2012.

---

[6] In light of Plaintiffs' representations that they intended to rely on this 1995 incident, Defendants subsequently produced to Plaintiffs materials showing that Mr. al-Hindi had recanted his original confession.

[7] The habit of Plaintiffs' counsel in this case and others has been to send Defense counsel scores of emails attached to which are often lengthy documents in a foreign language and bearing no description, identification or reference from Plaintiffs of what portions of the document Plaintiffs contend are relevant to this case and why.  Quite frequently, Plaintiffs have simply included internet links to documents or referenced documents they simply claimed were in Defendants' possession.  Plaintiffs' counsel would then term such emails "supplemental Rule 26(a)(1) disclosures," suggesting that Plaintiffs contend somehow that something in the documents is relevant to the case.  Defendants have challenged such purported "disclosures" as invalid and ineffective, and will continue to do so.  Coupled with Plaintiffs' refusal to serve any substantive answers to Defendants' interrogatories during the fact discovery period and to appear for their depositions during the fact discovery period, Plaintiffs' approach to Rule 26(a)(1) disclosures reflects a striking failure by Plaintiffs to comply timely and fully with their discovery and disclosure obligations.

[8] The 1995 stabbing incident, as well as the resulting arrest, conviction, imprisonment, release and exoneration of al-Hindi, Shaher al-Rai and Yousef al-Rai, received world-wide media attention, including reports on CNN and other television media.  Indeed, in July 2012, Plaintiffs sent Defendants an email with links to certain such media reports.

Moreover, even if Plaintiffs were not aware of Mr. al-Hindi in July 2012, when they made disclosures to Defendants about the 1995 incident in which Mr. Al-Hindi had publicly been implicated, they were eliciting testimony about him before receiving the inadvertently disclosed privileged document.  On September 6, 2012, Plaintiffs took the deposition of Jawad Amawi, a Palestinian lawyer who defended one of the other PFLP members originally implicated in the 1995 incident.  In response to Plaintiffs' questioning during the deposition, Mr. Amawi described Mr. al-Hindi by name, and noted that it was his confession that had implicated a number of PFLP members in the 1995 shooting.  *See* Exhibit 4 (September 6, 2012 Deposition of Jawad Amawi) at 55:2-8.  During that same deposition, Plaintiffs went on to question Mr. Amawi for pages about other aspects of the 1995 incident.  *Id.* at 54:7-62:15.

In light of this deposition testimony, Plaintiffs' belated claim about having supposedly learned of Mr. al-Hindi because of an inadvertent disclosure should be recognized for what it is: A blatant falsehood designed to keep discovery alive by trumping up the supposed importance of an inadvertently disclosed document that they should not be referencing at all.  Plaintiffs almost certainly knew about Mr. Al-Hindi's involvement in the Qalqilya PFLP years or at least months before the inadvertent disclosure occurred, and they conducted deposition questioning about him, by name, almost a week before they ever received the inadvertently produced document.  Given this reality, there is no credible excuse for waiting until December 2012 to invoke the Hague Convention process to seek his deposition and then blaming their own tardiness on the inadvertent disclosure.

Finally, and perhaps most importantly, there is no compelling reason to keep discovery open so that Plaintiffs can depose Mr. al-Hindi.  Plaintiffs do not even allege that Mr. al-Hindi himself knows anything about the bombing that is at issue in this case.  Moreover, Plaintiffs have

