IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:02cv02280 (RJL) |
| ) | |
| THE SYRIAN ARAB REPUBLIC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY**

Defendants The Palestinian Authority ("PA") and The Palestine Liberation Organization ("PLO") (collectively, "Defendants"), by and through counsel, hereby oppose Plaintiffs' Motion for a Stay (DE 212), and state as follows:

**INTRODUCTION**

Plaintiffs seek a stay of enforcement of the Court's minute order of January 2, 2013 pending their interlocutory appeal of that order. Plaintiffs have sought to appeal under the collateral order doctrine. DE 213. Plaintiffs' motion must be denied because it does not meet the demanding two-part test for entry of a stay, which looks to the likelihood of success on appeal and the balance of harms to the parties from the stay.

With respect to the first part of the test, Plaintiffs have no likelihood of success on their interlocutory appeal because the Court's minute order providing relief for the inadvertent production of a privileged document is not subject to interlocutory review under the collateral order doctrine. *See Mohawk Industries v. Carpenter*, 130 S. Ct. 599 (2009) (holding that discovery orders involving claims of attorney-client privilege are not subject to immediate review under the collateral order doctrine). Even in the unlikely event the Court of Appeals were

to exercise jurisdiction, Plaintiffs' appeal lacks merit because the Court's minute order was merely providing Defendants the relief to which they were entitled under Federal Rule of Civil Procedure 26(b)(5)(B) and the Protective Order Regarding Confidentiality of Discovery Material ("Protective Order") entered in this case (DE 157-2 at 9-10).

With respect to the second part of the test, Plaintiffs cannot establish irreparable harm from enforcement of the order to return or destroy the privileged memorandum and related documents. *See* DE 202, Sealed Exhibits C-1, C-2, C-3, and E. A copy of the disputed memorandum itself, a translation thereof, and related deposition excerpt remain on file under seal with this Court and can be secured by Plaintiffs in the unlikely event they ever succeed in overturning this Court's order.

## BACKGROUND

Plaintiffs seek to stay enforcement of the Court's Minute Order of January 2, 2013, granting Defendant PA's Motion for Return or Destruction of an Inadvertently Produced Document (DE 170) ("Motion for Return"), which sought the return or destruction of an inadvertently disclosed privileged memorandum and related documents. Among the relief sought in the Palestinian Authority's motion was an order requiring the Plaintiffs to submit within five business days of entry of the order a declaration certifying the steps they had taken to return or destroy the privileged memorandum and related documents. *See* DE 170 at proposed Order. Because the Court's order was entered on January 2, the Plaintiffs' certification was due January 9.

Rather than filing the certification, on January 9, Plaintiffs' counsel emailed defense counsel late in the afternoon seeking Defendants' consent to a stay of the January 2nd order and, later that day, filed a Notice of Appeal. DE 213. Plaintiffs filed the instant Motion for a Stay the

following day, after the deadline for compliance with the Court's order. Defendants filed a motion to dismiss the Plaintiffs' interlocutory appeal on January 25, 2013.

## ARGUMENT

Although Plaintiffs' motion makes little mention of the exacting standards they must meet to secure a stay pending appeal, those standards are clear: Plaintiffs must show (1) a likelihood of success on appeal; and (2) that the balance of harms points strongly in favor of granting a stay.[1] *See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). Plaintiffs fail on both counts.

### A. The Plaintiffs Have No Likelihood of Success On Appeal Because This Court's January 2, 2013 Discovery Order Is Not Appealable

The dispositive issue for this motion is whether the Plaintiffs can meet the likelihood of success on appeal factor. They cannot. As discussed more fully in Defendants'-Appellees' Motion to Dismiss Appeal (attached hereto as Exhibit 1), there is no appellate jurisdiction over Plaintiffs' appeal, which improperly seeks interlocutory review of a discovery order. The scope of the attempted appeal is clear from its face: Plaintiffs' purport to appeal from "the Minute Order entered in the above-referenced case on January 2, 2013." DE 211 at 1. As Plaintiffs' admit, that Minute Order resolved a number of their serial discovery motions (DE 189, DE 201, and DE 202), as well as Defendant PA's Motion for Return (DE 170). Plaintiffs' appeal goes on to discuss why they believe those rulings were important, and then suggests that the order is appealable under the collateral order doctrine set forth in *Cohen v. Beneficial Industrial Loan*

---

[1] The second prong includes analysis of whether the petitioner has shown irreparable harm, whether the issuance of a stay would substantially harm other parties interested in the proceedings, and where the public interest lies. *See Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843; *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925.

*Corp.*, 337 U.S. 541 (1949).  However, Plaintiffs' suggestion that any aspect of this Court's January 2, 2013 discovery order is appealable finds no basis in the law and borders on the frivolous.

