Exhibit C

FILED
CLERK

2012 AUG 16  PM 4: 00

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, et al., | ) |
| Plaintiffs-Movants, | ) |
| v. | ) |
| THE SYRIAN ARAB REPUBLIC, et al., | ) |
| Defendants, | ) |
| - and - | ) |
| THE ARAB BANK PLC, | ) |
| Subpoena Respondent. | ) |

**MISC 12   0546**

(D.D.C. Case No. 02-CIV-2280RJL))

**BRODIE, J.**

## NOTICE OF MOTION

C O U N S E L:

**PLEASE TAKE NOTICE** that upon the annexed memorandum of law, dated August 16, 2012; the annexed Declaration of Robert J. Tolchin and the exhibits attached thereto; and upon the pleadings and proceedings heretofore had herein, Plaintiffs will move this Court, at the Courthouse located at 225 Cadman Plaza East, Brooklyn, NY 11201, at a date and time to be fixed by the Court, or as soon thereafter as counsel can be heard, for an order:

a)  COMPELLING Subpoena Respondent Arab Bank PLC to comply in full with the subpoena served on it by Plaintiffs, which is annexed as Exhibit A to the accompanying Declaration of Robert J. Tolchin; and

b)  GRANTING such other and further relief as the Court find just, proper or necessary under the circumstances.

Dated:    August 16, 2012

Plaintiffs, by their Attorneys,

/S/ David I. Schoen
David I. Schoen
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com
Counsel for Plaintiffs


Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com
Counsel for Plaintiffs


TO:

Steven J. Young, Esq.
DLA Piper
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4929
steven.young@dlapiper.com
Counsel for the Arab Bank

Charles F. B. McAleer, Jr., Esq.
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005
(202) 626-5963
CMcAleer@milchev.com
Counsel for the Defendants

## CERTIFICATION

I hereby certify that on August 16, 2012, the within Notice of Motion was served on

counsel for the Arab Bank, Steven J. Young, by hand delivery to:

> DLA Piper
> 1251 Avenue of the Americas
> New York, New York 10020-1104

I hereby further certify that on August 16, 2012, the within Notice of Motion was served

on the Arab Bank by hand delivery to:

> The Arab Bank
> 520 Madison Avenue
> New York, NY 10022-42437

I hereby further certify that on August 16, 2012, the within Notice of Motion was served

on counsel for the Defendants, Charles F. B. McAleer, Jr., by email to CMcAleer@milchev.com

and by first class mail to:

> Miller & Chevalier Chartered
> 655 Fifteenth Street, N.W., Suite 900
> Washington, D.C. 20005

/s/ Robert J. Tolchin
Robert J. Tolchin

-3-

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, et al.,    ) | |
| ) | |
| Plaintiffs-Movants,    ) | |
| ) | |
| v.    ) | (D.D.C. Case No. 02-CIV-2280-RJL)) |
| ) | |
| THE SYRIAN ARAB REPUBLIC, et al.,    ) | |
| ) | |
| Defendants,    ) | |
| ) | |
| - and -    ) | |
| ) | |
| THE ARAB BANK PLC,    ) | |
| ) | |
| Subpoena Respondent.    ) | |

## DECLARATION OF ROBERT J. TOLCHIN

I, Robert J. Tolchin, declare pursuant to 28 U.S.C. § 1746, as follows:

1.    I am counsel for the Plaintiffs in the matter of *Shatsky, et al. v. Syrian Arab Republic, et al.*, Civ. No. 02-2280-RJL (D.D.C.) ("Action") and I make this declaration in support of the Plaintiffs' motion to compel Subpoena Respondent Arab Bank PLC ("Arab Bank" or "Bank") to comply with the subpoena to produce documents served on it by the Plaintiffs.

2.    On Saturday night, February 16, 2002, a suicide terrorist detonated a large explosive device at a pizzeria packed with youngsters in the Israeli town of Karnei Shomron. Two teenaged American girls, Keren Shatsky and Rachel Thaler, were killed by the blast. Four other Americans, two of them young teenagers, suffered severe burns, blast injuries, shrapnel wounds and other serious injuries in the bombing.

3.      There is abundant evidence that the suicide bombing was planned and carried out by the Popular Front for the Liberation of Palestine ("PFLP"). For example, an official document produced by defendant Palestinian Authority ("PA"), from the PA's own Social Affairs Ministry, confirms that the suicide bomber, Sadek Hafez, belonged to the PFLP. Indeed, the PFLP itself publicly took "credit" for the bombing and includes Hafez in its official list of PFLP "martyrs." Moreover, in a detailed statement provided to Israeli investigators, PFLP operative Mohammed Nazal confirmed that the bombing was organized by senior PFLP leader Raed Nazal.

