IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | |
| SHABTAI SCOTT SHATSKY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 1:02cv02280 (RJL) |
| ) | |
| THE SYRIAN ARAB REPUBLIC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION .............................................................................................................  1

PROCEDURAL BACKGROUND.......................................................................................  1

    A.    The Complaint Is Filed Alleging that the PLO Carried Out the Bombing,
with Material Support from Syria and the Palestinian Authority ...................  1

    B.    2002-2007: The PA and PLO Unsuccessfully Move to Dismiss,
Ultimately Default, and Later Move to Vacate the Default............................  3

    C.    September 2011-June 2013: The Parties Conduct Fact Discovery
and Plaintiffs Fail to Timely Provide Expert Disclosures on the
Non-Damages Issues.....................................................................................  4

STATEMENT OF FACTS ..................................................................................................  6

ARGUMENT.....................................................................................................................  8

I.     UNDER RULE 56(a), A COURT MUST GRANT SUMMARY JUDGMENT IF THE
PLAINTIFFS LACK ADMISSIBLE EVIDENCE TO SUPPORT AN ESSENTIAL
ELEMENT OF THEIR CLAIM .................................................................................  8

    A.    Overview of the Rule 56 Standard for Granting Summary Judgment............  8

    B.    Overview of the Elements of an Anti-Terrorism Act Claim...........................  10

II.    THE PA AND PLO ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFFS' ATA CLAIM BECAUSE THE PLAINTIFFS LACK
ADMISSIBLE EVIDENCE TO ESTABLISH A TRIABLE ISSUE OF FACT
ON ESSENTIAL ELEMENTS OF THEIR CLAIM.................................................  11

    A.    Plaintiffs Lack Admissible Evidence of a Predicate Criminal Act by
the PA or PLO and Therefore Cannot Establish a Triable Issue of Fact that
the PA or PLO Committed an "Act of International Terrorism"....................  11

        1.   Plaintiffs Have No Evidence That Either the PA or PLO Engaged in the
Acts of Terrorism Pled in Count III of the Complaint……………………...  11

        2.   There Is No Admissible Evidence In This Case That the PLO or PFLP Had
Any Role in the Bombing…………………………………………………  14

ii

　　　　3.　There Is No Admissible Evidence to Support the Plaintiffs' Allegations That the PA Violated a Criminal Statute by Providing Material Support.... 16

　　B.　There Is No Triable Issue of Fact that the Actions of the PA or PLO Appear to Be Intended to Intimidate or Coerce a Civilian Population ........... 19

　　C.　There Is No Triable Issue of Fact that the PA Provided Material Support with the Requisite Scienter ............................................................. 20

　　D.　There Is No Triable Issue of Fact that the PA or PLO Proximately Caused the Plaintiffs' Injuries ...................................................................... 22

III.　PLAINTIFFS CANNOT RELY ON §2339B AS THE PREDICATE CRIMINAL ACT............................................................................................................ 23

IV.　THE PA IS NOT LIABLE UNDER A RESPONDEAT SUPERIOR THEORY OF LIABILITY .................................................................................................. 27

V.　THE ATA CLAIMS OF ARON TRATTNER, SHELLEY TRATTNER, BELLA FRIEDMAN, YEHIEL FRIEDMAN, ZVI FRIEDMAN, MINOR I.F., AND MINOR M.F. MUST BE DIMMISSED FOR LACK OF STANDING  .................................... 29

VI.　RONIT TRATTNER'S NON-FEDERAL LAW CLAIM MUST BE DISMISSED .. 30

CONCLUSION.................................................................................................... 31

iii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................12

*Athridge v. Aetna Cas. & Sur. Co.*,
  604 F.3d 625 (D.C. Cir. 2010)....................................................................................8

*Bd. of County Comm'rs v. Brown*,
  520 U.S. 397 (1997)..................................................................................................28

*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) (en banc) ...........................................10, 13, 21, 26

*Carbon Fuel Co. v. United Mine Workers of America*,
  444 U.S. 212 (1979)..................................................................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................................9

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
  511 U.S. 164 (1994)..............................................................................................3, 12

*Franks v. Salazar*,
  816 F. Supp. 2d 49 (D.D.C. 2011) ...........................................................................24

*Gill v. Arab Bank*,
  893 F. Supp. 2d 542 (E.D.N.Y. 2012) ................................................................15, 16

*Gleklen v. Democratic Congressional Campaign Comm., Inc.*,
  199 F.3d 1365 (D.C. Cir. 2000) ...............................................................................10

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) ......................................................................21

*Greer v. Paulson*,
  505 F.3d 1306 (D.C. Cir. 2007) ..........................................................................9, 10

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) .................................................................................13

iv

1344878.1

*Kaplan v. Al Jazeera,*
　No. 10 Civ. 5298, 2011 U.S. Dist. LEXIS 61373 (S.D.N.Y. June 7, 2011)............................21

*Kiobel v. Royal Dutch Petro. Co.,*
　133 S. Ct. 1659 (2013)........................................................................................................25

*Lewis v. Univ. of S. Miss.,*
　227 Fed. Appx. 340 (5th Cir. 2007)....................................................................................16

*Linde v. Arab Bank, PLC,*
　04-CV-2799, 2013 U.S. Dist. LEXIS 67823 (E.D.N.Y. May 8, 2013) ..............................3, 12

*Microsoft Corp. v. AT&T Corp.,*
　550 U.S. 437 (2007)............................................................................................................26

*Moncada v. Peters,*
　579 F. Supp. 2d 46 (D.D.C. 2008) .......................................................................................9

*Monell v. Dep't of Social Services,*
　436 U.S. 658 (1978)............................................................................................................28

*Morris v. Khadr,*
　415 F. Supp. 2d 1323 (D. Utah 2006)..................................................................................30

*Morrison v. National Australia Bank Ltd.,*
　130 S. Ct. 2869 (2010)........................................................................................................26

*NAACP v. Claiborne Hardware Co.,*
　458 U.S. 886 (1982)............................................................................................................16

*Estate of Parsons v. Palestinian Authority,*
　651 F.3d 118 (D.C. Cir. 2011) ............................................................................................11

*Richards v. Option One Mortg. Corp.,*
　No. 08-0007, 2009 U.S. Dist. LEXIS 77958 (D.D.C. Aug. 28, 2009) ...................................9

*Rothstein v. UBS AG,*
　708 F.3d 82 (2d Cir. 2013)....................................................................................3, 12, 13, 22

*Rothstein v. UBS AG,*
　772 F. Supp. 2d 511 (S.D.N.Y. 2010), *aff'd*, 708 F.2d 82 (2d Cir. 2013) ..............................21

*Saperstein v. Palestinian Auth.,*
　Case No. 04-20225, 2008 U.S. Dist. LEXIS 110375 (S.D. Fla. Sept. 29, 2008) ...................30

*Sharp v. Rosa Mexicano, D.C., LLC,*
　496 F. Supp. 2d 93 (D.D.C. 2007).......................................................................................24

1344878.1

*Sisso v. Islamic Republic of Iran*,
    448 F.Supp.2d 76 (D.D.C. 2006) ..........................................................................31

*Strauss v. Credit Lyonnais, S.A.*,
    06-CV-702; 07-CV-914, 2013 U.S. Dist. LEXIS 28451 (E.D.N.Y. Feb. 28, 2013) ...15, 16, 22

*Stutts v. De Dietrich Group*,
    No. 03-CV-4058, 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. Jun. 30, 2006) ..........................22

*TAP Pharm. Prods. v. Owl Pharms., L.L.C.*,
    Case No. 1:99-CV-2715, 2002 U.S. Dist. LEXIS 28284 (N.D. Ohio Sept. 16, 2002)............13

*Tracy v. Islamic Republic of Iran*,
    Civ. No. 01-2517, 2003 U.S. Dist. LEXIS 15844 (D.D.C. Aug. 21, 2003) ...........................29

*Transclean Corp. v. Bridgewood Serv., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002)............................................................................13

*United States v. Bout*, 08 Cr. 365, 2011 U.S. Dist. LEXIS 74318 (S.D.N.Y. July 11, 2011) .......24

*United States v. Hemphill*,
    514 F.3d 1350 (D.C. Cir. 2008) ............................................................................14

*United States v. Johnson*,
    802 F.2d 1459 (D.C. Cir. 1986) ............................................................................28

*United States v. Klimavicius-Viloria*,
    144 F.3d 1249 (9th Cir. 1998) ..............................................................................25

