UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SHABTAI SCOTT SHATSKY, *et al.*,

                              Plaintiffs,

                 -against-

THE SYRIAN ARAB REPUBLIC, *et al.*,

                              Defendants.

1:02 Civ. No. 02280 (RJL)

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE
THIS COURT'S ORDER OF JUNE 6, 2013**

      Plaintiffs Shabtai Scott Shatsky, *et al*. ("Plaintiffs") respectfully submit this memorandum of law in opposition to the motion filed by Defendants the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO") (together, Defendants) to enforce this Court's order of June 6, 2013. As fully explained below and contrary to Defendants' assertions, Plaintiffs have not taken any actions that run counter to this Court's June 6, 2013 order and have acted in full compliance with the suggestions propounded by the Eastern District of New York ("EDNY").

**PRELIMINARY STATEMENT**

      In June 2012, undisputedly before the September 2012 close of fact discovery in this matter, Plaintiffs filed a proper subpoena in the EDNY seeking documents from non-party Arab Bank PLC ("Arab Bank") relating to the PLO's banking activities. When Arab Bank failed to produce any documents in response to the request, Plaintiffs moved to compel.

During a February 2013 hearing on that motion, Judge Brodie expressed concern at the idea of potentially requiring a non-party to violate the bank secrecy laws of a foreign jurisdiction, if in fact the documents sought were located in jurisdictions that forbade such disclosure. Therefore, at Judge Brodie's suggestion and as the easiest approach, in May 2013 Plaintiffs moved before this Court for an order compelling Defendants to consent to the release of their banking records, so that Arab Bank would not be required to violate any bank secrecy laws. On June 6, 2013, this Court entered a minute entry on the docket stating in its entirety that "it is hereby ORDERED that the motion is DENIED." No explanation or opinion was provided. After the Court's ruling, Plaintiffs reported the outcome of the motion back to Judge Brodie, as she had requested.

In light of the June 6 summary denial of the motion, Defendants' present contention that this brief notation on the docket represents an unequivocal statement by this Court that Plaintiffs are not entitled to the materials they seek or that Plaintiffs are in violation of the June 6 order by returning to the EDNY for further adjudication of their motion to compel, as Judge Brodie asked them to do, is without any basis and seeks relief where none is due. The only question before this Court relating to the Arab Bank subpoena was whether or not to compel the PLO to consent to the release of the banking records. The New York court had and has jurisdiction of its own to address a third party subpoena. Because this Court's order did not provide any explanation, it cannot be read as deciding anything beyond this single,

narrow issue. It certainly cannot be viewed as dispositive of the motion to compel Arab Bank pending in another court in another jurisdiction.[1]

## FACTUAL BACKGROUND

On June 4, 2012, well before the September 19, 2012 deadline for the close of fact discovery, Plaintiffs served Arab Bank with a subpoena to produce documents relating to bank accounts belonging to the PLO or the Palestine National Fund, the PLO's financial department, and identified two such accounts by number.[2] The subpoena was properly issued in the EDNY, as Arab Bank maintains U.S. operations in New York.[3] Discovery

---

[1] Additionally, Defendants failed to meet and confer with Plaintiffs before filing the instant motion, as required by the District of D.C. Local Rule 7(m), which constitutes separate and independent grounds for denying this motion. For both of these reasons, Defendants' request must be denied.

[2] Plaintiffs had previously sought from Defendants information relating to the provision of funds to the Popular Front for the Liberation of Palestine ("PFLP"), the organization directly responsible for the February 2002 terrorist bombing that gave rise to this action, via document requests, interrogatories, and 30(b)(6) depositions. In response to the document requests, the PLO produced a limited number of documents showing payment for the PFLP's Qalquilya office rent, but stated that it could not find materials regarding the provision of funds from the PLO to the PFLP. Defendants' interrogatory responses and designated 30(b)(6) witnesses did not provide any additional information regarding funding from the PLO to the PFLP. This information is needed to establish the financial link between the PLO and the PFLP. When Plaintiffs could not obtain this discovery from Defendants themselves, they turned to non-party Arab Bank, where the PLO maintains accounts.

