

בתי המשפט

25

פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

לחוליית הטרור דיווחו לנאשם על פעילותם במסגרת החוליה, ועל פעולות מתוכננות; כי ביקשו את אישורו לצירוף אנשים נוספים לחוליה; כי ביקשו ממנו אמצעים, כמו "משתיק קול"; וכי אף התכוונו לבקש ממנו מטעני חבלה, לצורך ביצוע פיגוע.

בעדותו בבית-המשפט טען זיבאר, כי הנאשם כלל אינו מוכר לו, אלא מפרסום דבר מעצרו בתקשורת. הוא הוסיף וטען, כי בחקירתו בשב"כ היה נתון ללחץ שהפעילו עליו חוקריו, כי חלק מהודאתו הושם בפיו על-ידי החוקרים, וכי מסר את שמו של הנאשם שכן ידע כי הלה עצור ממילא בידי הרשות הפלסטינית.

עדויות החוקרים

26.    הסנגוריה ויתרה על חקירתם הנגדית של ארבעה מחוקרי השב"כ, והסכימה לקבילותם של דו"חות זיכרון הדברים אותם ערכו, שבהם תועדו גרסאות הנחקרים. עם זאת, טענה הסנגוריה כנגד משקל אמרות העדים שהפלילו את הנאשם; ובהקשר לאמר — הלינה על כך שגרסתו המפלילה את הנאשם ניתנה לאחר שביקש לסיים במהרה את חקירתו ולרצות את חוקריו, אשר הפעילו עליו לחץ בלתי הוגן.

לפיכך, מטעם המאשימה העידו אף חוקריהם של קורעאן, אסמר וקורט — המכונה "נורית", המכונה "גור", והמכונה "איציק" — אשר תיעדו את החקירה ואת הודאותיהם של הנחקרים בדו"חות זיכרון דברים שהוגשו לבית-המשפט. החוקרים העידו על אופן התנהלות החקירה, על אופיה ועל ההתפתחויות שהביאו להודאותיהם של הנחקרים. הם ציינו, כי החקירה התנהלה באורח הוגן, מבלי שהושמו דברים בפיהם של הנחקרים; דחו את הטענה, כי לנחקרים ניתנו הטבות מפליגות רק כאשר שיתפו

SHATSKY-007608



בתי המשפט

26

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

פעולה עם החוקרים; וטענו, כי ההטבות הנטענות אינן חריגות, ולא היה בהן כדי
להפעיל לחץ בלתי הוגן על הנחקרים. כמו-כן העידו חוקרי המשטרה, רס"ב יעקב ברזני
ורס"ם דוד מזרחי, שתיארו את אופן גביית ההודעות מהעדים קורעאן, אסמר, מזאחם
וקורט. השניים העידו, כי גבו את ההודעות מהנחקרים, לאחר שהללו מסרו גרסאותיהם
בחקירת השב"כ. הם אישרו, כי במהלך גביית ההודעות נמצאו לפניהם דו"חות זיכרון
הדברים מחקירת השב"כ; והבהירו, כי לעיתים מעמת החוקר את הנחקר עם תוכן דבריו
שבזיכרון הדברים, אם מתגלים פערים משמעותיים בין זיכרון הדברים לבין ההודעה.

<u>הראיות מטעם הנאשם</u>

עדות הנאשם

27.     הנאשם, אשר שמר על זכות השתיקה בחקירותיו במשטרה, בחר להעיד בבית-
המשפט.

בעדותו הכחיש הנאשם את המיוחס לו בכל הנוגע לתכנון הרצח וביצועו. בתוך
כך הכחיש את הנטען כלפיו, כי שימש כחבר בזרוע הצבאית של ארגון החזית העממית.
הוא טען, כי היה פעיל בארגון זכויות אדם בשם "דמיר", וכי לא היה לו כל קשר, בין
במישרין ובין בעקיפין, לפעילות טרוריסטית. לדבריו, פרט למג'די, שאותו הכיר
במסגרת פעילות של הסדרת ביקורי משפחות עצורים, מטעם ארגון "דמיר", לא הכיר
את מבצעי הרצח — קורעאן ואסמר — אלא פגשם לראשונה לאחר הרצח, במהלך
הימלטותם. וכך העיד בעניין זה: "מג'די התקשר אלי, וביקש ממני למצוא מגורים לשני
אנשים בשכם. עזרתי להם למצוא בית. בהתחלה גרו אצלי בבית תקופה מסוימת,
כמה ימים, עד שמצאתי להם מגורים, והם עברו לגור לבד. זה היה בסוף חודש ינואר או

SHATSKY-007609



**בבית המשפט המחוזי בירושלים**

פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

בפברואר, אני לא זוכר מתי זה היה. תוך כדי הביקור שלי בבית שלהם, הרשות הפלסטינית הטילה מצור על הבית שאנחנו נמצאים בו. ניסינו לברוח. נשברו לי הרגליים ונתפסתי, וגם מג'די נתפס" (עמ' 216). הנאשם הוסיף והעיד, כי לאחר שנתפס על-ידי הרשות הפלסטינית, הועבר לבית-חולים, ובהמשך נלקח לבניין ה"מוקטעה" ברמאללה, יחד עם חמדי קורעאן, באסל אסמר, אחמד סעדאת ופואד שובאכי, שם הוטל עליהם מצור על-ידי כוחות צה"ל. לדבריו, כל העצורים נשפטו על-ידי בית-דין של הרשות הפלסטינית, והוא הורשע אך בגין הלנת המבוקשים ומתן סיוע להם לאחר הרצח. בהמשך, במסגרת הסדר בין הרשות הפלסטינית לבין מדינת ישראל, הועברו הוא וחבריו לכלא יריחו, שם הוחזקו כארבע שנים תחת השגחתם של פקחים אמריקאים ובריטים, ולבסוף נעצרו על-ידי כוחות הביטחון הישראליים.

הנאשם הכחיש בעדותו, כי השתתף בפגישת התדרוך שנערכה בבית-קפה ברמאללה עובר לרצח, כפי שנטען על-ידי קורעאן ואסמר באמרותיהם בשב"כ ובמשטרה. הוא טען, כי האמרות המפלילות הנן כוזבות, ומקורן בעובדה שדבר מעצרו ברשות הפלסטינית פורסם ברבים ונודע לעצורים בישראל. להנחתו, העצורים שהיו נתונים בלחץ החקירה, העדיפו לנקוב בשמו, ואף להפלילו, שכן העריכו כי לא ייעצר על-ידי כוחות הביטחון הישראליים. הנאשם הוסיף והעיר, כי אין כל הגיון בכך שיחבוש פאה, כפי שיוחס לו, בבית קפה הממוקם בשכונה שבה הוא מתגורר ומוכר ממילא. הוא אף הכחיש את האמור בהודעותיהם של קורעאן ואסמר, כי הללו שאלו אותו, במהלך שהותם המשותפת בשלב ההימלטות, האם הוא אותו אלמוני חבוש הפאה שנכח במפגש האמור.

SHATSKY-007610



בתי המשפט

28

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב׳ השופטים: צ׳ סגל - סגן נשיא, י׳ שפירא וי׳ נועם

בעדותו התייחס הנאשם אף להודעותיהם המפלילות של לואי עודה וג׳ורג׳
קורט, המייחסות לו פנייה אליהם, במהלך העצרת ברמאללה, בבקשה מעודה – לשכור
עבורו רכב, ומקורט – להמציא לו רישיון נהיגה ישראלי. גרסתו לעניין זה הייתה, כי
במהלך העצרת נשלח על-ידי אדם בשם חאלד באפיר, שהיה אחראי לארגון העצרת,
לחפש אחר אנשים שיש ברשותם רישיון נהיגה ישראלי, על-מנת לשכור רכב להסעת
"משפחות השהידים ומשפחות העצורים" (עמ׳ 212). לדבריו, פנה לג׳ורג׳ קורט, אשר
השיב לו כי כי אינו פנוי, אך נתן לו את רישיון הנהיגה שלו. הוא חזר לבאפיר, אשר הורה
לו לשוב ולחפש אדם שישכור רכב. הנאשם החזיר את הרישיון לקורט, ופנה אל לואי
עודה, בבקשה שישכור רכב ליום אחד לצורך המטרה האמורה. עודה הסכים, קיבל כסף
מבאפיר, ונסע עם הנאשם ברכבו של באפיר לעבר משרדי חברת השכרת הרכב, שם
שכר רכב על שמו. הנאשם טען, כי עודה לקח את הרכב, כי אינו יודע איזה שימוש
נעשה בו, וכי לא ראה את עודה לאחר מכן.


