IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:02cv02280 (RJL) |
| THE SYRIAN ARAB REPUBLIC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 7, 2005 INTERLOCUTORY ORDER ON PERSONAL JURISDICTION IN LIGHT OF RECENT SUPREME COURT DECISION**

Defendants are mindful of the extensive paper that has been filed in this case, and are especially reluctant to add to the motions presently before the Court which have been fully briefed and submitted for review. Nonetheless, Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") must respectfully move for reconsideration of the Court's Minute Order dated February 7, 2005 denying Defendants' motion to dismiss for lack of personal jurisdiction because there has been an intervening change in the controlling law.[1] Just last month, in *Daimler AG v. Bauman*, No. 11-965, 2014 U.S. Lexis 644 (Jan. 14, 2014), the Supreme Court held that continuous and systematic contacts with the forum are not sufficient for the exercise of general jurisdiction absent a showing that the defendant is essentially "at home" in the forum, thereby rejecting the test used by this Court in denying Defendants' motion to dismiss. There can be no doubt that *Daimler* applies to all cases not yet final on direct review, including this one. *Harper v. Va. Dept. of Taxation,* 509 U.S. 86, 97 (1993).

---

[1] Within the last week, Defendants have filed similar motions in other cases as well. *E.g.*, *Sokolow v. Palestine Liberation Organization, et al.*, No. 04-cv-397-GBD/RLE (S.D.N.Y.) [DE 421]; *Klieman v. Palestinian Authority*, No. 04-cv-1173-JLF/JMF (D.D.C.) [DE 233].

1

The Court's exercise of general jurisdiction over the PA and PLO, based principally on what Plaintiffs claimed were the public relations activities of the PLO Mission office in Washington, D.C and/or the PLO Mission in New York, is in direct conflict with the test for general jurisdiction set forth by the Supreme Court in *Daimler*. Neither the PA nor the PLO is "at home" in the United States now, nor were they "at home" in the United States when the Complaint was filed. Thus, the Court cannot assert general jurisdiction over the Defendants. Moreover, the lawsuit does not arise out of any of the PA's or PLO's limited contacts with the United States on which the Court's finding of general jurisdiction was based. Therefore, the Court may not assert specific personal jurisdiction either. There is simply no way to reconcile the Court's assertion of jurisdiction over Defendants in this case with the Supreme Court's recent jurisprudence on personal jurisdiction. Accordingly, Defendants respectfully submit that the Court must reconsider its decision and dismiss the case for lack of personal jurisdiction.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

In this lawsuit, Plaintiffs ask the Court to decide responsibility for an act of violence occurring during the Israeli-Palestinian conflict known as the Second Intifada. Specifically, Plaintiffs seek to assign responsibility to the PA and PLO for a suicide bombing that occurred in February 2002 in the West Bank. The act was allegedly perpetrated by a young Palestinian man who set off a bomb in a Pizzeria within an Israeli Settlement in the West Bank; Plaintiffs seek to impute responsibility for the bombing to Defendants. Plaintiffs filed a Complaint in November 2002, alleging that a number of Defendants, including Syria, the PA and the PLO and were legally responsible for the bombing, but none of the PA or PLO's allegedly tortious acts were even asserted to have taken place in the United States.

The PA and PLO moved to dismiss for lack of personal jurisdiction in November 2003. DE 26 at 17-18. The Defendants argued, among other things, that the Court could not properly exercise general personal jurisdiction over them – *i.e.* jurisdiction for all purposes for a claim arising out of a bombing in the West Bank – because the Defendants' activities in the United States were limited. *Id.* The PLO operated offices in Washington, D.C. and New York during the relevant period, the office of the PLO Mission to the United States (now called the General Delegation of the PLO to the United States), and the office of the Permanent Observer Mission of Palestine to the United Nations, respectively. *Id.* Most of these contacts could not be counted for due process purposes, as they fell within the well-established "government contacts exception." *Id.* As Defendants noted, DE 26 at 17, the Second Circuit had squarely held that the U.N. activities of the PLO are exempt under this doctrine from the jurisdictional analysis. *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51-52 (2d Cir. 1991). Likewise, the "government contacts exception" exempts from the jurisdictional analysis the non-commercial, political activities of Washington, D.C. offices of corporations and trade associations and U.S. missions and embassies of foreign governments which set up offices in D.C. due to proximity to the federal government.[2] DE 26 at 17-18. Defendants further argued that even if the public relations activities of the Washington, D.C. office were considered jurisdictional contacts, those activities were insufficient to confer general personal jurisdiction. *Id.*

