**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
SHABTAI SCOTT SHATSKY, *et al.*,    )
                                    )
                    Plaintiffs,     )
v.                                  )    Civil Action No. 1:02cv02280 (RJL)
                                    )
THE SYRIAN ARAB REPUBLIC, *et al.*, )
                                    )
                    Defendants.     )
_____)

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**
**FOR RECONSIDERATION OF THE COURT'S FEBRUARY 7, 2005**
**INTERLOCUTORY ORDER ON PERSONAL JURISDICTION**
**IN LIGHT OF RECENT SUPREME COURT DECISION**

Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") have demonstrated why they are not "at home" in the United States and why, as a result, the Court cannot exercise general personal jurisdiction over them.  DE 278.  Because none of Plaintiffs' arguments in opposition to Defendants' motion for reconsideration has merit, *see generally* DE 284, and given the overwhelming grounds for dismissing this case for lack of personal jurisdiction, Defendants' motion for reconsideration and their motion to dismiss for lack of jurisdiction should be granted, and this case should be dismissed with prejudice.

## I.      PLAINTIFFS DO NOT DISPUTE THAT THE PA AND THE PLO WERE NOT, AND ARE NOT, "AT HOME" IN THE UNITED STATES

Three months ago, the Supreme Court issued a game-changing decision limiting the exercise of general personal jurisdiction.  In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Court "announce[d] the new rule" that continuously and systematically doing business in a forum is no longer sufficient for the exercise of general personal jurisdiction.  *See* 134 S. Ct. at 770 (Sotomayor, J., concurring).  Under the new rule, a foreign organizational defendant can be subject to general personal jurisdiction only when it is deemed "essentially at home" in the forum — meaning only where it is incorporated or where it has its principal place of business. *Id.* at 760-62 and n.19.  In other words, *Daimler* is "the final death knell for" federal cases premised on general personal jurisdiction when the defendant is at home outside the forum. [1]

This is such a case.  *See* DE 278 at 5-13.  The PA and the PLO were decidedly not "at home" in the United States during the period of time relevant to this case.  Both Defendants were

---

[1] Ernesto J. Sanchez, *U.S. Supreme Court Restricts Personal Jurisdiction Over Foreign Corporations*, 82 U.S.L.W. 1588 (Apr. 22, 2014); *see also* Perry Cooper, *Daimler Ruling Could Mean Fewer Defendants Shoulder Greater Risk in Asbestos Cases*, 82 U.S.L.W. 1597 (Apr. 22, 2014) (concluding that under *Daimler*, plaintiffs can sue under a theory of general personal jurisdiction only where the defendant is headquartered or where the defendant has its principal place of business).

headquartered in and operated out of the Middle East.  This is true for the PA.  *See*, *e.g.*, DE 32-1 at 20, 24-25 (plaintiffs arguing that the PA operates in the West Bank and Gaza Strip); Dep. of Afif Safieh at 167:21-168:23 (PA had its headquarters in Gaza and in the West Bank) (attached as Ex. A).  And it is likewise true for the PLO.  *See*, *e.g.*, DE 284 at 25 (plaintiffs arguing that the PLO is "headquartered in Jerusalem");[2] Declaration of Amb. Maen Areikat ¶ 17 ("[T]he PLO's headquarters, including the administrative offices of its Executive Committee, have been located in the city of Ramallah in the West Bank") (attached as Ex. B); Dep. of Hasan Abu-Libdeh at 105:9-17 (PLO had its headquarters in Gaza and in the West Bank) (attached as Ex. C); Ex. A at 32:22-33:10 (PLO also had its headquarters in Amman, Jordan).[3]

Between 1998 and 2004, the PLO maintained and staffed over 75 embassies, missions and delegations in countries or organizations outside of the United States, which employed approximately 1,300 persons.  Ex. B ¶ 17.  During that time, the PLO employed thousands of persons worldwide.  *Id.* ¶ 18.  During the relevant period, however, the PLO's foreign mission office in Washington, D.C. employed no more than twelve staff members.  *See id.* at ¶ 19 ("At no single time during the period 1998 to 2004 did the PLO Delegation have more than approximately ten persons working at the PLO Delegation"); *Sokolow v. PLO*, No. 04-cv-397, 2011 U.S. Dist. LEXIS 36022, at *16 (S.D.N.Y. Mar. 30, 2011) (finding that the PLO's Washington, D.C. office had twelve employees during the relevant period of 1998 to 2004);

---

[2] All references to Plaintiffs' opposition memorandum [DE 284] reflect the page numbers at the bottom of the memorandum itself, not the ECF page numbers in the top margin.

[3] This is so regardless of whether the relevant time period is measured as of 2002, which is when Plaintiffs filed their complaint in this case, or within a reasonable time before.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d. Cir. 1996) ("The determination of what period is reasonable in the context of each case should be left to the court's discretion."); *compare Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416-19 (1984) (examining a foreign corporation's contact with Texas over a seven-year period), *with Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329-31 (9th Cir. 1984) (examining defendant's contacts over a three-year period).

*Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001) (finding that the

PLO's Delegation employed nine staff members).   Measured by the number of personnel, from

1998 to 2004 the PLO's embassies, missions, or delegations in Jordan, Egypt, Lebanon, France,

Chile, the People's Republic of China, Japan, South Africa, Germany, Russia and Brazil had

more personnel than in the U.S.  Ex. B ¶ 19.   The PA alone had approximately 100,000

employees.  Dep. of Mazen Jadallah at 175:22-176:10 (attached as Ex. D).  Thus, even

attributing the twelve employees of the PLO Mission to the United States to the PA, only 0.012%

of the PA's employees were in the United States during the relevant time.

      Moreover, Defendants' expenditures in the U.S. are a miniscule fraction of their overall

expenses.  In 2002, the PA had an overall budget of 6 billion, 392 million Shekels.  *Id.* at 175:5-

21.  Based on historic 2002 exchange rate data, this equals approximately $1,347,135,714 for the

year.[4]  Between 2000 and 2004, the budget for the PA's presidential office alone was normally

about $2 million *each month*.  Ex. D at 48:1-6.  In contrast, the Palestinian Authority's average

annual expenditure on the Washington D.C. office of the PLO Mission to the United States was

$496,939.71, or 0.037% of the 2002 total ($496,939.71 / $1,347,135,714).  *See* DE 84, Decl. of

David J. Strachman at ¶¶ 6-16, in *Sokolow v. PLO*, No. 04-cv-397 (S.D.N.Y. filed May 28, 2010)

("Strachman Decl.") (summarizing data from Foreign Agent Registration Act Reports for

relevant period on amounts the Washington office received from the PA); *see also Sokolow*,

2011 U.S. Dist. LEXIS 36022, at *21 (noting that the Washington office often expended

---

[4] *See* http://www.ozforex.com.au/forex-tools/historical-rate-tools/yearly-average-rates (calculating the
yearly average exchange rate for 2002 as 4.744882 Shekels per dollar).