produced no evidence indicating that Mr. al-Hindi was ever implicated in that bombing; in fact, it appears that he was incarcerated at the time it occurred.  Nor have Plaintiffs produced evidence that al-Hindi was ever charged, let alone convicted, by the Israelis for any involvement in the bombing.  Indeed, the publicly available 2010 newspaper article described above notes that Mr. al-Hindi was serving three prison sentences in Israel, none of which related to the instant bombing.  *See* Exhibit 3 (describing the three incidents for which Mr. al-Hindi was serving prison time in Israel as of December 2010).  Given al-Hindi's multiple convictions, it is logical to presume that the Israeli government would have charged him if they even suspected him of involvement in the bombing.  Accordingly, there is no reason to believe that Mr. al-Hindi, even if summoned to testify, would give testimony in this case, let alone testimony supportive of Plaintiffs' theory.  At most, then, Mr. al-Hindi is a tangential figure who, according to Plaintiffs, knew someone who knew the bomber.  Even a timely request for such a deposition would have been objectionable.  Raised three months after the close of fact discovery, when Plaintiffs clearly knew of his existence before the deadline expired, there is no basis for granting Plaintiffs' request to depose Mr. al-Hindi.

**D.      Plaintiffs' Request To Take Additional Rule 30(b)(6) Depositions, Beyond The Five They Have Already Taken, Should Be Denied.**

Once again, Plaintiffs rely on a previously-filed motion and stale arguments to claim that Defendants have not met their obligations pursuant to Rule 30(b)(6).  *See* DE 202-1 at 23-34. These Rule 30(b)(6) depositions are already the subject of pending motion to compel by Plaintiffs, DE 181.  As Defendants have shown, Plaintiffs motion relating to the Rule 30(b)(6) depositions lacks merit because they have already secured thirty hours of deposition testimony provided by the five organizational deponents – on all proper topics in their deposition notices. DE 199 at 15-23.  In fact, although they do not acknowledge it in their earlier motion or this one,

Plaintiffs were permitted to ask questions of these witnesses on *all* topics in the notices without restriction, even though many of the topics contained in their notices were indefensibly broad and not the proper subject of depositions in the first place.  *See id.*  In short, Plaintiffs have no legitimate complaints about the Rule 30(b)(6) process.

In this latest filing, Plaintiffs repeat some of their groundless arguments from the earlier motion, continuing to insist that Defendants must produce deponents to testify on topics related to document destruction (category 17 from their 30(b)(6) deposition notice) and to provide background information about every single document produced by Defendants in discovery, regardless of whether Plaintiffs intend to use those documents at trial (category 18).  DE 202-1 at 23-34.  Those arguments fare no better in the second telling; they lack merit for all the reasons discussed in Defendants opposition to Plaintiffs' earlier motion.   *See* DE 199 at 19-22.

There is one point to update on this subject, though.  After briefing had occurred on the earlier motion, Defense counsel offered to work together with Plaintiffs' counsel on any issues related to the authentication of documents Plaintiffs might use at trial:  "As for authentication issues, [Defendants] are willing to engage in a mutual process, as to a reasonable number of selected documents from each side's respective disclosures and productions, by which the parties would discuss authenticity issues relating to those documents and any possible stipulations related thereto."  DE 202-17 at 2 (December 12, 2012 Email from C. McAleer to D. Schoen). Plaintiffs refused to participate in the process invited by Defendants, stating that they do not believe the process could be "satisfactory" to them unless it involves *all* of the documents.  *Id.* at 1 (December 12, 2012 Email from D. Schoen to C. McAleer).  As a result, it is apparent that Plaintiffs' request for a deponent to discuss the origin of every document produced in discovery by Defendants has nothing to do with streamlining legitimate authenticity issues, but is merely

an attempt to subject Defendants to more burdensome 30(b)(6) depositions with no legitimate purpose whatsoever.