The long-standing general rule is that discovery orders are not appealable.  As the D.C. Circuit explained in *McKesson Corp. v. Islamic Republic of Iran*:

> Orders refusing to find discovery violations, like other discovery orders, are interlocutory. They do not finally end the litigation. They are generally reviewable after final decision. If the final decision is favorable to the movant, they may never become the subject of an appeal. For these reasons and others, discovery orders are not usually appealable until the litigation has finally ended.

52 F.3d 346, 353 (D.C. Cir. 1995).  Neither Plaintiffs' motion nor Plaintiffs' notice of appeal even acknowledges this general rule.  However, Plaintiffs' notice does reflect some awareness that the grounds for appeal are tenuous, as they suggest that this Court's resolution of an attorney-client privilege issue as part of these discovery rulings is what makes them all appealable.  But this argument can fare no better, particularly in light of *Mohawk Industries v. Carpenter*, 130 S. Ct. 599, 606-07 (2009), where the Supreme Court makes clear that discovery orders resolving attorney-client privilege issues fall squarely within the general rule.

The Supreme Court's decision in *Mohawk* defeats any argument Plaintiffs might assert for appellate jurisdiction.  *Mohawk* establishes, beyond dispute, that the sort of discovery orders Plaintiffs seek to appeal from here, including the portion of the order pertaining to the inadvertently produced privileged memorandum, are only appealable at the end of the litigation, and do not fall within the *Cohen* rule cited by Plaintiffs in their motion and notice of appeal.  As *Mohawk* also makes clear, Plaintiffs cannot properly engage in the sort of "individualized analysis" reflected in their notice of appeal; rather, their only avenue for immediate review was to seek certification from the Court under 28 U.S.C. § 1292(b), or to seek the extraordinary

remedy of mandamus.  They did not pursue either route, presumably because they cannot come close to showing that anything about this Court's ruling was "novel," much less extraordinary or in excess of jurisdiction.[2]

Finally, even if the jurisdictional hurdle were not fatal to the appeal, Plaintiffs have no likelihood of success on the merits because this Court's discovery ruling is entirely correct.  As a threshold matter, the Plaintiffs have procedurally defaulted the issue that they seek to appeal.  As the docket and minute order reflect, Plaintiffs, having been granted an extension of time to file their response to the Palestinian Authority's Motion for Return, failed to timely file on the extended deadline, and the Court denied their Motion for Leave to File Instanter.  *See* DE 179, 189; Exhibit 2 (Minute Order).  Plaintiffs thus appeal from a discovery order granting a motion that was, technically, unopposed.  There is no likelihood of success in such an appeal.

Even if Plaintiffs had filed a timely opposition, it would have been groundless.  Based on the pleadings filed before this Court, there can be no legitimate dispute that Defendants' counsel inadvertently provided to Plaintiffs' counsel an April 2012 Palestinian Authority memorandum protected by the attorney-client privilege and work product doctrine.  Within hours after the disclosure and only minutes after learning of it, defense counsel confirmed that the disclosure had been inadvertent, stated the basis for the claim of privilege, and, invoking Federal Rule of Civil Procedure ("Rule") 26(b)(5)(B), demanded sequestration and no further use of the document pending this Court's resolution of the privilege dispute.  There can also be no legitimate dispute that both Rule 26(b)(5)(B) and the Protective Order entered in this case by the

---

[2] At the very end of their motion, starting on page 34, Plaintiffs claim that, alternatively, they meet the standard for mandamus review – a review they have yet to seek.  For the reasons set forth in this opposition and in Defendants' briefing on the discovery issues resolved by the Court's January 2, 2013 minute order, *see* DE 170, 173, 185, 191, 198, 206 and 207, any prospective petition for mandamus review would inevitably fail.

Court (DE 157-2), compelled the return of the document and the destruction of any materials derived from it. After repeated requests, Plaintiffs declined to comply with their obligations under Rule 26(b)(5)(B) and the Protective Order. The Palestinian Authority then filed a Motion for Return seeking return of the privileged memorandum and for the destruction of any documents making use of the privileged memorandum (translations, summaries, etc.) in violation of Rule 26(b)(5)(B). DE 170. Because Defendants were plainly entitled to the relief sought in the motion under both Rule 26(b)(5)(B) and the Protective Order, this Court did not err in granting it.

In sum, Plaintiffs appeal from a minute order granting a motion they did not timely oppose which sought the very relief for the inadvertent disclosure of a privileged document that is provided for in the Protective Order entered in the case and in the Federal Rules of Civil Procedure. Even if the Court of Appeals had jurisdiction to review it at this juncture – which it does not – Plaintiffs' appeal is entirely without merit and thus fails the initial stay factor.