4.      Numerous media reports confirm that the PLO funds the PFLP. For example, on August 1, 1999, the respected Arabic-language newspaper A-Sharq Al-Awsat reported that the PLO had started funding the PFLP in the amount of $400,000 per month. In an interview on the Al Jazeera satellite network on October 27, 1999, Palestinian leader Naef Hawatmeh confirmed that the PLO was indeed providing the PFLP with $400,000 a month. In a March 14, 2008, interview on Al Jazeera, PFLP official Jamil Mizher discussed and dismissed a threat by the PLO leadership to cut off the PFLP's financial allocations – which means, obviously, that the PLO had been funding the PFLP until then. And again in fall 2010, it was widely reported in the media, which quoted PFLP leaders, that the PLO had cut off funding to the PFLP due to an internecine dispute – meaning that until late 2010 the PLO was still funding the PFLP.

5.      Because news reports are not generally admissible, the Plaintiffs served interrogatories and requests for production on the PLO, seeking documents and information regarding its provision of funding to the PFLP. The PLO responded to Plaintiffs' discovery requests by claiming that it has been unable to locate records or information regarding provision of funds by the PLO to the PFLP.

6.     In light of the PLO's own convenient "amnesia" regarding its funding of the PFLP, the Plaintiffs served the Arab Bank with a subpoena seeking documents pertaining to accounts held by the PLO in the Arab Bank – including two PLO accounts at the Arab Bank specifically identified by account number. Exhibit A.[1]

7.     The Bank responded to the subpoena by asserting certain objections. Exhibit B.

8.     The undersigned conferred with the Bank's counsel, Steven Young, in an effort to resolve their differences, but those efforts were in vain.

9.     As of today, the Arab Bank has not produced a single document in response to Plaintiffs' subpoena.

10.    In motion papers filed in the Action, the PLO has asserted that it is not liable to the Plaintiffs because it had a falling out with the PFLP shortly prior to the bombing.

11.    In their mandatory disclosures and discovery responses in the Action, the PLO and PA have also indicated that they intend to dispute liability for the suicide bombing on the ground that they condemned terrorism in general and this suicide bombing specifically.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 16, 2012

/s/ Robert J. Tolchin
Robert J. Tolchin

---

[1] The PLO's financial department is known as the "Palestine National Fund," and the subpoena therefore references the names "Palestine Liberation Organization" and "Palestine National Fund." Because the PLO itself has agreed in related litigation in the U.S. courts that the "Palestine National Fund" is merely the name of the PLO's finance office (and not a different entity), and because the Bank has not argued otherwise, there is no reason to belabor this point.

## CERTIFICATION

I hereby certify that on August 16, 2012, the within Declaration was served on counsel

for the Arab Bank, Steven J. Young, by hand delivery to:

> DLA Piper
> 1251 Avenue of the Americas
> New York, New York 10020-1104

I hereby further certify that on August 16, 2012, the within Declaration was served on the

Arab Bank by hand delivery to:

> The Arab Bank
> 520 Madison Avenue
> New York, NY 10022-42437

I hereby further certify that on August 16, 2012, the within Declaration was served on

counsel for the Defendants, Charles F. B. McAleer, Jr., by email to CMcAleer@milchev.com

and by first class mail to:

> Miller & Chevalier Chartered
> 655 Fifteenth Street, N.W., Suite 900
> Washington, D.C. 20005

/s/ Robert J. Tolchin
Robert J. Tolchin

-4-

**Exhibit A**

**to the Declaration of Robert J. Tolchin**

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | |
|---|---|
| Shabtai Scott Shatsky, et al. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    02-2280 |
| Syrian Arab Republic et al. | ) |
| | )    (If the action is pending in another district, state where: |
| *Defendant* | )        District of Columbia       ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Arab Bank, PLC

   ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Appendix A

| Place: The Berkman Law Office<br>111 Livingston Street, Suite 1928<br>Brooklyn, New York 11201 | Date and Time:<br><br>06/15/2012 10:00 am |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    06/04/2012

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | */s/ Robert J. Tolchin* |
|    *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Shabtai Scott Shatsky, et al.
                   , who issues or requests this subpoena, are:

Robert J. Tolchin, 111 Livingston Street, Suite 1928, Brooklyn, New York 11201, rjt.berkman@gmail.com, (718) 855-3627

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

### Appendix A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, Arab Bank PLC ("Arab Bank") is required, in accordance with the definitions and instructions set forth in the Federal Rules of Civil Procedure, the Local Rules of this Court, and herein below, to produce authentic, complete and unedited copies of the following documents:

1.      All documents concerning the identities of the owners, beneficiaries and signatories of all PLO Accounts during the Relevant Period.