*United States v. Yousef*,
    No. S308 Cr. 1213, 2010 U.S. Dist. LEXIS 86281 (S.D.N.Y. Aug. 23, 2010).......................25

*Williamson v. United States*,
    512 U.S. 594 (1994)...........................................................................................27

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................10

**Statutes**

18 U.S.C. § 2331(1) ...............................................................................................10, 19

18 U.S.C. § 2331(1)(A)............................................................................................11, 19

18 U.S.C. § 2331(1)(B)............................................................................................19, 20

18 U.S.C. § 2332......................................................................................................20, 21

18 U.S.C. § 2333(a) ............................................................................................... *passim*

1344878.1

18 U.S.C. § 2339A .................................................................................................10, 20, 21

18 U.S.C. § 2339B .........................................................................................23, 24, 26, 27

18 U.S.C. § 2339B(a)(1) ..............................................................................................23

18 U.S.C. § 2339B(d)(1) ..............................................................................................24

28 U.S.C. § 1367(c)(3) .................................................................................................30

28 U.S.C. § 1605(a)(7) ..............................................................................................2, 29

**Other Authorities**

62 Fed. Reg. 52650 (Oct. 8, 1997).................................................................................23

11 *Moore's Federal Practice* § 56.13[1] (3d ed. 2002)....................................................9

10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, § 2727 (1998)...............9

Fed. R. Civ. P. 8(a) .....................................................................................................12

Fed. R. Civ. P. 17(b) ...................................................................................................30

Fed. R. Civ. P. 17(b)(3)...............................................................................................30

Fed. R. Civ. P. 26(a)(1)..................................................................................................4

Fed.R.Civ.P. 26(a)(1)(A)(i) ...........................................................................................5

Fed. R. Civ. P. 55(a) ......................................................................................................4

Fed. R. Civ. P. 56 ......................................................................................................8, 9

Fed. R. Civ. P. 56(a) ......................................................................................................8

Fed. R. Civ. P. 56(c)(1)(B) ............................................................................................9

Fed. R. Civ. P. 804(b)(3)..........................................................................................15, 27

1344878.1

**INTRODUCTION**

Defendants The Palestinian Authority ("PA") and The Palestine Liberation Organization ("PLO") are entitled to summary judgment because the Plaintiffs lack any admissible evidence to support their claims that the PLO carried out the February 2002 West Bank bombing at issue in this case or that the PA provided material support to the PLO, with the specific intent of facilitating acts of international terrorism, including the bombing at issue in this case. Instead, over ten years after the lawsuit began, and after the close of fact discovery, Plaintiffs have no admissible evidence of any PA or PLO role in the bombing. Plaintiffs have not identified any fact witnesses who can provide testimony supporting their claims. Plaintiffs have no expert witnesses to testify on PA or PLO liability. Plaintiffs also lack any documents or other tangible evidence that would be admissible at trial to link either the PA or the PLO to the bombing. Because there is no triable issue of fact, the PA and PLO are entitled to summary judgment as a matter of law.

**PROCEDURAL BACKGROUND**

A.  **The Complaint Is Filed Alleging that the PLO Carried Out the Bombing, with Material Support from Syria and the Palestinian Authority.**

This lawsuit arises from a suicide bombing that took place on February 16, 2002 in a restaurant in Karnei Shomron, an Israeli settlement in the West Bank. A Palestinian man named Sadek Hafez allegedly carried out the attack. He had no affiliation with either the Palestinian Authority or PLO. U.S. nationals Keren Shatsky and Rachel Thaler died in the bombing. Their parents and siblings filed this suit in November 2002, along with Hillel Trattner, Ronit Trattner, Leor Thaler, Steven Braun, and Chana Friedman, all of whom were injured in the bombing. Ronit Trattner's parents and Chana Friedman's mother and siblings, none of whom were alleged to be present at the bombing, also are plaintiffs. *See* Compl. ¶¶ 5-15.

1

The plaintiffs sued the Syrian Arab Republic, three of its agencies (the Syrian Ministry of Defense, the Syrian Military Intelligence and the Syrian Air Force Intelligence Directorate), and five Syrian government officials under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act.  *Id.* ¶ 2 (citing 28 U.S.C. § 1605(a)(7)).   The Plaintiffs alleged that the Syrian defendants "provided material support and resources for the commission of acts extrajudicial killing (within the meaning of 28 U.S.C. § 1605(a)(7)) including the terrorist bombing, and performed other actions that caused the terrorist bombing and harm to the plaintiffs."  *Id.* ¶16 (allegation as to Syrian Arab Republic); *see also id.* ¶¶ 17-24 (nearly identical allegations as to other Syrian defendants); *id.* ¶¶ 31-44 (additional allegations that the Syrian defendants provided material support to defendants PLO and John Does 1-99).

In addition to the Syrian defendants, the Plaintiffs sued the PLO and PA, along with "John Does-1-99."  The Palestinian defendants and John Does 1-99 were sued under the civil liability provision of the U.S. Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), which provides a cause of action where a U.S. national has been injured in an act of international terrorism.  *Id.* ¶ 3.  With respect to the PLO, the Plaintiffs conclusorily alleged that the "PLO planned and executed the terrorist bombing that caused harm to the plaintiffs."  *Id.* ¶ 25; *see also id.* ¶ 63. Plaintiffs also alleged that Sadek Hafez was the suicide bomber and that he was "an agent and/or employee of the PLO and of John Does 1-99," *id.* ¶ 60, and that the PLO and John Does 1-99 "constructed the explosive device used in the terrorist bombing," *id.* ¶ 65.

With respect to the Palestinian Authority, the Plaintiffs alleged that the PA "provided defendants PLO and John Does 1-99 with massive material support and resources with the specific intention of causing and facilitating the commission of extrajudicial killing and international terrorism including the terrorist bombing."  *Id.* ¶ 45.  The Plaintiffs also alleged that

2

the PA provided "defendants PLO and John Does 1-99 with terrorist training at paramilitary

training bases" and "with tens of millions of dollars annually" with the "specific intention and

express purpose of causing, funding and facilitating the commission of acts of extrajudicial

killing and international terrorism including the terrorist bombing."  *Id.* ¶¶ 47, 50.

In addition to the Anti-Terrorism Act claim (Count III), the Complaint also pleads

supplemental non-federal law claims for wrongful death, pain and suffering, battery, assault, loss

of consortium and solatium, negligence and intentional infliction of emotional distress.  *See*

Complaint at Counts I, II, and IV-IX.[1]  As Plaintiffs previously argued, "the remedies provided

by §2333 of the ATA render the supplemental causes of action redundant" and, therefore, for all

Plaintiffs except non-U.S. national Ronit Trattner, who sues for battery, "the supplemental torts

are irrelevant."  DE 64, Mem. at 7 n.5.  *See also* DE 64-2 at 38 n. 11 ("Thus, at bottom, the sole

supplemental cause of action for which plaintiffs seek relief in this case is Ronit Trattner's

battery claim.").

**B.     2002-2007:  The PA and PLO Unsuccessfully Move to Dismiss, Ultimately Default, and Later Move to Vacate the Default.**

In November 2003, the PA and PLO moved to dismiss for lack of subject-matter

jurisdiction (on grounds of sovereign immunity and nonjusticiability), lack of personal

jurisdiction, and insufficiency of service of process.  DE 26, 28.  On February 7, 2005, this Court

denied Defendants' motion to dismiss by minute order.   Following the denial of their motion to

---

[1] The remaining Counts, Counts X-XIII are not separate causes of action but instead assert a variety of theories of secondary liability (aiding and abetting, civil conspiracy, inducement, and vicarious liability), none of which are available under the civil liability provision of the Anti-Terrorism Act, 18 U.S.C. § 2333(a).  *See Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013) (holding that the Section 2333(a) does not provide for aiding and abetting liability); *Linde v. Arab Bank, PLC*, 04-CV-2799, 2013 U.S. Dist. LEXIS 67823, at *9-12 (E.D.N.Y. May 8, 2013) (dismissing Plaintiffs' civil conspiracy Anti-Terrorism Act claim in light of the Second Circuit's holding in *Rothstein* and because, under *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 177 (1994), courts should not "extend liability beyond the scope of conduct prohibited by the statutory text").

dismiss, the Defendants did not file an answer.  On April 12, 2005, the Clerk entered a default

pursuant to Federal Rule of Civil Procedure 55(a).  DE 52.