[3] Because the subpoena to compel Arab Bank to produce documents was against a third party and was pending in the EDNY and not the District of D.C., this separate proceeding would not be and was not listed as an outstanding discovery request

(Cont'd on following page)

of this information is essential to Plaintiffs' case, as bank records are likely the most reliable means of ascertaining the flow of funds and support that Defendants have provided to the parties responsible for the 2002 bombing that injured or killed Plaintiffs and their family members, and gave rise to this action under the Anti-Terrorism Act.

Arab Bank objected to the subpoena on various grounds and failed to produce a single document in response. Thus, Plaintiffs filed a motion to compel Arab Bank to comply with the subpoena in the EDNY on August 16, 2012.[4] Arab Bank opposed the

---

(Cont'd from preceding page)

between the parties in this action at the December 2012 status conference and was certainly not an attempt at "sandbagging" the Court. *See* Def. Br. at 2.

[4] Both the subpoena and the EDNY motion to compel were timely filed before the September 19, 2012 close of fact discovery in this matter. Not only was their timeliness acknowledged by Judge Brodie and counsel for Arab Bank at the February 2013 hearing in the EDNY, but it was also reiterated by Magistrate Judge Orenstein and counsel for Arab Bank at the October 7, 2013 status conference in the EDNY. *See* Hrg. Tr. dated Feb. 19, 2013, attached hereto as Ex. A, at 32:20-33:20; Hrg. Tr. dated Oct. 7, 2013, attached hereto as Ex. B, at 7:10-8:2; 31:15-21. Furthermore, counsel for Arab Bank conceded the timeliness of the motion to compel Defendants' consent filed in the District of D.C., given that it related back to the timely subpoena, and Magistrate Judge Orenstein appeared to agree. *See* Ex. B at 34:7-35:11. While Defendants scoff at Plaintiffs' position that their motion to compel consent filed in the District of D.C. was timely because the New York subpoena had been timely filed, *see* Def. Br. at 1-2, it is in fact well-settled that a motion concerning a timely filed subpoena need not be filed within the discovery period to be deemed timely. *See Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 262 F.R.D. 29, 30 (D.D.C. 2009) (courts routinely consider motions related to discovery that are filed outside the discovery period); *Intex Rec. Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 15 (finding a motion filed outside the discovery period to be timely, where the underlying subpoena was timely).

4

motion, arguing in part that compliance with the subpoena would violate foreign bank secrecy laws.[5] At a hearing before Judge Brodie in the EDNY on February 19, 2013, Judge Brodie acknowledged Plaintiffs' need for at least some of the documents requested, but also expressed concern at the notion of potentially requiring a non-party to violate the privacy laws of a foreign jurisdiction.[6] *See* Ex. A at 28:5-29:1. Therefore, in an effort to avoid or mitigate this obstacle, Judge Brodie suggested that Plaintiffs move for an order from this Court compelling Defendants to consent to the release of their banking records, so that Arab Bank would not be put in a potentially difficult position, and also asked Plaintiffs to return to her court afterwards. *Id.* at 8:14-18; 29:2-7; 36:13-22. Defendants opposed the motion on various grounds. On June 6, 2013, this Court filed a minute entry on the docket that succinctly stated "it is hereby ORDERED that the

---

[5] Notably, Arab Bank has not yet indicated which specific foreign bank secrecy laws may apply, as it has not stated which jurisdictions, if any, are in possession of responsive information. Arab Bank contends that the foreign bank secrecy laws prohibit even the disclosure of whether or not it has responsive materials in its custody or control, an issue that is the subject of additional and on-going briefing in the EDNY.