במענה לשאלות ב״כ המאשימה, הכחיש הנאשם כי ברך את קורעאן ואמר על
ביצוע הרצח, וכי ביקש מהם לערוך דו״ח על פעילותם. כן הכחיש הנאשם את הנאמר
בהודעתו של אסמר, לפיה אמר לאסמר כי הצלקת שעל מצחו נגרמה כתוצאה מהכנה
כושלת של מטען חבלה. עוד התייחס הנאשם לגרסאותיהם של זיבאר, ראאד וחלבי,
באמרותיהם בחקירה, לפיהן היה ראש הזרוע הצבאית של ארגון החזית העממית. הוא
הכחיש הדבר מכל וכל, וציין כי ראה את העדים האמורים לראשונה רק בבית-המשפט.
באשר לבריחתו יחד עם קורעאן ואמר בעת מעצרם על-ידי הרשות הפלסטינית, הסביר
הנאשם, כי נמלט מדירת המסתור משום שחשש כי אם ייעצר עם השניים, ייקשר שמו
למעשה הרצח, בעוד שהוא אך הגיע לדירה בכדי לבקרם.

SHATSKY-007611



בתי המשפט
29

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

עדותו של מוחמד פהמי רימאווי

28.   עד נוסף שהעיד מטעם הנאשם הוא מוחמד פהמי רימאווי, אשר הורשע בשנת
2002 בבית-משפט זה במעורבות ברצח השר זאבי המנוח, בתיק פ"ח 4073/01, ונידון
למאסר עולם.

בעדותו מסר מוחמד רימאווי, כי גויס לצורך ביצוע הרצח על-ידי חמדי קורעאן,
וכחלק מההתכוננות להוצאתו אל הפועל נכח בפגישת תדרוך שנערכה בבית-קפה
ברמאללה, יום לפני הרצח. לדבריו, באותה פגישה נכחו מלבדו גם חמדי, אסמר, ואדם
חבוש פאה שהרכיב משקפיים, בשם מג'די. במהלך עדותו טען העד, כי הנאשם אינו
מוכר לו, אלא מפרסום תמונתו בכלי התקשורת; וכשנשאל, האם מזהה הוא את מג'די
רימאווי (שבעת העדות עדיין היה נאשם נוסף בהליך דנן), כאותו אדם חבוש פאה
השיב: "הוא נראה אותו דבר על-פי מבנה גופו". לשאלה נוספת – "מה לגבי הפנים שלו,
הרי אמרת שהיה ללא שפם וזקן?", ענה: "כן, אם הוא יחבוש פאה זה יהיה אותו אחד, אך
כך לא אוכל לזהות אותו" (עמ' 226).

עדותו של מג'די רימאווי

29.   כמבואר לעיל, העד מג'די היה נאשם נוסף בהליך שלפנינו, ובחר בפרשת ההגנה
שלא להעיד. משביקש הנאשם להעיד את מג'די כעד מטעמו, הופרד בהסכמת הצדדים
הדיון, והאחרון מסר עדות, לאחר שהמאשימה הודיעה כי לא תעשה שימוש בעדותו
במשפטו שלו.



בתי המשפט
30

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

כאן המקום להעיר, במאמר מוסגר, כי הסכמת הצדדים בדבר הפרדת משפטו
של מג'די בשלב פרשת ההגנה, על-מנת לאפשר לו להעיד כעד מטעם הנאשם, כמו גם
הצהרת התביעה כי לא תעשה שימוש בעדותו לחובתו, מעוררות שאלות לא פשוטות
שנפקויותיהן מורכבות; והן בעלות השלכה לא רק בתיק דנן אלא גם בתיקים אחרים
מרובי נאשמים. ואולם, הואיל וצעד זה ננקט בהסכמת הצדדים, מתייתר הצורך בגדרה
של הכרעת-הדין לדון בסוגיה ובהשלכותיה.


בעדותו תיאר מג'די כיצד כיצד תוכנן רצח השר המנוח, כנקמה על מותו של אבו-עלי
מוסטפא. מג'די העיד, כי הוא היה זה שהנחה את חברי החוליה — חמדי קורעאן, באסל
אסמר ומחמד רימאווי — לבצע את ההתנקשות, נתן להם הוראות, סיפק להם כסף, מסר
להם רכב לביצוע הרצח, וכן קיבל מהם דיווחים לאחר מעשה. לדבריו, עובר לרצח,
ביום 16.10.01, נפגש עם שלושת חברי החוליה האמורים בבית קפה ברמאללה, שם
עבר עמם על פרטי הביצוע המדויקים, נתן להם הוראות ומסר לידיהם כסף ונשק;
ולגרסתו, מלבדם לא נכח כל אדם חמישי בפגישה. לדבריו, את מכונית ה"קאיה" נתן
לחמדי לצורך ביצוע הרצח, לאחר שנטל את מפתחות הרכב מאדם בשם לואי. את
המפתחות קיבל, לטענתו, מלווי במשרדי ארגון החזית העממית ברמאללה, שעה
שהאחרון ביקש למסור את המפתחות לפקיד במשרדים, ומשלא מצא את הפקיד ביקש
ממנו — ממג'די — להעבירם ליעדם.


באשר למפגש בבית הקפה ברמאללה טען מג'די, כי הוא הגיע למפגש כאשר
פניו גלויות, כי אף אחד מהנוכחים בפגישה לא חבש פאה ומשקפי שמש, וכי לא הסתיר
את זהותו וחברי החוליה ידעו ששמו מג'די. הוא הוסיף וציין, כי היה כפוף היררכית



בתי המשפט
31

<u>בבית המשפט המחוזי בירושלים</u>                                פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

לאדם שהיה אחראי עליו בארגון; ואולם טען כי אינו מכירו בשמו אלא אך בכינויו, כפי
שנהוג בארגון החזית העממית. לדבריו, אותו "אחראי", הוא שנתן לו הוראות לביצוע
ההתנקשות, מסר לו את הפרטים אודות השר זאבי המנוח, וסיפק לו את הכסף והנשק
לביצוע הרצח. במענה לשאלת ב"כ המאשימה, ציין מג'די כי את רכב ה"קאיה" השיג
בכוחות עצמו, ולא קיבל אותו מ"האחראי".

מג'די הוסיף וטען, כי לנאשם, אותו הכיר מתוקף פעילותו בארגון "דמיר", לא
היה קשר לרצח, וממילא לא היה הלה מעורב בתכנונו, בהוצאתו אל הפועל ובקבלת
דיווחים על ביצועו. לדבריו, התקשר לנאשם רק בשלב שלאחר הרצח, בעת מנוסת
המעורבים בהתנקשות, כאשר הוכרזו כמבוקשים על-ידי הרשות הפלסטינית. הוא ביקש
מהנאשם שיאתר עבורם דירת מסתור בשכם, עיר מגוריו של הנאשם, לאחר שהוגברו
החיפושים אחריהם באזור רמאללה. כן ציין, כי לאחר הרצח לא דיווח דבר ל"אחראי"
עליו, וכי הפרטים ממילא נודעו לכל באמצעות כלי התקשורת.

<u>דיון</u>

<u>תמצית יריעת המחלוקת</u>

30.       כאמור, תמצית גרסתו של הנאשם הנה, כי לא היה מעורב בתכנון הרצח
וביצועו, כי לא היה פעיל בארגון החזית העממית, וכי אך סייע לאחר מעשה למבצעי
הרצח להסתתר בדירה בשכם.