---

[2] *See Frontera Res. Azer. Corp. v. State Oil Co.*, 479 F. Supp. 2d 376, 387 n.4 (S.D.N.Y. 2007); *Fasolyak v. Cradle Society, Inc.*, No. 06-01126, 2007 U.S. Dist. Lexis 52041, at *29-34 (D.D.C. July 19, 2007); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76 (D.D.C. 2004); *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98, 105-106 (D.D.C. 2000); *Cellutech, Inc. v. Centennnial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994); *Dooley v. United Technologies*, 786 F. Supp. 65, 76 (D.D.C. 1992); *Nalls v. Rolls-Royce Ltd.*, 1980 U.S. App. Lexis 21294, at *5 (D.C. Cir. Jan. 17, 1980); *Fandel v. Arabian American Oil Co.*, 345 F. 2d 87 (D.C. Cir. 1965).

Plaintiffs opposed the motion, relying almost exclusively on arguments related to the general contacts in the PLO Mission Office in Washington D.C., the PLO Mission in New York, and related services provided by or purchased by those Missions. DE 32-1 at 41-55. Plaintiffs also relied extensively on a district court decision in *Ungar v. Palestinian Authority*, 153 F. Supp. 2d 76, 95 (D.R.I. 2001)), which approved of the exercise of general personal jurisdiction over the PA and PLO based on similar contacts. DE 32-1 at 12. On February 7, 2005, this Court denied the motion to dismiss by minute order.

## STANDARD OF REVIEW

The Court's denials of Defendants' previous jurisdictional motions are interlocutory orders. Under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The major grounds justifying reconsideration are "an intervening change in controlling law," the availability of "new evidence," or the need to correct a "clear error" or prevent manifest injustice. *National Trust for Historic Preservation v. Department of State*, 834 F. Supp. 453, 455 (D.D.C. 1993). Here, reconsideration is warranted because of an intervening change in the controlling law, as well as to correct what is a clear error that would create manifest injustice if the PA and PLO were required to continue to defend a case as to which there is no jurisdiction over them.

**ARGUMENT**

The Supreme Court's recent decision in *Daimler AG v. Bauman*, No. 11-965, 2014 U.S. Lexis 644 (Jan. 14, 2014), greatly limits, on due process grounds, the circumstances in which courts may exercise general personal jurisdiction over foreign (either out-of-state, or, in cases such as this involving nationwide contacts, out-of-country) defendants.  As discussed below, *Daimler* makes clear that this Court may not assert jurisdiction over the PA or PLO.

**I.    UNDER *DAIMLER*, GENERAL JURISDICTION MAY BE ASSERTED OVER ONLY THOSE DEFENDANTS WHO ARE "AT HOME" IN THE FORUM.**

In *Daimler AG v. Bauman*, No. 11-965, 2014 U.S. Lexis 644 (Jan. 14, 2014), the Supreme Court clarified earlier precedent regarding when continuous and systematic contacts of a foreign defendant are sufficient for the exercise of personal jurisdiction.  The Court began by emphasizing the important distinction between specific personal jurisdiction (which as the name suggests, is case-specific) and general, or "all purpose," personal jurisdiction.  Because general jurisdiction allows a court to assert jurisdiction over a defendant for claims unrelated to its activities in the forum, a substantially greater level of presence is required in the forum.  As the Court explained in *Daimler*:  "It is one thing to hold a corporation answerable for operations in the forum state, quite another to expose it to suit on claims having no connection whatever to the forum State."  *Id.* at *42 n.19 (internal citation omitted).