$200,000 every six months, or $400,000 annually, on media and public relations activities, *i.e.*, the activities Plaintiffs assert are jurisdictionally significant). [5]

This level of activity in the U.S. is far less than the level of the defendant's forum-based activity in *Daimler*, which the Supreme Court found insufficient for the exercise of general jurisdiction in California. Daimler had multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. *Id.* at 752. Moreover, Daimler's U.S. distributor was the largest supplier of luxury vehicles to the California market, and its California sales "account[ed] for 2.4% of Daimler's worldwide sales." *Id.* Even this was not enough. *See* 134 S. Ct. at 760 ("Even if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there.").

Responding to Justice Sotomayor's comment in her concurring opinion that 2.4% of Daimler's sales was $4.6 billion, "a considerable sum by any measure," and that its California distributor had "multiple offices and facilities in California, including a regional headquarters," *id.* at 767, the majority clarified that

> the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them.

---

[5] Mr. Strachman filed this lawsuit and served as Plaintiffs' counsel for nine years (until July 2011). *See* DE 131. His declaration in *Sokolow* contains two errors, both of which relate to the PLO's FARA report for the six months ending September 30, 1998. The declaration states that the amount received from the PA's Ministry of Finance was "$226,936.674," *id.* ¶ 6, whereas the FARA report reflects that the amount received was "$226,936.64." DE 84-11, Ex. 2 to Strachman Declaration at ECF p. 11, in *Sokolow v. PLO*, No. 04-cv-397 (S.D.N.Y. filed on May 28, 2010) ("Strachman Exhibit 2"). The declaration also states that the Washington office "spent $141,498.78," Strachman Decl. ¶ 6, whereas the FARA report reflects that $232,728.78 was spent. Strachman Exhibit 2 at ECF p. 11.

*Id.* at 762 n.20 (internal citation omitted); *see also* Brief for the United States as Amicus Curiae at 12, *Daimler AG v. Bauman*, No. 11-965 at 12 (U.S. July 5, 2013) (rejecting the exercise of general personal jurisdiction when the defendant's contacts with the forum are modest compared to its contacts with the forum where it is "paradigmatically 'at home.'") (attached as Ex. E); *id.* at 17 (arguing that the "at home" inquiry "weighs against recognizing general jurisdiction where, as here, the defendant's forum contacts are dwarfed (in both qualitative and quantitative senses) by its contacts with a forum in which it is paradigmatically 'at home.'").

Thus, under *Daimler*, Defendants may not be sued here.  Even if Defendants' in-forum contacts were more significant in and of themselves (which they are not), this Court still lacks general personal jurisdiction, because *Daimler* not only requires continuous and systematic contacts with the forum — but also the additional showing that those contacts make the defendant more at home in the forum than elsewhere in the world.  It cannot be debated that the vast majority of Defendants' activities are in the West Bank (where both Defendants were headquartered), not the United States.  *See* 134 S. Ct. at 762 (asserting that it should not be difficult "to determine where a corporation is at home").  Under *Daimler*, that makes the West Bank, not the United States, their home for general jurisdiction purposes.  Moreover, when the limited activities of the PLO's U.S. Delegation are compared to the PLO's combined non-U.S. activities (*i.e.*, the PLO's activities in the West Bank and every country outside of the United States), it cannot possibly be said (let alone proven by admissible evidence sufficient to meet Plaintiffs' burden) that the PLO was or is "at home" in the United States within the meaning of *Daimler*.[6]

---

[6] At a recent hearing in *Sokolow v. PLO*, No. 04-cv-397 (S.D.N.Y.), a federal court in New York denied the Defendants' motion to reconsider that court's previous ruling finding general personal jurisdiction under the old "continuous and systematic" test.  Expressing a reluctance to be the first court to dismiss Defendants under *Daimler*, the court expressed its inability, on the record before it in that case, to

1424490.2

Simply put, Defendants' U.S. contacts do not approach the insufficient level of contacts Daimler had with California, in either absolute or relative terms.  Daimler had three facilities in California; the PLO had only one that counts as a potential jurisdictional contact (the Washington office).  Daimler's California sales accounted for 2.4% of Daimler's worldwide sales; the Washington office of the PLO accounted for only 0.037% of the PA's total expenditures.  It is nonsensical to treat Defendants as "at home" in the United States, when they had, at most, 12 employees here during the relevant period.  If having a dozen employees and a Chief Representative who speaks to the media about the Palestinian cause makes Defendants at home in a forum, then they would be at home in each of the dozens of foreign states in which they have a mission.  This is clearly not what *Daimler* contemplated.

Nor do the facts alleged by Plaintiffs make this the "exceptional case" for departing from the general rule established in *Daimler.  See Daimler*, 134 S. Ct. at 755, 761 n.19.  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), is the "textbook" example of the "exceptional case" in which general personal jurisdiction could be asserted over a foreign defendant whose place of incorporation and principal place of business is outside the forum.  134 S. Ct. at 761 n.19.  In *Perkins*, a Philippine company moved its business to Ohio during World War II.  The Court "held that the Ohio courts could exercise general jurisdiction over [the defendant] without offending due process.  That was so…because Ohio was the corporation's principal, if temporary, place of business." *Id.* at 756 (internal citation and quotation omitted).   At oral argument in *Daimler*, Justice Ginsburg, who wrote the *Daimler* opinion, characterized *Perkins* as

---

determine if the PA or PLO was at home anywhere else in the world other than the United States, including strangely even the West Bank. Tr. at 30:9-12, 63:4-7, 69:2-9 (attached as Ex. F).  The court's ruling reflects a misapprehension of *Daimler* and is not supported by the factual record in that case or in this one.  Indeed, in opposing Defendants' motion for reconsideration, the *Sokolow* plaintiffs did not even argue that the PA and PLO were "at home" in the U.S. under *Daimler*.  Despite its ruling, the *Sokolow* court expressed a willingness to revisit its denial if presented with additional facts or decisions from other courts interpreting *Daimler.  Id*. at 63:8-13, 69:10-13.