Indeed, burden-without-purpose is an apt summary of all of Plaintiffs' newly raised issues about the 30(b)(6) motions – issues that were so lacking in merit that Plaintiffs did not even bother to include them in their earlier motion (DE 181) addressing supposed flaws in the Rule 30(b)(6) process.  Suffice it to say that these issues fare no better than other complaints made by Plaintiffs about the 30(b)(6) depositions.  On this point, the Court should note that Plaintiffs' new complaints are that the Rule 30(b)(6) testimony they have admittedly received on the designated topics was imperfect in some respect.  But the law is clear that Rule 30(b)(6) deponents need not have perfect knowledge; they need only have "reasonable" knowledge, which does not equate to knowing every detail concerning every topic requested by the deposing party.  *See Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 375-76 (D.D.C. 2007) (denying plaintiffs' motion for sanctions and finding that Rule 30(b)(6) deponents do not need to conduct "detailed independent investigations beyond what is reasonably known to the company" because doing so "would be to investigate Plaintiff's case for him").  In addition, the Rule 30(b)(6) deponents need not duplicate information already provided through other discovery mechanisms, especially if those mechanisms (usually interrogatory answers) constitute a more efficient way to provide the information.  *See* DE 199 at 17-19 (citing *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162 (D. Del. 2001) and *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 U.S. Dist. LEXIS 667 (N.D. Ill. Jan. 21, 2000)).

As demonstrated below, these two legal principles completely undermine Plaintiffs' arguments.  Plaintiffs received everything to which they were entitled:  Reasonably

knowledgeable deponents as to each proper deposition category, and all discoverable information, provided to them through the most efficient means.

Rule 30(b)(6) Deposition Topic No. 10: Deposition Topic 10 related to every aspect of Raed Nazal's employment with the PA over an eight year period. In response, Defendant PA prepared and produced three separate designees on this topic – Nadime Barahme, Ibrahim Dahbour and Raed Taha.[9] In addition, Defendants provided a substantive answer to Plaintiffs' Interrogatory No. 3, which sought "all information concerning Raed Nazal." *See* DE 199-7 at 15-17. Defendants also produced responsive, non-privileged documents in their possession relating to Raed Nazal, including documents from GIS and military finance departments. Despite this, Plaintiffs claim that the PA did not properly prepare its designees on Topic No. 10. *See* DE 202-1 at 23-26. Plaintiffs are wrong. Ibrahim Dahbour testified about Raed Nazal's employment, explaining that he was "one of the people who were recruited" by the PA "in order to distance them from armed activity." *See* DE 202-5 at 8 (53:6-12). Mr. Dahbour further verified that Raed Nazal did not work in the PFLP office in Qalqilya and that he does not currently receive "any salary or allowances." *Id.* at 8 (53:3-16). Raed Taha likewise testified that Raed Nazal was a "military" employee and "part of the people that were recruited to the security organs that would be rehabilitated." *See* DE 202-15 at 80 (80:16-24). Mr. Taha also confirmed that Raed Nazal was "on the PA payroll" but he "did not dress up in military uniform." *Id.* at 80-81 (80:24-25; 81:4-5). Nadime Barahme similarly testified that Raed Nazal

---

[9] Defendant PA also made clear in their objections to the second amended notice, served August 10, 2012, that Plaintiffs' request for a designee to testify concerning the "full details" of Raed Nazal's employment with the PA, which began and ended more than a decade ago, was overly broad and unduly burdensome. *See* DE 199-1 at 4 (Objection No. 4).

did not "work" at PA national security but did receive pay.  *See* DE 202-14 at 112-13 (112:21-113:2).[10]

Accordingly Defendant PA properly prepared three separate Rule 30(b)(6) designees to testify concerning Raed Nazal's employment with the PA, which consisted of being brought into the security services as part of a program to rehabilitate potential militants.  That is the extent of Raed Nazal's employment, and Defendant PA has no obligation to tender a witness who can answer every single question Plaintiffs' counsel could come up with during a deposition.  *See Banks*, 241 F.R.D. at 375-76.

Rule 30(b)(6) Topic Nos. 1 and 2:  Defendant PA and PLO each produced a designee to provide testimony on two overly broad Rule 30(b)(6) topics seeking the "full details" of the PA's or PLO's "provision of material support or resources" to the PFLP.  *See* DE 202-1 at 26. Defendants objected to these topics not only because of their cumulative 18-year time frame, but also because, by seeking testimony concerning Plaintiffs' legal theory of "material support," they improperly attempt to elicit a legal conclusion and to convert a Rule 30(b)(6) deposition into a testimonial form of request for admissions.  *See* DE 199-1 at 4 (Objection No. 6); *see also, e.g.*, *JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means.").