>   **B.   The Balance of Harms Weighs Strongly in Favor of Denying Plaintiffs'
>         Request for a Stay or Injunction Pending Appeal**

Contrary to Plaintiffs' assertions in their motion, they will suffer no cognizable, much less irreparable, harm by waiting until final judgment before appealing the Court's January 2, 2013 minute order. There is no danger at all of the inadvertently produced privileged document being irrevocably destroyed – both the Court, *see* DE 202 at Exhibits C-1 and C-2, and Defendants maintain a copy of the document. Moreover, as discussed below, Plaintiffs cannot be seen to suffer any harm through the required destruction of their "notes and summaries" and "research" based on the privileged and protected document. Plaintiffs' creation and potential use of those materials constitute a breach of their obligations under Rule 26(b)(5)(B) and the Protective Order entered by the Court in this case. Defendants, on the other hand, are likely to

suffer ongoing harm if this Court grants Plaintiffs' their requested stay and tacitly allows them to continue to use and publicize their distorted view of the contents of an attorney-client privileged and work product protected memorandum.[3]

Indeed, having now failed in their attempts to take advantage of the inadvertent disclosure of a privileged and protected document, Plaintiffs have abandoned all pretense of abiding by their professional and legal obligations relating to its return or destruction. Plaintiffs fill their motion with hyperbolic and inaccurate characterizations of the privileged document, including claims that it "establishes defendants' direct involvement in a terrorist bombing" and stands as "evidence of a crime which was investigated by the FBI." DE 212 at 5. Not satisfied with mischaracterizing the contents of the document itself, Plaintiffs take out their frustrations on Defendants as well, claiming that Defendants secured the Court's January 2nd order by "underhanded" means and "through material misrepresentations of fact intended corruptly to ensure the destruction of this evidence." *Id.* Moreover, Plaintiffs claim that Defendants' successful attempt to secure the return or destruction of the inadvertently produced privileged document is "a crime under 18 U.S.C. § 1512(c) . . . and perhaps other obstruction statutes." *Id.*

Defendants do not intend to rise to this bait. Defendants and their counsel have fully briefed the nature of the September 12, 2012 inadvertent disclosure and the privileges and

---

[3] This document has already been the subject of news stories in the United States and Israel brought on by Nitsana Darshan-Leitner, Esquire, whose organization, Shurat HaDin, is responsible for this lawsuit and other similar lawsuits in United States courts. On January 14, 2013, Shurat HaDin posted a press release to its website mischaracterizing the content of the privileged and protected memorandum and indicating that Plaintiffs have made calls to "the Department of Justice, the FBI and several congressmen asking them to intervene in the matter" of the Court's January 2, 2013 ruling. *See* Exhibit 1 (Motion to Dismiss Appeal) at Exhibit 4 (Jan. 14, 2013 Shurat HaDin Press Release). In addition, Ms. Darshan-Leitner has been identified in articles and a personal interview referencing the document and the Court's ruling. She recently sat for a radio interview in which she mischaracterizes the content of the document, criticizes the Court's January 2nd order, and calls on the radio show's listeners to act. *See* Jan. 16, 2013 Interview of N. Darshan-Leitner discussing the document at issue and the Court's January 2, 2013 minute order (located at http://www.youtube.com/watch?v=HdZZA_JaiZA, last accessed on Jan. 27, 2013).

protections that apply to the document in question. *See* DE 170 and 198. Defendants supported their briefs with sworn affidavits from the author of the document and the attorney responsible for the inadvertent disclosure, with the directly applicable provision of the Protective Order, and with applicable Federal Rules and case law. Quite simply, Defendants' briefs demonstrate that this was precisely the type of discovery dispute that could have been avoided had Plaintiffs simply complied, in good faith, with their obligations under this Court's governing order and the discovery rules by returning the inadvertently produced privileged document to Defendants when asked during the September 12th deposition.

Remarkably, despite the numerous substantive representations in their Motion and previous attempts to use the contents of the document to their advantage, Plaintiffs claim that they "have maintained the document and all of its facts in sequestration pursuant to the provisions of Federal Rule of Civil Procedure 26(b)(5)(B) and the parties' agreement on the record at the [Ibrahim] Dahbour deposition and have complied with the federal rules." DE 212 at 4. This is not true. *See, e.g.*, *supra* at 7 n.3. Though they have breached them at every turn, Plaintiffs have shown in their motion they know their legal obligations. Rule 26(b)(5)(B) makes clear that upon being notified of the claim or privilege, a party "must not use or disclose the information until the claim is resolved." Hence, even in failing to return the document, Plaintiffs were still prohibited from using it. The rule makes clear that in addition to not using the document, the Plaintiffs were also obligated to "take reasonable steps to retrieve the information if [they] disclosed it before being notified."