2.      All documents concerning any opening and/or closing of PLO Accounts during the Relevant Period.

3.      All documents concerning all activities and transactions in the PLO Accounts during the Relevant Period including without limitation: (i) all documents concerning all deposits into and credits to the PLO Accounts, concerning the sources and origins of such deposits and credits, concerning the means by which such deposits and credits were made (e.g. cash, check, wire, etc.) and concerning the identities of the persons who made such deposits and credits; and (ii) all documents concerning all withdrawals from and debits to the PLO Accounts, concerning the identities of the recipients and beneficiaries of such withdrawals and debits and concerning the means by which such withdrawals and debits were made (e.g. cash, check, wire, etc.).

4.      All communications and all other documents conveyed or sent between the Arab Bank (including any officer, employee, attorney or agent of the Arab Bank) and the Palestinian Authority and/or the Palestine Liberation Organization (including any officer, employee, attorney or agent of the Palestinian Authority and/or the Palestine Liberation Organization) concerning the instant subpoena and/or concerning the matter of *Shatsky, et al. v. The Syrian Arab Republic, et al.*, Civ. No. 02-2280 (D.D.C.).

## DEFINITIONS

The definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and in the Local Rules of this Court are hereby incorporated into and apply to this request for production.

1.      "Relevant Period" means the period from January 1, 1994 until today.

2.      "PLO Accounts" means and includes any and all accounts at any and all branches or subsidiaries of Arab Bank that belonged to and/or were in the name of the Palestine Liberation Organization and/or the Palestine National Fund at any time during the Relevant Period, including without limitation accounts nos. 41408 and 111444.

## INSTRUCTIONS

1.      In answering and responding to these requests, you shall produce all of the materials requested, wherever located, which are in your possession, custody or control.

2.      If you withhold any of the requested documents under a claim of privilege, you shall produce a written privilege log drafted in accordance with Rule 26 of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.      The requested documents are to be produced in their entirety without redaction. If a portion of the documents is withheld under claim of privilege, any non-privileged portion of the documents must be produced, with the portion claimed to be privileged redacted.

4.      If in answering these requests you claim any ambiguity in a request or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

5.      In the event that multiple copies of the requested documents exist, produce every non-identical copy.

6.      If any requested document has been lost, discarded, destroyed, or is otherwise unavailable, identify the document as completely as possible. If the document has been lost, include the last known location of the document and the person who last had possession, custody or control of the document. If the document has been discarded or destroyed, include the date of such action, the person authorizing such action, the person who destroyed or disposed of the document, and the reason for such action.

7.      "Electronically stored information" is incorporated into all requests for documents and shall be produced in accordance with Federal Rules of Civil Procedure 26 and 34.

**Exhibit B**

**to the Declaration of Robert J. Tolchin**



DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Steven J. Young
steven.young@dlapiper.com
T 212.335.4929
F 212.884.8453

**BY FEDEX**

June 7, 2012

Robert J. Tolchin, Esq.
The Berkman Law Office
111 Livingston Street, Suite 1928
Brooklyn, NY 11201

**Re:    Shabtai Scott Shatsky, et al. v. Syrian Arab Republic, et al.**
**Civ. Action No. 02-2280 (RJL); Rule 45 Subpoena of Arab Bank plc**

Dear Mr. Tolchin:

On behalf of Arab Bank plc ("Arab Bank" or the "Bank"), I write with regard to a Rule 45 subpoena addressed to "Arab Bank, PLC," dated June 4, 2012 (the "Subpoena"), issued in the above-referenced action (the "*Shatsky* Action" or the "Action")."

From our review of the docket, it appears that the gravamen of the *Shatsky* Action is a claim for damages for injuries alleged to be the result of a bombing that occurred on February 16, 2002. If the gravamen of the Action is indeed a claim for damages in connection with an incident alleged to have occurred in February 2002, we seriously question why the Subpoena calls for the production of Bank records during a "Relevant Period" defined as "the period from January 1, 1994 until today." If our reading of the allegations is correct, the Subpoena, which purports to call for a search of documents covering a span of more than 18 years—including a span of more than 10 years *after* the incident at issue, is vastly overboard and seeks to impose an unreasonable and undue burden upon an international corporation which is not a party to the Action.

Equally unreasonable and burdensome, and impermissibly vague, is the Subpoena's request for the production of "all documents concerning" each of the categories of documents requested. Does the Subpoena purport to require the Bank to search, across an 18 year period of time, all memos and emails and notes and any other documents that may in some indeterminate manner "concern" the types of documents requested? If so, the Bank strongly objects to any such production request as being unreasonably vague, unduly burdensome and, indeed, impossible.