 Following the Clerk's entry of default against the PA and PLO, the Plaintiffs voluntarily

dismissed the Syrian defendants without prejudice, *see* DE 55, and subsequently initiated two

separate actions against them, which were eventually consolidated into *Shatsky v. Syrian Arab

Republic*, 1:08-cv-496-RJL (D.D.C.), which remains pending.

 In this action, Plaintiffs did not move for entry of default judgment against the PA and

PLO until April 30, 2007.  *See* DE 64.   At that time, the PA and PLO were in the process of

retaining litigation counsel to defend the U.S. lawsuits.  The undersigned entered their

appearance in May 2007, *see* DE 66, and promptly filed an opposition to the motion for entry of

default judgment.  DE 69.  In December 2007, the PA and PLO moved to vacate the Clerk's

entry of default.  The Court granted the motion in July 2011.  *See* DE 126 (Memorandum

Opinion); DE 127 (Order).

  **C.**  **September 2011-June 2013:  The Parties Conduct Fact Discovery and
Plaintiffs Fail to Timely Provide Expert Disclosures on the Non-Damages
Issues.**

 On September 15, 2011, this Court entered a Scheduling Order, setting a 12-month fact

discovery period.  DE 136.  On October 31, 2011, Plaintiffs served Defendants their Rule

26(a)(1) disclosures, identifying twenty-nine persons "that Plaintiffs may use to support their

claims or defenses, unless the use would be solely for impeachment."  Twenty-three of those

persons were the named Plaintiffs, none of whom testified at their depositions to any knowledge

relevant to PA or PLO liability for the bombing.  The remaining six persons Plaintiffs listed in

their Rule 26(a)(1) disclosures were (1) PA President and PLO Chairman Mahmoud Abbas, (2)

Ahmed Qurei, who was Prime Minister of the PA from October 2003-March 2006, (3) Yasser

Abed Rabbo, the Secretary General of the PLO, (4) Ahmed Sa'adat, the Secretary General of the Popular Front for the Liberation of Palestine ("PFLP"), who is detained in an Israeli prison, (5) Abdel Rahim Malouh, a member of the PLO Executive Committee and the Deputy Secretary General of the PFLP, and (6) Mosab Hassan Yousef, son of Hamas leader Sheikh Hassan Yousef and author of the book, "Son of Hamas."   *See* Exh. 1 at 2-3.

Plaintiffs deposed Malouh and Sa'adat in September 2012 and neither provided any testimony that would support Plaintiffs' claims.  Plaintiffs never sought to depose President Abbas, Ahmed Qurei, Yasser Abed Rabbo, or Mosab Hasssan Yousef.  Plaintiffs never served a supplemental or amended set of Rule 26(a)(1)(A)(i) disclosures naming additional potential witnesses.  Plaintiffs also never amended the Complaint to identify any employee of the PA or PLO allegedly involved in the bombing at issue or to identify any of the 99 "John Doe" defendants.

Near the end of the fact discovery period, Defendants served Plaintiffs with a set of contention interrogatories in an effort to determine the factual basis for the allegations in the Complaint.  For example, PA Interrogatory No. 4 asked the Plaintiffs to state the factual basis for their contention in paragraph 45 of the Complaint that the PA "provided defendants PLO and John Does 1-99 with massive material support and resources with the specific intention of causing and facilitating commission of acts of extrajudicial killing and international terrorism," including the bombing at issue.  PLO Interrogatory No. 20 asked the Plaintiffs to state the factual basis for their contention in paragraph 25 of the complaint that the PLO planned and executed the bombing at issue.  The Plaintiffs refused to answer either interrogatory and instead offered only boilerplate objections.  *See* Exh. 2 (Pls.' Objs. to PA Interrogatories) at 5; Exh. 3 (Pls.' Objs. to PLO Interrogatories) at19.  When asked to provide the factual basis for any contention

5

that the Syrian defendants proximately caused the bombing at issue, the Plaintiffs objected on numerous grounds, including relevance, even though the Complaint repeatedly alleges the Syrian defendants caused the bombing, at ¶¶ 16-24, 39, 42, and even though Plaintiffs are seeking a default judgment against Syria on the basis that Syria caused the bombing.  *See Shatsky v. Syrian Arab Republic*, No. 1:08-cv-496-RJL, DE 35.  Exh. 3 (Pls.' Objs. to PLO Interrogatory No. 9) at 9-10.  When asked to identify persons with knowledge or information relating to the allegations and claims in their lawsuit, the Plaintiffs also refused to answer.  *Id.* (Pls.' Objs. to PLO Interrogatory Nos. 2, 3) at 3-4.  Indeed, Plaintiffs refused to provide any answers to a single one of the PA's or PLO's interrogatories and instead served only objections.  *See generally* Exhs. 2, 3.

Fact discovery closed on September 19, 2012.  Plaintiffs' October 19, 2012, expert disclosure deadline passed with Plaintiffs disclosing only damages-related expert opinions. Ultimately, the court precluded Plaintiffs from presenting any liability related experts, as a result of their failure to timely disclose any such experts.  *See* Minute Order of January 2, 2013.  On June 26, 2013, this Court entered a scheduling order making summary judgment motions due on August 12, 2013.  This motion follows.

## STATEMENT OF FACTS

On February 16, 2002, a suicide bomber detonated an explosive device at a pizza parlor located in an outdoor shopping mall in the West Bank, in the Israeli settlement known as Karnei Shomron.  Exh. 4, Statement of Material Facts as to Which There Is No Genuine Issue ("SOMF"), ¶ 7.  The bombing occurred at the height of the popular uprising against the Israeli Occupation, known as the Second Intifada.  The explosion killed Keren Shatsky and Rachel Thaler and injured Leor Thaler, Hillel Trattner, Ronit Trattner, Steven Braun, and Chana

1344878.1

Friedman .  *Id.*  All of the foregoing were U.S. nationals, with the exception of Ronit Trattner. *Id.*

The Complaint alleges that Sadek Abdel Hafez was the suicide bomber.  Compl. ¶ 60. For purposes of the present motion, the Defendants will not dispute that allegation.  Hafez was not an employee of the PA or PLO.  Exh. 4, SOMF ¶ 14.  There is no evidence that Hafez acted as an agent of the PA or PLO, or that he acted with the support or authorization of the PA or PLO.  *Id.* ¶¶ 14-16.

The Popular Front for the Liberation of Palestine ("PFLP") reportedly issued a statement claiming responsibility for the bombing, but the PFLP had a history of falsely claimed responsibility for attacks carried out by others, including Hamas.  *Id.* ¶¶ 10-11.  On October 22, 2001, approximately four months before the bombing at issue, the Palestinian Supreme Council on National Security issued a decree, signed by President Arafat, outlawing the military wing of the PFLP.  *Id.* ¶ 6.  Following the attack, the PA's Preventive Security Services attempted to investigate the attack and, based on the PFLP's reported claim of responsibility, interrogated several individuals associated with the PFLP.  *Id.* ¶ 12.  The PA's ability to investigate was severely hampered, however, by its lack of jurisdiction in the settlement where the bombing occurred and lack of control in the surrounding area.  *See id.* ¶¶ 8, 13.  Moreover, shortly after the bombing, the Israelis staged a large-scale military operation, known as Operation Defensive Shield, in which it invaded the Palestinian-controlled territories of the West Bank.  The Palestinian town near the scene of the bombing, Qalqilya, was under siege by the Israel Defense Forces, making it impossible for the local PA security forces to coordinate with their headquarters in Ramallah.  *Id.* ¶ 13.

1344878.1

The Israelis did not prosecute anyone, including any PA or PLO officials, for involvement in the Karnei Shomron bombing.  *Id.* ¶ 17.

## ARGUMENT

**I.      UNDER RULE 56(a), A COURT MUST GRANT SUMMARY JUDGMENT IF THE PLAINTIFFS LACK ADMISSIBLE EVIDENCE TO SUPPORT AN ESSENTIAL ELEMENT OF THEIR CLAIM.**

**A.      Overview of the Rule 56 Standard for Granting Summary Judgment.**

Federal Rule of Civil Procedure 56(a) provides:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine what facts are "material," a court must look to the substantive law on which each claim rests.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense, and therefore, affect the outcome of the action.  *Id.*  Plaintiffs cannot show a "genuine" dispute of material fact unless they can proffer evidence "such that a reasonable jury could return a verdict" in their favor.  *Id.* at 258.

The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).  The "possibility that a jury might speculate in the plaintiff's favor" is not sufficient to defeat summary judgment.  *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 631 (D.C. Cir. 2010).