[6] Judge Brodie also noted that the subpoena was overly broad in scope, *inter alia*, requesting documents from a time period larger than warranted. Plaintiffs have now narrowed the subpoena in accordance with Judge Brodie's directives. However, even in its initial form, the subpoena while overbroad, was hardly "defective," as Defendants characterize it. *See* Def. Br. at 2.

motion [to compel consent] is DENIED." The minute entry did not provide any basis for the Court's order, contrary to Defendants' contentions.

Plaintiffs informed Judge Brodie of the denial of the motion shortly thereafter. Clearly viewing the EDNY motion as still pending, regardless of this Court's ruling on the consent issue, Judge Brodie then referred the motion to Magistrate Judge Orenstein for further proceedings and resolution. In the days leading up to a status conference before Magistrate Judge Orenstein, counsel for Arab Bank filed a detailed letter with the EDNY, putting forth an argument very similar to that made by Defendants here, namely that this Court's June 6 single sentence, summary denial of the motion to compel consent was dispositive of the motion to compel Arab Bank to produce documents. *See* Letter from Arab Bank dated September 20, 2013, attached hereto as Ex. C, at 4. Prior to this, Arab Bank had never raised the issue. In response, Plaintiffs countered that this Court's order did not address the relevance or discoverability of the documents sought by the subpoena, such that an order from the EDNY compelling Arab Bank to comply would not abrogate the June 6 order. *See* Plaintiffs' Letter dated September 30, 2013, attached hereto as Ex. D, at 2-6. The parties did not address the issue of how Defendants' objections in this district could prevent the enforcement of a properly issued subpoena to a third party in another jurisdiction.

At the status conference before Magistrate Judge Orenstein, held on October 7, 2013, Arab Bank reiterated the position taken in its September 20 letter, almost identical to that now advanced by Defendants, that the June 6 order constituted a ruling that

Plaintiffs were not entitled to the information sought from Arab Bank.  Plaintiffs' counsel countered, again pointing out that there was only a minute order without opinion and also articulating possible reasons that this Court might have denied the motion to compel consent.  Significantly, Magistrate Judge Orenstein appeared to consider the position advanced by Arab Bank (and now by Defendants)  and then reject it, observing that if this Court's denial of the motion to compel consent automatically terminated the EDNY motion, then there would have been little point in Judge Brodie referring the EDNY motion to Magistrate Judge Orenstein for resolution.  *See* Ex. B at 30:19-23 (noting that "if the effect of being sent to Washington to litigate the motion and then having it denied by Judge Leon was… the end of it… [then] [f]or what purpose did Judge Brody [sic] refer the case to me?").

Also at the conference, Magistrate Judge Orenstein observed that the dispute over ordering Arab Bank to comply with a subpoena that might require it to violate foreign bank secrecy laws could potentially be moot, because Arab Bank had never confirmed whether it has responsive documents in its possession in foreign jurisdictions, nor whether those specific foreign jurisdictions would prohibit the disclosure sought.  *See* Ex. B at 37:23-38:15.  Clearly, if Arab Bank does not have any responsive documents in foreign jurisdictions, or if the jurisdictions in which the responsive documents are located do not have laws prohibiting this particular disclosure, the issue would be moot.  However, counsel for Arab Bank stated that these determinations cannot be made, because many of its overseas branches are located in jurisdictions in which even

disclosing whether or not responsive documents exist is deemed a violation of the bank secrecy laws. *Id.* at 22:3-23:4. It was not clear whether this statement was true, nor to how many jurisdictions it would apply. Counsel for Arab Bank initially represented to Magistrate Judge Orenstein that this issue had been briefed before Judge Brodie, but when pushed, conceded that it had not. *Id.* at 25:5-26:7; 29:25-30:1.