עיקר גרסתה של הסניגוריה בסיכומיה, הוא כי אין מקום לקבל, לפי סעיף 10א
לפקודת הראיות, את אמרותיהם של העדים שהפלילו את הנאשם, הן בתכנון ובביצוע

SHATSKY-007614



בתי המשפט
32

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

הרצח, והן במעורבותו בפעילות טרוריסטית בזרוע הצבאית של ארגון החזית העממית.
לטענת הסניגוריה, לאמרותיהם של העדים המפלילים, בחקירות השב"כ והמשטרה, אין
לייחס משקל ומהימנות. היא גורסת, בין-השאר, כי חוקרי השב"כ עשו כל שלאל ידם
כדי להביא להפללתו של הנאשם, ו"ננעלו" על כיוון חקירה אחד: הם הפעילו לחץ
כבד ובלתי הוגן על חמדי קורעאן, על-מנת שיודה ויפליל את הנאשם כאותו אלמוני
שנכח בפגישת התדרוך בבית הקפה ברמאללה; והם ניהלו את חקירתו של אסמר תוך
שנתנו לו טובות הנאה כדי שיפליל את הנאשם. הסניגוריה הוסיפה וטענה, כי העדים
שהפלילו את הנאשם בחקירותיהם בשב"כ ובמשטרה, בחרו לסבך את הנאשם כתוצאה
מלחץ חקירתי ורצון לרצות את חוקריהם; וכי הללו הפלילו את הנאשם מתוך הבנה כי
לא יסבו לו כל נזק, שכן ממילא היה עצור בידי הרשות הפלסטינית, ושמו כבר הוזכר
כמי שהיה מעורב בדרך זו או אחרת ברצח. עוד טענה הסניגוריה, בכל הנוגע לאמרות
המפלילות שהונצחו בדו"חות זיכרון דברים של השב"כ, כי משקלן של האמרות הנו
דל, זאת מחמת רישום הדברים על-ידי עורכי הדו"חות, מבלי שהנחקרים חתמו על
הדו"חות. כן טענה הסניגוריה, כי גרסאותיהם בחקירה של קורעאן ואסמר סותרות
האחת את רעותה, בכל הנוגע לחלקו של הנאשם במפגש בבית הקפה ברמאללה, ועל-
כן אין לראותן כמהימנות. לגרסתה, אף אם תתקבלנה האמרות של קורעאן ואסמר, הרי
שנדרש להן חיזוק מוגבר, הן בשל היותן עדויות של שותפים לעבירה, והן מחמת
קבלתן בגדרו של סעיף 10א לפקודת הראיות. לטענת הסניגוריה, לאור הסתירות שבין
הגרסאות שהעלו שני העדים הנ"ל, לא תוכל לשמש אמרת חוץ אחת חיזוק ראייתי
לרעותה. כן גורסת היא, כי יש לקבל את עדויותיהם של מג'די ומחמד בבית-המשפט
כמהימנות, וכי עדויות אלה מהוות תימוכין לגרסתו של הנאשם.

SHATSKY-007615



בתי המשפט
33

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

לחלופין טענה הסנגוריה, כי אף אם יעדיף בית-המשפט את אמרותיהם
המפלילות של העדים, על-פני עדויותיהם, או שתיקתם, בבית-המשפט, הרי שניתן
לבסס על פיהן, לכל היותר, הרשעה בעבירה של סיוע לרצח, ולא בעבירת רצח. בהקשר
זה גורסת היא, כי כל שניתן לקבוע מהאמרות המפלילות, הוא כי הנאשם נכח במפגש
לקראת שילוח הרוצחים. ואולם, לטענתה מפגש זה התקיים לאחר שכבר נתגבשה
התכנית ואף חולקו התפקידים הביצועיים, ולא הובאה כל ראיה לכך שהייתה
לנאשם השפעה על ההחלטה לבצע את הרצח, או תרומה ממשית בהוצאתו אל הפועל.

ההכרעה העובדתית

הערות מקדימות

31.   בפתחה הדיון בהכרעה העובדתית, אדגיש כי התשתית הראייתית המפלילה את
הנאשם נסמכת, בעיקרה, על גרסאות שמסרו עדים בחקירות השב"כ והמשטרה. כאמור,
שבעה מעדי התביעה – קורעאן, אסמר, קורט, עודה, מזאחם, חלבי וזיבאר – העידו
באופן הסותר את אמרותיהם בחקירה, והוכרזו עדים עוינים. השניים הראשונים סכרו
פיהם לחלוטין, ואילו החמישה הנותרים השמיעו הסבר דומה, שחזר על עצמו כחוט
השני בעדותו של כל אחד מהם, בשינויים קלים, לפיו אין לייחס משקל להפללתם את
הנאשם. הם הסבירו, כי הפלילו את הנאשם אך כדי לרצות את החוקרים, שהפעילו
עליהם לחצים כבדים ו"סימנו" את הנאשם כמטרה. כן ציינו, כי הואיל והנאשם נעצר
על-ידי הרשות הפלסטינית בקשור לפרשת הרצח, הרי שלא חששו כי כתוצאה
מהפללתם אותו יובא הלה לישראל, ומשכך – סברו כי לא ייגרם לו כל נזק אם יטילו
עליו אחריות לרצח ולמעשי טרור אחרים; מה גם, שבכך יימנעו ממסירת מידע אודות
פעילי טרור נוספים ומהפללתם – פעילים אשר עלולים להיעצר על-ידי כוחות הביטחון

SHATSKY-007616



בתי המשפט
34

**בבית המשפט המחוזי בירושלים**          פ"ח 7027/06

**לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם**

הישראליים או שכבר נעצרו. הסברים דחוקים אלו, שעליהם ביסס הנאשם חלק ניכר

מגרסתו, לא נוכל לקבל ואין לתת בהם אמון; וזאת, בין-השאר, מהטעמים הבאים:


ראשית, מעיון באמרותיהם המפלילות של העדים, אשר טוענים כי ביקשו

"למזער נזקים" ולהפליל את הנאשם כמעורב ברצח, ניכר כי הללו לא היססו מלנדב

פרטים רבים אודות מעורבות הנאשם לאורך השנים במעשי טרור נוספים מלבד הרצח,

ובדבר פעילותו כבכיר בזרוע הצבאית של ארגון החזית העממית. יתר-על-כן,

בהודעותיהם בחקירה הפלילו העדים, באותה נשימה, פעילי טרור רבים נוספים מלבד

הנאשם, מבלי להסס, ולא ניכר כי היו זהירים בהפללת חבריהם, כפי שביקשו לצייר

זאת לפנינו.


שנית, הישנותם של ההסברים הדומים אצל ארבעה מתוך חמשת העדים

העוינים, בנוסף לשתיקתם של שני העדים הנוספים, מלמדת כי הגרסה החוזרת תואמה

בין העדים, כמו גם חוסר נכונותם הגורף של כל השבעה להעיד כנגד הנאשם, ולחזור

על הגרסאות המפלילות אותו, כפי שמסרו בחקירותיהם. אין זה מתקבל על הדעת, כלל

ועיקר, כי ארבעה עדים שונים, בחקירות נפרדות, נקטו שיטה זהה לחלוטין על-מנת

לרצות את חוקריהם, ובחרו להפליל דווקא אותו אדם מתוך כלל פעילי הארגון,

בסברם כי לא ייפגע מכך.


שלישית, אין לפנינו אמרה מפלילה אחת שיש שיש לתהות על קנקנה ולהתייחס אליה

בחשד, כי אם מספר אמרות מפלילות מפי עדי תביעה, התומכות האחת ברעותה. מספרן

הרב של ההודעות והאמרות המפלילות בחקירה, מפיהם של נחקרים שונים, בתאריכים



בתי המשפט
35

<div dir="rtl">

**בבית המשפט המחוזי בירושלים**                                        פ"ח 7027/06

**לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם**

נפרדים, שנגבו על ידי מספר חוקרים – כל אלו מפריכים את הטענה שהעלו הן העדים,
והן הסניגוריה בסיכומיה, לפיה החוקרים שמו דברים בפי הנחקרים ועשו כל שלאל
ידם, באופן בלתי הוגן, על-מנת להפליל את הנאשם; ומוליכים לכלל מסקנה, כי טענה
זו משוללת יסוד, חסרת היגיון ובלתי סבירה בעליל.


מתווה הדיון בהכרעה העובדתית

32.   כפי שעולה מסקירת התשתית הראייתית לעיל, המסד הראייתי שהובא על-ידי
המאשימה, מתבסס על ארבעה אדנים מרכזיים: הראשון – אמרותיהם בחקירה של חמדי
קורעאן ובאסל אסמר, אשר הפלילו את הנאשם כדמות מרכזית בתכנון הרצח, בשילוחם
לביצועו ובסיוע להם בשלב ההימלטות; השני – אמרותיו של לואי עודה, לפיה ביקש
ממנו הנאשם לשכור עבורו את רכב ה"קאיה" שימש לביצוע הרצח; השלישי – אמרותיו
של ג'ורג' קורט, כי מספר ימים לפני הרצח ביקש ממנו הנאשם את רישיון הנהיגה
הישראלי שלו; והרביעי – אמרות מפלילות של עדים נוספים, המצביעות על מעמדו
הבכיר של הנאשם בזרוע הצבאית של ארגון החזית העממית.