The canonical Supreme Court case on personal jurisdiction is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which established the "minimum contacts" and "continuous and systematic" standards.  As the Supreme Court emphasized in *Daimler*, *International Shoe* was a case involving the exercise of specific, not general, jurisdiction.  *Daimler*, 2014 U.S. Lexis 644, at *17-18.  In *International Shoe*, the in-state activities of the corporate defendant "ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on."  326 U.S. at

5

317. Accordingly, state long-arm statutes routinely require a nexus between the non-resident defendant's in-state activities, are limited to activities giving rise to the claims at issue in the lawsuit, and are always subject to constitutional limitations.  *See* D.C. Code 13-423(a)(1) (allowing assertion of personal jurisdiction if "claim for relief aris[es] from" the defendant's "transact[ion of] any business within the District of Columbia.")

"Since *International Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role." *Daimler*, 2014 U.S. Lexis 644, at *20 (internal quotation, citation and alteration omitted).  The Court's post-*International Shoe* opinions on general jurisdiction "are few," with the result that "general and specific jurisdiction have followed markedly different trajectories post-*International Shoe*." *Id.* at *23, *29.  "As this Court has increasingly trained on the relationship among the defendant, the forum, and the litigation, *i.e.*, specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scene." *Id.* at *29-30 (internal citation and quotation omitted).

General jurisdiction over non-resident defendants is rarely warranted.  As the Supreme Court explained in *Daimler*, *Perkins v. Benguet Consol. Mining Co*, 342 U.S. 437 (1952), remains the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." 2014 U.S. Lexis 644, at *23 (internal citation and quotation omitted).  There, the defendant mining company (Benguet) was incorporated under the laws of the Philippines, where it had operated gold and silver mines.  During World War II, when the Philippines was under Japanese occupation, the mining company ceased its operations in the Philippines.  Benguet's president moved to Ohio where he kept an office, maintained the company's files, and oversaw the company's activities.  *Perkins*, 342 U.S.

at 448; *see also Daimler*, 2014 U.S. Lexis 644, at *23. Indeed, "[a]ll of Benguet's activities were directed by the company's president from within Ohio." *Daimler*, 2014 U.S. Lexis 644 at *25 n.8. Because "Ohio was the corporation's principal, if temporary place of business," the Supreme Court held that Ohio courts could exercise general jurisdiction over Benguet on a claim brought by an Ohio resident that neither arose in Ohio nor was related to the Benguet's activities in Ohio. *Id.* at *24. Given the wartime circumstances, Ohio was treated as "a surrogate for the place of incorporation or head office." *Id.* at *25 n.8 (internal quotation and citation omitted). *See also id.* ("No fair reader of the full opinion in *Perkins* could conclude that the Court meant to convey anything other than that Ohio was the center of the corporation's wartime activities.").[3]

In *Daimler*, the Supreme Court also revisited and further clarified its decision in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) (decided June 27, 2011). In *Goodyear*, the Supreme Court addressed whether a foreign subsidiary of a U.S. parent corporation was amenable to suit in state court on claims unrelated to any activity of the subsidiary in the forum state. *Id.* at 2850. The Supreme Court explained that general jurisdiction (as opposed to specific jurisdiction) permits a court to hear any and all claims against a foreign entity only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Id.* at 2851 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The Supreme Court reversed the North Carolina court of appeals' finding that, because the defendant corporation's products had entered the state's stream of

---

[3] The Court also criticized two decisions from the pre-*International Shoe* era, both cited in *Perkins*, which had upheld the exercise of general jurisdiction based on the presence of a local office (*Barrow S.S. Co. v. Kane*, 170 U.S. 100 (1898), and *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) (Cardozo, J)). Specifically, the Court cautioned that "these cases, both decided in the era dominated by *Pennoyer*'s territorial thinking, should not attract heavy reliance today." *Daimler*, 2014 U.S. Lexis 644, at *41-42.

commerce, North Carolina could exercise general jurisdiction.  *Id*.  Such a limited connection did not "establish the 'continuous and systematic' affiliation necessary to empower North Carolina courts to entertain claims unrelated to the foreign corporation's contacts with the State."  *Id*.