1424490.2

follows:  "To the extent the company was operating at all, it was in Ohio.  It was not able to operate in what otherwise would have been its home base.  So everything that the corporation was doing occurred in Ohio."  Tr. of *Daimler* Oral Argument at 32 (Oct. 15, 2013) (attached as Ex. G).  The presence of one PLO mission office in the U.S. does not give rise to general personal jurisdiction.  Indeed, the Supreme Court expressly rejected the exercise of general jurisdiction based on the "presence of a local office." *Daimler,* 134 S. Ct. at 761 n.18.[7]

Strikingly, in their 45-page opposition memorandum, Plaintiffs never dispute that Defendants were not "at home" in the United States.  Unable to meet the *Daimler* test, Plaintiffs instead ask the Court to continue to assert personal jurisdiction over a lawsuit that never should have been brought here by arguing that Defendants have not met the standard for reconsideration because, they claim, *Daimler* does not change anything; that Defendants have waived their personal jurisdiction defense; or that Defendants are not entitled to *Daimler*'s due process protections.  Alternatively, and for the first time in the decade-plus that this case has been pending, Plaintiffs argue that the Court should exercise *specific* personal jurisdiction over Defendants.  Defendants address each of those arguments in turn.

## II.   *DAIMLER* CONSTITUTES AN INTERVENING CHANGE IN CONTROLLING LAW

Plaintiffs object to Defendants' motion for reconsideration, asserting that "the principle in *Daimler* on which Defendants rely was previously stated more than two years ago" in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).  DE 284 at 12-13.  As an initial

---

[7] *Daimler* warns of the "risks to international comity" posed by an expansive view of general jurisdiction, noting that "foreign governments' objections to some domestic courts' expansive views of general jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments."  134 S. Ct. at 763.  As the Supreme Court explained, "[o]ther nations do not share the uninhibited approach to personal jurisdiction advanced by the Court of Appeals in this case."  *Id.*  The Court highlighted E.U. law, under which "a corporation may generally be sued in the nation in which it is 'domiciled,' a term defined to refer only to the location of the corporation's 'statutory seat,' 'central administration,' or 'principal place of business.'" *Id.* at 763 (citation omitted).

1424490.2

matter, there are no strict timing rules for filing motions to reconsider interlocutory orders based on a change in controlling law.  Under Rule 54(b), the district court has discretion to decide such a motion "at any time before the entry of a judgment."  *Robinson-Reeder v. Am. Council on Educ.*, 571 F.3d 1333, 1337 (D.C. Cir. 2009).

The Supreme Court, moreover, does not issue decisions just to repeat itself.  *Daimler* "announce[d] [a] new rule" for what it means to be "at home" in a forum, resolving an issue that was left undecided by *Goodyear* — whether a defendant is "at home" in every forum in which it has "the kind of continuous and substantial in-state presence that a parallel local company would have."  *See Daimler*, 134 S. Ct. at 769 n.8 (Sotomayor, J., concurring).[8]  *Daimler* made clear for the first time that a defendant generally is "at home" only in one forum.  *See Shovah v. Roman Catholic Diocese of Albany, N.Y., Inc. (In re Roman Catholic Diocese of Albany, New York, Inc.)*, No. 13-4736, 2014 U.S. App. LEXIS 2403 (2d Cir. Feb. 7, 2014) (granting defendant's post-*Daimler* petition for a writ of mandamus and directing the district court to dismiss for lack of personal jurisdiction where defendant's principal place of business and state of incorporation were both outside the forum, and where no exceptional circumstances existed to otherwise exercise general jurisdiction under *Perkins*).  It is therefore *Daimler*, not *Goodyear*, that constitutes the change in the controlling law warranting the Court's reconsideration of personal jurisdiction in this case.

*Goodyear,* though an important decision, was not "controlling" of the issue here, because it did not involve a defendant with a continuing physical presence in the forum, with an office and employees.  Instead, *Goodyear* rejected the assertion of general jurisdiction where the

---

[8] *See also* Ex. E at 14 ("Because the foreign corporate defendants in *Goodyear* had only 'attenuated connections to the [forum] State' that 'f[e]ll far short' of the standard for exercising general jurisdiction, this Court did not have occasion there to explain what kinds of contacts would establish that a defendant is 'essentially at home' in a particular forum.").

1424490.2

defendant's only contact with the forum arises as a result of some of its products reaching the forum through a stream of commerce.  Unlike here, the *Goodyear* plaintiffs did not allege the defendants had any continuous and systematic physical presence in the forum.

In *Goodyear*, parents of two North Carolina boys who were killed in a bus accident in France brought suit in North Carolina against three foreign subsidiaries of Goodyear, alleging that the defendants' defective tires caused the accident.  The subsidiaries manufactured tires primarily for sale in European and Asian markets, but a small percentage of their tires were distributed within North Carolina by other affiliates.   131 S. Ct. at 2851-52.  The parent company, also a defendant, was an Ohio corporation. The trial court asserted general personal jurisdiction under the "stream of commerce" theory, and the North Carolina Court of Appeals affirmed.  *See id.* at 2851.  Reversing, the Supreme Court held that the sporadic sales of the foreign subsidiaries' tires in North Carolina through intermediaries were an insufficient basis for the exercise of general jurisdiction.   In assessing whether the foreign subsidiaries' contacts with North Carolina could give rise to general personal jurisdiction, the Court found:

> In contrast to the parent company, Goodyear USA, which does not contest the North Carolina courts' personal jurisdiction over it, petitioners are not registered to do business in North Carolina. They have no place of business, employees, or bank accounts in North Carolina.  They do not design, manufacture, or advertise their products in North Carolina.

*Id.* at 2852.  *Goodyear* did not announce that it was establishing a new standard for the exercise of general jurisdiction and instead simply cited the 1945 *International Shoe* case for the "essentially at home" standard.  *Id.* at 2851.  If *Goodyear* had held that the North Carolina court could not exercise personal jurisdiction over Goodyear USA, the Ohio corporation, which did business in North Carolina, Plaintiffs might have a point that Defendants should have filed a motion for reconsideration sooner.  But that is not what happened.  The Court and litigants took

1424490.2

it as a given that Goodyear USA, even though an Ohio corporation, was "at home" in North

Carolina.  By emphasizing that the foreign subsidiaries had no physical presence in North

Carolina, *Goodyear*, if anything, implied that general jurisdiction would have been warranted if

the foreign subsidiaries had a place of business and employees in North Carolina.[9]

Contrary to Plaintiffs' claim that *Daimler* was redundant, courts in this jurisdiction did

not interpret *Goodyear* as establishing a rule that a continuous physical presence in the forum is

not sufficient for general jurisdiction unless the forum is the defendant's primary base of

operation.  *See, e.g., Pension Benefit Guar. Corp. v. Asahi Tec Corp.*, No. 10-1936, 2013 U.S.