---

[10] Plaintiffs also claim that there is a "contradiction" between Mr. Barahme's testimony and the PA's interrogatory answer.  This is false.  Mr. Barahme did not testify, as Plaintiffs state, that Raed Nazal "reported to work."  *See* DE 202-1 at 24.  Rather, Mr. Barahme testified that Raed Nazal was simply present at the offices.  *See* DE 202-14 at 113 (113:1-5) (stating that Raed Nazal "is there [general headquarters] because he is existing.").  He never said that Raed Nazal was reporting to work.

Defendants also answered an interrogatory on this same issue, in which both the PA and PLO stated that, based on a reasonable search of its records, the PA and PLO have not identified any transfer of money from the Ministry of Finance of the PA to the PFLP or the Palestine National Fund ("PNF") to the PLFP.  *See* DE 199-7 at 7-9.

Nonetheless, each Defendant produced a witness to testify about alleged funds provided to the PFLP or its members.  Nadime Barahme testified extensively about payments of rent for the PFLP office in Qalqilya.  *See* DE 202-14.  Moreover, Mr. Barahme answered broad questions about PA funds and explained the PA basic laws and how they relate to the establishment of political parties.  *Id.* at 32-35 (32:7-35:15).  Plaintiffs complain about Mr. Barahme's preparation for the deposition, which consisted of reviewing the rent contract for the PFLP office in Qalqilya and twice meeting with Defense counsel, but fail to acknowledge that, as former legal advisor to the PA Minister of Finance, Mr. Barahme was a proper designee on these issues given his prior experience and significant organizational knowledge.[11]  Mr. Barahme also confirmed with the PA Ministry of Finance that searches were conducted for documents responsive to Plaintiffs' requests for production related to financial matters.  *Id.* at 47-49 (47:9-49:2).  Similarly, Yasser Shaqbu'a, the general accountant for PNF, testified at length concerning PLO finances and alleged provision of funds by PNF to the PFLP, which did not occur during the relevant time period.  *See* DE 202-16.   Plaintiffs complain about Mr. Shaqbu'a's preparation for his deposition, but they neglect to cite his testimony concerning his searches of PNF records regarding any alleged payments to the organizations and individuals listed in Plaintiffs' requests

---

[11] Plaintiffs claim that PA Rule 30(b)(6) designee Mr. Barahme gave testimony contradictory to that provided by PLO Rule 30(b)(6) designee Yasser Shaqbu'a.  *See* DE 202-1 at 27.  This is false and misleading.  Mr. Barahme's testimony about what is "within the realm of the PNF," *see id.*, does not relate to his knowledge of the PA or its finances.  As solely a PA designee, he was not designated to provide information concerning the PNF at all.

for production.  *See* DE 202-16 at 69-79 (69:14-79:20).  In that testimony, Mr. Shaqbu'a details

his searches of PNF records for alleged payments to the identified organizations and individuals

from July 1993 through December 31, 2007.  *Id.* at 72 (72:7-15).  Mr. Shaqbu'a did not locate

documents reflecting payments to the PFLP-related individuals and organizations listed by

Plaintiffs in their requests for production.  *Id.* at 72 (72:16-20).[12]

 Rule 30(b)(6) Topic Nos. 19 (PA) and 8 (PLO):  Topic Nos. 19 (PA) and 8 (PLO) each

seek testimony concerning the "full details" of "any and all searches" that the PA and PLO

conducted to find responsive information.  DE 202-1 at 29-30.  On these topics, Plaintiffs have

already received more than sufficient information through less burdensome forms of discovery,

which satisfies Defendants' discovery obligations.  *See Novartis Pharms. Corp.*, 203 F.R.D. at