Similarly, Paragraph 9 of the Protective Order, entitled "Preservation of Rights and Privileges," expressly governs any party's inadvertent disclosure of allegedly privileged or protected materials and states that the "return of purported protected material shall not waive a

party's right to challenge the claim of privilege and/or exemption, but such challenge shall neither (a) be based in any way on the fact of the production or disclosure of such material; nor (b) divulge the contents of the protected material except to the Court under seal as provided herein." *See* DE 157-2 at 8-9 (¶ 9); *see also* 8/28/2012 Minute Order "granting Motion for Protective Order Regarding Confidentiality of Discovery Material" signed by this Court.[4]

By either standard, Plaintiffs are not permitted to "use" the contents of the inadvertently produced privileged document in an attempt to advance their claims. Accordingly, Plaintiffs' notes, summaries and research based on the document – all of which had to have been made by Plaintiffs while Defendants' claim of privilege and protection was either pending or subsequently granted – were created in violation of their professional and legal obligations. Plaintiffs cannot be harmed when they are ordered to destroy that which they never should have created in the first instance.

Defendants, however, risk continued harm should the Court stay its January 2nd order. Upon entry of such a stay, Plaintiffs would be free to continue to mischaracterize the inadvertently produced privileged document and continue to use it in violation of their obligations under Rule 26(b)(5)(B) and Paragraph 9 of the Protective Order. In addition, as Defendants explain above and in their Motion to Dismiss Appeal, Plaintiffs have even shown a willingness to publicize the document at issue with press both in the United States and Israel.

---

[4] Plaintiffs once again argue that Defendants somehow "waived [the Protective Order's] protections" because Defendants did not "take any steps to designate [deposition] material [discussing the privileged and protected document] confidential pursuant to the terms of the Confidentiality Order." DE 212 at 17. This disingenuous argument fails because, by its terms, the confidentiality designation provisions of the protective order only apply to documents and information that the producing party *intends* to produce, not to the inadvertent disclosure of a privileged and protected document, which is governed by a single provision of the Protective Order – Paragraph 9.

Defendants' opposition here simply seeks final enforcement of that which the Court has already ordered – the relief Defendant PA sought in its Motion for Return.[5]  Plaintiffs will not be irreparably harmed if a stay is not granted, and the balance of harms weighs strongly in favor of denying Plaintiffs' Motion.[6]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Stay (DE 212). Plaintiffs have no likelihood of success on appeal, and the balance of harms tilts in favor of Defendants.  A proposed Order is being filed herewith.

---

[5] Relating to the relief sought by Defendant PA in the Motion for Return, Plaintiffs claim that the PA cannot demand, in accordance with its proposed order submitted with DE 170, that Plaintiffs return or destroy that portion of the video recording of the September 12, 2012 deposition of Ibrahim Dahbour during which he discussed the contents of the inadvertently produced privileged document (identified as the portions corresponding to the deposition transcript from page 143, line 19, through page 163, line 8). *See* DE 212 at 26-27.  However, paragraph 3 of Defendant PA's original proposed order requires Plaintiffs to return or destroy not only the identified portions of the written deposition transcript, but also "all other materials containing notes, translations or summaries, that discuss or reference the contents of the [inadvertently produced privileged] documents."  This would necessarily include the corresponding portion of the video recording of Mr. Dahbour's deposition.

[6] Plaintiffs' suggestion that the public interest is implicated by the Court's rulings on discovery matters strains credulity.  An assertion of "public interest" must be supported by a principled argument for exceptional action; Plaintiffs fail to demonstrate that here.

Dated:  January 28, 2013						Respectfully submitted,


						/s/ Richard A. Hibey
						Richard A. Hibey (No. 74823)
						Mark J. Rochon (No. 376042)
						Charles F. B. McAleer, Jr. (No. 388681)
						Timothy P. O'Toole (No. 469800)
						MILLER & CHEVALIER CHARTERED
						655 15th St., N.W., Suite 900
						Washington D.C.  20005-6701
						(202) 626-5800 (telephone)
						(202) 626-5801 (facsimile)

						*Attorneys for Defendants The Palestine Liberation Organization and The Palestinian Authority*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 28, 2013, a true and genuine copy of the foregoing was served via ECF on the following:

>Robert J. Tolchin
>The Berkman Law Office, LLC
>111 Livingston Street – Suite 1928
>Brooklyn, NY 11201
>rjt@tolchinlaw.com
>
>David I. Schoen
>2800 Zelda Road, Suite 100-6
>Montgomery, AL 36106
>dschoen593@aol.com
>Schoenlawfirm@gmail.com
>
>Norman Steiner
>233 Broadway, Suite 900
>New York, New York 10279
>nsteineresq@gmail.com
>
>*Attorneys for Plaintiffs*
>
>/s/ Richard A. Hibey
>Richard A. Hibey