Similarly overboard, and indeed virtually unlimited in its apparent scope, is the request for production of "all communications" and "all other documents," "concerning" the fourth requested category of documents, exchanged between any "officer, employee, attorney or agent" of the Bank and any "officer, employee, attorney or agent" of the Palestinian Authority ("PA") or Palestinian Liberation Organization ("PLO"). The Bank is a leading global financial institution, with branches located throughout the world, in approximately 30 different countries, comprising more than ten thousand employees. It cannot reasonably be expected to conduct any such world-wide search, other objections aside. Even if such search were possible, which it is not, with respect to this or the other categories of the Subpoena, the



**DLA PIPER**

Robert J. Tolchin, Esq.
June 7, 2012
Page Two

production of documents from jurisdictions outside the United States would be subject to objection if those documents were within the reach of the respective bank confidentiality provisions of each such jurisdiction, as such laws and regulations strictly prohibit the production of documents subject to their reach absent the consent of all customers at issue and/or of controlling foreign authorities.

Finally, and without waiver of the aforesaid objections and subject thereto, the Bank cannot reasonably be requested to produce any documents, including documents located in New York if any, that reveal confidential financial information absent the entry of a strict confidentiality order that would bind all parties to the Action from any inappropriate disclosure of such information.

I look forward to your response to the various objections raised herein and stand ready to discuss in good faith each such objection if you nonetheless wish to pursue this Subpoena.

Very truly yours,

**DLA Piper LLP (US)**

Steven J. Young
Of Counsel

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**MISC 1^ 0546**

## MISCELLANEOUS CASE INFORMATION SHEET

FILED
CLERK
2012 AUG 16 PM 4: 05
U.S. DISTRICT COURT
EASTERN DISTRICT
NEW YORK

| **PLAINTIFF:** | **DEFENDANT:** |
|---|---|
| Shabtai Scott Shatsky | The Syrian Arab Republic, et al |

**IN THE MATTER OF:**

Shabtai Scott Shatsky vs. The Syrian Arab Republic            **BRODIE, J.**

**CAUSE OF ACTION:**

Personal Injuries

**RELIEF SOUGHT:**

Compel compliance with a subpoena

| **ATTORNEY FOR PLAINTIFF:** | **ATTORNEY FOR DEFENDANT:** |
|---|---|
| Robert Tolchin | Miller & Chevalier |

I am currently a member in good standing of the bar of this Court:        ☒ YES        ☐ NO

Signature of Attorney of Record: _R. Tolch_____        Date: 8/16/12

# MISC 12 0546

FILED
CLERK

2012 AUG 16  PM 4:00

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| SHABTAI SCOTT SHATSKY, et al., | ) | |
| | ) | |
| Plaintiffs-Movants, | ) | |
| | ) | |
| v. | ) | (D.D.C. Case No. 02-CIV-2280-RJL)) |
| | ) | |
| THE SYRIAN ARAB REPUBLIC, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | **BRODIE, J.** |
| - and - | ) | |
| | ) | |
| THE ARAB BANK PLC, | ) | |
| | ) | |
| Subpoena Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-MOVANTS' MOTION TO COMPEL THE ARAB BANK TO COMPLY WITH SUBPOENA

### Introduction

The Plaintiffs-Movants ("Plaintiffs") have served Subpoena Respondent Arab Bank PLC ("Arab Bank" or "Bank") with a subpoena to produce documents. The Bank has failed or refused to produce any documents in response to that subpoena. Accordingly, the Plaintiffs bring the instant motion to compel the Arab Bank to produce the documents requested in the subpoena.

For the reasons below, Plaintiffs' motion should be granted, and the Arab Bank should be compelled to produce all the documents sought by Plaintiffs.

### RELEVANT BACKGROUND

On Saturday night, February 16, 2002, a suicide terrorist detonated a large explosive device at a pizzeria packed with youngsters in the Israeli town of Karnei Shomron. Two teenaged

American girls, Keren Shatsky and Rachel Thaler, were killed by the blast. Declaration of Robert J. Tolchin ("Tolchin Decl.) at ¶ 2. Four other Americans, two of them young teenagers, suffered severe burns, blast injuries, shrapnel wounds and other serious injuries in the bombing. *Id.*

The bombing was carried out by the Popular Front for the Liberation of Palestine ("PFLP"), a constituent faction of the Palestine Liberation Organization ("PLO"). *Id.* at ¶ 3.