One of the ways a movant may establish there is no genuine dispute as to a material fact is to show "that [the] adverse party cannot produce admissible evidence to support the fact."

8

Fed. R. Civ. P. 56(c)(1)(B).   As the Supreme Court has explained, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In such a situation, there can be no genuine issue as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

Rule 56 contains no express or implied requirement that the movant support its motion with affidavits or other similar materials negating the opponent's claim. *Moncada v. Peters*, 579 F. Supp. 2d 46, 50 (D.D.C. 2008).  When the nonmoving party (here, the Plaintiffs) bears the ultimate burden of proof at trial on a dispositive issue or issues, the moving parties (here, the PA and PLO) may carry their initial burden on summary judgment by doing no more than "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, § 2727 at 474 (1998); 11 *Moore's Federal Practice* § 56.13[1] at 56-138 (3d ed. 2002); *Richards v. Option One Mortg. Corp.*, No. 08-0007, 2009 U.S. Dist. LEXIS 77958, at *2 (D.D.C. Aug. 28, 2009).

While a nonmovant is not required to produce evidence in a form that would be admissible at trial in their opposition papers, the evidence must be "capable of being converted into admissible evidence." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). *See also* Fed. R. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot

be presented in a form that would be admissible in evidence.").  "Otherwise, the objective of

summary judgment – to prevent unnecessary trials – would be undermined.  Verdicts cannot rest

on inadmissible evidence."  *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199

F.3d 1365, 1369 (D.C. Cir. 2000) (internal citation omitted) (holding that evidence about a

conversation was "sheer hearsay" and because the witness would not be permitted to testify

about it at trial, "counts for nothing" in opposing summary judgment).  *Accord Greer*, 505 F.3d

at 1315 (D.C. Cir. 2007).

>    **B.**      **Overview of the Elements of an Anti-Terrorism Act Claim.**

The Anti-Terrorism Act's civil liability provision is unusual.  It appears in Title 18,

requires a predicate criminal act, imposes treble damages, and also has elements of a tort.  To

make out a claim against the PA or PLO under the statute, Plaintiffs must at the very least

establish that the PA or PLO engaged in an "act of international terrorism," acted with the

requisite scienter, and that the conduct that constituted the "act of international terrorism" caused

the death of the U.S. national.  *See, e.g., Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 42

(D.D.C. 2010) (The ATA "thus compels a 'chain of incorporations' from § 2333(a), which

references international terrorism, to § 2331(1), which defines international terrorism, to

whatever federal criminal laws the violation of which a plaintiff might plead, which are

referenced in the definition of international terrorism, and further to whatever additional

referential incorporations those criminal laws might make. . . . Additionally, the ATA requires

allegations of intentional misconduct—in addition to other state-of-mind requirements

incorporated in §§ 2339A-2339C—and proximate causation."); *see also Boim v. Holy Land

Found. for Relief & Dev.*, 549 F.3d 685, 692 (7th Cir. 2008) (en banc) (because the ATA "does

not create secondary liability, so that the only defendants are primary violators, the ordinary tort

requirements relating to fault, state of mind, causation, and foreseeability must be satisfied for the plaintiff to obtain a judgment.").

As set forth below, there is no triable issue of fact as to any of these essential elements of Plaintiffs' ATA claim against the PA or PLO.

**II.     THE PA AND PLO ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ATA CLAIM BECAUSE THE PLAINTIFFS LACK ADMISSIBLE EVIDENCE TO ESTABLISH A TRIABLE ISSUE OF FACT ON ESSENTIAL ELEMENTS OF THEIR CLAIM**

**A.     Plaintiffs Lack Admissible Evidence of a Predicate Criminal Act by the PA or PLO and Therefore Cannot Establish a Triable Issue of Fact that the PA or PLO Committed an "Act of International Terrorism."**

The civil liability provision of the Anti-Terrorism Act provides that any U.S. national injured in his or her person "by reason of an act of international terrorism," or "his or her estate, survivors, or heirs," may sue in any "district court of the United States and shall recover threefold the damages he or she sustains."  18 U.S.C. § 2333(a).  Thus, the statute requires that the U.S. national's injury be "by reason of" the defendant's "act of international terrorism," and imposes automatic treble damages.

"International terrorism" is a defined term in the statute and requires, among other things, that the act giving rise to liability "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States . . . , or that would be a criminal violation if committed within the jurisdiction of the United States."  18 U.S.C. § 2331(1)(A).   As a result, "to prevail, a plaintiff must prove the defendant would have violated any one of a series of predicate criminal laws had the defendant acted within the jurisdiction of the United States." *Estate of Parsons v. Palestinian Authority*, 651 F.3d 118, 122 (D.C. Cir. 2011).

11

1344878.1

1.      Plaintiffs Have No Evidence That Either the PA or PLO Engaged in the Acts of Terrorism Pled in Count III of the Complaint.

In the Anti-Terrorism Act count of their Complaint (Count III), the Plaintiffs allege the following:

The actions of defendants PLO, PA and John Does 1-99 violate, or if committed within U.S. jurisdiction would violate literally scores of federal and state criminal statutes prohibiting, *inter alia* and without limitation:  homicide, battery, assault and the construction and use of explosive devices; as well as the criminal prohibitions against aiding and abetting, serving as an accessory to, solicitation of and conspiracy to commit these and other felonies.

DE 3 at 22, at ¶84.

Despite the allegations in their Complaint, in the course of the decade-long litigation, Plaintiffs have not identified any actions of the PLO or PA that caused their injuries and that constitute violations of statutes prohibiting battery, assault, or the construction and use of explosive devices.   And when asked for the factual basis for these allegations near the close of discovery in a set of contention interrogatories, Plaintiffs refused to provide an answer.  *See* Exh. 2 at 2-4 (Objections to PA Interrogatory No. 2); Exh. 3 at 8-9 (Objections to PLO Interrogatory No. 8).  None of the Plaintiffs provided evidence in their depositions that would support the allegations in their Complaint that either the PA or PLO is responsible for their injuries.  Exh. 4, SOMF ¶ 33.

There are numerous reasons Plaintiffs cannot proceed to trial on an aiding and abetting or civil conspiracy claim, which also are pled in Counts X and XI of the Complaint, in addition to Count III.  *First*, the Complaint fails to meet the Rule 8(a) pleading standard for stating a claim for aiding and abetting or civil conspiracy, each of which has specific elements which much be adequately pled, supported by non-conclusory factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *Second*, the Anti-Terrorism Act's civil liability provision does not create secondary liability under aiding and abetting or civil conspiracy theories.  *See Rothstein*, 708

12

F.3d at 98 (holding that there is no aiding and abetting liability under § 2333(a)); *Linde v. Arab Bank, PLC*, 04-CV-2799, 2013 U.S. Dist. LEXIS 67823, at *9-12 (E.D.N.Y. May 8, 2013) (holding that *Rothstein* also applies to civil conspiracy claims); *Boim*, 549 F.3d at 689 ("[S]tatutory silence on the subject of secondary liability means there is none; and section 2333(a) authorizes awards of damages to private parties but does not mention aiders and abettors or other secondary actors"). ***Third***, Plaintiffs failed to identify the factual basis for their aiding and abetting and conspiracy allegation in response to the PA's and PLO's contention interrogatories. *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1373-74 (Fed. Cir. 2002) (upholding grant of summary judgment of infringement where patent defendant did not assert non-infringement as a defense in response to contention interrogatory seeking to discover defendant's defenses but sought to do so in opposition to summary judgment); *TAP Pharm. Prods. v. Owl Pharms., L.L.C.*, Case No. 1:99-CV-2715, 2002 U.S. Dist. LEXIS 28284 (N.D. Ohio Sept. 16, 2002) (parties are properly bound by their responses to such interrogatories seeking a description of their contentions in a case.); *and see*. Exh. 2 (Objections to PA Interrogatory Nos. 2, 8, 11, 14). ***Fourth***, there is no evidence to support Plaintiffs' allegation that the PA or PLO aided and abetted or conspired with Sadek Hafez in carrying out the Karnei Shomron bombing.

To establish civil aiding and abetting liability as to the PA or PLO, the Plaintiffs would have to prove, that the PA or PLO provided assistance to Hafez, was "generally aware of [its] role as part of an overall illegal or tortious activity at the time that [it] provide[d] the assistance," and "knowingly and substantially assist[ed] the principal violation," here, Hafez's suicide bombing. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Plaintiffs have not adduced any admissible evidence demonstrating that the PA or PLO *knowingly and substantially*

1344878.1

assisted Hafez in the Karnei Shomron bombing or was aware of any alleged role in Hafez's

suicide bombing operation *at the time* the PA or PLO allegedly provided assistance.