Magistrate Judge Orenstein thus asked Arab Bank for supplemental briefing including a list of all the countries in which it maintains branches, and whether those countries prohibit the mere disclosure of whether or not information responsive to a subpoena is located within its borders. *See* Ex. B. at 30:2-3; 37:7-15. Counsel for Arab Bank indicated that this would be a time consuming process as it was not familiar with the laws of all 30 plus jurisdictions in which Arab Bank operates. However, Magistrate Judge Orenstein responded that counsel would not have to do this research himself, as each individual branch's personnel should be well versed in the bank secrecy laws of their own countries and should be able to provide answers relatively quickly. Magistrate Judge Orenstein gave Arab Bank until November 6, 2013 to comply, and left open the possibility that Plaintiffs would have the opportunity to respond to the supplemental briefing. *Id.* at 45:5. Given then the baseless and untethered-from-the-record claims contained in Defendants' motion, it appears the primary purpose behind the motion and in requesting an expedited briefing schedule may have simply been to obviate the need for Arab Bank to provide the additional information ordered by a court with jurisdiction.

## **ARGUMENT**

Defendants contend that "[t]here is no other way to read this Court's June 6, 2013 Order than as one that brings discovery to a close, even with respect to non-party subpoenas." *See* Def. Br. at 5.  In fact, Defendants characterize the June 6 order as unequivocally concluding that "Plaintiffs had been given an ample and fair opportunity to conduct fact discovery, had obtained through discovery all of the information to which they were conceivably entitled, and could not continue to pursue discovery proceedings even if… they had been filed before the close of the fact discovery deadline here." *See id*. at 3.  Yet Defendants do not ever point to any specific language in the order that gives rise to this proposition, nor could they, for the simple reason that this Court's order was a single sentence denying the motion for consent.

Indeed, as articulated by Plaintiffs' counsel at the October 7 status conference in the EDNY, this Court could have denied the motion for any number of reasons.  Surely Defendants do not mean to suggest that if the denial were predicated on reasons that would not apply to the Eastern District's ability to enforce a subpoena in its jurisdiction (as opposed to a party being prevented from obtaining additional discovery from a party in this case here), that the order could be interpreted as terminating discovery in all jurisdictions or denying the relevance or discoverability of the materials sought in the subpoena.  Moreover, it is important to note that in making the motion to compel consent, Plaintiffs were not making a motion to compel discovery, as it was their understanding that to the extent Defendants had evidence of transfers of funds and/or other provision of

material support or resources by the PA and the PLO to the PFLP or others acting on behalf of the PFLP, Defendants had agreed to produce such material in their responses to interrogatories. *See* Defendants' Objections and Answers to Plaintiffs' Second Set of Interrogatories (Nos. 2-12), attached hereto as Ex. E, at 7-8, 10-11, 13 (contending that they are unaware of any evidence of the transfer of such funds or other provision of material support but agreeing to provide Plaintiffs with any non-privileged information that they learn of during their ongoing investigation).

Furthermore, both Judge Brodie and Magistrate Judge Orenstein were made aware of this Court's denial of the motion to compel consent, and neither of them interpreted the denial as terminating the motion to compel production or that matter which is pending in the EDNY, or viewed Plaintiffs' continued litigation of the motion to compel production in the EDNY as violating any order of this Court. To the contrary, Judge Brodie had requested that Plaintiffs return to the EDNY for further proceedings, once this Court had ruled on the motion to compel consent. When Plaintiffs did as she asked and reported back that this Court had denied their motion, she nevertheless continued to view the EDNY motion as very much alive, referring it to Magistrate Judge Orenstein for further disposition. Magistrate Judge Orenstein, who had the benefit of the briefing on this very issue contained in the letters written by Arab Bank and Plaintiffs before the October 7 status conference, also did not treat the motion as terminated once it was referred to him, holding a status conference at which arguments were heard, and ordering additional briefing.