על-רקע האמור, יתמקד הדיון בהכרעה העובדתית, בעיקרו, בארבע סוגיות
מרכזיות: שאלת השתתפותו של הנאשם במפגש שנערך בבית הקפה ברמאללה לקראת
שילוח המרצחים לירושלים, והתפקיד שנטל בפגישה זו; חלקו של הנאשם בשכירת
רכב ה"קאיה" ששימש את המתנקשים; מעורבות הנאשם במילוט הרוצחים, בקבלת
דיווח מהם וכן בהימלטות עמם לאחר הרצח; וחברותו של הנאשם, כמו גם תפקידו,
בזרוע הצבאית של ארגון החזית העממית.

</div>



בתי המשפט
36

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

בטרם אפנה לדיון מפורט בכל אחת מהסוגיות האמורות, אקדים התייחסות
כללית להערכת גרסאותיהם של ארבעת העדים, שעל-פי הנטען היו במעגל הפנימי של
תכנון ההתנקשות וביצועה, ואשר הורשעו כולם בביצוע הרצח בהליכים המקבילים
שנוהלו נגדם: חמדי קורעאן ובאסל אסמר — ששימשו כעדי תביעה, ומג'די קורעאן
ומחמד רימאווי — שהעידו מטעם הנאשם.

הערכת גרסאות העדים מהמעגל הפנימי

33.   משקל הודעותיהם של חמדי קורעאן ובאסל אסמר: הודאותיהם של קורעאן
ואסמר בחקירת המשטרה, כמו גם אמרותיהם בחקירת השב"כ, הוגשו על-ידי
המאשימה בגדרו של סעיף 10א לפקודת הראיות, לאחר שהשניים שתקו מעל דוכן
העדים והוכרזו עדים עוינים. לא הייתה מחלוקת, כי האמרות נמסרו על-ידי העדים,
והסנגוריה לא טענה כי הגרסאות שנרשמו בהודעות ובדו"חות זכרון הדברים, אינן
משקפות את שנאמר על-ידי העדים. עם זאת נטען, כי החלקים באמרות, אשר הפלילו
את הנאשם, "נשתלו" בפי הנחקרים על-ידי חוקרי השב"כ, ונמסרו על-ידם כתוצאה
מלחצים בלתי הוגנים שהופעלו עליהם, ומתוך ניסיון לרצות את חוקריהם.

מעדויותיהם של חוקרי השב"כ והמשטרה, ומעיון בדו"חות זכרון הדברים של
חקירות השב"כ, עולה, כי אין בסיס לטענות הסניגוריה, בדבר ניהול חקירה בלתי
הוגנת וחילוץ הודאות-שווא שנועדו אך להפליל את הנאשם. ניכר, כי החקירה נוהלה
באופן הוגן וללא הפעלת לחץ חריג. תיעוד חקירתם של שני העדים מצביע על הליך
הדרגתי שבו שינו הנחקרים את עמדתם, ממצב של הכחשה גורפת וחוסר שיתוף
פעולה, עד למסירת הודאותיהם המפלילות המלאות.



בתי המשפט
37

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

באשר למשקל האמרות של כל אחד מהשניים, ניכר כי מדובר בהודאות מפורטות היורדות לפרטי הפרטים של האירועים. כל אחד משני העדים הציג את האירועים ברצף כרונולוגי סדור, אגב מסירת מירב הפרטים באורח קוהרנטי ונהיר. מעיין באמרות ניכר, כי הן מתארות אירועים אותם חוו קורעאן ואסמר, ומהווה עדות אותנטית אודות שהתרחש. עוד יצוין, כי מהימנות של האמרות, הכוללות פרטים רבים אודות ביצוע הרצח, מתחזקת נוכח העובדה שפרטים אלה מאומתים על-ידי ראיות חפציות שנמצאו בזירה, כמו: טביעות אצבע של המבצעים, דגימות DNA שלהם, רכב המילוט וראיות נוספות, כפי שיפורט בהמשך.

34.   עדותו של מג'די רימאווי כעד הגנה: משמיעת עדותו של מג'די לפנינו, ניתן היה להתרשם בנקל, כי הלה עלה אל דוכן העדים משוחרר מהחשש מפני הפללה עצמית, וכי כל שביקש בעדותו היה להיחלץ לעזרתו של הנאשם, ולהרחיקו ככל שניתן ממעורבות ברצח ומפעילות טרוריסטית. הוא ניסה לסייע לנאשם בכך שנטל על עצמו אחריות מלאה לתכנון ההתנקשות ולשילוח חוליית הרצח, בידעו כי כל שיאמר לפנינו לא ישמש ראיה לחובתו במשפטו, שהופרד כאמור.

מג'די ציין בעדותו, כי היה כפוף לאדם שהיה אחראי עליו בהיררכיה הארגונית, אך טען כי אינו יודע את שמו. ניכר, כי בדבריו אלה ניסה מג'די להתחמק מחשיפת זהותו של האחראי — הנאשם; שכן ההיגיון מורה, כי פעיל ותיק ומרכזי בארגון הטרור יכיר את זהותו של הממונה עליו, על-אף המידור הרב; ולראייה, גם חברי החולייה הכפופים למג'די — קורעאן, אסמר, ואף המסייע, מחמד רימאווי —



בתי המשפט
38

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

הכירו את הממונה עליהם, מג'די עצמו, בשמו, ולא השתמשו לגביו בכינוי כלשהו. עוד
ניתן להתרשם, כי בגרסתו תיאר מג'די את מהלך האירועים באופן זהה לזה שנמסר
בגרסאותיהם של קורעאן ואסמר, וכי עדותו נבדלת מגרסתם רק בתיאורים המתייחסים
לנאשם עצמו ולמעורבותו ברצח ובתכנונו. ניכר, כי חלק הארי של עדותו, התואם את
גרסתם של קורעאן ואסמר, אכן משקף את האירועים כפי שהתרחשו. ואולם, השוני
בשאר חלקי גרסתו, שהם החלקים המשמעותיים לענייננו, נובע מתוך רצונו של מג'די
לחלץ את הנאשם מהאישומים המיוחסים לו.


הרושם הברור מעדותו של מג'די הנו, כי העד – אשר בעת היותו נאשם בתיק
זה בחר לסכור את פיו ולדבוק בשתיקתו, ושינינה התנהלותו ובחר להעיד רק משהופרד
משפטו והפך לעד החסין מפני הפללה עצמית – עשה זאת אך ממניעים של עזרה
לחברו, הנאשם, ולא מתוך רצון להעיד את האמת לאשורה. שומה עלינו לזכור
ולהדגיש, כי עדותו, שהחלה בהרצאת משנתו האידיאולוגית, ועברה לתיאור קר
ומצמרר של שלבי תכנון הרצח וביצועו, תוך נטילת אחריות מלאה כמשלח חוליית
הרצח, ללא נימה חרטה כלשהי, ניתנה מפיו של אדם, אשר מודה כי היה מעורב ברצח,
שיודע כי בכל שיאמר לא יהיה כדי לפגוע בו, ושמבקש לעזור לחברו במשפט. עדותו
של מג'די הייתה רוויית תמיהות, ובפרט בכל הנוגע לנאשם, ועמדה בסתירה
לגרסאותיהם המפלילות של קורעאן ואסמר בחקירה. הערכת עדותו, כפי שתפורט
בהמשך בעניין כל סוגייה בנפרד, מובילה למסקנה כי גרסתו, בכל הנוגע לנאשם, אינה
מהימנה כלל ועיקר, ואין לסמוך עליה ממצאים.

SHATSKY-007621



בתי המשפט
39

בבית המשפט המחוזי בירושלים

לפני כב׳ השופטים: צ׳ סגל - סגן נשיא, י׳ שפירא וי׳ נועם

35. מחמד רימאוי: עדותו של עד ההגנה מחמד רימאווי הותירה רושם בלתי מהימן. כפי שיבואר להלן, בדיון בעניין מפגש התדרוך בבית הקפה ברמאללה, עדותו של העד הייתה רצופה פרכות וסתירות, אשר אותן התקשה העד להסביר בחקירתו הנגדית, וניכר היה כי לא האמת היא שהנחתה אותו בעדותו, אלא רצונו לחלץ את הנאשם ממעורבות ברצח.

ומכאן נפנה לדיון מפורט בעניין הערכת הראיות וההכרעה העובדתית, בהתייחס לכל סוגייה בנפרד.