In reversing, the Supreme Court observed that the North Carolina court's analysis "elided the essential difference between case-specific and all-purpose (general) jurisdiction." *Id.* at 2855.  Elaborating on the "at home" standard for the exercise of general jurisdiction, the Supreme Court explained: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54.  The *Goodyear* Court further identified place of incorporation and principal place of business as paradigm bases for the exercise of general jurisdiction over non-natural persons.  *Id.*

Having reviewed its earlier precedent in *Perkins* and *Goodyear*, the *Daimler* Court then held that there was no basis for the assertion of general personal jurisdiction over Daimler because it was not based in the forum (California). *Daimler*, 2014 U.S. Lexis 644, at *42-43.  In *Daimler*, the Ninth Circuit had held that a federal court sitting in California could assert general personal jurisdiction over Daimler AG (a German corporation) by imputing the California contacts of Daimler's U.S. subsidiary Mercedes-Benz USA, LLC ("MBUSA"), which was incorporated in Delaware and which had its principal place of business in New Jersey. MBUSA was not a defendant and Daimler failed to argue that MBUSA was not "at home" in California.  The Supreme Court was thus required to assume "for purposes of this decision only" that MBUSA qualifies as at home in California.  *See id.* at *32.  Turning to the Ninth Circuit's agency theory, under which the Ninth Circuit imputed MBUSA's contacts to Daimler, the Supreme Court rejected it as overbroad.  *See id.* at *36 n.15.  "The Ninth Circuit's agency theory

thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Id.* at \*36 (quoting *Goodyear*, 131 S. Ct. at 2856).  But the Supreme Court went on to hold that "[e]ven if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 37.

In reaching this conclusion, the Supreme Court specifically rejected the argument that general jurisdiction may be exercised "in every state in which a corporation engages in a substantial continuous, and systematic course of business." *Id.* at \*39 (internal citation and quotation omitted).  That formulation – the one that Plaintiffs urged this Court to adopt when they urged the "sufficiency" of Defendants' United States contacts as a basis for finding jurisdiction – is, according to the Supreme Court "unacceptably grasping." *Id.* at \*39-40.[4]  The "continuous and systematic" formulation describes instances in the exercise of *specific* jurisdiction is appropriate. *Id.* at \*40.  The test for general jurisdiction under *Goodyear*, the Supreme Court emphasized, "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations

---

[4] The Supreme Court also noted that the overly expansive view of personal jurisdiction represented by the "continuous and systematic" formulation posed risks to international comity when applied to assert personal jurisdiction over foreign defendants.  "Other nations do not share the uninhibited approach to personal jurisdiction advanced by the Court of Appeals in this case.  In the European Union, for example, a corporation may generally be sued in the nation in which it is 'domiciled,' a term defined to refer only to the location of the corporation's 'statutory seat,' 'central administration,' or 'principal place of business.' The Solicitor General informs us, in this regard, that 'foreign governments' objections to some domestic courts' expansive views of general jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments.'  Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands." *Daimler*, 2014 U.S. Lexis 644, at \*47-48.

9

with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Id.* at *40-41 (quoting *Goodyear*, 131 S. Ct. at 2851).

Turning to Daimler's and MBUSA's contacts with California, the Supreme Court found that "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there." *Id.* at *42.  Thus, even assuming MBUSA's California contacts could be imputed to Daimler, Daimler was not at home in California and therefore not subject to general personal jurisdiction there. *Id.* at *43.  In a footnote, the Supreme Court clarified that the general jurisdiction inquiry requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at *43 n.20.  As the Supreme Court explained, a "corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at *43-44 n.20.  Moreover, "[n]othing in *International Shoe* and its progeny suggest that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity." *Id.* (internal citation omitted).