Dist. LEXIS 143733 (D.D.C. Oct. 4, 2013) (asserting general personal jurisdiction over a

Japanese corporation with its principal place of business in Japan); *United States ex rel. Barko v.

Halliburton Co.,* 952 F. Supp. 2d 108, 115 (D.D.C. 2013) (rejecting the defendant's *Goodyear*

argument, and asserting general personal jurisdiction over defendant, which is "located in Jordan

and does business primarily in the Middle East").

Indeed, in decisions from across the country, courts continued to exercise general

jurisdiction over defendants who did not meet *Daimler*'s at-home test, because they did not view

*Goodyear* as a significant change in the law.  *See, e.g., Ruben v. United States*, 918 F. Supp. 2d

358 (E.D. Pa. 2013) (finding general jurisdiction over an architecture firm that had several high-

profile projects in Pennsylvania, but had no office, bank accounts, or property in Pennsylvania

and derived only 1% of its U.S. revenue there); *Hess v. Bumbo Int'l Trust*, 954 F. Supp. 2d 590,

595 (S.D. Tex. 2013) (asserting personal jurisdiction over a non-resident corporation, finding

"the fact that a quarter (and at certain points all) of the Bumbo Baby Seats sold in the United

---

[9] In her concurring opinion in *Daimler*, Justice Sotomayor explained *Goodyear* as follows:  "We used the phrase 'at home' to signify that in order for an out-of-state defendant to be subject to general jurisdiction, its continuous and substantial contacts with a forum State must be akin to those of a local enterprise that actually is 'at home' in the State."  *Daimler*, 134 S. Ct. at 769.

1424490.2

States were distributed from Texas distinguishes this case from *Goodyear*"); *Beijing Auto. Indus. Imp. & Exp. Corp. v. Indian Indus., Inc.*, No. 13-4279,  2013 U.S. Dist. LEXIS 115104, at *4-5 (C.D. Cal. Aug. 7, 2013) (interpreting *Goodyear* as requiring only contacts that approximate physical presence in the forum); *Neeley v. Wolters Kluwer Health, Inc.*, No. 11-cv-325, 2013 U.S. Dist. LEXIS 106191, at *17-18 (E.D. Mo. July 30, 2013) (interpreting *Goodyear* to allow multiple forums to exercise general jurisdiction); *J.B. v. Abbott Labs., Inc.*, No. 12-cv-385, 2013 U.S. Dist. LEXIS 15768, at *9-11 (N.D. Ill. Feb. 6, 2013) (rejecting non-resident defendant's reliance on *Goodyear*, concluding that the "the Supreme Court did not replace or redefine the well-established standard for establishing general jurisdiction").[10]

Plaintiffs also note that the PA cited *Goodyear* in a motion to dismiss filed in a 2013 case in Virginia (*Livnat*) and that the PA and the PLO likewise cited *Goodyear* in a case before the Supreme Court (*Mohamad*).  DE 284 at 13-14.  Although the PA referenced *Goodyear*'s "at home" test in those proceedings, it did not make the argument it advances in the instant motion for reconsideration — because that argument did not become available until *Daimler*.  In other words, Defendants did not argue that *Livnat* or *Mohamad* should be summarily dismissed, regardless of the allegations of continuous and systematic contacts with the forum, on the ground that Defendants' only home was in the West Bank, not the United States.

In sum, the Supreme Court does not take cases simply to repeat itself.  *Daimler* — not *Goodyear* — squarely addressed the personal jurisdiction issue presented in this case. Defendants' motion therefore meets the standard for reconsideration.

---

[10] *See also Ashbury Int'l Group, Inc. v. Cadex Defence, Inc.*, No. 11-cv-79, 2012 U.S. Dist. LEXIS 134878, at *2, *16-17 (W.D. Va. Sept. 20, 2012) (exercising general personal jurisdiction over a Canadian corporation that was not registered to do business in Virginia; had no employees, business records, or bank accounts in Virginia; did not pay taxes in Virginia; and had no Virginia mailing address, telephone number, fax number, or message service);  *McFadden v. Fuyao N. Am., Inc.*, No. 10-cv-14457, 2012 U.S. Dist. LEXIS 51564 (E.D. Mich. Apr. 12, 2012) (finding general jurisdiction over a Chinese manufacturer that had contracted with a wholesale customer in the forum over a number of years).

### III.    DEFENDANTS DID NOT WAIVE THEIR *DAIMLER* DEFENSE

Plaintiffs also claim that Defendants waived their *Daimler* defense even though Defendants repeatedly raised the lack of personal jurisdiction in their motion to dismiss and their Answer.  DE 284 at 15-16.  In addition, Plaintiffs argue that Defendants waived the defense by participating in discovery and motions practice, and by moving for summary judgment.  *Id.* at 18-21.  None of this conduct precludes the Court's consideration of the *Daimler* defense.

First and foremost, Defendants have again and again raised their personal jurisdiction defense, as Plaintiffs themselves repeatedly admit.  *See* DE 284 at 3 (acknowledging that in 2003 Defendants moved under Rule 12(b)(2) to dismiss based on lack of personal jurisdiction); *id.* at 6 (stating that in 2007 Defendants again raised their personal jurisdiction defense in their opposition to plaintiffs' motion for default judgment); *id.* at 10 (admitting that the third affirmative defense raised in Defendants' answer to the complaint states: "This Court lacks personal jurisdiction over the Defendants with respect to this action.").  Plaintiffs claim, however, that Defendants didn't "invest" sufficient "effort" in doing so.  *Id.* at 16.  Failing to satisfy Plaintiffs' arbitrary standards does not constitute waiver.  Defendants previously asserted a pre-*Daimler* defense of lack of personal jurisdiction; that defense, having been decided by the Court, was not waived and remained in the case, including for purposes of a later appeal.  The prior adjudication of the issue certainly does not result in any bar to the assertion of the *Daimler*-related defense in the context of the pending motion for reconsideration.