162; *Smithkline Beecham Corp.*, 2000 U.S. Dist. LEXIS 667, at *26-28.  In response to

Interrogatory No. 9, which asks the PA and PLO to provide identical information concerning

searches, the PA stated that it "conducted extensive factual and documentary searches at the

direction and/or request of counsel to identify information and documents that might be

responsive to Plaintiffs' discovery requests."  *See* DE 199-7 at 32.  The PA further explained that

"[t]hose searches have included searches for potentially responsive records, if any, in the PA

Ministry of Finance, the PA Central Financial Directorate, the Presidential Archives, the PA

Ministry of Detainees and Ex-Detainees Affairs, the PA Office of Military Justice, the PA

General Intelligence Service, the PA Preventive Security Service, the PA National Security

Forces and WAFA."  *Id.*  The PLO stated that it "conducted extensive factual and documentary

---

[12] Plaintiffs complain that Mr. Shaqbu'a did not search PNF "records located in other countries."  *See* DE
202-1 at 28.  However, Plaintiffs fail to point to anything that would explain how or why records
concerning PLO missions around the world would include financial information relevant to their claims in
this case.  Indeed, the individuals and organizations Plaintiffs have alleged to be involved in this bombing
are located in Palestine.

searches at the direction and/or request of counsel to identify information and documents that might be responsive to Plaintiffs' discovery requests." *Id.* at 33.  The PLO added that "[t]hose searches have included searches for potentially responsive records, if any, in the Palestine National Fund." *Id.*

**E.      Plaintiffs' Duplicative Request To Depose The Five "Untimely-Disclosed" Witnesses Should Be Denied.**

The Court should likewise deny Plaintiffs' serial request to conduct depositions or exclude the testimony of five people that were supposedly "untimely disclosed" in discovery by Defendants.  See DE 202-1 at 34-35.  Like many of the others, this discovery request is already the subject of a discovery motion filed by Plaintiffs.  That motion is pending (because it was not fully briefed as of the December 7 status conference), DE 175, and should be denied for all of the reasons already stated in Defendants' opposition to that motion.  DE 191.  As demonstrated in the opposition, Defendants have fully complied with their discovery and disclosure obligations regarding the five persons identified in Plaintiffs' motion; Defendants timely identified each individual in answers to interrogatories that Plaintiffs deliberately chose to serve on the last possible day of the twelve-month fact discovery period.  DE 191 at 15-29.  In addition, it is not even clear that Defendants were required to disclose the names of these individuals at all; Defendants identified those five persons primarily as potential impeachment or rebuttal witnesses, and also out of an abundance of caution, particularly given the hidden and obscure nature of Plaintiffs' claims and allegations in this case.  In short, depending on how Plaintiffs' case unfolds, these individuals may never serve as witnesses.  Finally, to the extent the Plaintiffs would have desired earlier disclosure, they should have avoided the strategy of waiting until the last day possible to initiate core written discovery, which prompted the disclosure.  *See* DE 191 at 1-5, 15-29.

**F.**     **Plaintiffs' Request To Depose Individuals Who Prepared Responses To Interrogatories Should Be Denied.**

In addition, the Court should deny Plaintiffs' request to depose the persons who prepared responses to Plaintiffs' interrogatories.  DE 202 at 35-36.  How Defendants went about preparing their interrogatory responses is within the "zone of privacy" protected by the work product doctrine, and is not a permissible subject of discovery for that reason.  *See Duran v. Andrew*, Misc. No. 09-730, 2010 U.S. Dist. LEXIS 33178, at *15 (D.D.C. Apr. 5, 2010) (recognizing that the work product doctrine is meant to create a "zone of privacy for strategic litigation planning").