In 2002 the estates and family members of decedents Keren Shatsky and Rachel Thaler, along with the four Americans maimed in the suicide bombing and their families, filed a civil action in the U.S. District Court for the District of Columbia against the PLO and the Palestinian Authority ("PA") under the civil provisions of the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333. *Shatsky, et al. v. Syrian Arab Republic, et al.*, Civ. No. 02-2280-RJL (D.D.C.) ("Action").[1]

The PFLP, the group that executed the bombing, has been designated by the United States as a Foreign Terrorist Organization ("FTO") since 1997. *See* 62 Fed.Reg. 52650 (Oct. 8, 1997). The provision of funds to an FTO is a federal crime and, as discussed below, it is well established that individuals or entities that provide funds to an FTO, such as the PFLP, are civilly liable under the ATA to Americans killed or injured in terrorist attacks carried out by that FTO.

Numerous media reports confirm that the PLO funds the PFLP. Tolchin Decl. at ¶ 4. News reports are not generally admissible, however, and the Plaintiffs therefore sought discovery in the Action from the PLO regarding its provision of funding to the PFLP. *Id.* at ¶ 5. But the PLO has responded to Plaintiffs' discovery by claiming that it has been unable to locate records or information regarding provision of funds by the PLO to the PFLP. *Id.*

---

[1] The PLO and PA defaulted the Suit, but subsequently moved to vacate their default, which motion was granted in 2011. *Shatsky v. Syrian Arab Republic*, 795 F.Supp.2d 79 (D.D.C. 2011). The Syrian Arab Republic and several Syrian governmental entities were also named as defendants in the Action, but were later dismissed without prejudice.

In light of the PLO's own convenient "amnesia" regarding its funding of the PFLP, the Plaintiffs served the Arab Bank with a subpoena seeking documents pertaining to accounts held by the PLO in the Arab Bank. Tolchin Decl. at ¶ 6 and Exhibit A.[2] The Bank responded to the subpoena by asserting certain objections. *Id.* at ¶ 7 and Exhibit B. Plaintiffs' counsel conferred with the Bank's counsel in an effort to resolve their differences, but in vain. *Id.* at ¶ 8. As of today, the Arab Bank has not produced a single document in response to the subpoena. *Id.* at ¶ 9.

As shown *infra*, the objections to the subpoena asserted by the Bank are meritless and/or ineffective, and its refusal to produce the documents is baseless. Therefore, and for the reasons set forth below, the Arab Bank should be directed to comply in full with the subpoena.

## ARGUMENT

### I.     The Documents Sought Are Extremely Relevant

It is black-letter law that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[]." Fed.R.Civ.P. 26(b)(1). The information or documents sought need not be admissible as long as they are reasonably calculated to lead to the discovery of admissible evidence. *Id.* Indeed, "[r]elevance, for purposes of discovery, is an extremely broad concept." *Copantitla v. Fiskardo Estiatorio, Inc.*, 2010 WL 1327921 at *9 (S.D.N.Y 2010) (collecting cases) (quotation and citation omitted).

Subpoenas issued under Rule 45 are subject to the "extremely broad" relevance analysis of Rule 26. *Syposs v. U.S.*, 181 F.R.D. 224, 226 (W.D.N.Y.1998) (Subpoenas are "subject to the general relevanc[e] standard applicable to discovery under Fed.R.Civ.P. 26(b)(1).").

---

[2] Also, because defendants PLO and PA have attempted to influence other third-party witnesses, paragraph 4 of the subpoena seeks copies of any communications between the Bank and the defendants regarding the subpoena and/or the Action. Tolchin Decl., Exhibit A at ¶ 4.

The documents sought by the Plaintiffs could not be more relevant to the Action. As explained *supra* and in the Tolchin Declaration, Plaintiffs are seeking proof that the PLO funded the PFLP, which carried out the bombing at issue in the Action. Under the wall-to-wall case law construing and applying the ATA, proof that the PLO funded the PFLP – which was designated as an FTO in 1997 – will render the PLO civilly liable under the ATA for the Plaintiffs' injuries and the deaths of their decedents in the bombing. *See e.g. Linde v. Arab Bank*, 384 F.Supp.2d 571 (E.D.N.Y. 2005) (provision of funds to an FTO renders the provider civilly liable under the ATA for terror attacks carried out by that FTO); *Weiss v. National Westminster Bank*, 453 F.Supp.2d 609 (E.D.N.Y. 2006) (same); *Strauss v. Credit Lyonnais*, 2006 WL 2862704 (E.D.N.Y. 2006) (same); *Goldberg v. UBS*, 660 F.Supp.2d 410 (E.D.N.Y. 2009) (same); *In re Chiquita Brands Intern., Inc. Alien Tort Statute and Shareholder Derivative Litigation*, 690 F.Supp.2d 1296 (S.D.Fla. 2010) (same); *Abecassis v. Wyatt*, 785 F.Supp.2d 614 (S.D.Tex. 2011).