To establish civil conspiracy, the Plaintiffs "must prove at least the existence of an

agreement" between the PA (or PLO) and the perpetrator(s) of the Karnei Shomron bombing.

*Parsons*, 651 F.3d at 133 (affirming grant of summary judgment as to civil conspiracy claim

against PA).  *See also United States v. Hemphill*, 514 F.3d 1350, 1362 (D.C. Cir. 2008) ("To

prove a conspiracy charge, the [evidence] must show that the defendant agreed to engage in

criminal activity.").  In addition, Plaintiffs must prove the PA or PLO "'knowingly participated

in the conspiracy' with the intent to commit the offense, as well as that at least one overt act took

place in furtherance of the conspiracy." *Id.*  There is a complete absence of evidence as to the

critical elements of both aiding and abetting and civil conspiracy.  Thus, even assuming

arguendo, Plaintiffs had adequately pled aiding and abetting and civil conspiracy and, contrary to

the holdings of the only Courts of Appeals to have addressed the issue, the ATA provides for

secondary liability, Plaintiffs lack the evidence to establish a triable issue of fact that either the

PA or PLO aided and abetted or conspired with Hafez or any other perpetrators of the attack.

        2.       <u>There Is No Admissible Evidence In This Case That the PLO or PFLP<br>Had Any Role in the Bombing.</u>

Similarly, there is no evidence to support Plaintiffs' allegation elsewhere in the

Complaint that (1) "PLO planned and executed the terrorist bombing that caused harm to the

plaintiffs," Compl. ¶ 25; (2) Sadek Hafez was "an agent and/or employee of the PLO," *id.* ¶ 60;

or (3) the PLO "constructed the explosive device used in the terrorist bombing," *id.* ¶ 65.  And,

when served with contention interrogatories asking for the factual basis for these allegations, the

Plaintiffs refused to answer, claiming the interrogatories were "overbroad, unduly burdensome,

and not reasonably calculated to lead to relevant or admissible evidence."  Exh. 2 at 12-14, 16-17

14

(Objections to PA Interrogatory Nos. 11, 12, 15); Exh. 3 at 18-19 (Objections to PLO Interrogatory No. 19).  At their depositions, the Plaintiffs did not identify any evidence of PLO involvement in the bombing.  Exh. 4, SOMF ¶ 32.

Nor can the Plaintiffs proceed to trial on a theory that the PFLP is a member of the PLO and, therefore, the PLO is liable for the actions of the PFLP.  Plaintiffs did not plead this theory of liability in their Complaint.  And, in response to the PA's and PLO's contention interrogatories, the Plaintiffs did not identify the PFLP's membership in the PLO as a factual basis for their claim of liability as to the PLO.

In addition, there is no admissible evidence that the PFLP had any role in the Karnei Shomron bombing.  Public claims of responsibility are not admissible to establish that the PFLP carried out the bombing.  *See Gill v. Arab Bank*, 893 F. Supp. 2d 542, 570 (E.D.N.Y. 2012).  In *Gill*, the court held that a claim of responsibility by Hamas for an alleged terrorist shooting was not admissible to establish Hamas' responsibility for the shooting.  The court cited "the need for 'favorable' publicity by many terrorist groups" and concluded that "[t]his distorted view of these killer-groups overrides the benign motives that the Federal Rules of Evidence relies on as an indicator of reliability."  *Id.*  Indeed, the PFLP had a history of claiming responsibility for attacks carried out by third parties.  Exh. 4, SOMF ¶ 11.  Similarly, in *Strauss v. Credit Lyonnais, S.A.*, 06-CV-702; 07-CV-914, 2013 U.S. Dist. LEXIS 28451, at *104 (E.D.N.Y. Feb. 28, 2013), the court held that "claims of responsibility by Hamas taken from their website, even assuming they could be authenticated, are hearsay," and do not fall within Federal Rule of Evidence 804(b)(3)'s exception for statements against interest.  As in *Gill*, the *Strauss* court concluded that "Hamas' claims of responsibility were not against its interest as an organization such that Hamas only would have made them if it believed them to be true."  *Id.*  As with Hamas' claims of

15

responsibility in *Gill* and *Strauss*, even assuming Plaintiffs could authenticate the PFLP's reported claim of responsibility, it is inadmissible hearsay and cannot be used to create a triable issue of fact that the PFLP carried out the bombing.

In any event, the PLO, as an umbrella group for various political factions, is not responsible for the acts of its members. "Generally, unincorporated associations . . . are not responsible for the wrongful acts of their members unless they encouraged, promoted, or subsequently ratified them." *Lewis v. Univ. of S. Miss.*, 227 Fed. Appx. 340, 341 (5th Cir. 2007) (citing 6 Am. Jur. 2d Assoc. & Clubs § 47 (West 2005)). *See also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims"); *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 218 (1979) (holding that an international union cannot be held liable for the acts of its local union under an agency theory absent evidence that the international union "instigated, supported, ratified, or encouraged" the locals' activity, or that the locals acted pursuant to an agreement with the international union). Here, there is absolutely no evidence of PLO ratification or support for the suicide bombing at issue. To the contrary, four months before the Karnei Shomron bombing, Yasser Arafat, acting in part in his capacity as Chairman of the Executive Committee of the PLO, signed a decree outlawing the military wing of the PFLP and ordering "[a]ll security agencies" to "execute this directive and comply with its contents." *See* Exh. 4, SOMF ¶ 6 at Exh. C.

> 3.   There Is No Admissible Evidence to Support the Plaintiffs' Allegations That the PA Violated a Criminal Statute by Providing Material Support.

When identifying the predicate criminal acts that allegedly gave rise to the Plaintiffs' claim that the PA injured them by reason of an act of international terrorism, Plaintiffs do not

16

mention the provision of material support or identify any state or federal statute criminalizing the

provision of material support.   *See* Compl. ¶¶ 83-91 (Count III).  Elsewhere in the Complaint,

Plaintiffs make the following claims about material support the PA allegedly provided in

connection with the Karnei Shomron bombing:

> 45.     During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with massive material support and resources ***with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.*** Such support was provided routinely and in furtherance and as implementation of a specific policy and practice established and maintained by defendant PA.

> 46.     The material support and resources provided by the PA to defendants PLO and John Does 1-99 at all times relevant hereto included, inter alia: massive financial support; specialized and professional military training for the planning and execution of terrorist attacks; explosives, firearms and other weapons; training bases and facilities; safe haven; lodging; means of communication and communications equipment; financial services, including banking and wire transfer services and means of transportation.

> 47.     At all times relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with terrorist training at paramilitary training bases, camps and facilities operated and/or funded and/or controlled by the PA, ***with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing.*** This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through PA paramilitary and intelligence officials, and other agents, employees and officials of the PA acting within the scope of their agency and employment and under the express command and authorization of the PA.

> 48.     In addition, at all times relevant hereto, defendant PA provided terrorist training and other types of material support and resources to defendants PLO and John Does 1-99 by and through the agency of terrorist organizations which received material support and resources from the PA, and which acted as instrumentalities, agents and proxies of the PA for the purpose of providing terrorist training and other material support and resources to defendants PLO and John Does 1-99.

1344878.1

49.     During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 and their agents, employees, officials and operatives, with lodging, safe haven and shelter, ***with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism including the terrorist bombing***, freely and unhindered.

50.     During the period relevant hereto, defendant PA provided defendants PLO and John Does 1-99 with tens of millions of dollars annually ***with the specific intention and express purpose of causing, funding and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing***.

Compl. ¶¶ 45-50 (emphasis added).[2]  There is no admissible evidence that the PA provided any material support, let alone "massive material support," with the "specific intention of causing, funding and facilitating the commission of" the Karnei Shomron bombing.  No documents produced in discovery and no deposition testimony supports Plaintiffs' allegations that the PA operated terrorist training camps or provided "tens of millions of dollars annually" to fund terrorist operations.  Nor is there any evidence that the PA provided lodging, safe haven, and shelter to the perpetrator(s) of the Karnei Shomron bombing.