Plaintiffs do not contest certain of the legal principals identified by Defendants in their motion to enforce the June 6 order. For example, Plaintiffs do not disagree that the district court has the authority to end discovery or enforce its own orders. *See* Def. Br. at 5-6. However, that is not the procedural setting in this case now, because there is no order as to the subpoena in the EDNY for this Court to enforce. Although Defendants repeatedly argue that this Court "clearly and firmly told [Plaintiffs] that discovery had been completed and that they had obtained all of the information to which they were conceivably entitled" in the June 6 order, this is not the case. *See* Def. Br. at 4. Further to this point, it is axiomatic to recognize here that Plaintiffs were not conducting new discovery when they made the motion to compel consent; rather, Plaintiffs were carrying out instructions by Judge Brodie based on requests that were made well within the discovery period of the case. Long before making the motion to compel consent, Plaintiffs had propounded discovery requests addressing material support provided by Defendants to the PFLP, and Plaintiffs accepted Defendants' representations that they would produce information regarding material support provided to the PFLP to the extent that it was in their possession; however, Plaintiffs simultaneously pursued such information from Arab Bank and embarked upon this discovery within the factual discovery deadlines as well. An order terminating discovery would neither relieve Defendants of an obligation to supplement its discovery responses with any responsive information of which it became aware after the fact discovery deadline, nor relieve Arab Bank of answering proceedings to enforce a subpoena that was sought within the fact

discovery deadline. A ruling that an order terminating discovery necessarily relieves parties from having to properly respond to discovery propounded or subpoenaed within any discovery deadlines, especially in a situation such as here, where Defendants have stated that their investigation was ongoing and that they would produce responsive documents that came to their attention post-the service of their discovery responses, not only would eviscerate the clear obligation to supplement discovery mandated by the federal rules, but it would allow parties to sabotage litigation by turning a blind eye to obviously responsive material so as to purposefully not discover it until the discovery deadline had passed.

Defendants' contentions lack any support in law or in fact, and their motion should be denied. Plaintiffs cannot and should not be disadvantaged or worse, punished for doing exactly as Judge Brodie requested, returning to the EDNY upon this Court's disposal of the motion to compel consent – and punished is exactly the result that will transpire if Defendants are successful in convincing this Court to now state that its June 6 order deemed as non-discoverable information which Defendants had previously averred to produce if it was found to be in their possession.

A second and independent basis for denying the instant motion is Defendants' violation of District of D.C. Local Rule 7(m), requiring a party to meet and confer with the opposing side in advance of filing a non-dispositive motion, in an attempt to narrow the issues at stake. Here, Defendants did not attempt to meet and confer with Plaintiffs before filing their motion. *See District Hosp. Partners, L.P. v. Sebelius*, No. 11-CV-0116

(ESH), 2013 WL 5273929 at *3 (D.D.C. Sept. 19, 2013) (failure to comply with a local rule requiring counsel to meet and confer with opposing counsel prior to filing a motion can constitute grounds for denying that motion); *U.S. v. Science Applications Intern. Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying defendant's motion, where defendant failed to engage in a good faith conference with opposing counsel to narrow the issues in advance of filing).  This failure warrants denial of Defendants' motion as well.[7]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion.


Dated:   New York, New York
         November 1, 2013

---

[7] No doubt Defendants would have asked this Court for a denial or even sanctions against Plaintiffs had Plaintiffs been the party to fail to meet and confer; indeed, on two separate and recent occasions, in response to motions filed by the plaintiffs in *Klieman v. PA* in the District of D.C., the PA and PLO did precisely this, demanding that the motions be denied due to the plaintiffs' failure to meet and confer in violation of Local Rule 7(m).  See *Klieman v. PA*, No. 04-CV-01173 (D.D.C.), at D.E. No. 198 at FN 5 and D.E. No. 205 at 9.

Respectfully submitted,

By     /s/ Abbe David Lowell

Abbe David Lowell (#358651)
Chadbourne & Parke LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: 202-974-5605
Fax: 202-974-6705
adlowell@chadbourne.com
*Counsel for Plaintiffs*

Robert J. Tolchin (NY 0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
Tel: 718-855-3627
rjtberkman@gmail.com
*Counsel for Plaintiffs*

14