המפגש בבית הקפה ברמאללה

36. סוגיה עובדתית מרכזית השנויה במחלוקת, אשר ההכרעה בה רלבנטית לצורך קביעת מעורבותו של הנאשם בתכנון הרצח ובהוצאתו אל הפועל, מתמקדת בשאלת זהותם של הנוכחים במפגש שהתקיים בבית הקפה ברמאללה, שבמהלכו תודרכו הרוצחים לקראת צאתם לביצוע ההתנקשות. אין חולק, כי אותו מפגש התקיים, וכי נכחו בו, למצער, מג׳די, חמדי קורעאן, באסל אסמר ומוחמד רימאווי. על כך העידו מג׳די ומחמד, כך מסרו קורעאן ואסמר באמרותיהם בחקירה, ואף הנאשם לא חלק על כך. ואולם, המחלוקת נסבה בשאלה, האם הנאשם היה הדמות החמישית באותו מפגש, אם לאו. בחינת הראיות שהובאו לפנינו מוליכה לכלל מסקנה, כי גרסתם של קורעאן ואסמר, שתועדה בחקירות השב״כ ובהודעות העדים במשטרה, לפיה הנאשם היה האדם החמישי שהשתתף בפגישת התדרוך, משקפת את האירועים כהווייתם.



בתי המשפט
**40**

פ"ח 7027/06

**בבית המשפט המחוזי בירושלים**

**לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נעם**

37.   קורעאן, כאמור, תיאר בהודעתו במשטרה, כי בפגישה נכח אדם חמישי: "היה
גם נאהד ע'ולמה בשנות ה-40 משכם, נקרא אבו-קייס, כיום בכלא, והיה לו לראשו פאה"
(ת/2, עמ' 7 ש' 22-21). הוא הסביר, כי הבין שהנאשם הוא אותו אדם רק לאחר שפגש
בו בעת ההימלטות המשותפת וההסתתרות יחד עמו. דברים אלה זוכים לחיזוק
בהודעתו של באסל אסמר, שתיאר אף הוא נוכחות של אדם חמישי, אלמוני, בפגישה
שנערכה לפני הרצח, אשר "חבש פאה (ברוקה) ואני ראיתי שיש לו צלקת (ג'רקט) על המצח
(גבין)" (ת/35, עמ' 1 ש' 20); ואשר הוסיף, כי זהותו נתבררה לו אך בשלב מאוחר
יותר, כאשר נפגשו בדירת המסתתור: "אני זיהיתי אותו לפי הקול שלו, וידעתי שזה הוא
שהיה עם הפאה בבית הקפה. ואני שאלתי את נאהד ע'ולמה, אם זה הוא הבלמ"ז (הבלתי
מזוהה – י' נ') שהיה איתנו בפגישה בבית הקפה לפני הרצח ונתן לנו את המידע לפני
הרצח. ונאהד ע'ולמה צחק ואמר לי: תשכח מהעניין. ואני עוד יותר הייתי בטוח שזה הוא"
(ת/35, עמ' 1 ש' 28-24). בחקירתו בשב"כ מסר אסמר דברים דומים, וציין כי "זיהה
את קולו של נאהד ואת תווי פניו" (ת/46, סעיף 17). הערכתו של אסמר התחזקה, כאשר
שאל את הנאשם כיצד זה נתפסו על-ידי הרשות הפלסטינית, בעוד שלפני הרצח הובטח
להם על-ידי האלמוני, כי קשריו עם הרשות חזקים וימנעו את מעצרם, והלה השיב,
כאמור, כי "קשריו יצאו אפס". תגובותיו אלה של הנאשם לשאלותיו של אסמר, כאשר
לא הכחיש כי הוא הדובר האלמוני בפגישה, ובאופן המעיד כי ידע על מה מדובר,
ובפרט בהתייחסו לשאלה בדבר קשריו עם הרשות הפלסטינית, מהווים חיזוק נוסף
למסקנה כי הנאשם הוא אכן אותו אדם חמישי שנכח בפגישה בבית הקפה ברמאללה.


38.   הצלקת על מצחו של הנאשם מחזקת אף היא את משקל זיהויו של אסמר את
האלמוני כנאשם. עצם קיומה של צלקת על מצחו של הנאשם אינו שנוי במחלוקת (עמ'



בתי המשפט
41

<u>בבית המשפט המחוזי בירושלים</u>                                פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

336). אסמר מסר באמרותיו בחקירה כיצד לימד אותו הנאשם להכין מטעני חבלה, עת
שהו בדירת המסתור בשכם, בשלב שזהותו של הנאשם הייתה גלויה וידועה לו.
בחקירתו בשב"כ ציין אסמר, כי הנאשם מסר לו שהצלקת שעל מצחו מקורה בפיצוץ
מטען חבלה שהרכיב, במסגרת "תאונת עבודה" (ת/57, סעיף 14.8.3). תיאור דומה של
צלקת על המצח הופיע בהודעתו של אסמר במשטרה, עת התייחס לאותו אלמוני חבוש
פאה ובעל צלקת על מצחו, שנכח במפגש שנערך בבית הקפה ברמאללה (ת/35, עמ' 1
ש' 20).

39.      בכל הנוגע לזיהויו של הנאשם על-ידי קורעאן ואסמר, כמי שהשתתף בפגישת
התדרוך בבית הקפה ברמאללה לקראת שילוח חוליית הרצח, הרי שיש להעניק משקל
רב לעצם העובדה שהשלושה שהו יחד תקופה ארוכה בת מספר שנים, החל
מהימלטותם לאחר הרצח, וכלה במעצרם על-ידי כוחות הביטחון הישראליים בשנת
2006 ביריחו. מסקנה הגיונית ומתבקשת היא, כי לאחר תקופה כה ארוכה של חיים
משותפים, כאשר השלושה כבר נשפטו ונכלאו, לא תיוותר שאלת זהותו של האלמוני
עמומה ובלתי פתורה בקרבם, בין אם היה זה הנאשם בין אם לאו. על-כן, יש לייחס
משקל רב לאמרותיהם המפלילות של קורעאן ואסמר, אשר היו החלטיים בזיהויים את
האלמוני שהשתתף בפגישה בבית הקפה ברמאללה – כנאשם. עוד יצוין, כי גם במהלך
שיחזור הרצח על-ידי אסמר, נשאל הלה לגבי זהות האדם שמסר להם את המידע לצורך
ביצוע הרצח, ואסמר חזר על גרסתו המפלילה את הנאשם, כמפורט להלן בתמליל
השחזור:

"אסמר: לגבי הידיעות אני סיפרתי לך שהיו בהתחלה, במפגש יעני,

מסר לי אותם עאהד, עאהד אבו ג'ולמי (ע'ולמה – י' נ'),

SHATSKY-007624



בתי המשפט

**42**

פ״ח 7027/06

לפני כב׳ השופטים: צ׳ סגל - סגן נשיא, י׳ שפירא וי׳ נועם

חוקר: שוב פעם, מי?

אסמר: עאהד אבו ג׳ולמי,

חוקר: איזה ידיעות הוא מסר לכם?

אסמר: את הפרטים של הפיגוע שהיה, יציאה, אה, מתי הוא נמצא,

ומתי הוא אוכל ארוחת בוקר, ומתי הוא נמצא למעלה״ (ת/39א, עמ׳

4-5).

.40    הסנגוריה העלתה בסיכומיה שלל טיעונים נגד משקל האמרות המפלילות של

קורעאן ואסמר.

לא מצאנו ממש בטענות הסנגוריה, לפיהן החלק המפליל את הנאשם

באמרותיהם של קורעאן ואסמר היה פרי של חקירה בלתי הוגנת. משמיעת עדויות

החוקרים לפנינו, ומעיון מקיף בהודעות העדים במשטרה ובדו״חות זיכרון הדברים

מחקירות השב״כ, התרשמנו כי חקירותיהם של קורעאן ואסמר התנהלו באופן הוגן,

מבלי שהופעל עליהם לחץ חריג או פסול, אשר בו כדי לפגוע במשקל אמרותיהם,

וכי השניים מסרו את גרסאותיהם המפלילות את הנאשם מבלי שהחוקרים שמו בפיהם

פרטים אודות הפללה זו.

טענות הסנגוריה, כי היה מקום לנהל את החקירה רק על-ידי משטרת ישראל,

ולא על-ידי השב״כ, שהנו גוף סיכולי, דינן להידחות. נחה דעתי, כי חקירת המעורבים

ברצח, הגם שחלפו מספר שנים ממועד התרחשותו, עדיין הייתה ברובה בעלת אופי

סיכולי, ובפרט כשהנחקרים נחשדו בחברות בארגון טרור רצחני, וכאשר הנאשם נחקר

SHATSKY-007625



בתי המשפט
43

פ"ח 7027/06

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

על חשדות בדבר היותו בעל תפקיד בכיר בארגון טרור שעודנו פעיל. כחקירה סיכולית,
באחריות שרות הביטחון הכללי, הרי שחלו לגביה כללים שונים מאלו החלים על
חקירות משטרה, גם בכל הנוגע לתיעוד (ראו: ע"פ 6613/99 סמירק נ' מדינת ישראל,
פ"ד נו(3) 529).