## II. BECAUSE NEITHER THE PA NOR THE PLO IS "AT HOME" IN THE UNITED STATES, THE COURT MAY NOT EXERCISE GENERAL JURISDICTION OVER THEM.

In opposing the PA's and PLO's previous jurisdictional motions, Plaintiffs urged this Court to apply a test for general personal jurisdiction that the Supreme Court has now definitively rejected.  This Court presumably adopted that test in its order denying the Defendants' motion to dismiss.  When the correct ("at home") test is applied, it is evident that the Court may not exercise general jurisdiction over the Defendants.  Because the Court based its exercise of jurisdiction over the PA and PLO on general jurisdiction and because Plaintiffs'

1400927.1

claims do not arise out of the PA's or PLO's alleged jurisdictional contacts with the United States, there also is no basis for the assertion of specific jurisdiction.[5]

Plaintiffs urged this Court to find personal jurisdiction because "the PLO and PA have continuous, systematic and extensive activity and contacts within the United States . . . ." DE 32-1 at 44. This is precisely the test for general jurisdiction the Supreme Court rejected in *Daimler*. In *Daimler*, the Supreme Court specifically held that "continuous and systematic" contacts with the forum were not sufficient absent a showing that the defendant is "at home" in the forum. *Daimler*, 2014 U.S. Lexis 644, at *40-41.

Erroneously treating the quantum of contacts necessary for the exercise of specific jurisdiction as sufficient for the exercise of general jurisdiction, the Plaintiffs then asserted jurisdiction over the PA and PLO based on the public relations activities associated with the Washington D.C. office of the PLO Mission to the United States. DE 32-1 at 44-46.  This was clear error in light of *Daimler*.  Even if those public relations activities could be properly characterized as continuous and systematic, they provide an insufficient basis for the assertion of general jurisdiction.  The PA is the government of Palestine.  During the relevant period, its home was the West Bank and Gaza Strip, not the United States.  The PLO also is based in the West Bank, not the United States.  It operates embassies and missions all over the world.  As the

---

[5] Although the Plaintiffs did not reference the doctrine of specific jurisdiction or assert that their claims arose from any alleged PA or PLO activities in the United States, they did attempt to invoke an exception to the traditional due process/personal jurisdiction analysis that purportedly arises "in International Terrorism cases." DE 32-1 at 56-61.  The Plaintiffs' argument lacked merit at the time it was made, and was later foreclosed by *Mwani v. Bin Laden,* 417 F.3d 1, 11 (D.C. Cir. 2005), which applied a traditional due process/personal jurisdictional analysis to a case against Al Qaeda and Osama Bin-Laden, finding specific jurisdiction against those defendants for claims arising from the bombing of a US Embassy in Africa.  As the Court of Appeals explained, the exercise of specific jurisdiction was proper in such a case because those Defendants had specifically targeted their actions toward the United States, and the case arose out of those actions.  *Id.*  A similar analysis, applied here, shows exactly why specific jurisdiction cannot lie against the PA or PLO.  There is no basis for asserting that Plaintiffs' claims arise from any alleged PA or PLO activities in the United States, or from targeting United States territory abroad, and Plaintiffs have never so alleged.

11

Supreme Court explained in *Daimler*, a "corporation that operates in many places can scarcely be deemed at home in all of them." *See Daimler*, 2014 U.S. Lexis 644, at *43 n.20.  Unlike the mining company in *Perkins*, 342 U.S. 437, this forum is not the center of the PA's or PLO's activities.  *Id.* at *26.  Thus, even if the entire U.S. office of the PLO Mission to the United States and all its activities were treated as jurisdictional contacts, the government contacts exception notwithstanding, the PLO still would not be at home in the United States.