Generally speaking, because Defendants filed a timely Rule 12(b)(2) motion, they did not waive their personal jurisdiction defense by participating in discovery and motions practice.  *See, e.g.*, *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("There is no merit to the plaintiffs' argument that [Defendant] waived its defense to personal jurisdiction by participating in the litigation on the merits, since it did so at the direction of the district judge

1424490.2

after having raised the defense in a timely fashion.") (internal citation omitted).[11]   More specifically, Defendants could not have waived the *Daimler* defense because, until *Daimler* was decided in January 2014, the personal jurisdiction defense asserted by Defendants in the instant motion was simply not available.  As the Supreme Court has put it, "the mere failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground."  *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 143 (1967); *see also Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) ("[T]he doctrine of waiver demands conscientiousness, not clairvoyance, from parties.").[12]

Plaintiffs rely on *e360 Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007), which is readily distinguishable.  In *e360 Insight*, the defendant "understood the defenses available to it, consistently asserted those defenses in the early stages of those proceedings and then *affirmatively elected to abandon those defenses* before the district court."  *Id.* at 600 (emphasis added).  The defendant did so by "withdr[awing] those defenses from consideration by the court," and expressly confirming that "it wished to participate in the defense no further."  *Id.* (internal quotation marks omitted).  As explained above, the *Daimler* defense was not available to the Defendants in this case until mere months ago.  Regardless, Defendants abandoned nothing.  They certainly have not withdrawn their defense, nor have they ever indicated that they "wished to participate in the defense no further."

---

[11] Plaintiffs claim that "Defendants' motion to dismiss (DE 26) did not affirmatively ask the Court to decide personal jurisdiction, but rather to defer jurisdictional discovery."  DE 284 at 20.  This is false. *See* DE 26 at 16-18 (arguing, in part, that "[i]f defendants are denied treatment as a foreign state, personal jurisdiction is lacking because defendants do not have the minimum contacts with the United States required by the Due Process Clause," and the PLO's UN activities should be excluded from the court's analysis, as should the PLO's Washington mission office pursuant to the government contacts exception).

[12] Plaintiffs also assert that Defendants were required to move for clarification of the Court's order denying their motion to dismiss.  DE 284 at 17.  Plaintiffs cite no authority for this claim.

1424490.2

Plaintiffs' reliance on *Rates Technology, Inc. v. Nortel Networks Corp.*, 399 F.3d 1302

(Fed. Cir. 2005), and *Paine Webber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d

453 (5th Cir. 2001) is simply puzzling.  In *Rates Technology*, the defendant "did not dally, but

moved to dismiss on jurisdictional grounds at its earliest opportunity."  399 F.3d at 1309.  That is

precisely what Defendants have done here.  And, as Plaintiffs note in their memorandum, in

*Paine Webber* the court stated the "well-established rule that parties who choose to litigate

actively on the merits thereby surrender any jurisdictional objections."  260 F.3d at 459.  It then

concluded: "But that rule has no application to the facts of this case."  For all of the reasons set

forth above, it has no application to this case either.  Unlike the cases on which Plaintiffs rely,

Defendants promptly moved for reconsideration within a month of the Supreme Court ruling that

made it clear that Defendants are entitled to prevail.[13]

Plaintiffs also assert that "[i]t is particularly appropriate to find a waiver of a personal

jurisdiction defense when a defendant moves for summary judgment without including a

challenge to personal jurisdiction in their motion."  DE 284 at 20-21.  But that broad statement is

not supported by the case law.  In fact, a defendant can appropriately move for summary

judgment on personal jurisdiction grounds even after discovery has closed.  *See McFarlane v.*

*Esquire Magazine*, 74 F.3d 1296, 1299 (D.C. Cir. 1996) (reviewing district court's post-

---

[13] Plaintiffs' other citations, *see* DE 284 at 18-20, fare no better.  *See, e.g., Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835 (10th Cir. 2000) (finding waiver of personal jurisdiction where defendant removed case to federal court then filed a cross-claim against the plaintiff seeking affirmative relief); *Citizens Comm. Fed. v. Silver, Freedman & Taff, L.L.P.*, No. 12-cv-648, 2014 WL 345261, at *3-4 (W.D. Wis. Jan. 30, 2014) (finding waiver of personal jurisdiction when the defendant did not raise the defense in a 12(b)(2) motion and waited until a year after filing its answer to assert it in its motion for summary judgment); *Tuckerbrook Alternative Invs., LP v. Banerjee*, 754 F. Supp. 2d 177, 183 (D. Mass. 2010) (finding waiver of personal jurisdiction where defendant brought his own lawsuit against the plaintiff, arising from the same nucleus of operative facts, in the same federal district court); *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985) (finding waiver of personal jurisdiction where defendant first asserted its personal jurisdiction defense after extensively litigating the case on the merits).

1424490.2

discovery grant of defendants' motion for summary judgment in which the district court "held that it had no personal jurisdiction over Unger and that no reasonable jury could have found, by clear and convincing evidence, that Esquire had published the piece with 'actual malice'").

Indeed, a defendant can even assert a defense of lack of personal jurisdiction and a counterclaim at the same time without waiving the personal jurisdiction defense. *Chase v. Pan-Pac. Broad., Inc.*, 750 F.2d 131 (D.C. Cir. 1984). If asserting a counterclaim, which seeks affirmative relief from the court, does not waive a defendant's personal jurisdiction defense, then the filing of a motion for summary judgment, which seeks only an order terminating Plaintiffs' claim, does not either. "Pursuit of inconsistent defenses prior to trial is permissible," *Holzsager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir. 1981), and the fact that Defendants have previously moved for summary judgment on the merits does now not preclude them from seeking judgment on the pleadings for lack of personal jurisdiction.

The cases cited by Plaintiffs do not compel a different result here. For example, in *Burton*, the only published decision cited by Plaintiffs on this point, the defendants did not raise the defense of insufficient process in a Rule 12(b) motion and they did not do so at summary judgment either. 106 F.R.D. at 482. The court held that the defendants' "failure to include objections to service of process in their Rule 56 motion is another example of their failure to take advantage of an opportunity to contest service of process." *Id*. Here, Defendants have not failed to contest personal jurisdiction. The other case cited by Plaintiffs, *Cent. States, Se. & Sw. Areas Pension Fund v. Wiseway Motor Frieght, Inc.*, No. 99-4202, 2000 WL 1409825, at *4 n.3 (N.D. Ill. Sept. 26, 2000) is an unpublished decision from outside this circuit that does not call into question the holdings of the D.C Circuit cited above. The bottom line is that neither of Plaintiffs' authorities compels the conclusion that Defendants abandoned the *Daimler* defense by

1424490.2

moving for summary judgment.  Indeed, there is no way that Defendants could have done so as *Daimler* was not decided until five months after the Motion for Summary Judgment was filed. DE 247.