With this request, Plaintiffs do not seek factual information to which they are entitled under the rules of discovery, but instead seek to discover the mental impressions, litigation strategies, and legal theories of Defendants' counsel.  This is so because preparation of interrogatory responses requires a great deal of interaction between client and counsel, and depends extensively upon the judgment and mental impressions of counsel concerning the client's case.  Thus, as the court recognized in *Weiss v. Nat'l Westminster Bank, PLC*, "requiring [a litigant] to reveal the identities of individuals who assisted them with their interrogatory responses could easily reveal every person whom [the litigant] or [its] agents ha[s] contacted, interviewed or communicated with concerning [the litigant's] allegations in [the] case, or even which persons [the litigant] believe[s] to have the most relevant information."  242 F.R.D. 33, 62 (E.D.N.Y. 2007).  Accordingly, a request such as this should be "denied because it seeks information regarding individuals who assisted [Defendants'] counsel with the preparation of their interrogatory responses, which is protected work product."  *Id.*

**G.**   **The Court has Already Rejected the Plaintiffs' Attempt to Secure A General Enlargement of the Fact and Expert Discovery Deadlines And It Should Do So Again.**

The Plaintiffs' motion also contains the same remedial request for an enlargement of the fact and expert discovery period contained in each of the five discovery motions that Plaintiffs began filing thirty-days *after* the September 19, 2012 fact discovery deadline.  *See* DE 168, 169, 172, 175, 181.  In fact, the first two of those motions, which Plaintiffs did not file until the day their expert witness disclosures were due and thus were the only such motions Plaintiffs technically filed before their expert witness disclosure deadline expired, were both denied by the Court prior to Plaintiffs' filing of the present motion.  *See* DE 168 at 19-21 (seeking to indefinitely extend October 19, 2012 expert discovery deadline on ground that fact discovery not yet complete); Minute Order of December 8, 2012 (denying DE 168); DE 169 at 7-10 (seeking to indefinitely extend October 19, 2012 expert disclosure deadline on ground that fact discovery not yet complete); Minute Order of December 8, 2012 (denying DE 169).[13]  Not only does the Plaintiffs' instant request ignore these intervening court orders, it likewise ignores the fact that the Court clearly decreed during the December 7, 2012 hearing that fact discovery and expert discovery are closed, and that any remaining discovery requests would require a compelling justification.

It is also worth noting that the Plaintiffs make the same incorrect argument about the expert disclosure date coming 30 days after the "completion of fact discovery," which omits the word "deadline" that appears in this Court's scheduling order.  This is no less than the *sixth* time

---

[13] With the Court's denial of DE 168 and 169, there is no motion pending before the Court that was filed by Plaintiffs before the expiration of the fact discovery or expert witness deadlines seeking extensions of those deadlines.  On that basis alone the Court should deny Plaintiffs' request now for *post factum* extension relief.

the Plaintiffs have made this less than fully honest argument (with the Court having already denied multiple motions containing that same argument).  *See* DE 191 at 29-30 (explaining how Plaintiffs' argument relies on mischaracterization and omission of language from scheduling order).

Plaintiffs, who never directly moved to extend the fact or expert discovery period prior to the expiration of those deadlines, and who deliberately chose not to serve expert witness disclosures as to liability by the October 19, 2012 deadline, do not come close to satisfying the standard articulated by the Court for additional discovery.  As to the fact deadline, we have described above why all of the latest discovery requests lack merit.  As to the expert deadline, nothing Plaintiffs have identified as a purported discovery failing of the Defendants should have precluded the Plaintiffs from timely filing expert reports covering all of the areas they believed would support their case-in-chief.  Nowhere in any of the multiple filings on this topic did Plaintiffs even attempt to explain how or why any liability experts they had retained (including the two who had attended September 2012 depositions in this case) could not have issued expert reports based on whatever expertise they have and whatever information they had been given, including whatever information formed the Rule 11 basis of the allegations Plaintiffs made over ten years ago in filing this lawsuit against Defendants.[14]  Plaintiffs have no excuse for simply ignoring the Court ordered deadline.  They should have served reports on October 19, 2012, filed their motions to compel and argued for a right to *supplement* their reports.  Instead, Plaintiffs ignored the deadline, arrogated an extension to themselves and then backfilled their actions by filing serial motions to compel, none of which had any merit.