The Bank has not disputed, and so concedes, that the PLO's provision of funds to the PFLP prior to the February 16, 2002 bombing, is relevant to this case. Tolchin Decl., Exhibit B. However, the Bank has questioned why the Plaintiffs seek evidence of PLO funding to the PFLP subsequent to the bombing (*id.* at p. 1) and it may raise this issue in response to this motion. There are at least six reasons why evidence of the PLO's provision of funds to the PFLP even subsequent to the bombing is highly relevant:

*First*, the PLO claims that it is not liable to the Plaintiffs because it had a falling out with the PFLP shortly prior to the bombing. Tolchin Decl. at ¶ 10. Evidence that, in fact, the PLO continued to fund the PFLP even after the bombing defeats this putative defense to the Action.

*Second*, defendants PLO and PA are also arguing that they cannot be held liable for the suicide bombing because they condemned terrorism in general and this bombing specifically.

Tolchin Decl. at ¶ 11. Clearly, continued payments by the PLO to the PFLP even after this horrific and deadly bombing support the conclusion that, in fact, the PLO condoned and approved of the bombing, that the PLO's "condemnation" was empty lip service, and that its "condemnation defense" is therefore entirely meritless.

*Third*, proof that the PLO continued to finance the PFLP even after the bombing supports a finding of joint action (i.e. civil conspiracy) liability via ratification. *See e.g. Piccoli A/S v. Calvin Klein Jeanswear*, 19 F.Supp.2d 157, 173 (S.D.N.Y. 1998) (Under federal law "all those who, in pursuance of a common plan to commit an act which is tortious, actively take part in it, or further it by cooperation or request, or lend aid or encouragement, or ratify and adopt the acts done, are as equally liable as the person who performs the tortious act itself.") (brackets and citation omitted) (emphasis added); *In re Dana Corp.*, 574 F.3d 129, 153 (2nd Cir. 2009) ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him.") (emphasis added) (citation and brackets omitted); *In re Northgate Computer Systems*, 240 B.R. 328, 359 (Bkrtcy.D.Minn. 1999) (Under state law "all who actively participate in any manner in the commission of a tort, or who procure, command, direct, advise, encourage, aid, or abet its commission, or who ratify it after it is done are jointly and severally liable for the resulting injury.") (emphasis added); *Cleft of the Rock Foundation v. Wilson*, 992 F.Supp. 574, 584 (E.D.N.Y. 1998) ("[I]t is black letter conspiracy law that one who joins a conspiracy in progress ratifies all that has come before.") (citation omitted).

*Fourth*, Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act" (generally referred to as "bad acts" evidence) may be used to prove,

among other things, the existence of a "motive," an "intent" and a "plan." Fed.R.Evid. 404(b). It is well established that a defendant's "bad acts" <u>subsequent</u> to the conduct complained of may be used to prove the defendant's motive, intent or plan at the time of the conduct complained of:

> Rule 404(b) refers to evidence of crimes, wrongs, or other acts, saying nothing about whether the act in question is a "prior" or "subsequent" act. That makes sense because <u>light can be shed on motive, intent,</u> and the other issues listed in Rule 404(b)(2) <u>as much by a subsequent course of behavior as it can by a prior one.</u>

*U.S. v. Bergrin*, 682 F.3d 261, 281 n. 25 (3rd Cir. 2012) (emphasis added). *See also e.g. U.S. v. Latney*, 108 F.3d 1446, 1449 (D.C.Cir. 1997) ("Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense. Nor do our decisions ... One ... cannot formulate a general rule ... that any bad act committed more than a certain time after the charged offense is inadmissible under Rule 404(b).").

Thus, proof that the PLO continued to provide funds to the PFLP even <u>after</u> the PFLP murdered decedents Keren Shatsky and Rachel Thaler and severely wounded the other plaintiffs in the 2002 bombing is both admissible under Rule 404(b) and highly relevant to establishing the PLO's malicious "motive" and "intent" when it funded the PFLP in the period before the bombing, and to showing that the PLO's provision of such financial support to the PFLP was part of a "plan." *See e.g. U.S. v. Long*, 328 F.3d 655, 661 (D.C.Cir. 2003) (Bad acts evidence may be used "to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation.") (quotation marks omitted).

**Fifth**, evidence that the PLO funded the PFLP after the bombing gives rise to an evidentiary presumption or inference that the PLO also provided such funding to the PFLP prior to the bombing. *See e.g. McFarland v. Gregory*, 425 F.2d 443, 447 (2nd Cir. 1970) ("[I]f a situation exists at one point in time, it is to be presumed that it existed before that time.").