At most, there is evidence that the PA paid 4,650 Jordanian dinars (approximately $6,500) in rent for the general office of the PFLP in Qalqilya for the lease period June 2000 through May 2002.  Exh. 5, Sept. 11, 2012 Nadime Al-Barahme Deposition Transcript, at 66:12-67:5, 92:21-93:9.  But, because there is no admissible evidence that the PFLP carried out the Karnei Shomron bombing, this payment is irrelevant.  In any event, as set forth below, this *de minimis* payment of rent for the PFLP would not give rise to ATA liability for the PA because Plaintiffs lack admissible evidence as to other elements of their ATA claim, namely that this payment was provided knowing or intending it would be used to carry out an act of terrorism, and that the payment was the proximate cause of Plaintiffs' injuries.

---

[2] Plaintiffs made similar allegations against the Syrian defendants.  *See* Compl. ¶¶ 31-37.

**B.     There Is No Triable Issue of Fact that the Actions of the PA or PLO Appear to Be Intended to Intimidate or Coerce a Civilian Population.**

A defendant is liable under the ATA only if the defendant has committed an "act of international terrorism" that caused injury to the plaintiff.  18 U.S.C. § 2333(a).  "International terrorism," as that term is used in § 2333(a) is defined in 18 U.S.C. § 2331(1).  In order for the defendant's conduct to constitute an act of international terrorism, in addition to satisfying the predicate criminal act requirement (§ 2331(1)(A)), the defendant's conduct also must

> (B) appear to be intended –
>   (i)     to intimidate or coerce a civilian population;
>   (ii)    to influence the policy of a government by intimidation or coercion; or
>   (iii)   to affect the conduct of a government by mass destruction, assassination, or kidnapping  . . . .

18 U.S.C. § 2331(1)(B).

Here, the Plaintiffs have alleged that the PLO planned and carried out the bombing. Plaintiffs, however, have no evidence to support their claim against the PLO.  With respect to the PA, the Plaintiffs allege that the PA committed an act of international terrorism by providing material support to the PLO and John Does 1-99.  These material support allegations against the PA must both meet the predicate criminal act requirement and also satisfy the "appear to be intended" requirement set forth in § 2331(1)(B).

Plaintiffs recently have argued that the PA's payment of rent for the Qalqilya office of the PFLP is evidence of material support.  But even assuming arguendo that were true, making such a payment does not satisfy § 2331(1)(B) and therefore the payment does not fall within the statutory definition of international terrorism.

To be sure, a suicide bombing "appears to be intended" to intimidate or coerce a civilian population.  But Plaintiffs do not allege that the PA carried out the suicide bombing.  They allege that the PA's act of international terrorism is the provision of material support.  Even assuming

19

arguendo, the rent payment violated a federal statute criminalizing the provision of material support – and it does not – the payment cannot arguably be characterized as appearing to be intended to intimidate a civilian population or influence the policy of a government by intimidation or coercion, as required by 18 U.S.C. § 2331(1)(B).  Indeed, there is no evidence that the Israeli civilian population or government even knew of the rent payment, let alone that either was intimidated or influenced by that payment.

**C.      There Is No Triable Issue of Fact that the PA Provided Material Support with the Requisite Scienter.**

18 U.S.C. § 2339A makes it a crime to "provide[] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" specific violent crimes, including 18 U.S.C. § 2332, which prohibits the killing of a United States national outside the United States.  Plaintiffs did not specifically allege a violation of § 2339A in their Complaint, but even if the general material support allegations pled at paragraphs 45-50 of PA material support are treated as sufficient to plead a claim based on a violation of § 2339A, the PA is nonetheless entitled to summary judgment as a matter of law. The only act of alleged material support Plaintiffs have relied upon is the payment of the rent for the PFLP office in Qalqilya.  There is no evidence that the PA made this payment "knowing or intending" the funds would be used in carrying out the killing of a U.S. national, or other terrorist act.

Moreover, § 2333(a) has its own scienter requirement that is independent of the scienter requirement of the predicate criminal act.  Thus, "irrespective of which statute . . . provides the basis for a finding that defendant engaged in international terrorism, plaintiffs must still meet the scienter requirements of § 2333(a) itself in order to hold defendant liable under that statute." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 427-28 (E.D.N.Y. 2009).   Because § 2333 "provides

20

for an automatic trebling of damages," it requires "proof of intentional misconduct even if the

plaintiffs in this case did not have to satisfy the state-of-mind requirements of sections 2339A

and 2332 (but they do)." *Boim*, 549 F.3d at 692.

Although § 2333(a) does not explicitly contain a state of mind requirement, courts have

interpreted the statute "to include a requirement that there be some deliberate wrongdoing by the

defendant, in light of the fact that the statute contains a punitive element (i.e. treble damages)."

*Goldberg*, 660 F. Supp. 2d at 428; *accord Kaplan v. Al Jazeera,* No. 10 Civ. 5298, 2011 U.S.

Dist. LEXIS 61373, at *13-21 (S.D.N.Y. June 7, 2011); *see also Rothstein v. UBS AG*, 772 F.

Supp. 2d 511, 516 (S.D.N.Y. 2010) (stating that Section 2333(a) "expressly require[s] intent"),

*aff'd*, 708 F.2d 82 (2d Cir. 2013).   As the Seventh Circuit explained in its *en banc* decision in

*Boim* when analyzing § 2333(a)'s scienter requirement:

> Punitive damages are rarely if ever imposed unless the defendant is found
> to have engaged in deliberate wrongdoing.  "Something more than the
> mere commission of a tort is always required for punitive damages.  There
> must be circumstances of aggravation or outrage, such as spite or 'malice,'
> or a fraudulent or evil motive on the part of the defendant, or such a
> conscious and deliberate disregard of the interests of others that the
> conduct may be called wilful [sic] or wanton." W. Page Keeton et al.,
> *Prosser and Keeton on the Law of Torts* § 2, pp. 9-10 (5th ed. 1984). . . .
> Treble damages too, not being compensatory, tend to have a punitive aim.
> "The very idea of treble damages reveals an intent to punish past, and to
> deter future, unlawful conduct."  *Texas Industries, Inc. v. Radcliff
> Materials, Inc.*, 451 U.S. 630, 639, (1981)  . . . .

549 F.3d at 692.

Thus, even if Plaintiffs could establish a genuine issue of material fact that the PA or

PLO acted with the scienter required to satisfy the predicate criminal act requirement, the

Plaintiffs would still have to establish that the PA or PLO engaged in "deliberate wrongdoing."

There is no triable issue of fact that the PA engaged in deliberate wrongdoing when it paid the

rent for the PFLP offices in Qalqilya.  And there is no material support allegation against the

PLO whatsoever, much less one involving "deliberate wrongdoing."

### D. There Is No Triable Issue of Fact that the PA or PLO Proximately Caused the Plaintiffs' Injuries.

To proceed under section 2333(a), the Plaintiffs must establish that they were injured "by

reason of" an act of international terrorism.  18 U.S.C. § 2333(a).  Courts almost uniformly have

interpreted the "by reason of" language in the statute to require a showing that the defendants'

actions (here, the PA and PLO) proximately caused the Plaintiffs' injuries.  *See Rothstein*, 708

F.3d at 94-96 (holding that standard of causation for § 2333(a) is proximate cause).  Under the

proximate cause standard, defendants are liable only when their actions constitute "a substantial

factor in the sequence of responsible causation," and when the plaintiffs' injury was "reasonably

foreseeable or anticipated as a natural consequence."  *Strauss*, 2013 U.S. Dist. LEXIS 28451, at

*51-52.  *See also Stutts v. De Dietrich Group*, No. 03-CV-4058, 2006 U.S. Dist. LEXIS 47638,

at *16 (E.D.N.Y. Jun. 30, 2006) (finding that the "by reason of an act of international terrorism"

language "implies a proximate cause requirement such that it must be reasonably foreseeable that

a defendant's conduct is likely to result in violent criminal acts") (citations omitted).

In the Complaint, the Plaintiffs alleged that the PA caused their injuries by providing

"massive material support," including by providing "tens of millions of dollars annually" to the

PLO and John Does 1-99 with the specific intent of supporting terrorism.  *See* Compl. ¶¶ 45,

50.  At the close of discovery, the sole evidence relied on by Plaintiffs as to PA conduct consists

of the *de minimis* payment (approximately $6,500) of rent for a PFLP office in Qalqilya.  As

previously noted, there is no admissible evidence that the PFLP was responsible for the Karnei

Shomron bombing.  There is no evidence that anyone involved in the Karnei Shomron bombing

worked at the PFLP offices in Qalqilya or that the bombing was planned in the offices in

1344878.1

Qalqilya.  *See* Exh. 4, SOMF ¶ 18.  In short, there is no genuine issue of fact regarding proximate cause because the most Plaintiffs can show is a *de minimis* rent payment for an office with no demonstrable connection to the bombing.  That is plainly not enough.