41.   לגופן של האמרות המפלילות את הנאשם, הוסיפה וטענה הסנגוריה, כי אסמר,
במהלך חקירותיו, לא חשף תחילה את זהות האלמוני כנאשם, אלא הוסיף פרטים אלה
רק בהמשך, בכדי לרצות את חוקריו, לעומת פרטים אחרים שלגביהם הודה כבר
מלכתחילה. בנוסף טענה הסנגוריה, כי אסמר תיאר תחילה את הנאשם כבעל שיער לבן
ו"תספורת צרפתית", ולבסוף ציין כי חבש פאה; ומשכך, אין לראות את גרסתו
כמהימנה. גם טענות אלה דין להידחות. ראשית יצוין, כי תיאורו של אסמר את מראהו
של אותו אלמוני הונצח בדו"ח השב"כ כלהלן: "בשנות הארבעים לחייו, שיערו מעט
מלבין (הנדון מציין שחלק מהשיער לבן וחלק שחור), הנדון מציין כי שיערו היה ב"תספורת
צרפתית", מעט ארוך בצדדיו, מבנה גוף מעט מלא, גובהו לערך 1.75..." (ת/42, ס'
24.2.5). אין מדובר, אפוא, באדם "בעל שיער לבן", כפי שנטען בסיכומי הסניגוריה;
ובכל מקרה, אין סתירה בין גרסאותיו של אסמר לאורך שלבי חקירתו בעניין תיאורו
של אותו אדם, אלא לכל היותר התפתחות טבעית של מסירת הודאה, כאשר בכל פעם
חשף הנחקר טפח נוסף. חקירה של חשוד מטבעה הנה תהליך מתמשך ומתפתח, כאשר
במקרים רבים רבים מירב הפרטים, כמו גם מירב הפרטים, נמסרים רק לאחר תהליך הדרגתי
מתמשך, לעיתים ארוך, במהלכו חושף החשוד פרטים נוספים בכל שלב, עד למסירת
גרסה מלאה. מעיון בדו"חות בדבר חקירתו של אסמר בשב"כ ובהודאות שנגבו ממנו
במשטרה, ניכר כי תהליך מסוג זה פקד גם את אסמר, אשר ביקש תחילה, ככל הנראה,



בבית המשפט המחוזי בירושלים

פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

להימנע מלהפליל את הנאשם, ורק ייחס לו את הסיוע להימלטות, שכן היה ברור לכל כי הנאשם נתפס עם המבוקשים; אך בהמשך, כבר החל למסור פרטים על מעורבותו של הנאשם בפגישת התדרוך לקראת שילוח החוליה, שהתקיימה בבית הקפה ברמאללה.

42.     באשר לטענת הסניגוריה, בדבר סתירה בין גרסתו של קורעאן לבין זו של אסמר, בכל הנוגע למעשיו של הנאשם במפגש ולמידת מעורבותו בתכנון הרצח, הרי שאף אם קיים שוני מסוים בין הגרסאות, שעה שקורעאן מתאר את תפקידו של הנאשם במפגש כפחות דומיננטי, בעוד אסמר מעניק לו מקום מרכזי יותר, אין מדובר בהבדל מהותי ומשמעותי בין הגרסאות. אסמר מסר בגרסתו, כי הנאשם עבר עם חברי החוליה על התכנית לפרטיה והעניק להם את ברכת הדרך. קורעאן אמנם לא פירט באמרותיו את חלקו של הנאשם בתדריך, ואולם גם מהודעתו בהחלט ניתן ללמוד כי הנאשם נטל חלק פעיל במפגש, כמי ששוחח עם מבצעיו ועודד אותם לקראת היציאה לדרכם: "...מג'די ועאהד דיברו איתנו על הפיגוע ועודדו אותנו, והם אמרו שלאחר שנחזור מהפיגוע לרמאללה יעשו לנו חפלה גדולה. ואני פחדתי אז מהרש"פ ושאלתי את מג'די ועאהד מה יקרה כשנחזור מהפיגוע, והם אמרו שלא נפחד" (ת/2, עמ' 7 ש' 20-28).

עוד יוער, כי ב"כ הנאשם בסיכומיו בעניין זה (עמ' 14, סעיף 31(ז) לסיכומים), מבסס את טענותיו בדבר סתירה בין הגרסאות, בין-היתר, על עובדת הנטענת על-ידו, לפיה קורעאן בהודאתו מסר כי יומיים עובר לרצח נערכה פגישה מרובעת בנוכחות קורעאן, אסמר, מחמד ומג'די, ובמהלכה תדרך מג'די את השלושה באופן מקיף על פרטי הפיגוע אותו יבצעו, ואילו המפגש בו נכח האדם החמישי, היה אך לקבלת ברכת הדרך ולעידוד רוחם של השלושה. ב"כ הנאשם אף הפנה לסעיפים 11.2.1 - 11.2.27



בתי המשפט
45

פ"ח 7027/06

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

בהודאתו של קורעאן (ת/20). עיון בהודאתו של קורעאן מגלה, כי הבסיס העובדתי
לטענתנו זו של ב"כ הנאשם מוטעה, שכן קורעאן בהודאתו מתאר פגישה שלו עם מחמד
רימאווי ואסמר, הנפרדת מפגישתו המקבילה עם מג'די. לגרסתו, מפגש מרובע כלל לא
היה, אלא אך מפגש אחד שלו עם שני שותפיו לחולייה, מפגש שני עם מג'די, ומפגש
נוסף ואחרון בו נכחו החמישה, ובכללם גם הנאשם כאותו אלמוני.


43.    הסנגוריה הוסיפה וטענה בסיכומיה, כי מהימנות הודעותיהם של קורעאן
ואסמר מתערערת גם נוכח אמרותיהם שנגבו על-ידי חוקרי הרשות הפלסטינית.
לטענתה, בחקירתם ברשות (נ/4) מסרו השניים גרסה מפורטת, אשר מעיון בה לא
יימצא כל זכר למפגש שקיימו לפני הרצח בנוכחות הנאשם, או כל פרט הקושר את
הנאשם למעורבות ברצח או בתכנונו. לגרסת הסנגוריה, הפרטים המפלילים את הנאשם
הופיעו רק בחקירותיהם של קורעאן ואסמר בישראל, ובכך מתערערת אמינות גרסתם.
מעיון בדו"חות סיכומי החקירות שנערכו בידי חוקרי הרשות הפלסטינית, עולה כי
מלבד נושא הלנתם של קורעאן ואסמר על-ידי הנאשם לאחר הרצח, אין כל התייחסות
מצד השניים למעורבותו של הנאשם בתכנון הרצח, ואף לא מוזכר דבר קיומה של
הפגישה בנוכחותו. ואולם, השניים אף אינם מציינים כלל דבר קיומה של פגישה
כלשהי, אף לא פגישה מרובעת, אשר לגרסת מג'די ומחמד רימאווי אכן התקיימה.
המסקנה המתבקשת מכך הנה, כי השניים בהודעותיהם ברשות הפלסטינית ביקשו
להימנע מלהפליל אחרים, ועל-כן לא ציינו את עצם קיום הפגישות המקדימות,
והחסירו פרטים רבים מחוקריהם. העובדה, כי בחקירותיהם בישראל מסרו קורעאן
ואסמר פרטים נוספים, ובין-השאר פרטים המפלילים את הנאשם, אין משמעה כי יש
לפקפק באמרותיהם, או כי אלו מעוררות תמיהות. מכל מקום, בהיות חומר החקירה



בתי המשפט
**46**

פ"ח 7027/06

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

שנאסף ברשות הפלסטינית חלקי וחסר, נתקשה להעריך את אופי חקירת השניים בידי
גורמי הרשות ואת טיבה, וכפועל יוצא — אין להסיק לגביה ממצאים שיש בהם כדי
לפגום במשקל אמרותיהם המפלילות את הנאשם.

44.   הסניגוריה הוסיפה וציינה, כי טענת המאשימה — הנסמכת על הודעותיהם של
קורעאן ואסמר — לפיה הופיע הנאשם לפגישות עם חברי החוליה בבית-הקפה כשהוא
חבוש פאה, מעלה תמיהות ואינה הגיונית, ובפרט נוכח גרסתו של עד התביעה ג'ורג'
קורט — שמסר בהודעתו כי הנאשם פגש בו ביום העצרת וביקש את רישיון הנהיגה שלו
לצורך ביצוע פיגוע, כל זאת כאשר פניו היו גלויים וללא פאה. הסניגוריה גורסת, כי
תמיהה זו מערערת את אמינות הודעותיהם של קורעאן ואסמר.