The main case relied on by Plaintiffs in opposing the Defendants' motion to dismiss, *Ungar v. Palestinian Authority*, 153 F. Supp. 2d 76, 95 (D.R.I. 2001), likewise relied on a view of general jurisdiction that cannot survive the Supreme Court's decision in *Daimler*.  In that case, the court found general jurisdiction over the PA and PLO based on solely an examination of the quantum of United States-related "contacts" used by this Court in finding general jurisdiction.

Because the Court asserted general jurisdiction over the PA and PLO based on a test recently rejected by the Supreme Court and because there is no evidence to support a finding that either the PA or PLO is "at home" in the United States, the Court may not consistent with due process exercise general personal jurisdiction over the Defendants.  There is simply no way to read *Daimler* and conclude that the PA and PLO can be sued in the United States for any cause of action arising anywhere in the world simply because the PLO has an office in Washington, D.C. and engages in public relations activities here.

**III.   THIS COURT'S ATTRIBUTION OF ACTIVITIES OF THE D.C. OFFICE OF THE PLO MISSION TO THE PALESTINIAN AUTHORITY ALSO CONFLICTS WITH *DAIMLER*.**

The Plaintiffs argued that the PA had continuous and systematic contacts with the United States by attributing to the PA the acts of their supposed "agents" in the United States – i.e., the activities of the Washington, D.C. office of the PLO Mission to the United States.  DE 32-1 at 41-48.  The attribution of contacts of the PLO to the PA through undefined agency theories also

12

must be reconsidered following *Daimler*. *See Daimler*, 2014 U.S. Lexis 644, *33-37 (strongly criticizing Ninth Circuit's attribution of contacts through expansive agency theories); *see also Daimler AG v. Bauman*, No. 11-965, Brief for the United States as Amicus Curiae Supporting Petitioner (taking the position that the Ninth Circuit's approach to attribution of contacts fails to satisfy due process).

Addressing the Ninth Circuit's agency theory in *Daimler*, the Supreme Court characterized it as "appear[ing] to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate." 2014 U.S. Lexis 644, at *35. The Court then concluded that such an interpretation "would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Id.* (quoting Goodyear, 131 S. Ct. at 2856). Here, the office of the PLO Mission to the United States was not even a U.S. subsidiary or affiliate of the PA. It was a mission operated by the PLO which received some funding from the PA and advocated for the PA's interests and Palestinian statehood. But, as *Daimler* instructs, even if the PLO Mission office could be characterized as a U.S. affiliate of the PLO and PA, the court may not assert personal jurisdiction over the PLO and PA based on the activities of the PLO Mission office.

1400927.1

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for reconsideration should be granted, their motion to dismiss for lack of jurisdiction also should be granted, and this action dismissed with prejudice.

          Respectfully submitted,

Dated: February 7, 2014   /s/Richard A. Hibey
          Richard A. Hibey (#74823)
          Mark J. Rochon (#376042)
          Charles F. B. McAleer, Jr. (#388681)
          Timothy P. O'Toole (#469800)
          MILLER & CHEVALIER CHARTERED
          655 15th St., N.W. Suite 900
          Washington D.C. 20005-6701
          (202) 626-5800 (telephone)
          (202)626-5801 (facsimile)
          Email: rhibey@milchev.com

          *Attorneys for Defendants The Palestinian*
          *Authority and The Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 7, 2014, a true and genuine copy of the foregoing was served via ECF on the following:

> Robert J. Tolchin
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
> rjt@tolchinlaw.com
>
> Norman Steiner
> 233 Broadway, Suite 900
> New York, NY 10279
> nsteineresq@gmail.com
>
> Abbe David Lowell
> Chadbourne & Parke LLP
> Suite 300
> 1200 New Hampshire Ave., N.W.,
> Washington, D.C. 20036
> adlowell@chadbourne.com
>
> *Attorneys for Plaintiffs*

/s/Richard A. Hibey
Richard A. Hibey

1400927.1