## IV.   PLAINTIFFS FAIL IN THEIR ATTEMPTS TO DISTINGUISH *DAIMLER*

### A.   The PA and PLO Have Due Process Rights

Plaintiffs contend that *Daimler* is "inapplicable" because Defendants "are foreign governmental and political bodies" that "do not have due process rights" because they exist "outside the structure of the Union."  DE 284 at 22, 24.   Plaintiffs are wrong.  It is well established that foreign defendants enjoy constitutional due process rights even if they, as Plaintiffs assert, stand "outside the structure of the Union."  Many of the Supreme Court's recent personal jurisdiction cases have involved foreign defendants.  "In fact, the entirely foreign nature of the defendants in *Goodyear*, *Nicastro*, *Asahi*, and *Helicopteros* is what enabled them to prevail."  *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012).  Indeed, every federal court that has analyzed whether it can assert personal jurisdiction over the PA and PLO has applied a traditional due process test.[14]

For the most part, Plaintiffs cite cases involving either foreign states or domestic municipalities — none of which support their position.  As to the former, Plaintiffs rely primarily on *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002) (DE 284 at 23), but *Price*'s holding does not extend to the PA or PLO.  As the D.C. Circuit explained,

> foreign nations are the juridical equals of the government that seeks to assert jurisdiction over them. . . . If they believe that they have suffered harm by virtue of being haled into court in the

---

[14] *See Sokolow v. PLO*, No. 04-cv-397, 2011 U.S. Dist. LEXIS 36022, at *8-9 (S.D.N.Y. Mar. 30, 2011); *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 179 (D.D.C. 2004); *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001); *United States v. PLO*, 695 F. Supp. 1456, 1461 (S.D.N.Y. 1988).

> United States, foreign states have available to them a panoply of
> mechanisms in the international arena through which to seek
> vindication or redress. These mechanisms, not the Constitution, set
> the terms by which sovereigns relate to one another.

294 F.3d at 98 (internal citation omitted).  If the PA and PLO were foreign states and "juridical

equals" of the United States, they would be entitled to sovereign immunity.  Plaintiffs cannot

have it both ways.[15]

The latter category of cases involves domestic municipalities that brought suit, as

plaintiffs, to vindicate constitutional rights — and they are likewise inapposite.  DE 284 at 24,

26-27.  A longstanding rule holds that States are not persons who can bring suit to vindicate Fifth

Amendment rights.  *South Carolina v. Katzenbach*, 383 U.S. 301, 323, 324 (1966).  In *City of

Sault Ste. Marie v. Andrus*, 532 F. Supp. 157, 167 (D.D.C. 1980), the court held that because

states and municipalities "are treated the same for virtually all legal purposes," and the

municipality "performs the same function as the state," and "is a creature of the state,"

municipalities also cannot bring suit to enforce constitutional due process rights.[16]  None of the

cases cited by Plaintiffs address whether *foreign* governmental entities, which do not enjoy the

protections of the Foreign Sovereign Immunities Act, may be deprived of due process rights

when haled into U.S. courts.  To the contrary, courts have uniformly held that personal

jurisdiction may be exercised over the PA and PLO only if consistent with due process.

Plaintiffs otherwise rely on *Palestine Information Office v. Shultz*, 674 F. Supp. 910, 916-

17 (D.D.C. 1987), *aff'd*, 853 F.2d 932 (D.C. Cir. 1988), and *Mendelsohn v. Meese*, 695 F. Supp.

1474, 1480-81 (S.D.N.Y. 1988).  DE 284 at 26.  Plaintiffs cite the *PIO* case for the proposition

---

[15] For the same reason, Plaintiffs' reliance on *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.
Supp. 2d 54 (D.D.C. 2003), and *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan
Rep.*, 582 F.3d 393 (2d Cir. 2009), is likewise misplaced.  Both cases similarly involve foreign states.

[16] Similarly, U.S. territories, which are treated as States for many purposes, cannot bring suit to vindicate
due process rights.  *See* the Puerto Rico and Virgin Islands case cited by Plaintiffs (DE 284 at 24, 26-27).

1424490.2

that that "[t]he PLO does not fall within the protections of the Due Process Clause.'"  DE 284 at

26.  The *PIO* decision, however, involved a lawsuit brought by the Palestine Information Office

("PIO"), not the PLO, challenging the State Department's closure of its office under the authority

of the Foreign Missions Act.  The case does not, therefore, address any due process limits on

bringing the PLO or PA to U.S. courts as defendants.  Moreover, on appeal, the D.C. Circuit

characterized the district court's conclusion that the "PIO's rights were not violated because 'a

"foreign mission" qua "foreign mission"' cannot have any due process rights" as "circular,"  853

F.2d at 942, and instead held that the PIO had received adequate due process.  *Id.*  Thus, the *PIO*

case supports Defendants', not Plaintiffs', position.  Meanwhile, *Mendelsohn* assumed that the

PLO, like a foreign sovereign, is not subject to suit in U.S. courts and therefore "lies outside the

constitutional system."  695 F. Supp. at 1481.  More recent decisions involving these Defendants

consistently have afforded them due process rights when deciding whether to exercise personal

jurisdiction.

B.    The Executive Has Not Abrogated Defendants' Constitutional Rights

Plaintiffs next spend a great deal of time describing certain aspects of the legislative

history of the Anti-Terrorism Act ("ATA"), in support of their claim that the Executive has

expressed its "intent" that Defendants face liability.  DE 284 at 27-29.  Regardless of the

Executive's intent, neither the Executive nor Congress — even if they had the authority to do so

— has actually abrogated the constitutional protections available to the PA or the PLO.