---

[14] Of course, Defendants did not receive that information from Plaintiffs during the fact discovery period because Plaintiffs refused to answer substantively a single interrogatory propounded by Defendants, including interrogatories seeking the factual basis for the allegations contained in the Complaint.

Another District Court has had the opportunity to assess exactly this kind of conduct and has found it unacceptable, in a case involving the same counsel.  Some of the Plaintiffs' counsel here, including lead counsel, Mr. Tolchin, and his Israeli co-counsel, Mr. Mordechai Haller, were also counsel in a similar ATA litigation against Defendants in Florida, *Saperstein v. Palestinian Authority,* Southern District of Florida Case No. 04-CIV-20225 (Seitz/O'Sullivan).   In *Saperstein,* as in this case, Plaintiffs' counsel made the same sort of burdensome, irrelevant discovery demands as they make here, pointed to non-existent discovery "failings" as an excuse not to serve timely  expert disclosure, and informed the Court that it *must* permit late disclosure because Plaintiffs' counsel had supposedly missed those disclosure deadlines in good faith.[15] The district court in *Saperstein* emphatically rejected that deliberate, tactical and tardy gambit by Plaintiffs' counsel, as follows:

> A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); [citation omitted].  The "good cause" standard in an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension."   Fed. R. Civ. P. 16(b) advisory committee's note.  The record indicates Plaintiff has not been diligent in pursuing discovery and therefore has not met the "good cause" standard. . . . Plaintiff's expert disclosures were due on March 10, 2012, but no disclosures were served at that time.  Instead, Plaintiff filed a motion requesting an indefinite extension of time to make his expert disclosures.  Plaintiff proffers as an explanation for his failure to serve expert disclosures, that he is "unable to determine which experts they [sic] require" because of discovery disputes with Defendants and because he awaits the aforementioned third-party discovery.  But, Plaintiff easily could have identified a number of experts whom he potentially would call to testify without actually knowing which of those experts would ultimately testify.  This is because even without the additional discovery Plaintiff knows the substance of the discovery he requires.  Thus, there is no need for Plaintiff to wait for the additional discovery before designating experts.   Plaintiff chose not to designate his experts, which is not compatible with a finding of diligence.

---

[15] Plaintiffs' counsel filed an actual motion in *Saperstein* to extend the expert disclosure deadline, albeit only two days before the deadline.  As noted above, Plaintiffs' counsel here did not even bother to do that.

If Plaintiff believed he needed additional time within which to receive third-party discovery or make expert disclosures, it was incumbent upon him to file a motion well in advance of the deadline.  While working out discovery disputes without Court intervention is preferable, waiting until just two days before the end of the discovery period to resolve the disputes through the Court is not efficient or helpful in keeping the case on track.  Furthermore, had Plaintiff been diligent earlier in the discovery period, Plaintiff would not need Court intervention.  Therefore, any resulting prejudice was caused by Plaintiff.

"Order Denying Motions to Extend Dates" in *Saperstein*, at pp. 1-2, 3-4 (April 13, 2010) (DE 425) (denying plaintiff's motion to extend expert witness disclosure deadline) (attached as Exhibit 5); *see also* "Order Granting Defendants' Motion to Strike Plaintiffs' Rebuttal Expert Disclosures" in *Saperstein* (May 14, 2010) (DE 464) (attached as Exhibit 6) (striking plaintiff's later "disclosure" of potential rebuttal experts because of failure to comply with the Court's Scheduling Order or Fed. R. Civ. P. 26(a)(2)(B)).[16]