**Sixth**, as a practical matter, documents evidencing the PLO's funding of the PFLP subsequent to the bombing will assist the Plaintiffs to identify and trace the pre-bombing funds transfers by the PLO to the PFLP, and such documents are therefore also "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). *Cf. Eungard v. Open Solutions, Inc.*, 2006 WL 2310530 at *2 (E.D.Mich. 2006) ("Whether or not payments due under the Shared Resources/CUSO account are formally part of Plaintiff's Complaint, documents pertaining to the account are reasonably likely to lead to admissible evidence."); *ABM Financial Services, Inc. v. Express Consol., Inc.*, 2007 WL 4218989 at *3 (S.D.Fla. 2007) ("[T]he information sought by ABM is reasonably likely to lead to admissible evidence relating to ABM's constructive trust claim and its efforts to trace whatever identifiable assets are subject to that claim, regardless of the fact that those accounts are not held by a party to this action.").

***

In sum: the discovery sought is extremely relevant to Plaintiffs' Action.[3]

## II.     The Arab Bank's Objections Are Meritless and/or Ineffective

The law is clear that "[o]nce the party issuing the subpoena has demonstrated the relevance of the requested documents, the party [contesting] the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Libaire v. Kaplan*, 760 F.Supp.2d 288, 291 (E.D.N.Y. 2011).

Thus, because the documents sought by Plaintiffs are highly relevant to their Action, the burden shifts to the Arab Bank to show why it should be excused from compliance. As discussed below, the Bank cannot meet and has not met that burden.

---

[3] The Bank has not disputed the relevancy of Plaintiffs' request for any communications between the Bank and the defendants regarding the subpoena and/or the Action (¶ 4 of the subpoena).

### a. The Bank's Objections on Grounds of Burden and Overbroadness Are Conclusory and Therefore Waived

The Arab Bank has objected to the subpoena on the grounds that it is purportedly burdensome and overboard. Tolchin Decl., Exhibit B, *passim*. But simply <u>claiming</u> that a subpoena is burdensome or overbroad is insufficient; in order to raise effective objections, the Bank was required to <u>explain</u> why compliance with the subpoena would be too difficult:

> Under Rule 45(c)(3)(A)(iv) the burden to establish that a subpoena duces tecum imposes an undue burden is on the person who moves to have it quashed. That person cannot rely on a <u>mere assertion</u> that compliance would be burdensome and onerous without <u>showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.</u>

Wright & Miller, 9A Federal Practice & Procedure § 2463.1 (emphasis added) (collecting cases).

The Bank makes no attempt at all to "show[] the manner and extent of the burden" that compliance with the subpoena would purportedly impose; its entire "burdensomeness" argument is based on sarcastic rhetoric, with a dash of *reductio ad absurdum* thrown in for effect. *See* Tolchin Decl., Exhibit B at 2 ("Does the Subpoena purport to require the Bank to search, across an 18 year period of time, all memos and emails and notes and any other documents that may in some indeterminate manner 'concern' the types of documents requested?").

The Bank has failed to articulate any burden because it cannot. Paragraphs 1 and 2 of the subpoena require the Bank to provide standard account-related documents that are easily and obviously available in the Bank's files for each of the PLO's accounts (e.g. the account opening and closing documents and forms, signature cards, etc.). Tolchin Decl., Exhibit A at ¶¶ 1-2. Nor is it "burdensome" for the Bank to identify the PLO's accounts – the Plaintiffs have provided the account numbers for two known PLO accounts (*id.* at Definitions), and the Bank can of course easily identify other PLO accounts – if they even exist – by the push of a computer button.

Paragraph 3 of the subpoena seeks the account statements and wire transfer records for the PLO's accounts. Tolchin Decl., Exhibit A at ¶ 3. Obviously, such documents are easily located and copied. Indeed, it is highly likely that most or all of these materials exist in electronic form, which means they can be generated and produced by pushing a button. Indeed, pursuant to Rule 45(d)(1)(D), if the Bank wanted to object to production of such "electronically stored information" on grounds of undue burden or cost, it was required to "show that the information is not reasonably accessible because of undue burden or cost" *Id.*. The Bank has failed to make such a showing, because it cannot.

Finally, ¶ 4 of the subpoena requests copies of communications, if any, between the Bank and the PLO or PA, regarding the subpoena or the Action. Tolchin Decl., Exhibit A at ¶ 4. The Bank's response to this modest request borders on the hysterical, and wholly omits or ignores the fact that this request seeks only communications regarding the subpoena or the Action. *Id.*, Exhibit B at 1-2. The Bank does not and cannot explain why the production of such communications, which would presumptively be known to or reasonably ascertainable by its counsel, would be any burden at all.

Thus, the Bank has utterly failed to meet its burden of showing that the subpoena is burdensome or overbroad, and has therefore waived any such objections. "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund*, 2011 WL 4573349 at *5 (D.Nev. 2011) (citation omitted).