## III.   PLAINTIFFS CANNOT RELY ON § 2339B AS THE PREDICATE CRIMINAL ACT

The United States designated the PFLP as a foreign terrorist organization ("FTO") in 1997.  62 Fed. Reg. 52650 (Oct. 8, 1997).  Plaintiffs have argued in a recent discovery motion that the PA's provision of funding to the PFLP constituted a criminal violation of 18 U.S.C. § 2339B.  *See* DE 168 (10/19/2012 Motion to Compel), Mem. at 1.  18 U.S.C. § 2339B makes it a crime to "knowingly provide[] material support or resources to a foreign terrorist organization."  To violate this provision, the defendant "must have knowledge that the organization is a designated terrorist organization . . . that the organization has engaged or engages in terrorist activity . . . or that the organization has engaged or engages in terrorism."  18 U.S.C. § 2339B(a)(1).  Plaintiffs lack admissible evidence that the PA possessed such knowledge about the PFLP.  As previously noted, Plaintiffs also lack admissible evidence that the PFLP carried out the attack.

But, in any event, because Plaintiffs have not pled a violation of § 2339B in their Complaint, they may not seek to impose liability on the PA under that theory.  The Complaint does not mention the PFLP, nor does it allege that the PA provided material support to a foreign terrorist organization.  Instead, the Complaint alleges that the PA provided material support to the PLO and defendants John Does 1-99 with the "specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist bombing."  *See* Compl. ¶¶ 45, 47, 49, 50.  The material support claim advanced in Plaintiffs'

1344878.1

Complaint is entirely different than the theory Plaintiffs now seek to advance at the conclusion of discovery.

Having failed to plead that the PA committed an act of international terrorism by allegedly violating § 2339B, Plaintiffs cannot rely on such a claim at the summary judgment phase. *See Franks v. Salazar*, 816 F. Supp. 2d 49, 58 n.5 (D.D.C. 2011) ("[P]laintiffs cannot use their summary judgment briefing to press claims not raised in their amended complaint."); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) ("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint.").

In any event, § 2339B cannot provide a basis for imposing liability on the PA because the statute imposes a U.S. nexus requirement, which is not met here. *See* § 18 U.S.C. § 2339B(d)(1) (requiring that the offense or offender have a U.S. nexus). Here, the alleged material support (the rent payment) was provided in the West Bank, not the United States, and did not affect interstate or foreign commerce. *See id.* § 2339B(d)(1)(D), (E). Moreover, the PA is not a "national of the United States," does not have its "habitual residence . . . in the United States," and was not "brought into or found in the United States" after providing the rent payments. *See id.* § 2339B(d)(1)(A), (B), (C).

In addition to the statute's express limitation on the exercise of extraterritorial jurisdiction, due process imposes a separate constraint on the criminalization of non-U.S. conduct by foreign defendants. "In order to apply extraterritorially a federal criminal statute to a defendant consistent with due process, there must be a *sufficient nexus* between the defendant and the United States, *so that such application would not be arbitrary or fundamentally unfair*." *United States v. Bout*, 08 Cr. 365, 2011 U.S. Dist. LEXIS 74318, at *7-8 (S.D.N.Y. July 11,

24

2011) (internal quotation and citation omitted) (emphasis in original).  The nexus requirement "ensures that a United States court will assert jurisdiction only over a defendant who 'should reasonably anticipate being haled into court' in this country."  *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998).   Even if the defendant "did not act with the specific purpose of harming interests of or related to the United States," the evidence must "support[] the conclusion that he was aware that the charged conduct would have that effect." *United States v. Yousef*, No. S308 Cr. 1213, 2010 U.S. Dist. LEXIS 86281, at *12 (S.D.N.Y. Aug. 23, 2010).  In *Bout*, the court found the indictment sufficiently alleged a sufficient U.S. nexus to survive a motion to dismiss where the indictment alleged that Bout "offered to sell millions of dollars of weapons to the FARC *after* acknowledging  . . . his understanding that the FARC intended to use those weapons to kill U.S. forces in Columbia."  *Bout*, 2011 U.S. Dist. LEXIS 74318, at *14.  At that point, the court concluded, Bout should reasonably have anticipated being haled into court in the United States.  *Id.*

Here, there is no evidence that when the PA made the rent payments on behalf of the PFLP for its offices in Qalqilya, it had any reason to believe those payments would facilitate the killing of U.S. nationals or that the payments should have caused the PA to anticipate being haled into a U.S. court.  Extending U.S. civil jurisdiction to reach funding decisions made by a foreign government with respect to political factions operating within the foreign jurisdiction – absent any designation of the government as a state-sponsor of terrorism and absent any finding that the government acted with specific intent to support terrorism  -- would create the very foreign relations frictions that animated the Supreme Court's recent decision to narrowly construe Alien Tort Statute jurisdiction.  *See Kiobel v. Royal Dutch Petro. Co.*, 133 S. Ct. 1659, 1664 (2013) (noting that the presumption against extra-territoriality "serves to protect against

1344878.1

unintended clashes between our laws and those of other nations which could result in international discord").[3]  In this context, it is particularly important to await a clear, express command from Congress before allowing Plaintiffs to embark on this sort of extraterritorial § 2339B civil claim.  The bulk of the ATA cases discussing material support claims, including the *en banc* Seventh Circuit decision in *Boim*, were lawsuits brought against U.S. groups or individuals alleged to have provided material support to foreign groups.  The legal standards governing such claims, particularly the standards of causation and scienter, were formulated specifically for that context.  This sort of purely extraterritorial claim, by contrast, would apply § 2339B to the funding decisions of a foreign government (which itself receives funding support from the U.S.) with regard to entities or individuals operating within its own territory.  Such governmental funding decisions are often driven by a variety of indisputably legitimate factors – the need to maintain public order in the face of a military occupation, the need to fight militant activity on a macro level, the need to ensure domestic stability and to avoid splinter groups -- that are entirely absent from cases such as *Boim*.  Interpreting the ATA as allowing such extraterritorial § 2339B civil claims to go forward, despite express Congressional restrictions on extraterritoriality in the statute itself, would accordingly require the Court to formulate new standards of causation and scienter, standards that – unlike the ones articulated  in *Boim* – would need to be adapted to accommodate these entirely legitimate considerations by providing foreign governmental decision-makers with the full discretion necessary to maintain order and stability. While this Court can easily decide the present case by reference to the complete failure of

---

[3] The presumption against extra-territoriality also operates to limit the reach of expressly extra-territorial statutes.  *See Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2883 (2010) ("when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms");  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 442, 455-56 (2007) (where a statute "specifically . . . extend[s] the reach of United States . . . law to cover certain activity abroad," courts must "resist giving the language . . . an expansive interpretation").

admissible evidence of liability under any causation/scienter analysis, the presence of these additional complicating factors provides yet another reason for this Court to decline to permit Plaintiffs from pursuing their newly-minted (and never pled) § 2339B claim in this case.

## IV.    THE PA IS NOT LIABLE UNDER A RESPONDEAT SUPERIOR THEORY OF LIABILITY

In a motion to compel filed after the close of fact discovery, the Plaintiffs alleged that "Palestinian Authority (PA) policeman Raed Nazzal" was the "mastermind of the bombing."  DE 202-1 (Plaintiffs' Motion to Compel) at 1.  The Court would be well within its power to refuse to consider this new claim at all, since (as discussed below) it is not within the scope of the pleadings and was not mentioned by Plaintiffs in their responses to Defendants' contention interrogatories.  But even if the Court were to consider it, Plaintiffs have no admissible evidence to support that claim.  Plaintiffs produced in a discovery a statement alleged provided by Mohammed Nazal (who is apparently no relation to Raed Nazal) on April 24, 2002, while in the custody of the Israelis.  While in Israeli custody, Mohammed Nazal allegedly accused Raed Nazal of planning the Karnei Shomron bombing.  Mohammed Nazal's statement is hearsay and may not be used by the Plaintiffs to establish a triable issue of fact for purposes of defeating the PA's motion for summary judgment.

It is well-established that statements inculpating a third party (here, Raed Nazal), as opposed to self-inculpating statements, are not treated as statements against penal interest under Federal Rule of Evidence 804(b)(3)'s hearsay exception.  *Williamson v. United States*, 512 U.S. 594, 600-01 (1994) ("In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.").  *See also id.* at 601 ("The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a

27

fuller confession, and this is especially true when the statement implicates someone else.");

*United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986).