בטרם אבחן טענה זו לפרטיה, אקדים ואעיר, כי ככלל, לא תמיד ניתן למצוא
הגיון בהתנהגות ובדרכי הפעולה של אדם המבצע פעולה זו או אחרת, ובפרט כאשר
מדובר בביצוע עבירה פלילית, ולרדת לסוף דעתו. על-כן גם בענייננו, העובדה שדווקא
במפגש אחד בחר הנאשם לחבוש פאה, ובמפגש אחר — שלא לעשות כן, אינה מערערת
את מהימנות אמרותיהם של קורעאן ואסמר. זאת ועוד: דווקא במקרה שלפנינו ניתן
להעלות על הדעת מספר הסברים הגיוניים לדבר: פנייתו של הנאשם לקורט נעשתה
בזמן העצרת ההמונית לציון מותו של אבו-עלי מוסטפא, אשר במהלכה סבבו את
הנאשם אנשים אשר הכירוהו. כך למשל, העיד לואי עודה, שהשתתף בעצרת, כי הכיר
את הנאשם עוד משנת 1996 כפעיל החזית העממית, וכי האחרון פנה אליו במהלך
העצרת, וזאת כמובן כאשר פניו גלויות. ההיגיון יורנו, כי אדם הממלא תפקיד בכיר
בארגון טרור, ואשר משתתף בעצרת המונית של הארגון בראש חוצות, ושמן הסתם



בתי המשפט
47

<u>בבית המשפט המחוזי בירושלים</u>

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

מוכר לרבים מקרב משתתפי אותה עצרת, לא הצליח ואף לא ניסה להסתיר את פניו ואת
זהותו; מה גם, שמעצם טבעה של עצרת מסוג זה, שהנה אירוע הפגנתי, הרי שיש מן
ההיגיון בכך שבכירי הארגון יופיעו כשזהותם גלויה. בנוסף, הפניה לקורט ולעודדה
במהלך העצרת היתה כללית, לא כללה ציון ספציפי כי רישיון הנהיגה והרכב המושכר
נדרשים לצורך רצח שר בישראל אלא לצורך "פיגוע גדול", ועל-כן לא היה לנאשם
צורך להסתיר זהותו, שכן ממילא לא קשר עצמו לרצח הספציפי, בעוד שבמפגש
התדרוך בבית-הקפה עובר לרצח דיברו המשתתפים באופן ספציפי על הרצח המתוכנן
ועל פרטי תוכנית ביצועו, כאשר מרבית המשתתפים לא הכירו עד לאותה עת את
הנאשם.

45.    עוד טענה הסניגוריה בסיכומיה בהקשר האמור, כי אין היגיון לגרסת התביעה,
לפיה הנאשם, אשר לא חשף עצמו מעולם בפני קורעאן, שביצע כבר פיגועים רבים
בעבר במסגרת הארגון, החליט הפעם לחרוג ממנהגו ומזהירותו ונפגש עמו עובר לרצח.
אף טענה זו דינה להידחות, וזאת משני טעמים: ראשית, רצח השר זאבי המנוח היה
פיגוע טרור יוצא דופן וחריג בסמליותו, בכל קנה מידה, וניתן להבין מדוע דווקא
לקראת ביצועו של פיגוע זה נדרשה ברכת הדרך האישית מפי בכיר בארגון. שנית,
הופעתו של הנאשם למפגש חבוש חבוש פאה, דווקא היא שמעידה על זהירותו, ממנה לא חרג
אף בפעם זו, ועל-כן הופיע לפני קורעאן והאחרים כאשר זהותו מוסתרת.

46.    כאמור, בעוד קורעאן ואסמר אישרו בהודאותיהם בחקירות השב"כ ובמשטרה,
כי הנאשם השתתף במפגש בבית הקפה בתדרוך בבית הקפה ברמאללה, ונטל בו חלק פעיל, הכחישו
העדים מטעם הנאשם — מג'די רימאווי ומחמד רימאווי — בהעידם לפנינו, כי הנאשם

SHATSKY-007630



בתי המשפט
48

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

השתתף במפגש, ואף טענו כי לא השתתף בו אדם חמישי כלשהו. בחינת עדויותיהם של שני העדים האחרונים, מגלה, כאמור, כי אין הן מהימנות כלל ועיקר. ראשית, עדותו של מחמד הנה עדות כבושה, שכן בהודעותיו במשטרה הוא לא מסר את אותם הפרטים באשר לנוכחים בפגישה. בחקירתו הראשונה במשטרה, מיום 20.10.01 (נ/1), לא התייחס מחמד כלל לעצם קיומה של אותה פגישה משמעותית; ובחקירתו מיום 13.11.01 (נ/2) תיאר את הפגישה תוך שציין במפורש כי מג'די הוא האדם הרביעי שהשתתף בה, ולא הזכיר דבר אודות פאה שחבש או משקפיים שהרכיב. רק בעדותו בבית-המשפט ציין, במפתיע, כי האדם הרביעי בפגישה היה אלמוני שהוצג בשם מג'די, וכי הוא חבש פאה והרכיב משקפיים. כאשר נתבקש לזהותו באולם בית-המשפט, אמר כי הוא מזהה את מג'די רימאווי כאותו מג'די שנכח בפגישה, אך זאת — רק לפי מבנה גופו. עדותו זו עומדת בסתירה מהותית להודעתו במשטרה, שם ציין במפורש כי האדם הרביעי היה מג'די רימאווי, כבן 35, אשר הופיע לפניהם מבלי שניסה להסתיר זהותו. משנשאל מחמד  בחקירתו הנגדית לפשר הסתירות האמורות, השיב באופן מתחמק: "אמרתי את זה, ואין זו אשמתי אם לא אמרתי זאת בחקירה" (עמ' 226), ובהמשך: "לא סיפרתי את כל האמת? – דבר ראשון אני לא חושב שמתבקש ממני לומר את כל האמת..." (עמ' 227).


בין גרסתו של מג'די לבין גרסתו של מחמד נתגלתה סתירה משמעותית נוספת. אמנם מג'די גרס אף הוא, כי בפגישה נכחו אך ארבעה; ואולם, בניגוד לגרסת מחמד, הוא ציין כי הגיע למפגש כאשר פניו גלויות, כי לא הסתיר את זהותו, וכי אף אחד מהמשתתפים בפגישה לא חבש פאה ולא הרכיב משקפי שמש. לפיכך, מלבד העובדה שעדויותיהם של מחמד ומג'די ניגפות מפני הודעותיהם התואמות של קורעאן ואסמר,

SHATSKY-007631



בתי המשפט
49

בבית המשפט המחוזי בירושלים

לפני כב׳ השופטים : צ׳ סגל - סגן נשיא, י׳ שפירא וי׳ נועם

הרי שהן אף סותרות האחת את רעותה, ועדותו של מחמד אף עומדת בסתירה להודעתו
במשטרה.


הסתירות והפרכות בעדויותיהם של מחמד ומג׳די, כמו גם ההתרשמות מאי-
אמינותן, מובילות למסקנה כי השניים ניסו לחלק את הנאשם מהמעורבות בתכנון הרצח,
באמצעות "מחיקת" עצם נוכחותו במפגש בבית הקפה ברמאללה. כפי שכבר צוין,
מחמד עשה זאת לאחר שכבר הורשע ברצח, ומג׳די נקט בדרך זו לאחר ששמע את
הצהרת התביעה כי לא יעשה שימוש לחובתו בעדותו. גרסתו של הנאשם, אשר ביקש
להסתמך על עדויותיהם של שני חבריו, נשמעה אף היא מופרכת ובלתי אמינה.