C.    The *Daimler* Due Process Test for Personal Jurisdiction Applies to ATA Cases

In addition, Plaintiffs argue that because of the "context," defendants in civil ATA cases

should enjoy fewer due process rights than other defendants.  DE 284 at 30-32.  Plaintiffs cite no

cases supporting their position.  And, of course, that is not the rule.  Courts in this jurisdiction

have applied the traditional due process test to ATA cases.  *Estate of Klieman v. Palestinian*

1424490.2

18

*Auth.*, 467 F. Supp. 2d 107, 111-15 (D.D.C. 2006); *Sisso v. Islamic Rep. of Iran*, 448 F. Supp. 2d

76, 87 (D.D.C. 2006).  And in the multi-district ATA litigation arising from 9/11, scores of

defendants were dismissed for lack of personal jurisdiction applying a traditional due process

analysis.  *See O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659

(2d Cir. 2013); *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks on Sept. 11,*

*2001)*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).  Moreover, Plaintiffs themselves have argued at

length before this Court that the Fifth Amendment's due process standard applies to Defendants

in this case.  *See* DE 32-1 at 44 ("[T]he PLO and PA have continuous, systematic and extensive

activity and contacts within the United States, far in excess of the 'minimum contacts' required

by the due process clause of the Fifth Amendment"); *id.* at 56 (similar); *see also id.* at 52 ("PA

and PLO do not deny that the scope of their activities in the United States exceeds the 'minimum

contacts' required by the 5th Amendment.").

D.    *Daimler* Is Not Distinguishable Based on Plaintiffs' Method of Service

Plaintiffs claim that *Daimler* did not "address the question of whether service on a

defendant in the forum remains sufficient to subject the defendant to general personal

jurisdiction."  DE 284 at 32.  Plaintiffs cite Rule 4(k)(1)(C) — which provides that "[s]erving a

summons or filing a waiver of service establishes personal jurisdiction over a defendant . . .

when authorized by a federal statute" — and they imply that Rule 4(k)(1)(C) dispenses with the

separate requirement that the exercise of personal jurisdiction comport with Fifth Amendment

due process.  *Id.*  Yet, binding D.C. Circuit precedent requires not only adequate service of

process, but also compliance with due process.  *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C.

Cir. 2004).[17]  Thus, *Daimler* applies without regard to how Defendants were served.

---

[17] "The 2007 Amendment to the Federal Rules of Civil Procedure deleted as redundant former Rule
4(k)(1)(C), which described service on interpleader claimants.  Hence, the former Rule 4(k)(1)(D)

In sum, Plaintiffs' efforts to distinguish *Daimler* must be rejected.  The due process limits on the exercise of personal jurisdiction over foreign (non-state) defendants are the same regardless of who is being sued, the intent of the Executive, or how the defendant was served.

## V.    THE COURT CANNOT EXERCISE SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS

As a fallback, Plaintiffs assert that the Court may assert specific personal jurisdiction. DE 284 at 33-44.  Plaintiffs' argument, raised for the first time ever in this case, can be readily rejected.  First, Plaintiffs waived their argument.  As Plaintiffs themselves assert, they filed a "robust response" to Defendants' Rule 12(b)(2) motion in which they "devoted 21 pages to a discussion as to why this Court has personal jurisdiction over the Defendants." *Id.* at 3.  Yet, Plaintiffs never sought to have the Court exercise specific personal jurisdiction. *See generally id*.

In any event, specific jurisdiction may not be exercised here.  In order for the Court to exercise specific personal jurisdiction over the PA or PLO, "the defendant's suit-related conduct must create a substantial connection with the forum State," or, here, the United States.   *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  As the Supreme Court explained in *Walden*, specific or "case-linked" jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence *that takes place in the forum* State and is therefore subject to the State's regulation)." *Id.* at 1122 n.6 (internal quotation omitted) (emphasis added). Here, the alleged bombing at issue occurred in the Karnei Shomron settlement in the West Bank. Plaintiffs cannot identify a single wrongful, tortious act that occurred in the United States, and certainly not any that bears a "substantial connection" to the bombing at issue in this case.

---

addressed in *Bilzerian* is now denoted as Rule 4(k)(1)(C)." *Carney v. Beracha*, No. 3:12-cv-00180, 2014 U.S. Dist. LEXIS 16460, at *20 n.6 (D. Conn. Feb. 10, 2014).

1424490.2

The only U.S.-based conduct Plaintiffs identify are hearsay statements by alleged PA or PLO officials in U.S. media outlets supporting a peaceful end to the Occupation and negotiation of Palestinian statehood.  *See* DE 284 at 35-37.  These statements did not give rise to the instant lawsuit and thus cannot support the exercise of specific jurisdiction.

A.    Plaintiffs' Theory of Specific Jurisdiction Is Barred by the Government Contacts Exception

Defendants have argued that the Court must exclude from its jurisdictional analysis Defendants' contacts with, and alleged efforts to lobby, the federal government.  *See* DE 26 at 17-18.  Plaintiffs have asserted, however, that Defendants' public relations activity did not fall within the government contacts exception.  DE 32-1 at 54-55.  Now, Plaintiffs claim that Defendants' so-called "public relations campaign" was designed to "pressure the United States into advocating for an end to the so-called occupation of the West Bank."  DE 284 at 36.

Again, Plaintiffs want it both ways.  To the extent Defendants were engaged in U.S.-based speech designed to lobby the federal government to change its foreign policy, this is the very sort of speech exempt from the minimum contacts analysis under the government contacts exception.  *See* DE 26 at 17-18.  Thus, to the extent Defendants engaged in speech intended to pressure the U.S. government into changing its policy on the Israeli-Palestinian conflict, *see* DE 284 at 35-37, Plaintiffs cannot rely on that speech to establish specific personal jurisdiction.