This Court should have no more sympathy for Plaintiffs' counsel's ignore-the-expert-deadline-and-demand-an-extension-afterward strategy the second time around.   Indeed, the situation here is even worse.  Unlike their actions in *Saperstein*, Plaintiffs' counsel never directly moved for extension of the fact discovery deadline or the expert witness disclosure deadline, despite numerous threats to do so over many months.  *See* DE 173 at 7-9 (detailing Plaintiffs' numerous threats to pursue extensions).  The most Plaintiffs did was to file two motions to compel on the day of the expert witness disclosure deadline, wrapping into those motions, as an element of additional relief, a contrived (and unsupported) request to extend the expert witness

---

[16] When the district court refused to allow its deadlines to be ignored with impunity, Plaintiffs' counsel voluntarily dismissed the case in September 2010 because of their inability to prove their claims against Defendants.  *Saperstein* Stipulation of Dismissal (Oct.11, 2010) (DE 543); *Saperstein* Final Order of Dismissal With Prejudice (Oct.12, 2010) (DE 544).  Plaintiffs' attempt to appeal their own dismissal with prejudice was twice rejected by the U.S. Court of Appeals for the 11th Circuit.  *See Saperstein v. Palestinian Authority*, No. 10-15262 (11th Cir., Sept. 29, 2011) (Order of Dismissal, dismissing appeal for lack of jurisdiction); *id.* (Jan. 13, 2012 Order denying petition of panel rehearing, construed as a motion for reconsideration of the September 29, 2011 Order).

deadline as to liability experts.  Just as occurred in *Saperstein*, this Court should hold Plaintiffs to the consequences of their improper, deliberate tactics.

**<u>CONCLUSION</u>**

For whatever reason, Plaintiffs wasted almost the entirety of a year-long fact discovery period.  Indeed, the bulk of the paper discovery was served on the last day possible, and no depositions were taken until two weeks before the September 19, 2012 deadline.  Plaintiffs then abused their October 20, 2012 obligation by simply declining to file expert reports on liability rather than asking beforehand for relief from that responsibility.  In the adversary process, it is the case and not the cause that dictates the rules by which the parties must comport themselves. Once a litigant arrogates unto himself the presumption of entitlement over his duty of responsible conduct in the adversary process, nothing good should come of it.

Plaintiffs have failed to make a case of PA/PLO liability; and they know it.  They also know they are not entitled to an extension of the fact or expert discovery deadlines after having squandered a year-long discovery period, which explains why they haven't even filed a motion seeking such an extension.  Instead, they are pulling out all the stops to gain a discovery extension *indirectly*, as a result of a supposed litany of discovery "violations." Thus, a veritable seven inch blizzard of motions during the past months has recurred in this 466 page motion. Already the Court has denied a number of the piece-meal efforts.  No better outcome is warranted for any element of this repackaged submission.

Dated:  December 21, 2012                    Respectfully submitted,


                                            /s/ Richard A. Hibey
                                            Richard A. Hibey (No. 74823)
                                            Mark J. Rochon (No. 376042)
                                            Charles F. B. McAleer, Jr. (No. 388681)
                                            Timothy P. O'Toole (No. 469800)
                                            MILLER & CHEVALIER CHARTERED
                                            655 15th St., N.W., Suite 900
                                            Washington D.C.  20005-6701
                                            (202) 626-5800 (telephone)
                                            (202) 626-5801 (facsimile)

                                            *Attorneys for Defendants The Palestine Liberation
                                            Organization and The Palestinian Authority*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 21, 2012, a true and genuine copy of the

foregoing was served via ECF on the following:

> Robert J. Tolchin
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
> rjt@tolchinlaw.com
>
> David I. Schoen
> 2800 Zelda Road, Suite 100-6
> Montgomery, AL 36106
> dschoen593@aol.com
> Schoenlawfirm@gmail.com
>
> *Attorneys for Plaintiffs*

> /s/ Richard A. Hibey
> Richard A. Hibey