### b. The Bank Has Waived Any Objections Based on Putative Privilege

The Bank also purports to object to the production of certain documents on the basis of banking secrecy privilege, asserting as follows:

-9-

> [T]he production of documents from jurisdictions outside the United States <u>would</u> be subject to objection <u>if</u> those documents were within the reach of the <u>respective</u> bank confidentiality provisions of <u>each such jurisdiction</u>, as such laws and regulations strictly prohibit the production of documents subject to their reach absent the consent of all customers at issue and/or of controlling foreign authorities.

Tolchin Decl., Exhibit B at 1-2 (emphasis added).

This objection is wholly inadequate, and so ineffective to preserve any privilege, for two interrelated reasons.

*First*, it is hopelessly vague and nonspecific both as which documents are purportedly privilege and the specifics of the alleged privilege ("<u>would</u> be subject to objection <u>if</u> those documents <u>were</u> within the reach of the respective bank confidentiality provisions of <u>each such jurisdiction</u>") and is therefore invalid. *See e.g. Johnson v. Dovey*, 2011 WL 5374958 at *2-3 (E.D.Cal. 2011) ("CDCR's objections are not specific in any way, and are thus insufficient to assert a privilege ... CDCR asserts privilege without specificity, using boilerplate objections. The Court will thus require CDCR to produce the documents requested in the subpoena.").

*Second*, and relatedly, the Bank has failed to produce any privilege log as required by Rule 45(d)(2) and Local Civil Rule 26.2. The rules governing the tendering of a privilege log – and the waiver of privilege for failure to do so – apply to Rule 45 subpoenas. *See e.g. OneBeacon Ins. Co. v. Forman Intern., Ltd.*, 2006 WL 3771010 *6-8 (S.D.N.Y. 2006). ("[T]he unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.") (collecting cases).

Thus, the Bank has waived any purported privilege it might have had.

\*\*\*

In sum: all of the Bank's objections are meritless, ineffective and/or waived.

-10-

**III.    The Arab Bank Has Improperly Failed to Produce the Documents to Which It Did Not Tender Any Objections**

The Arab Bank has objected to Plaintiffs' subpoena only <u>in part</u>. The Bank's objections as to burden and breadth relate only to the <u>scope</u> of the document request – meaning that even in the Bank's view, producing <u>some subset</u> of the documents (which subset the Bank has not bothered to define or identify) would not be unduly burdensome over overbroad.

Similarly, in respect to its foreign "banking secrecy" claim, the Bank does not (because it cannot) claim that responsive documents located within the United States are subject to any foreign banking secrecy laws. This point is extremely salient because the Arab Bank's New York branch acts as a correspondent bank for processing dollar transactions involving the Bank's overseas branches, and therefore any responsive documents relating to such transfers are located in New York, and so cannot be subject to foreign banking secrecy rules.

Where, as here, a witness objects to a subpoena only in part, it <u>must</u> comply with the requests to which no objection was asserted. Rule 34(b)(2)(C) expressly commands that "[a]n objection to part of a request must specify the part <u>and permit inspection of the rest</u>." Therefore, if a request for production is objectionable only in part, production should be afforded with respect to the unobjectionable portions." Advisory Committee Notes (1993 Amendments).

Thus, the Arab Bank has acted improperly by refusing to produce <u>any</u> documents. The Bank was and remains obligated to produce which documents it believes in good faith are not irrelevant or unduly burdensome to produce, and which are located in the United States or in any other jurisdiction which the Bank concedes does not prohibit disclosure of the documents. Indeed, Plaintiffs seriously considered including in this motion a request for the imposition of a sanction for the Bank's failure to produce even the documents to which no objection was made, and Plaintiffs reserve the right to do so if the Bank persists in its recalcitrant posture.

**WHEREFORE**, the instant motion should be granted.

Plaintiffs, by their Attorneys,

/S/ David I. Schoen
David I. Schoen (DS0860)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
(334) 395-6611
DSchoen593@aol.com
Counsel for Plaintiffs


Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com
Counsel for Plaintiffs

## CERTIFICATION

I hereby certify that on August 16, 2012, the within Memorandum was served on counsel

for the Arab Bank, Steven J. Young, by hand delivery to:

DLA Piper
1251 Avenue of the Americas
New York, New York 10020-1104

I hereby further certify that on August 16, 2012, the within Memorandum was served on

the Arab Bank by hand delivery to:

The Arab Bank
520 Madison Avenue
New York, NY 10022-42437

I hereby further certify that on August 16, 2012, the within Memorandum was served on

counsel for the Defendants, Charles F. B. McAleer, Jr., by email to CMcAleer@milchev.com

and by first class mail to:

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005

/s/ Robert J. Tolchin
Robert J. Tolchin