In any event, Plaintiffs cannot seek to impose liability on the PA under a vicarious

liability/respondeat superior theory because the Complaint pleads that theory of liability only as

to the PLO. The Thirteenth Count of the Complaint (DE 3 at 34-35) pleads "vicarious

liability/respondeat superior" as to the Syrian defendants and the PLO, but not as to the PA.

Aside from the allegations regarding Syria, Plaintiffs allege only the following:

> 161.    At all relevant times, defendants John Does 1-99 were agents
> and/or officers and/or employees and/or organs of defendant PLO acting
> within the scope of their agency, office and employment. Defendants John
> Does 1-99 engaged in the actions described herein within the scope of
> their agency, office and employment and in furtherance of the interests of
> defendant PLO.

> 162.    Defendant PLO authorized, ratified and/or condoned the actions
> described herein of defendants John Does 1-99.

> 163.    Therefore, defendant PLO is vicariously liable for the acts of
> defendants John Does 1-99.

Compl. ¶¶ 161-63.

In addition, the PA, as a foreign government, cannot be held liable for the acts of a low-

level employee absent a showing of wrongful conduct by the PA. In *Monell v. Dep't of Social

Services*, 436 U.S. 658, 691 (1978), the Supreme Court established that "a municipality cannot

be held liable solely because it employs a tortfeasor." Rather, plaintiffs must establish that their

injury resulted from an official policy or custom. *Id*. at 694 ("[I]t is when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the government as an entity

is responsible"); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) ("[A]

plaintiff must show that the municipal action was taken with the requisite degree of culpability

and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").  This principle has been applied in terrorism cases.  *See Tracy v. Islamic Republic of Iran*, Civ. No. 01-2517, 2003 U.S. Dist. LEXIS 15844, at *23-24 (D.D.C. Aug. 21, 2003) (in a case brought under the state-sponsor of terrorism provision of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7), holding that in order for an employee's unlawful conduct to be imputed to a government, the government "must have engaged in the wrongful conduct, either deliberately or permissively, as a matter of policy or custom") (citing *Monell*, 436 U.S. at 694-95).

Here, there is no admissible evidence that the PA has a policy or custom of supporting terrorist attacks.  To the contrary, the PA took steps to prevent such attacks, such as by outlawing the military wing of the PFLP four months before the Karnei Shomron bombing.  Exh. 4, SOMF ¶ 6.

## V.   THE ATA CLAIMS OF ARON TRATTNER, SHELLEY TRATTNER, BELLA FRIEDMAN, YEHIEL FRIEDMAN, ZVI FRIEDMAN, MINOR I.F., AND MINOR M.F. MUST BE DISMISSED FOR LACK OF STANDING

Plaintiffs Aron Trattner and Shelley Trattner are suing as parents of Plaintiff Hillel Trattner, who was injured in the bombing.  *See* Compl. ¶¶ 9, 11.  Plaintiff Bella Friedman is suing as the mother of Plaintiff Chana Friedman, who was injured in the bombing.  *Id.* ¶¶ 13, 15. Plaintiffs Yehiel Friedman, Zvi Friedman, Minor I.F., and Minor M.F. are suing as the siblings of Chana Friedman.  *Id.* ¶ 14. Hillel Trattner's parents and Chana Friedman's mother and siblings were not injured in the bombing.  Because they are not "heirs or survivors," they have no standing to bring claims for injury to a family member.

The Anti-Terrorism Act provides:  "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, *or his or her estate, survivors, or heirs*, may sue therefor in any appropriate district court of the United States

29

and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."  18 U.S.C. § 2333(a).  The statute allows the "estate, survivors, or heirs" to sue when the U.S. national has been killed in the attack.  Where the U.S. national is not killed and brings, his or her own claim, the family members have no standing to also bring claims.  The statute is "phrased disjunctively," allowing the injured U.S. national "or" the estate, survivors, or heirs to sue, but not both.  *Saperstein v. Palestinian Auth.*, Case No. 04-20225, 2008 U.S. Dist. LEXIS 110375, at *26-27 (S.D. Fla. Sept. 29, 2008) (dismissing ATA claims of family members of injured U.S. national).  *See also Morris v. Khadr*, 415 F. Supp. 2d 1323, 1337-38 (D. Utah 2006) (finding that an individual's survivors or heirs cannot recover for a non-mortal injury).

## VI.     RONIT TRATTNER'S NON-FEDERAL LAW CLAIM MUST BE DISMISSED

Finally, Plaintiffs' supplemental non-federal law claims (the First, Second, Fourth-Ninth Claims for Relief) must also be dismissed.   Plaintiffs have abandoned those claims except as to Ronit Trattner's claim for battery (the Fourth Count).  *See* DE 64, Mem. at 7 n.5 ("the supplemental torts are irrelevant"); DE 64-2 at 38 n. 11 ("Thus, at bottom, the sole supplemental cause of action for which plaintiffs seek relief in this case is Ronit Trattner's battery claim.").

The Court should decline to exercise supplemental jurisdiction over the supplemental law battery claim because Plaintiffs have failed to state a claim under the federal law claim pled in their complaint (their ATA claim).  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction

In the alternative, Ronit Trattner's supplemental law claim should be dismissed because the PA and the PLO lack the capacity to be sued.  Capacity to be sued is governed by Federal Rule of Civil Procedure 17(b).  For a party which is not either an individual or corporation, the capacity to be sued is governed by the law of the state where the court is located.  Fed. R. Civ. P.

1344878.1

17(b)(3).  Under District of Columbia law, unincorporated associations cannot be sued under their own name.  *Sisso v. Islamic Republic of Iran*, 448 F.Supp.2d 76, 87 (D.D.C. 2006) (dismissing non-federal law claims against Hamas for lack of capacity).  Similar non-federal claims against the PA and PLO have been dismissed for lack of capacity in this jurisdiction.  *See Estate of Mark Parsons*, No. 1:07-cv-1847-BJR (D.D.C.), DE 14 at 13-14 (Sept. 30, 2008 Memorandum Opinion).

Finally, Ronit Trattner's battery claim should be dismissed because she lacks any admissible evidence that either the PA or the PLO committed a battery against her.

## CONCLUSION

Plaintiffs lack any evidence to take their case to trial.  They have no fact witnesses who can testify to PA or PLO liability for their injuries.  They have no expert witnesses who can testify to PA or PLO liability for their injuries.  No admissible documents produced in discovery – even assuming Plaintiffs could authenticate them – create a triable issue of fact of PA or PLO liability.   Indeed, because the lack of any evidence in support of Plaintiffs' pleaded claims is so clear, it is likely that Plaintiffs will seek to expand their case to include theories of liability nowhere pleaded in the complaint.  The Court should not permit them to do so.  Not only is it too late in the day for the Plaintiffs to pursue unpleaded theories of liability, but Plaintiffs were provided during the fact discovery period with an opportunity to articulate additional bases for their claim and completely refused to do so.  Having refused to provide such information during the discovery period, Plaintiffs should not be heard to complain when they are held to the claims they actually pleaded in their complaint.

1344878.1

Dated:  August 12, 2013                Respectfully submitted,

                                       /s/ Richard A. Hibey
                                       Richard A. Hibey (No. 74823)
                                       Mark J. Rochon (No. 376042)
                                       Charles F. B. McAleer, Jr. (No. 388681)
                                       Timothy P. O'Toole (No. 469800)
                                       MILLER & CHEVALIER CHARTERED
                                       655 15th St., N.W., Suite 900
                                       Washington D.C.  20005-6701
                                       (202) 626-5800 (telephone)
                                       (202) 626-5801 (facsimile)

                                       *Attorneys for Defendants The Palestinian Authority
                                       and The Palestine Liberation Organization*

32

1344878.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on August 12, 2013, a true and genuine copy of the foregoing

was served via ECF on the following:

Robert J. Tolchin
The Berkman Law Office, LLC
111 Livingston Street – Suite 1928
Brooklyn, NY 11201
rjt@tolchinlaw.com

Norman Steiner
233 Broadway, Suite 900
New York, NY 10279
nsteineresq@gmail.com

Abbe David Lowell
Chadbourne & Parke LLP
Suite 300
1200 New Hampshire Ave., N.W.,
Washington, D.C. 20036
adlowell@chadbourne.com

*Attorneys for Plaintiffs*


/s/Richard A. Hibey
Richard A. Hibey

1344878.1