47.        אשר-על-כן, הוכחו תנאיו של סעיף 10א לפקודת הראיות, לקביעת ממצאים
לחובתו של הנאשם, על-יסוד אמרותיהם המפלילות של חמדי קורעאן ובאסל אסמר, הן
בחקירות השב"כ והן בהודעותיהם במשטרה. כעולה מסקירת הראיות ומהדיון בעניין
הערכתן – אמרותיו של כל עד תומכות באמרותיו של רעהו, הן לעניין "גרעין"
הגרסאות והן בפרטים "הפריפריאליים". לאמרות משקל פנימי רב והן משתלבות זו
בזו. באשר לחיזוק הראייתי הנדרש לאמרותיהם המפלילות של קורעאן ואסמר, כל אחת
בנפרד, לפי סעיף 10א(ד) לפקודת הראיות, הרי שחיזוק כאמור ניתן למצוא בתשתית
הראייתית בשפע ולמכביר. ראשית, כפי שנקבע בפסיקה, אמרות הטענות חיזוק ראייתי
יכולות להוות חיזוק האחת לרעותה (ראו והשוו: ד"נ 25/80 קטאשווילי  נ׳ מדינת
ישראל, פ"ד לה(2) 457). על-כן בענייננו, פרטי גרסתו של קורעאן, כפי שנמסרו
בחקירותיו, מהווים חיזוק לפרטי גרסתו של אסמר בחקירה, ולהיפך. תימוכין נוספים
לגרסאותיהם של קורעאן ואסמר בחקירה, ניתן למצוא בראיות המפלילות את הנאשם

SHATSKY-007632



בתי המשפט
**50**

<u>בבית המשפט המחוזי בירושלים</u>

**לפני כב׳ השופטים: צ׳ סגל - סגן נשיא, י׳ שפירא וי׳ נועם**

בשכירת רכב ששימש את הרוצחים, ובהשגת רישיון נהיגה ישראלי לתכלית זו, כפי
שיפורט בהרחבה בפרקים הבאים של הכרעת-הדין. כאמור, אסמר ציין באמרותיו, כי
בתום פגישת התדרוך בבית הקפה ברמאללה, מסר להם הנאשם רכב מסוג "קאיה"
בצבע אפור לצורך ביצוע הרצח – רכב אשר עמו, להערכת אסמר, הגיע הנאשם
לפגישה ואף נשכר על-ידו (ת/46, סעיף 20). כפי שיובהר בהמשך, הוכח – על-פי
הודעותיו של ג׳ורג קורט – כי מספר ימים לפני הרצח ביקש ממנו הנאשם את רישיון
הנהיגה הישראלי שלו לצורך ביצוע "פיגוע גדול"; וכן הוכח – על-פי הודעותיו של
לואי עודה – כי הנאשם שכר באמצעותו רכב מסוג קאיה, אשר שימש בהמשך כרכב
מילוט לרוצחים. חיזוק נוסף לגרסאותיהם המפלילות של קורעאן ואסמר, בדבר
השתתפותו של הנאשם בפגישת התדרוך בבית הקפה – כפי שיובהר
בהמשך הכרעת הדין – אף בהתנהגותו של הנאשם לאחר מעשה, עת חבר אל מבצעי
הרצח בדירת המסתור, ביקש מהם דו"ח על-פעילותם ונמלט יחד עמם לדירות מסתור
בשכם.

48. סיכומם של דברים: מהתשתית הראייתית האמורה, הנסמכת בעיקרה על
אמרותיהם בחקירה של קורעאן ואסמר, עולה כי בפגישת התדרוך בבית הקפה
ברמאללה, לקראת שילוח החוליה לביצוע הרצח, השתתפו חמישה: הנאשם, מג׳די,
קורעאן, אסמר ומחמד. בפגישה זו נטל הנאשם חלק פעיל, כבעל סמכות. הוא תדרך את
חברי החוליה לקראת הרצח, חיזק את ידיהם ורוחם, ואף נתן להם את ברכתו לקראת
צאתם לביצוע ההתנקשות. במהלך הפגישה לא הזדהה הנאשם בשמו, ואף הסווה את
זהותו על-ידי חבישת פאה. ואולם, זיהויו על-ידי אסמר וקורעאן לאחר הרצח, עת

SHATSKY-007633



בתי המשפט
51

פ"ח 7027/06

בבית המשפט המחוזי בירושלים

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

פגשוהו במהלך ההימלטות המשותפת ושהו עמו תקופה ממושכת בכלא, היה מבוסס ובעל משקל, הותיר רושם מהימן, ונתמך במכלול הראיות שפורטו בהרחבה לעיל.

שכירת הרכב

49. סוגיה עובדתית נוספת הנדרשת הכרעה הנה שאלת מעורבותו של הנאשם בשכירת מכונית ה"קאיה", ששימשה את חוליית הרצח כרכב מילוט. הנאשם לא הכחיש, כי אכן דאג לשכור את הרכב האמור עובר למועד הרצח, אך הסביר כי עשה זאת בהוראת אדם בשם באכיר, וזאת על-מנת להסיע "משפחות עצורים ושהידים", ללא כל קשר לתכנית הרצח, ומבלי שידע כי הרכב הועבר בהמשך למטרה זו. העובדה, כי רכב ה"קאיה" שימש כרכב מילוט בעת ביצוע הרצח, והיה נהוג בידי מחמד רימאווי, אינה שנויה במחלוקת בין הצדדים, וכך גם העובדה כי לואי עודה הוא זה שנרשם כשוכר הרכב במסמכי חברת ההשכרה (ת/103). הראיות הרלבנטיות להכרעה בסוגיה זו דנן הן הודעותיו במשטרה של לואי עודה, לפיהן שכר את הרכב עבור הנאשם; אמרותיו של ג'ורג' קורט בחקירות השב"כ ובמשטרה, שבהם ציין כי מסר לנאשם את רישיון הנהיגה שברשותו, לצורך שימוש בו במסגרת "פיגוע גדול"; הודעותיו של אסמר, לפיהן הרכב הובא לחבר החוליה על-ידי הנאשם; עדותו של מג'די רימאווי, שטען כי הוא היה זה שהביא את הרכב; ועדותו של הנאשם.

50. כאמור, במהלך עדותו של עודה בבית-המשפט, הוכרז הלה כעד עוין, ובכ"כ המאשימה ביקשה להעדיף את הודעותיו במשטרה על-פני עדותו. עודה לא חלק על עצם מסירת הגרסה המפלילה את הנאשם בהודעתו (ת/77), וכן על רישום תמצית הודעתו בכתב-ידו (ת/77א). הוא טען בעדותו, כי הדברים נאמרו על-ידו על-מנת שלא

SHATSKY-007634



בתי המשפט

52

<u>בבית המשפט המחוזי בירושלים</u>                                פ"ח 7027/06

לפני כב' השופטים: צ' סגל - סגן נשיא, י' שפירא וי' נועם

להפליל אדם בשם באפיר, עבורו שכר את הרכב, ועל-כן השתמש בשמו של הנאשם,
שכבר היה עצור בידי הרשות הפלסטינית. משכך, נותר לבחון האם עדיף להעדיף את
אמרותיו של עודה במשטרה על-פני עדותו. עדותו של עודה בבית-המשפט, לפיה
הפליל את הנאשם רק כדי לרצות את חוקריו, לא נשמעה אמינה כלל ועיקר. מנגד,
גרסתו שהועלתה בהודעתו במשטרה, הותירה רושם מהימן של גרסה אותנטית
המשקפת את שהתרחש בפועל, ובפרט כאשר זו השתלבה במכלול הראיות.

51.   גרסתו של עודה בחקירה המשטרתית נתמכת בהודעתו של ג'ורג' קורט, אשר
אף אותה ביקשה המאשימה להעדיף על-פני העדות בבית-המשפט. כאמור, בדבריו
שבהודעה זו במשטרה (ת/79), אשר קורט לא חלק על עצם אמירתם אלא על אמיתות
תוכנם, מסר קורט כי הנאשם ביקש ממנו, במהלך העצרת שהתקיימה עובר לרצח, את
רישיון הנהיגה שלו "לפיגוע גדול" (ת/79, עמ' 1 ש' 12). הודעותיהם של עודה וקורט
מאששות האחת את רעותה; וקורט בהודעתו מצביע על התכלית האמיתית לשמה ביקש
הנאשם לשכור את הרכב – ביצוע "פיגוע גדול" – הרצח. הודעתו של עודה במשטרה
אף זוכה לתימוכין, כאמור, באמרותיו של אסמר בחקירה, שבהן ציין, כי מכונית
ה"קאיה" הובאה על-ידי הנאשם בתום פגישת התדרוך בבית הקפה ברמאללה (ת/46,
סעיף 20).

52.   עדותו של מג'די, לפיה נטל את מפתחות הרכב מלואי עודה, במשרדי החזית
העממית, מבלי שדיווח על כך לאיש ומסרה לחוליה (עמ' 245), לא הותירה רושם
מהימן כלל ועיקר. עדותו ניגפת, כאמור, באמרותיהם בחקירה של אסמר ועודה; והיא
הייתה רווית תמיהות ופרכות באשר לאחריות לשכירת הרכב. מג'די העיד, כי לצורך

SHATSKY-007635