B.    Regardless, Defendants' U.S.-Based Public Relations Activities Do Not Give Rise to Specific Personal Jurisdiction Because They Are Not Sufficiently Related and Causally Connected to the Lawsuit

The Supreme Court has recently held that, in order for a court to exercise specific personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State," or, here, the United States.  *Walden*, 134 S. Ct. at 1121.  Moreover, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation

1424490.2

with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.'" *Id.* at 1123 (internal citation and quotation marks omitted).  Here, the alleged tortious conduct occurred in the Middle East.  *See* DE 284 at 38 (plaintiffs acknowledging that "the violence at issue in this case took place in Karnei Shomron and not in the United States").  Certain of the Plaintiffs are not even U.S. residents, but even if they were, the Defendants' alleged contact with forum residents is an insufficient basis for the exercise of specific jurisdiction.  *See Walden*, 134 S. Ct. at 1122-23 ("our 'minimum contacts' analysis looks to the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there").[18]

 Specific jurisdiction is proper only when the Defendants' "in-forum activity 'gave rise to the episode-in-suit' or a defendant's 'single or occasional acts' in the forum are sufficient to render that defendant answerable with respect to those acts." *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09-cv-8862, 2013 U.S. Dist. LEXIS 45883, at *34 (S.D.N.Y. Mar. 28, 2013) (citation omitted).  Here, there is no evidence that Defendants' U.S.-based public relations activities advocating for a negotiated end of the Occupation and establishment of a Palestinian State gave rise to *any* attacks on civilians and certainly not the attack at issue in this lawsuit.[19]  In fact, Defendants repeatedly condemned attacks on civilians.  *See, e.g.*, DE 284-29 at 2 ("[W]e do not approve of, we do not like, and we do not accept [violence] as a way of resisting Israeli occupation"); DE 284-30 at 4 ("[W]e have condemned [terrorism]. We have tried to contain it");

---

[18] The fact that a U.S. national is killed, though necessary to establish a claim under the ATA, is an insufficient basis even for the exercise of specific jurisdiction. *Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

[19] Defendants note that all of Plaintiffs' evidence of U.S.-based conduct constitutes inadmissible hearsay and cannot be converted into admissible evidence, whether on motion or at trial.  *See* DE 284 at 35-37.

1424490.2

DE 284-31 at 11 ("Yasser Arafat is on record that he has condemned terrorism. He took action against terrorism, and he opposes terrorism.").

As for Plaintiffs' hyperbolic claim that the U.S.-based public relations activities took place "in tandem with acts of terror," DE 284 at 35, Plaintiffs have no admissible evidence that Defendants were engaged in such a campaign. Moreover, where, as here, a defendant has only limited contact with the forum, specific jurisdiction can be exercised only if the plaintiff's injury was "proximately caused" by the forum-based contacts. *See Absolute Activist*, 2013 U.S. Dist. LEXIS 45883, at *37. Plaintiffs cannot identify any evidence that the bombing at issue were proximately caused by Defendants' U.S. public relations activities. In fact, Plaintiffs concede they were injured as a result of "the bombing of a pizza parlor in the West Bank settlement of Karnei Shomron." DE 284 at 1.

Under Plaintiffs' expansive theory of specific jurisdiction, any defendant who engages in public relations, advertising, or promotional activities in a forum would always be subject to specific jurisdiction for lawsuits having no other connection to the forum because plaintiffs could always argue that defendants' sales, operations, or other activities outside the forum were "in tandem" with their forum-based promotional activity. Such an approach would not be condoned by the Supreme Court, which has made clear that there must be a close connection between the forum, the defendant, and the litigation. Here, there is no such connection.

    C.    <u>The "Effects Test," Which Was Recently Limited by the Supreme Court's Decision in *Walden*, Does Not Apply Because Plaintiffs Cannot Identify Any "Effects" on the United States of Defendants' Lawsuit-Related Conduct</u>

Plaintiffs also argue that Defendants' extraterritorial conduct satisfies due process according to the "effects test" of specific personal jurisdiction under *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). DE 284 at 39-43. *Calder*'s "effects" test, however, has been dramatically circumscribed by the Supreme Court's recent decision in *Walden*. *See* 134 S. Ct. at 1125

1424490.2

(requiring that "the defendant's conduct connects him to the forum in a meaningful way"); *id.*

(distinguishing *Calder* because "the effects of petitioner's conduct on respondents are not

connected to the forum State in a way that makes those effects a proper basis for jurisdiction");

*Daimler*, 134 S. Ct. at 762 (requiring that the "principal impact" be in the forum).  In any event,

Plaintiffs cannot identify any "effects" on the United States of Defendants' alleged lawsuit-

related conduct.

Plaintiffs argue that specific jurisdiction can be exercised if Defendants engaged in

conduct "directed at the forum."  DE 284 at 41.  The pending summary judgment papers show

that this case concerns allegations that a Palestinian man bombed a West Bank pizzeria and

whether Defendants provided him with material support.  There is no admissible evidence that

the decedents and those who were injured were targeted because they were American.  Indeed,

none of the injured Plaintiffs are even U.S. residents.  Accordingly, the cases cited by Plaintiffs

for their "directed at the forum" theory, *see* DE 284 at 40-41, are readily distinguishable.

## VI.    JURISDICTIONAL DISCOVERY IS UNWARRANTED

Finally, there is no basis to delay resolution of Defendants' motion for reconsideration for

jurisdictional discovery.  *See* DE 284 at 44.  Plaintiffs claim that the Court "should refrain" from

entertaining Defendants' motion "until the parties conduct jurisdictional discovery."  *Id.*

Plaintiffs' position is untenable.

Plaintiffs have had twelve years to conduct whatever investigation they deemed

necessary to meet their burden to prove a legally sufficient basis for the Court to exercise

jurisdiction over Defendants.  They failed to do so, and they have likewise failed to identify any

admissible evidence establishing this Court's jurisdiction over Defendants.  Plaintiffs cannot now

use a baseless claim for jurisdictional discovery to delay dismissal of this case.

1424490.2

Moreover, even had they diligently and properly pursued fact discovery in this case, Plaintiffs would not be entitled to personal jurisdictional discovery unless they could make out a prima facie case that the PA and PLO have as their principal place of business or operation the United States.  It is obvious Plaintiffs cannot make that showing.  *See Daimler*, 134 S. Ct. at 762 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home").  The alleged U.S.-based activities of Defendants have no relationship to the litigation of the Plaintiffs' ATA claims, which are all based on conduct in the Middle East. Defendants should not be required to litigate this case on the merits any further given the overwhelming grounds for dismissing it for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons (as well as those in Defendants' motion), Defendants' motion for reconsideration should be granted, their motion to dismiss for lack of jurisdiction also should be granted, and this action should be dismissed with prejudice.

Dated: May 2, 2014                    Respectfully submitted,

/s/Richard A. Hibey
Richard A. Hibey (#74823)
Mark J. Rochon (#376042)
Charles F. B. McAleer, Jr. (#388681)
Timothy P. O'Toole (#469800)
MILLER & CHEVALIER CHARTERED
655 15th St., N.W. Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (telephone)
(202) 626-5801 (facsimile)
Email: rhibey@milchev.com

*Attorneys for Defendants The Palestinian Authority and The Palestine Liberation Organization*

1424490.2