UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, ET AL.       :       Docket No. CV08-0496
                                    :       (RJL)
              Plaintiffs,           :
                                    :       July 29, 2014
                                    :
v.                                  :       3:30 p.m.
                                    :
SYRIAN ARAB REPUBLIC,               :
                                    :
              Defendant.            :
. . . . . . . . . . . . . . . . .

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:            ABBE LOWELL
                               Chadbourne & Parke, LLP
                               1200 New Hampshire Avenue, NW
                               Washington, DC 20036

For the Defendant:             CHARLES F.B. MCALEER, JR.
                               RICHARD HIBEY
                               LAURA FERGUSON
                               Miller Chevalier
                               655 15th Street, NW
                               Washington, DC 20005

Court Reporter:                PATTY ARTRIP GELS, RMR
                               Official Court Reporter
                               Room 4700-A, U.S. Courthouse
                               Washington, D.C. 20001
                               (202) 962-0200

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

```
 1                    P R O C E E D I N G S

 2           COURTROOM DEPUTY:  Calling civil case 08-0496 Shabtai

 3   Scott Shatsky, et al.  versus Syrian Arab Republic.  Would

 4   counsel please come forward and identify yourself for the

 5   record.

 6           MR. LOWELL:  Good afternoon, your Honor, Abbe Lowell of

 7   Chadbourne & Park for the Plaintiffs as well as Mr. Bob Tolchin

 8   is in the courtroom today.

 9           MR. HIBEY:  Richard Hibey for the Defendants.  With me

10   are my colleagues and partners Laura Ferguson and Charles

11   McAleer.  Ms. Ferguson will present the argument on

12   jurisdiction.

13           THE COURT:  All right.  She can go first.  20 minutes a

14   side but you can leave 5 of your 20 for rebuttal.  It is up to

15   you.

16           MS. FERGUSON:  Thank you, your Honor.  This case has

17   been with us for 12 years and the only U.S. nexus is the U.S.

18   nationality of the Plaintiffs.  The lawsuit arose in February,

19   2002 when a man named Sadek Hafez who is not affiliated with the

20   PA and PLO detonated himself in a pizzeria in a West Bank

21   settlement town.

22           The Plaintiffs are West Bank residents who either were

23   injured in the bombing or in the case of the Shatsky and Taylor

24   families and had a loved one killed in the bombing.  The  PA and

25   PLO filed the Motion To Dismiss in 2003 which the Court denied
```

1    in February 2005.

2           Fast forward to January 2014, the Supreme Court issues

3    its decision in Daimler and makes clear that even if a Defendant

4    has a local office that has a continuous and systematic presence

5    in the forum, that's not sufficient for the exercise of general

6    personal jurisdiction.

7           Personal jurisdiction over the PA and PLO had been

8    based in a series of Anti-Terrorism Act cases on the Washington,

9    D.C. office of the PLO mission to the United States.  And so we

10   moved for reconsideration  a few weeks after Daimler came out

11   and argued that the Plaintiffs could not meet the at-home test

12   set forth in Daimler, that even though we PA and PLO had an

13   office in Washington, D.C., that that does not make the PA and

14   PLO at home here because it is not our principal place of

15   business and it is not our place of incorporation and the facts

16   don't come close to, meaning the criteria for an exceptional

17   case that would allow the Court to exercise general personal

18   jurisdiction.

19          Then a few weeks after we filed our Motion For

20   Reconsideration, the Supreme Court issued another important

21   decision on personal jurisdiction.  This time on specific

22   personal jurisdiction Walden versus Fiore which holds that even

23   if the Defendant knowingly injures a forum resident, that's not

24   sufficient for the exercise of specific jurisdiction if the

25   Defendant hasn't engaged in substantial connection with the

1    forum itself.

2         So injury to a forum resident outside of the forum

3    which is in the United States is not sufficient for the exercise

4    of specific personal jurisdiction.  Together those two decisions

5    which are controlling which we would be able to rely on on

6    appeal foreclose the exercise of personal jurisdiction over the

7    PA and the PLO in this case.

8         THE COURT:  Has any Court reached that conclusion to

9    date because you have these cases all over the country?

10        MS. FERGUSON:  Correct, your Honor. We argued this

11   issue to Judge Friedman on Tuesday.  We have --

12        THE COURT:  My colleague Judge Friedman?

13        MS. FERGUSON:  Yes, exactly in a case called Kleiman.

14   He wanted some additional briefing on the specific personal

15   jurisdiction issue which we provided.  He has recently asked for

16   some additional supplemental briefing following argument, but

17   that issue is pending before him.

18        We had argued it to Judge Kessler in the Gilmore case

19   and I believe you received a supplemental notice on that.  That

20   case is different because in that case the Defendants who were

21   represented by Ramsey Clark, we didn't get involved until 2007,

22   had not sort of raised the personal jurisdiction defense when

23   they filed their original Motion To Dismiss.

24        THE COURT:  You had Ramsey in this case too in the

25   beginning?

1          MS. FERGUSON:  Yes, but in this case he actually raised

2      the personal jurisdiction defense.  He is didn't just argue

3      sovereign immunity.  So it was preserved here whereas it wasn't.

4          But I will let he know that just yesterday Judge

5      Kessler in the Gilmore case granted our Motion for Summary

6      Judgment and has dismissed that case.

7          And then the other case that's pending in the District

8      of Columbia -- actually there is two companion cases.  They are

9      called Livnat   L I V N A T and Safra   S A F R A -- are pending

10     before Judge Kollar-Kotelly and Motions To Dismiss --those are

11     new cases -- Motions To Dismiss have been fully briefed there.

12         We also raised the issue in the remaining case in the

13     Southern District of New York before Judge Daniels and Judge

14     Daniels I believe you were provided with his oral ruling.  I

15     have read it a number of times.  I am not quite sure what test

16     he is  proposing.  I read the transcript to say that he thinks

17     that the test should be whether the contacts the Defendants have

18     in the United States are significant compared with other

19     activities and contacts they have in other forums but excluding

20     the forum where they are paradigmatically at home, the West

21     Bank.

22         I don't  view that as the test under Daimler.  No Court

23     has interpreted Daimler that way, but we have provided the Court

24     with the declaration of Maen Areikat who is the current head of

25     the Washington, D.C. mission office, and he set forth facts

1    showing that this D.C. office is actually a very small office in

2    comparison to other missions and also that office has employed

3    at most 10 to 12 people and the PA has 100,000 employees.

4         So even if you adopted Judge Daniels' test, which we

5    think is the wrong test, the factual record is now before the

6    Court that we would win even under that test.

7         Judge Daniels also expressed some reluctance to be the

8    first Court to rule, but has said that he is open to us coming

9    back to him as other courts address this issue.

10        THE COURT:  I have never hesitated to be first at

11   anything.

12        MS. FERGUSON:  Good.  And I will also add that there

13   was a case that came out in Federal Court in Texas just about a

14   week ago, not about the PA and PLO but just surveying the

15   Daimler case law; and I can provide a cite to that case.  It is

16   Gonzales versus Seadrill Americas 2014 U.S. District  Lexus

17   88150.  I was decided June 27th, 2014, and the Court surveyed

18   the post Daimler cases and found that there had been 75

19   discussing Daimler since it came out and in only one had a Court

20   exercised general personal jurisdiction; and the Court viewed

21   that is as a real outlier.

22        So there has been certainly a sea change in how courts

23   are approaching general personal jurisdiction after Daimler and

24   it is our position that due process is due process.  It is a

25   constitutional protection that the PA and the PLO are afforded

1    under the Fifth Amendment and there is no special terrorism

2    exception to the Fifth Amendment.  So we should be entitled to

3    the benefit of the Daimler rule.

4              THE COURT:  Judge Kessler in her opinion as I recall it

5    found a waiver had occurred.

6              MS. FERGUSON:  Right.

7              THE COURT:  Why isn't there more than enough of a basis

8    for me to reach the same conclusion in this case?

9              MS. FERGUSON:  Well, your Honor, there was two kinds of

10   waiver Judge Kessler found.  So the first, which I certainly

11   understand her reasoning, was that under Rule 12, you need to

12   raise your personal jurisdiction defense when you file your

13   Motion To Dismiss; and the PA and PLO did not raise a personal

14   jurisdiction defense so she found that that was the waiver.

15             She also found that we, the PA/PLO could have raised

16   this general personal jurisdiction argument after Goodyear was

17   decided in 2011 and I disagree with that for a couple reasons.

18   One, the Courts routinely were interpreting Goodyear as a stream

19   of commerce case.  In fact, that's what it was.  The whole thing

20   was that the mere fact that some tires would reach the forum

21   wasn't sufficient.  It didn't announce any new rule about

22   general personal jurisdiction or it didn't indicate that it was.

23   It was relying on International Shoe and helicopters -- and, in

24   fact, survey the post Goodyear case law and we have cited some

25   of those cases in our brief.  Courts -- and in fact we also

1    included this in our brief, the U.S. when it filed an amicus

2    brief in Daimler also noted this, that Goodyear was not focused

3    on the situation we have here which is where you have a

4    Defendant that has an office, a continuous presence in the forum

5    with an office.  Goodyear didn't address that.

6         So the cases that were coming out after Goodyear, yes,

7    they would cite the at-home test, but they would only find no

8    personal jurisdiction if the Defendant had no presence in the

9    forum at all essentially.  So there was no employees, no office;

10   and there were a number of cases where a Defendant had an office

11   in the forum but it wouldn't have met the Daimler test.  It

12   wasn't its principal place of business and the Courts

13   nonetheless exercised general personal jurisdiction and it has

14   only been since Daimler that you have seen a real change in the

15   law in terms of how courts have approached Defendants that have

16   an office in the in the forum.

17        And so if we had come to the Court after Goodyear,

18   Plaintiffs would have argued, well, that's a stream of commerce

19   case, it has nothing to do with the situation where you have

20   this PLO mission office in Washington, D.C. that's continuously

21   there, that makes you at home there.  It was Goodyear that said

22   it is not enough to have a local office, that a Defendant is

23   generally at home only in one place; that it takes an

24   exceptional situation to make a Defendant at home somewhere

25   other than where they have their principal place of business.

1          And the Court highlighted that Perkins case as the

2     textbook example of the exceptional case where a Court could

3     exercise general personal jurisdiction over a Defendant who

4     doesn't have its place of incorporation or principal place of

5     business in the forum; and in that case because of World War II,

6     a Philippine mining coming had to relocate to Ohio, and it

7     became its temporary place of business and so the Court had held

8     that that was enough.

9          But Daimler was a real sea change; and, in fact, the

10    three cases that Judge Kessler cites in her decision showing

11    that courts adopted -- Goodyear as adopting an at-home test

12    actually support our position because the Courts in those cases,

13    the Courts from this jurisdiction adopted a narrow reading of

14    Goodyear.

15         You know, one rejected the Defendant's personal

16    jurisdiction defense saying Goodyear is a stream of commerce

17    case.  And there was no case in this jurisdiction after Goodyear

18    but before Daimler where the Court exercised or declined to

19    exercise jurisdiction over a Defendant who had an office here.

20    When it ruled for the Defendant, it was because the Defendant

21    had no continuous and systematic activities, no employees, no

22    office.

23         So because we filed the Motion To Dismiss that raised

24    Rule 12(b)(2) defense, we didn't waive our personal jurisdiction

25    defense.  In fact, we preserved it when we moved to vacate in

1    2007.  We preserved it again in our Answer and we are not

2    required to -- you know, we don't want to default again.  We

3    cannot take the position, well, we disagree with your Honor so

4    we won't litigate, we won't defend because we disagree with your

5    personal jurisdiction argument.  We moving to vacate said we

6    understand the Court's rulings on immunity, on jurisdiction.  We

7    will litigate, but that didn't mean that we weren't going to

8    take the --  we weren't entitled to the benefit of the change in

9    the controlling law or that we weren't entitled to raise these

10   arguments on appeal.

11         And, in fact, Judge Friedman when addressing this

12   waiver issue told the Plaintiffs, you know, if nothing else, as

13   a matter of judicial economy and  efficiency, I need to decide

14   this issue because when the -- if the Defendants would go up to

15   the Court of Appeals, they would be entitled to rely on Daimler

16   and Goodyear.

17         THE COURT:  When you sought to vacate the  default in

18   this case, my recollection is that the pleadings were cast in

19   such a way by your clients that they were giving the Court an

20   affirmative representation of their desire to litigate this

21   case, bring these issues to a head, and resolve these issues

22   through the judicial process either with or without a jury.

23   They didn't specify one way or the other, I don't remember, but

24   certainly through the judicial process.

25         MS. FERGUSON:  Right.

1    THE COURT:  Why wouldn't representations of that

2  magnitude that were relied upon by this Court be enough to

3  constitute a waiver in their own right?

4    MS. FERGUSON:  Well, your Honor, to give you a bit of

5  background, the Palestinian Authority had taken this position in

6  all of the lawsuits that were brought in the U.S. that it was

7  entitled to sovereign immunity, that political question doctrine

8  applied, no personal jurisdiction.  They had a series of

9  jurisdictional subject matter and personal jurisdiction

10  argument.

11    Then some of the cases started going into a default,

12  default judgment posture.  Enforcement actions were brought and

13  the PA sought  relief from the U.S.; and at that time Secretary

14  of State Condoleezza Rice said, you know, you need to engage

15  with the U.S. litigation process.

16    So then prime minister Salam Fayyad retained counsel

17  and asked us to litigate the case as  litigators, not as a

18  political cause.  So that's what we have done, but there was no

19  waiver of, you know, changes in the law or a waiver of any

20  rights to raise some of these defenses on appeal, right? So it

21  was just based on the Court's rulings on jurisdiction.  We

22  acknowledge those rulings, of course, and we will proceed and

23  litigate as a normal litigant would.

24    THE COURT:  But going back to Judge Friedman's point,

25  although I wasn't present when he made it, I think I can

1    identify with what he is trying -- the point he is trying to get

2    to.  You know, the representations that were made to this Court

3    were made many years ago and were made in an effort to basically

4    reinstitute the litigation process.

5         This Court relied on those.  Since then there has been

6    an awful lot of water over the damn. There has been a lot of

7    litigation.  There has been a lot of rulings by this Court.

8    There has been depositions taken.  There has been all kinds of

9    issues worked on and resolved; and now here we are at the -- you

10   know, Summary Judgment Motions have been filed in this case by

11   your client and we are at the eleventh hour and, I don't know,

12   50 something minute, it could be 58 for all I can tell in this

13   process and all of a sudden now, you know, you all want to jump

14   out.  Is that really a way to run a railroad?

15        MS. FERGUSON:  Well, it is an unusual situation.  The

16   Supreme Court has issued two important rulings on jurisdiction

17   and on the constitutional due process limits on the Court's

18   exercise of jurisdiction.  So I certainly understand that there

19   has been a lot of water under the bridge, but there can still be

20   a lot more water under the bridge and yet when we still get to

21   the Court of Appeals, we are entitled to rely on the Supreme

22   Court interpretation of the  constitutional due process standard

23   because, you know,  it was the Court's interlocutory ruling by

24   the Court.

25        So I think, you know, we didn't undertake this Motion

1    For Reconsideration lightly, your Honor, but it is a

2    constitutional due process limit on the Court's exercise of

3    jurisdiction and it trumps everything.  And so the law sometimes

4    changes, and this is a case where it is not just an

5    interpretation of a regulation or a statute, it is an

6    interpretation of the constitutional limits on U.S. Court's

7    exercise of jurisdiction.

8         And it is very much in keeping with the sort of cases

9    we are seeing coming out of the Roberts Supreme Court where the

10   Court's expressing a lot of concern about U.S. Courts exercising

11   jurisdiction over cases that have very little connection to the

12   United States.

13        We have seen that in Kiobel and other cases.  So I

14   think we are entitled to the benefit of a Supreme Court

15   interpretation on the limits of the Court's jurisdiction, and we

16   would be entitled to rely on that if the case were up on appeal.

17   So I don't know that it makes it better to have more -- to keep

18   litigating and keep litigating only to have the Court of Appeals

19   address it for first time.

20        THE COURT:  Well, you have got about three minutes

21   left.  Do you want to reserve it for rebuttal?

22        MS. FERGUSON:  I will reserve it for rebuttal.

23        THE COURT: Mr. Lowell.

24        MR. LOWELL: Good afternoon, your Honor, and I think the

25   fourth argument that these defendants and this particular

1    counsel have done before Courts just like you trying to get

2    advantage of the latest Supreme Court decisions, two of them

3    have rejected those for the reasons that Ms. Ferguson has told

4    you about.

5         There are a handful of reasons why in this context the

6    Motion For Reconsideration -- this is not eight years ago --

7    this is undoing the clock that has been ticking for eight years

8    should not be granted, and they overlap in the first instance.

9         So the overlapping issues, Judge, are the fact that

10   there are -- to get a reconsideration, you have to have a reason

11   and the reason has to be a changing controlling law.  They say

12   that Daimler -- I don't know if it is Daimler or Daimler, by the

13   way -- they say that it is that case that is the change of the

14   controlling law, and we will point out in a moment that that's

15   not the case.

16        Then they point out that if it is that, there has been

17   a case three years hence called Goodyear which other Judges have

18   found was if anything that changed law and that people have

19   basically waited too long.  And then in the course of conduct of

20   which your Honor has asked some questions already, if those

21   weren't the case, these particular Defendants in this case

22   because of their conduct in this case have additional waivers of

23   their ability to now raise it in a Motion For Reconsideration.

24        And I will point out in about a minute and a half the

25   fact that the circumstances in the Gilmore case decided down the

1    hallway are almost identical to the circumstances here so that

2    not only means that Judge Kessler made the right decision, I

3    believe it means that these Defendants are collaterally estopped

4    from being able to change the law of this District when it comes

5    to the same issue litigated in the same way.

6          I want to start by reminding the Court as the last

7    question was asked that the Defendants here like anybody in a

8    Court don't get the benefit of Supreme Court decisions that come

9    one year, 4 years, 8 years later on all issues.  Here it has to

10   do with personal jurisdiction which is abundantly possibly made

11   clear a Defendant can waive.  It is a waiveable.

12         It is not subject matter jurisdiction in which case we

13   wouldn't be having this argument if the Court of Appeals or the

14   Supreme Court had made otherwise, but a personal jurisdiction

15   can be and we think they have been.

16         So I want to start with the fact that this has not been

17   the change in controlling law, and I think I just need to say no

18   more than Judge Kessler did.  And not only Judge Kessler, but

19   Judge Daniels in New York was confronted with the same issue.

20   Is Daimler a game changer as Ms. Ferguson  keeps calling it and

21   both of those Federal Judges said they were not.

22         Neither of those cases, Goodyear or Daimler, I need to

23   point out right away is in the context of this case and just

24   because there is a personal jurisdiction due process case out

25   there, it doesn't mean it applies to every case.  You have to

1    remember the special context of terrorism cases being brought

2    under the ATA and the body of law that has been developed over

3    the last years that indicate that that is sort of in a special

4    category.

5              I am going top come back to the special category if you

6    let me in moment.

7              So that has not been addressed by Goodyear or Daimler,

8    but even if there was a change in this at-home rule and even if

9    that at-home rule applied in the context of this case, that

10   at-home rule was announced three-and-a-half years ago and

11   Defendants have waited three-and-a-half years for strategic  or

12   other reasons, and Judge Kessler said that was not allowable and

13   Judge Daniels said that was not allowable.

14             I want to point out the fact that they might say that

15   somehow they preserved it and that is not what the record would

16   show.  However long ago 5 -- seven and a half, eight years ago

17   they did make a Motion and in it there were a number of attacks

18   and about 99.5 of them was on subject matter jurisdiction,

19   political question justiciability.  They had about two

20   paragraphs that raised person jurisdiction so the word personal

21   jurisdiction can be found, but that's it can be.

22             Because if you look at the argument, it was basically

23   two things that they were quarreling with.  One was service of

24   process as the means to get jurisdiction, and the second was

25   whether or not their contacts in interacting with the Government

1    particularly the United Nations in New York could count towards

2    their contacts in the United States to amount to minimal

3    contacts, whether the minimal contacts were under the law as it

4    existed before Goodyear or after as it turns out Goodyear.

5    That's all they contested.

6              They never addressed the issue of what other minimal

7    contacts outside of Government contacts could be, never

8    addressed the issue of what was their otherwise systematic and

9    continuous activities in the United States.  They didn't address

10   the specific jurisdiction issues, and they never rebutted even

11   though they had four opportunities to do so the 21 pages of

12   record testimony and writings that you have from the Opposition

13   to the Motion To Dismiss that was in the Plaintiff's Opposition

14   to their Motion To Dismiss, they had two paragraphs on

15   jurisdiction.  I have told you what those said.

16             We had 21 pages of rebuttal setting the record that is

17   before your Honor on why there are continuous and systematic

18   contacts; and in their reply brief, they didn't talk about any

19   of them.

20             This is the kind of activity in making a pleading

21   halfheartedly that we showed you in our briefs in the SEC versus

22   Banner case or the e360 Insight case that courts say are the

23   kind that get abandoned and waived because they haven't really

24   been put forward.

25             But more importantly if that weren't the case, you have

1    already put your finger on something that makes this case even

2    stronger on the issue of waiver that Judge Kessler had in

3    Gilmore, and that was the statements that Defendants made to

4    your Honor on three occasions 7 -- 6, 8 years ago to get the

5    defaults lifted.  What they said to your Honor was that they

6    needed to engage in quote "merits litigation."

7         You have a declaration from  Prime Minister Fayyad who

8    said he was giving you a firm personal commitment to litigate

9    going forward.  He and the Defendants in their brief said we

10   want meritorious -- we have meritorious defenses and quote:

11   "Defendants have come to appreciate that they need to address

12   these cases head on rather than continuing to rely on

13   jurisdictional defenses."

14        And in none of that did they mention personal

15   jurisdiction, of course.

16        When you accepted them, not just once, but two times,

17   this is what your Honor said:  That the long storm preference

18   for merits litigation and other tangible evidences the

19   Defendants desire to litigate on the merits.  On the basis of

20   that commitment, you let this case go forward.

21        You only have to look at the number of  docket entries

22   since that to see that this is a course of conduct

23   notwithstanding every other issue they have by participating

24   fully and fairly in this case waived whatever jurisdiction

25   arguments they have.

1            We cite to the Tenth Circuit case because it is such a

2    good quote of Hunger versus Hardie where it says:  When a

3    Defendant has participated in litigation for such a lengthy

4    period of time and has sought affirmative relief from the Court

5    on multiple occasions, it may not pull its personal jurisdiction

6    defense out of its hat like a rabbit.

7            Most telling in that recitation, your Honor, is the

8    fact that not even six months ago, they issued their last brief

9    in the Motion for Summary Judgment which, as you pointed out, is

10   pending in front of the Court and not one sentence in that so

11   many pages do they mention the issue of personal jurisdiction.

12           And we have pointed to the case of Central States which

13   is a very important case because it pointed to the significance

14   of not raising the jurisdictional issues in Summary Judgment

15   which puts them on all fours with that.

16           And as I said as to the estoppel issue, I want to point

17   out that the Defendants may try and strain to make some

18   distinction between the Gilmore case decided by Judge Kessler

19   and your Honor, but I would like to give you the list of how

20   they are almost identical; and that list will indicate not just

21   that Judge Kessler is correct and it should inform your Honor to

22   make the same decision, but I believe that they are literally

23   estopped from making the argument that Ms. Ferguson made.

24           So they were both shootings in the early 2000's.  They

25   both killed United States' citizens.  Both the PLO and the PA

1    were sued.  The same basis for subject matter and personal

2    jurisdiction were asserted.  They were both filed and served on

3    the same official in 2001 and 2003 respectively.

4         In each of cases, the Defendants took an initial

5    default again in those two years.  Then the Defendants sought to

6    reopen their default in that case in 2002 same as they did here

7    in '03.  There the Defendants raised subject matter jurisdiction

8    and in some ways some of the issues of personal jurisdiction

9    that Judge Kessler said had been abandoned by the subsequent

10   pleadings, here they did the same.

11        They had two paragraphs.  There they sought personal

12   jurisdiction dismissals against the individuals, but for some

13   reason didn't apply the same logic to the organizations.

14        Then there was a decision denying the Motion To Dismiss

15   in both cases as there was here.  Then they failed to take an

16   interlocutory appeal as they said, especially here that they

17   were thinking of doing; and so they didn't want to go forward

18   but they didn't do that.  They didn't respond either and so a

19   second default was entered both here and in the Gilmore case and

20   the two years were the same at that point, 2007.

21        Then the Defendants retained new counsel, counsel that

22   sit at table and have argued this in the last four cases now and

23   they are the same  counsel in our case as this did in Gilmore

24   after the change.

25        Then they sought to reopen the second default and in

1   each of the  cases told the Courts that's there was a strong

2   public interest on resolving the claims on the merits just as

3   they made the same argument in front of your Honor.

4        In each case the Courts allowed the second default to

5   be lifted by saying, among other things, that their commitment

6   to litigate on the merits was persuasive to the Court allowing

7   them to do that.

8        In both cases there was over two-and-a-half years of

9   discovery and proceedings and seeking relief from the  Courts;

10  and in both cases there was a submission of Summary Judgment in

11  the last 7 to 8 months, neither of them addressing the issue of

12  personal jurisdiction.  In both cases the Defendants came

13  forward and saying, oh, my gosh, it is the Daimler case that

14  gives us now the grounds to come forward and say something has

15  change and we have notwithstanding all of that the right to get

16  some relief that we didn't have before.

17       And in each of those cases the Plaintiffs have pointed

18  out the arguments of -- litigated on the merits you said you

19  would, you had the default, you waited after Goodyear,

20  et cetera.  And on the basis of that you saw Judge Kessler's

21  very thoughtful opinion as to why it is not a change in the law

22  and more importantly why it was the Defendants waived.

23       And all of those arguments bear here.  I don't need to

24  go through what Judge Kessler said.  I would ask the Court we

25  gave you the issue, but I wanted to show you the similarities

1    between the two cases because they are so virtually identical.

2         That being the case, I think it is important to point

3    out that when Judge Kessler concluded, she quoted the Brow case

4    and says when a Defendant participates in the litigation -- and

5    the litigation delays in making an objection to personal

6    jurisdiction and then makes an objection that could have been

7    made at various times along the way, the Defendant is said to

8    have waived his or her right to do so.  So that's on the issue

9    of waiver.

10        With your permission, let me turn to whether or not

11   Daimler changes the game as Ms. Ferguson says it does  even if

12   you get past those waiver arguments, please.  So the first is as

13   I have pointed out that Judge Socolow (sic), even Judge Friedman

14   who I will come back to are raising whether Daimler or Goodyear

15   three-and-a-half years ago actually applies in the same way.

16   Remember the context.

17        This is in the context of a special statute that was

18   passed by Congress and amended after the tragedy of the

19   Klinghoffer affair for the very purpose of extending the

20   jurisdiction of the Federal Courts of the United States as far

21   as those Federal Courts could be extended.  That was the

22   expressed Congressional intent.  It has never been held that

23   that expression of intent applied only to subject matter

24   jurisdiction; and indeed Ms. Ferguson the other day in arguing,

25   whenever it was, in front of Judge Daniels and in front of Judge

1    Friedman had to say that it might also apply to personal

2    jurisdiction.  That is, the intent to extend as far as possible.

3            You also have in the context of the ATA the very unique

4    situation of having national venue and the standard of the

5    Federal Rules of Civil Procedure for services -- you know better

6    than me -- is that if you have presence such that you can be

7    served in the District and you are served in the District, then

8    you are present in the District for purposes of personal

9    jurisdiction under 4k)(1).

10           That makes it vastly different than Daimler or

11   Goodyear because in each of those circumstances it was a long

12   arm statute that sought the service outside the territory of the

13   United States.

14           Even if you then decided, okay, we are past waiver, we

15   are past the abandonment, we are past the estoppel, we are past

16   the ATA special consideration, then and only then can I address

17   the issue of the at home.

18           On at home I would like to tell you the following

19   points.  To begin with, and it shows you the difference between

20   Goodyear and Daimler, it is very far from clear and every Court

21   that's ruled on this issue has ruled what I am about to say that

22   the PLO and PA are entities that get the full breadth of the due

23   process rights of the Defendants in Goodyear or even the

24   Defendants in Daimler.  They are unique entities, foreign

25   entities and rulings that we have pointed out in our papers such

1    as Mendelsohn versus Meese have pointed out that they do not get

2    the same due process rights.

3           Now, do they get any due process rights? They are not

4    persons, and persons have been ruled to be the talisman for

5    having due process rights; but assuming they get any, it is not

6    the courts that indicate what they get, it is the Executive

7    Branch working as its premier responsibility on foreign affairs;

8    and that Executive Branch has not designated them in a status

9    that would give them any of the due process rights that they

10   want to invoke as if they were the Daimler Corporation or a tire

11   company operating out of Ohio.

12          So they are in this category that we have pointed out

13   in our case law.  They are not a sovereign state, but they are

14   not a person.  They are somewhere in the unique status of being

15   like a municipality or even like the entities of Puerto Rico and

16   the Virgin Islands because while all foreign states are

17   governments, not all governments are foreign states.

18          And so what they are no matter whether you pick the

19   precedence of the Mendelsohn or the  precedence of the case we

20   gave -- it is called Palestinian Information Office -- PIO

21   versus Schultz who have found neither of these entities.  The

22   only courts who have decided whether they fit under the rubric

23   of the due process clause have found that they do not.  Whether

24   you use one or the other or a hybrid, they have been found not

25   to.

1           So Daimler and Goodyear may not even give them the

2    rights that they come and say are a game changer.  Might be a

3    game changer for the kind of private companies that Ms. Ferguson

4    tells you to look at the Texas case of Gonzales, which is not

5    terrorism cases, not PLO cases but corporate cases.  It might be

6    a game changer there or Goodyear might have been, but not in the

7    context of these cases.

8           I also want to point out that the Plaintiffs in the

9    case that they wanted to say is the game changer in Daimler was

10   not a U.S. Plaintiff and here they are.  It is not a commercial

11   case as it was there.  And the other day last week Ms. Ferguson

12   appeared in front of Judge Friedman and the transcript is

13   available so it might be interesting for your Honor to take a

14   look at it and raised the very same arguments here.

15          And what Judge Friedman asked to be considered and

16   asked counsel of both sides to look into was whether or not the

17   argument the Defendants  put forward doesn't actually quote

18   "gut" end quote the ATA and its breadth to try to extend the

19   jurisdiction of the courts.

20          What he said was:  I am concerned that to read Daimler

21   in the way the Defendants want to read it substantially limits

22   Congress' attempt to create a statute that would provide

23   jurisdiction for international terrorism in the courts of the

24   United States as was Congress' intent.  And I think he was onto

25   something pointing out the very unique circumstances.

1            No matter what those two Supreme Court cases say, at

2     least to state the obvious they weren't decided in the context

3     of a foreign affairs case.  They are commercial cases

4     exclusively.

5            If you could get past even that, your Honor, Judge

6     Daniels in Sokolow took Ms. Ferguson through a whole series of

7     questions and discussions as to even then does Daimler if it

8     would apply change whether or not the PA and PLO in a Motion For

9     Reconsideration has been changed not to have the kind of context

10    for which the personal jurisdiction would apply; and what he

11    concluded in his opinion was that Daimler, which he does not

12    think is controlling and said that they waited too long anyway

13    but addressed the merits and said that it was not changing his

14    decision of however many years that there was jurisdiction

15    because he explained the Daimler means -- that what the basis to

16    sue the PLO is an analysis of whether or not they are continuous

17    and systematic presence and context in the jurisdictions in

18    which they operate are significant enough that one can say that

19    it is the equivalent of at least being at home in that

20    jurisdiction.

21           He went on to then look at the same context that we

22    have put forward in our 21 pages of jurisdictional material --

23    the lobbying activities, the banking, the commercial contracts,

24    the staffing --  all the things you ruled on or at least you

25    considered however many years and concluded these were

1   aggressive PR lobbying and nongovernmental activities which

2   conclude that they have a continuous and systematic presence in

3   the United States  such that whether you are applying the

4   standard under Goodyear or applying the standard under Daimler,

5   you can say they are at home because, as he said, the question

6   not where is their home but where they are at home.

7          And for those reasons concluded that their contacts in

8   the United States make them even more at home here than their

9   activities in Government ways may make them on the West Bank.

10         THE COURT:  Do you think it is implicit in the Daimler

11  opinion that in any given situation an entity is at home

12  somewhere in the United States?

13         MR. LOWELL:  No, but I think -- here is what I think we

14  can say out of the at home.  It has to be that a Defendant

15  entity is at home in someplace other than when they are

16  incorporated or else all that would have been the need to

17  Supreme Court to say that you are only subject to suit in the

18  place in which you are in your home, i.e.  so it means something

19  more than that.

20         THE COURT:  That would be a lot of work for the

21  Delaware Courts.

22         MR. LOWELL:  It would make for a lot of less work and a

23  lot of lawyers up there being upset I am sure.

24         The second thing that we know is that means a

25  corporation or S-corporations or if the are under the Daimler --

1    I will call it the Goodyear test because that's where it was

2    articulated -- they have to be at home someplace other than

3    where they are quote "in their home."

4           Now the question is how many places can that be?

5    Neither the Supreme Court's majority opinion or the concurrence

6    or any commentary has yet to put a stop on how many; and it

7    makes sense if you think about it, Judge.  A company may on its

8    own decide it wants to be at home in a lot of places.  It may do

9    business, enough business, enough continuous and systematic

10   contacts that they are amenable to suit in more than two places.

11          So the question really becomes especially under the ATA

12   which considers this jurisdiction the entire United States, not

13   just the District of Columbia, are they at least at home here in

14   addition to being in their home on the West Bank?

15          We think the record as Judge Daniels has said is that

16   they are.  We think the record as Judge Friedman suggested you

17   can't carve into the ATA.  Remember that at home is a

18   conclusion.  It is not the subjective opinion of the Defendant.

19   The Defendant doesn't get to come in here and say let me tell

20   you where I feel I am at home.  At home is a legal conclusion.

21   It is just another adjective for explaining what is systematic

22   and continuous context such that they are deemed to be at home.

23   It is not subjective.  It is objective.

24          So to answer your question, you know, do they -- does

25   an entity, a foreign entity, does the PLO in particular or the

1    PA have to be quote "at home" end quote in the United States?

2    They didn't have to be, but their contacts and systematic

3    activities made them, and those are very significant ones.  They

4    are not just that they have one little person handing out

5    leaflets.  The record shows how much they do here, and so that's

6    why as a conclusion they are at home.

7         And that is even more the case in the context of a

8    Motion For Reconsideration where your Honor has ruled on a few

9    occasions that they are here, they are present enough to be sued

10   and to have that 600 docket entries of activity that has

11   occurred last.

12        If I have a minute, I at least need to address the one

13   issue that Ms. Ferguson raised by telling you about the second

14   Supreme Court decision which is the Walden decision on specific

15   jurisdiction.

16        THE COURT:  You can take a minute.  Go ahead.

17        MR. LOWELL:  Thank you.  All I want to say about that

18   is that as to general jurisdiction, which is what the Goodyear/

19   Daimler cases are trying to address, that's on one side.

20        THE COURT:  Right.

21        MR. LOWELL:  The other side is okay, so let's say for

22   whatever reason you have a doubt and let's say that doubt gets

23   you past the reconsideration moment we are at.  They still are

24   present for purposes of specific jurisdiction, and that's

25   because the contacts that they have here are not irrelevant to

1    that either.

2           Those contacts don't require physical presence in the

3    United States of the activity that raised the tort.  In other

4    words, the bomb didn't have to go off here.  The question under

5    the law of specific jurisdiction that Walden does not change

6    because it continues to cite the Calder decision which is the

7    one that looks for foreseeability, whether or not it is fair to

8    bring a Defendant into a jurisdiction because that Defendant

9    should have been on well notice that its activities have been

10   the kinds of activities that they are on fair notice can be sued

11   upon in the United States.

12          That was sort of the theory of Calder.  The question is

13   does Walden change it?  What Walden says is the contacts for

14   specific jurisdiction can't be just the basis that the Plaintiff

15   incidentally is from that forum, but that's not what we have

16   here.  The record of this case shows as alleged and as the Court

17   eight years ago had to accept as true and does in the Motion For

18   Reconsideration that the Defendants provided the funds to the

19   organization, the PFLP who sponsored the bombing attack, that

20   those funds were from the same entities directed towards a

21   place, the place Karrei Shomron which is more so than others

22   known to be inhabited.  Indeed it was organized originally by

23   Americans.

24          It was an attack that wasn't happenstantial that

25   Americans got killed.  It was an attack that was aimed to kill

1    Americans in the same way that Judge Friedman asked Ms. Ferguson

2    to address two cases that your Honor should also consider.

3          One is the Boim case out of the Seventh Circuit and the

4    other one is the Sisso case here which talks about the natural

5    impact of the actions that a Defendant takes abroad to be

6    foreseeably having effects in the jurisdiction in which that

7    Defendant is sued.

8          And in those cases for the reasons we said that the

9    money goes from the Defendants to the organization, that the

10   bombing was in a place that was directed to have an impact on

11   Americans, that it wasn't happenstantial, it was the very

12   purpose.

13         We talked in our record about how this man Desall who

14   is their organization got -- is the person who gets the money

15   and how it pays for the PFLP -- pays rent out of the money and

16   how the payments that are going to the PFLP go to pay the

17   so-called martyrs or the suicide bombers is more accurately; and

18   that is the linkage of both intentionality, connection,

19   foreseeability and effects that survive the issue of whatever

20   Walden would say about the original Calder and you don't have to

21   turn much before looking at Judge Collyer's decision in Biton

22   case where she uses the phrase are the Defendants on fair

23   warning that they will be held responsible for their harmful

24   consequences that they could have expected to end up in the

25   forum as well as Judge Huvelle in the Baun case.

1           So where the Defendants aim at U.S. citizens or they

2      aim at having effects that are likely to affect U.S. citizens,

3      that still survives as Judge Friedman suggested it might by

4      asking everybody to address the issues in Sisso versus Iran.

5           So in conclusion on that, I want to point out that they

6      are alleged that the Defendants here funded the PFLP known for

7      targeting Americans.  Here the payments for Mazall who

8      masterminded the attack.  Karrei Shomron was not a random place,

9      but it was known.  I think the statistics in the record are

10     there are only 3 percent of Americans that live in Israel.

11     There is as many as 13 percent that live in this particular

12     place in this particular village; and there are other cases that

13     talk about if you take an action by its consequences are likely

14     to have the effect it has, you can be held to have known that

15     those consequences were likely.

16          Finally that again I want to conclude on the issue of

17     the specific by telling you that in the exchange between Judge

18     Friedman and Ms. Ferguson, she addressed him and it said  that

19     there was no direct U.S. effect because the Plaintiff there

20     lived in the West Bank where the Plaintiff was raised, lived and

21     killed.  You know that the Plaintiffs here have been raised in

22     many cases lived here versus there.

23          She said that the basis that they were seeking specific

24     jurisdiction about was just the political speeches of the PLO

25     representatives in the U.S.  Our record is that the PA and PLO

1    provide funds to the PFLP, the rent, et cetera, that we have

2    pointed out.

3            She said that if there were an allegation of people

4    using U.S. banking systems or funding terrorism from the United

5    States, it would be a different story.  We have record evidence

6    of banking by the Defendants here and whether or not they used

7    those funds directly, remember every dollar that they use here

8    that they don't have to use there in the material support for

9    terrorism cases money is said to be fungible.

10           So it could very well be that money they earned here,

11   money they fundraised here offsets the money and then the nexus

12   is even 1 to 1.  We don't know that.

13           Let me conclude therefore by saying the following.

14   This is a Motion For Reconsideration.  They have to go through

15   seven different hurdles to get you to change the decision that

16   you made 7 or 8 years ago.  They have to get past the hurdle of

17   whether or not this has been a change in the law.

18           If so, wasn't that change in the law almost three years

19   ago.  They have to then get past the hurdle whether or not

20   notwithstanding that they made the kind of statements and

21   actions to have gone past personal jurisdiction, a waiveable

22   defense by their conduct in the case.   They have to then point

23   out what are the significant, not picayune differences between

24   here and Gilmore so that collateral estoppel would not apply.

25           If they get past all of that, Judge, they then have to

1    talk about why Daimler and Goodyear would apply in the context

2    of an ATA case with its special considerations.  If they do

3    that, they have to get past the issue of whether or not in

4    national service -- sorry -- national venue with service in the

5    District under the normal rules that doesn't suffice.  They get

6    past that  they have to convince you to change what other courts

7    have said as to whether they are persons who get due process in

8    order to even assert Daimler and Goodyear.

9         If they get past that, they have to overcome the way

10   Judge Daniels ruled that what they do in the United States

11   doesn't in fact make them at home; and if they get past that,

12   they have to get past the idea that they haven't shown the

13   direct linkage, all of that in the context of a Motion For

14   Reconsideration.  They cannot do it because under that

15   consideration, your ruling 7, 8 years ago was correct but even

16   under the most generous thing that they would say you should get

17   now under Daimler, but notwithstanding all the intervening acts

18   means that that is not an issue that any longer can be

19   considered.  We are on to the Motion for Summary Judgment.

20        THE COURT:  Thank you, Mr. Lowell. You can have a few

21   extra minutes.  He packed a lot in.

22        MS. FERGUSON: Thank you. He packed a lot in.

23        THE COURT:  He did.  He constructed quite a gauntlet

24   for you to run.

25        MS. FERGUSON:  Well, let me start with the waiver

1    gauntlet.  First, the transcript speaks for itself, but I don't

2    view Judge Daniels as having ruled on the waiver issue or having

3    found a waiver in the Sokolow case.

4            THE COURT:  Judge Kessler did.

5            MS. FERGUSON:  Judge Kessler certainly did, but there

6    is no collateral estoppel here.  The fact that they are both

7    anti-terrorism cases that followed a similar track is irrelevant

8    to collateral estoppel.  They are different on a very key point

9    which is in this case the Defendants timely filed a Rule

10   12(b)(2) Motion To Dismiss and in Gilmore they didn't.

11           And in every case that Plaintiffs are relying on either

12   the Defendant did not timely file a Rule 12(b)(2) Motion To

13   Dismiss at the outset of the case or they expressly waived the

14   personal jurisdiction defense; and neither of those things

15   happened here.  And at the very time the PA and PLO were seeking

16   vacatur and filing the declaration of Salam Fayyad, as the

17   Plaintiffs acknowledged, the Defendants were again preserving

18   their personal jurisdiction defense saying in  docket entry 69

19   at three that the Defendants quote "continue to contend that

20   they have insufficient contacts with the United States to

21   warrant the Court's exercise of personal jurisdiction over them

22   and reserve that issue."

23           We reserved it again in our Answer.  So there is no

24   ambiguity.  There was no expressed waiver, and I think the

25   question here is what did the Defendants have to do to preserve

1    this defense in Plaintiff's mind? Were we at every turn with

2    every pleading to say and we continue to object to personal

3    jurisdiction and we continue to object to personal jurisdiction,

4    litigants are not required to do that.

5         THE COURT:  Let's come at the question from a different

6    direction.  You accept, I assume, I mean I have no reason to

7    doubt that you do, that personal jurisdiction can be waived?

8         MS. FERGUSON:  It is a waiveable defense, yes.

9         THE COURT:  Okay.  So maybe the way to look at the

10   question is look at it a little differently.  Not what you have

11   to do to preserve, what conduct constitutes a waiver?

12        MS. FERGUSON:  And Courts have held that once you have

13   filed a Rule 12(b)(2) Motion litigating, participating in

14   discovery as one has to do and filing Motions for Summary

15   Judgment does not constitute a waiver.

16        You could litigate a case for ten years after you have

17   lost a 12(b)(2) Motion and you are still entitled to argue

18   personal jurisdiction defense on appeal.  People have to be able

19   to raise a defense, lose it and then still litigate.  You don't

20   just quit.

21        And you don't generally get to file an interlocutory

22   appeal on personal jurisdiction.  That's generally not an issue

23   of which you can get --

24        THE COURT:  Isn't it also possible to file a document

25   that constitutes by any objective standard a reservation of the

1    issue and then subsequently waive it?

2              MS. FERGUSON:  But there was no express waiver here.

3              THE COURT:  Hold on now.

4              MS. FERGUSON:  Yes.

5              THE COURT:  Assuming for the sake of discussion that

6    there is no issue -- I don't even think Mr. Lowell is

7    questioning that you preserved the issue initially in your

8    initial pleadings, I don't think he is questioning that -- I

9    think his argument is that even if it was preserved initially,

10   they subsequently waived it.

11             MS. FERGUSON:  What conduct constituted that waiver?

12             THE COURT:  Well, when the -- I believe his title is

13   prime minister comes forward in an affidavit or a declaration,

14   whichever it was, and specifically addresses this Court and says

15   we want to litigate this issue, we want to bring this to

16   resolution for the court system, we are prepared to take this to

17   the, you know, whatever the words are.  I don't have it in front

18   of me.  I am just doing it by recollection.  We want to engage,

19   we want to resolve this through the litigation process.  That's

20   the essence of his message.

21             MS. FERGUSON:  Right.

22             THE COURT:  And this Court accepts that and cites in

23   its opinion that it was relying on that.  Why doesn't that

24   constitute a waiver notwithstanding the fact that there had been

25   an earlier preservation of the issue? It can be subsequently

1   waived.

2          MS. FERGUSON:  But the preservation was contemporaneous

3   so the preservation was around the same time as that declaration

4   and the Answer was also around the same time as that

5   declaration.

6          THE COURT:  Isn't that kind of like we can have our

7   cake and eat it too argument? I mean you want it both ways,

8   don't you?

9          MS. FERGUSON:  The prime minister was -- had to operate

10  under the law that was in place at the time.  He wasn't saying

11  that the client waived his right to constitutional due process

12  protection.  He wasn't saying that if there is a change in the

13  law, we are not entitled to rely on it.

14         THE COURT:  So if I understand what you are saying is

15  the only way that he could have waived subsequently is to have

16  uttered the magic words we hereby waive, we hereby wish to waive

17  our personal jurisdiction?

18         MS. FERGUSON:  Once you timely have filed the Rule

19  12(b)(2) Motion, after that there needs to be an express waiver.

20  Express.

21         THE COURT:  Has the Supreme Court ever said that? I

22  don't believe the D.C. Circuit has ever said that unless -- if

23  you have got a D.C. Circuit case that says that, I would love to

24  see it.

25         MS. FERGUSON:  Well, I will look, but I will say that

1    none of the Plaintiffs' cases involve a situation where a party

2    timely raised a 12(b)(2) Motion and didn't expressly waive and

3    yet the Court has still found a waiver.

4             THE COURT:  Well, let's just follow, for the sake of

5    discussion, follow me on this.  If the Supreme Court has never

6    said and the D.C. Circuit has never said a subsequent waiver

7    after a proper Motion has been filed, which in this case no one

8    is questioning that that was filed, but a subsequent waiver can

9    be done implicitly as opposed through actions and through words.

10            It doesn't have to be quote "express" close quote.  If

11   there is no opinion that says it has to be -- there is no

12   precedent out there or a statute that says it has to be express.

13   It can't be implicit.

14            Assume that for the sake of discussion.  Why would it

15   make sense for this Court or any Court for that matter to not

16   permit an implicit waiver through actions or words that are

17   clearly tantamount to a waiver? Doesn't make sense to do that?

18            MS. FERGUSON:  When at the same time the Defendants are

19   saying we are preserving the defense, we are raising it as an

20   affirmative defense in their Answer, I mean I think to treat a

21   party as having waived an important jurisdictional defense

22   requires I think, you know, a clear express conduct constituting

23   a waiver.

24            THE COURT:  Remind me if you can, I don't know if you

25   can or not, but remind me after the Court issued its opinion,

1     this Court issued its opinion relying upon the prime minister's

2     representations in granting the Motion to Vacate, after that

3     event, what would have been the next pleading if you can recall?

4            MS. FERGUSON:  We filed an Answer which raised -- which

5     included personal jurisdiction as an affirmative defense.

6            THE COURT:  That was within how long? 30 days, 60 days?

7            MS. FERGUSON:  It would have been very soon after.  I

8     can --

9            THE COURT:  Soon thereafter.

10           MS. FERGUSON:  Right.  So the Court's vacatur decision

11    was in 2011.  I don't know the exact month, but our Answer was

12    filed July 20, 2011, and the third affirmative defense was this

13    Court lacks personal jurisdiction over the Defendants.

14           THE COURT:  And then, okay, that being the case, then

15    why not after Goodyear came out did you not raise the issue

16    then?

17           MS. FERGUSON:  Because I think, you know, hindsight

18    seems to be 20/20 here but --

19           THE COURT:  It always is.

20           MS. FERGUSON:  Goodyear did not address the situation

21    where a Defendant had an office in the forum.  It dealt with,

22    you know, a few tires had found their way from France or

23    Luxemburg to North Carolina; and no one was interpreting

24    Goodyear as addressing the situation where a Defendant had a

25    local office.  And Daimler -- I mean the Supreme Court doesn't

1     take cases just to repeat itself.  Daimler was addressing this

2     question of let's say you have a Defendant who has multiple

3     offices in the forum, in that case Daimler did $6.4 billion'

4     worth of business in the forum, is that enough and the Court

5     said, no, you have to look at the context of the forum and

6     context of the worldwide operations of Daimler.

7           And only if it meets that proportionality test would

8     you even consider whether it is the exceptional case where the

9     Court would exercise jurisdiction even though it is not its

10    principal place of business.

11          THE COURT:  So it is your position that there is no

12    place within the United States that the PLO or PA is at home?

13          MS. FERGUSON:   That is my position, yes, but that

14    would not rule out specific -- the exercise of specific

15    jurisdiction.  So you can have -- you can have a Defendant in an

16    Anti-Terrorism Act case and we will posit the Defendant

17    different from the PA or PLO who have some continuous and

18    systematic activity in the forum which is required in specific

19    jurisdiction but they are not at home there.

20          But from that forum, they are funding terrorism or, for

21    example, the Leeche that the Plaintiffs cited to you from the

22    Second Circuit is a classic example of that where the allegation

23    was that the bank was providing material support to Hezbollah

24    and using the New York banking system to do so.

25          And so that was a case where the Lebanese bank was not

1    at home in New York, but the Court could still exercise

2    jurisdiction under the Anti-Terrorism Act.

3              THE COURT:  Does the PLO have a mission at the UN?

4              MS. FERGUSON:  But that would not but that -- it does.

5              THE COURT:  The answer is yes?

6              MS. FERGUSON:  Yes.

7              THE COURT:  In New York and it has got obviously

8    offices here in D.C., right?

9              MS. FERGUSON:  Right.

10             THE COURT:  Hold on.  It has got staff in both places,

11   right?

12             MS. FERGUSON:  Correct.

13             THE COURT:  And you are taking the position that

14   notwithstanding those presences in those two major cities, it is

15   not at home in either one?

16             MS. FERGUSON:  Correct.

17             THE COURT:  It is only at home on the Left Bank?

18             MS. FERGUSON:  It might be continuous and systematic

19   for the purpose of the exercise of specific jurisdiction if the

20   Plaintiffs could show that this lawsuit arose out of U.S.

21   activities which there is now evidence of; but is not enough for

22   the exercise of general jurisdiction because the Supreme Court

23   says that the Plaintiffs would need to show that the activities

24   in the U.S. are sort of substantial in comparison to worldwide

25   activities, and we have actually submitted a declaration showing

1    that it is a very tiny faction of their worldwide activities.

2           I guess I also wanted to address -- I think it is

3    really fundamental that there is a different due process rule or

4    the Anti-Terrorism Act is somehow special.

5           THE COURT:  In essence what you are asking this Court

6    to rule, just like you were asking Judge Daniels to rule and

7    apparently my colleagues Kessler -- well,  Friedman hasn't ruled

8    yet -- so you are asking Freidman to rule that the PLO/PA isn't

9    at home anywhere in the United States and, therefore, there is

10   no way any Federal Court can have personal jurisdiction over

11   them.

12          MS. FERGUSON:  I want to make it clear.  That's not my

13   position.

14          THE COURT:  It sure sounds like it.

15          MS. FERGUSON:  Let me be very clear.  If the cause of

16   action -- if the Plaintiffs' lawsuit arises out of U.S. based

17   activity, there would be specific jurisdiction but there is no

18   evidence of that.  I think it is unclear after Walden, but let's

19   assume --

20          THE COURT:  Hold on.  ATA cases, for the purpose of an

21   ATA cases then.

22          MS. FERGUSON:  Right, right, for purposes of ATA cases

23   so --

24          THE COURT:  Then there is no place they are at home for

25   the purpose of an ATA suit in the United States?

1           MS. FERGUSON: I would direct your attention to the

2     Second Circuit case law coming out of 9/11.  There is a 2008 In

3     Re:  9/11-case and then there is a 2013 In Re:  9/11-case where

4     a number of Defendants have been dismissed from ATA cases for

5     lack of personal jurisdiction applying the same due process

6     test; and the Courts require either that there is a sort of

7     continuous and systematic presence or -- now an at-home test for

8     general jurisdiction but for specific jurisdiction there needs

9     to be a deliberate targeting, either a U.S.  based conduct that

10    gives rise to the injury or it is deliberate targeting of  U.S.

11    This is the rule that the D.C. Circuit adopted in Price versus

12    Libya.  This is the rule that the D.C. Circuit adopted in Mwani

13    versus Bin Laden -- that in a terrorism case or Libya was a

14    U.S. -- two U.S. people were tortured, that you need to show

15    that not just it was foreseeable that U.S. people could be hurt,

16    that the D.C. Circuit has not adopted that test, the Second

17    Circuit has rejected that test.  You need to show a deliberate

18    targeting, an expressed aiming. So if you have a Defendant,

19    let's say they are planning an attack on a U.S. installation

20    like in Mwani, it was the U.S. Embassy in Nairobi or they are

21    planning like in the an al-Qaeda cases an attack on the U.S.,

22    yes, the Court could exercise jurisdiction, specific

23    jurisdiction.

24           If the U.S.  is being used as a base to fund or U.S.

25    banking services are being used to facilitate terrorism, then,

1    yes, the Court could exercise specific jurisdiction, but this

2    case has no connection to the United States whatsoever.  So

3    that's the fundamental difference.

4         THE COURT:  Why don't you take a minute and wrap up

5    here.

6         MS. FERGUSON:  Okay.  There is no waiver because we

7    have timely filed our 12(b)(2) Motion and we did not expressly

8    waive it.  In fact, after the Fayyad declaration we preserved it

9    in our Answer.  And if we were to eventually get to the Court of

10   Appeals, we would be entitled to rely on Daimler.

11        With respect to the Plaintiff's arguments that Daimler

12   doesn't apply, there is nothing special about Daimler.  Daimler

13   has been applied in all sorts of cases.  It is not a case about

14   commercial activity.  It was a case about alleged human rights

15   abuses.

16        There is nothing special about the Anti-Terrorism Act.

17   Courts interpreting the Anti-Terrorism Act routinely applied the

18   same due process standards.  The PA and PLO are entitled to due

19   process.  The cases that the Plaintiffs rely on been have been

20   superseded by a D.C. Circuit case called GSS Corporation which

21   says that foreign entities unless they are a foreign state,

22   which is covered by the foreign Sovereign Immunity Act, foreign

23   entities are entitled to due process.  Al-Qaeda has enjoyed the

24   due process standard for personal jurisdiction.

25        So there is no exemption from due process for the PA

1    and PLO.  This notion that because there was a nationwide

2    service of process, due process doesn't apply is not at all

3    consistent with the case law cases dealing with service under

4    4(k)(1) and nationwide service of process routinely say you need

5    to have service plus due process.  It just -- the  difference is

6    you look to contacts of the United States in general rather

7    than just the foreign state.

8              So there is no escaping the application of Daimler.  I

9    think when you look at Daimler, the significant contacts that

10   Daimler had in California versus the very insignificant contacts

11   we have identified in the Maen Areikat declaration, I think you

12   will find that Plaintiffs cannot meet the Daimler test.

13             With respect to specific jurisdiction, there is no

14   evidence whatsoever after fact discovery is closed that this

15   bombing had anything to do with anything that happened in the

16   United States.  There was no funding from the United States.

17   Thank you, your Honor.

18             THE COURT:  All right.

19             MR. LOWELL:  Would you give me a minute?

20             THE COURT:  I will give you something better than that.

21   In cases like this, and I don't have arguments in many cases

22   because of the constraints of my other responsibilities, but I

23   usually give the parties a week to submit a supplemental

24   pleading if they want to.  They are not required to.  You don't

25   have to do it, but it was certainly my experience when I was in

1   your shoes that, you know, I would be at the bar afterwards or

2   having a cup of coffee -- they didn't have Starbucks when I was

3   in your shoes -- and I would be saying, yes, I wish I had  said

4   this or I wish I had thought of this or that.  Well, so because

5   I know that that's a reality in the lives of most litigators, I

6   usually give you ten days to submit a supplemental pleading.

7   Not rounds of plead, not rebuttals and replies, not that.

8        But you can have until next Friday to submit whatever

9   you want, but the limit is 15 pages.  It has got to be less, 15

10  or less; and it has to be limited to, you know, issues that

11  arose during the argument, not raising new issues.  Issues that

12  arose during the discussion today, if you feel that you need to

13  supplement whatever you have argued or, you know, respond

14  further on a particular point, you are welcome to do that.

15       And actually now that I think about it, I usually give

16  you 15 days from when Patty gives you the transcript.  So I will

17  wait until Patty gives you the transcript, and then you can have

18  15 days from that day because, I don't know, it takes her a few

19  days usually to do the transcript.  Whatever date she gives you

20  the transcript, you have 15 days from that; and that way you can

21  supplement it.

22       The practical reality is, counsel, whichever way I

23  decide in this case I am going to have to write some kind of an

24  opinion; and I have got a six-week criminal securities fraud

25  trial starting right after Labor Day and I do have a couple

1   weeks of vacation.  I don't think I will be getting this opinion

2   out until October as a practical matter.  So the time you have

3   until Patty has given you the transcript is well used.

4           MR. LOWELL:  May I ask a question procedurally?  Is it

5   your practice, your Honor, as to your last point to make a

6   ruling with opinion to follow or wait; or it depends on the

7   issue?

8           THE COURT:  No, I usually just issue the opinion.

9   There are some instances where because of exigent circumstances

10  I will just announce what my ruling is and then say the opinion

11  to follow.  But that's pretty rare.  I only do that in very

12  limited -- usually criminal cases like Suppression Motions,

13  things like that.

14          MR. LOWELL:  Okay.

15          MR. HIBEY:  Your Honor, these are simultaneous

16  submissions?

17          THE COURT:  Yes, same day.

18          MR. HIBEY:  The 15 days would be a business day?

19          THE COURT:  Yes.

20          MR. LOWELL:  At 5' clock or --

21          THE COURT:  Let's say close of business.

22          MR. LOWELL:  Close of business 15th day after we get

23  the transcript to respond to the arguments that were made in

24  court as opposed to the ones that we have already wasted a lot

25  of trees on.  Got it.

1          THE COURT:  Yes.  I knew it would devolve into this.

2     Thank you for way above average pleadings and way above average

3     oral arguments on, you know, an issue that really is tailor made

4     for Fed Courts classes all over the United States.  I felt like

5     I was back in law school again and, you know, I am sure Mr.

6     Hibey was thinking of other things at the moment, but --

7          MR. HIBEY:  Which he will keep to himself.

8          THE COURT:  But it is an interesting issue, to say the

9     least, and it is an issue where there is obvious serious

10    consequences for parties not only in this District but around

11    the country.  So thank you for your assistance, counsel.  I

12    appreciate it very much.

13          (Whereupon, at 4:47 p.m., the proceedings were

14    concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE OF REPORTER

2

3            I, Patty A. Gels, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'** 

**'03** [1] - 21:7

**0**

**08-0496** [1] - 3:2

**1**

**1** [2] - 34:12
**10** [1] - 7:3
**100,000** [1] - 7:3
**12** [3] - 3:17, 7:3, 8:11
**12(b)(2** [8] - 10:24, 36:10, 36:12, 37:13, 37:17, 39:19, 40:2, 46:7
**1200** [1] - 1:17
**13** [1] - 33:11
**15** [6] - 48:9, 48:16, 48:18, 48:20, 49:18
**15th** [2] - 1:20, 49:22

**2**

**20** [3] - 3:13, 3:14, 41:12
**20/20** [1] - 41:18
**2000's** [1] - 20:24
**20001** [1] - 1:24
**20005** [1] - 1:21
**2001** [1] - 21:3
**2002** [2] - 3:19, 21:6
**2003** [2] - 3:25, 21:3
**20036** [1] - 1:17
**2005** [1] - 4:1
**2007** [3] - 5:21, 11:1, 21:20
**2008** [1] - 45:2
**2011** [3] - 8:17, 41:11, 41:12
**2013** [1] - 45:3
**2014** [4] - 1:6, 4:2, 7:16, 7:17
**202** [1] - 1:24
**21** [3] - 18:11, 18:16, 27:22
**27th** [1] - 7:17
**29** [1] - 1:6

**3**

**3** [1] - 33:10
**30** [1] - 41:6
**3:30** [1] - 1:7

**4**

**4** [1] - 16:9
**4(k)(1** [1] - 47:4
**4700-A** [1] - 1:23
**4:47** [1] - 50:13
**4k)(1)** [1] - 24:9

**5**

**5** [3] - 3:14, 17:16, 49:20
**50** [1] - 13:12

**58** [1] - 13:12

**6**

**6** [1] - 19:4
**6.4** [1] - 42:3
**60** [1] - 41:6
**600** [1] - 30:10
**655** [1] - 1:20
**69** [1] - 36:18

**7**

**7** [4] - 19:4, 22:11, 34:16, 35:15
**75** [1] - 7:18

**8**

**8** [5] - 16:9, 19:4, 22:11, 34:16, 35:15
**88150** [1] - 7:17

**9**

**9/11** [1] - 45:2
**9/11-case** [2] - 45:3
**962-0200** [1] - 1:24
**99.5** [1] - 17:18

**A**

**abandoned** [2] - 18:23, 21:9
**abandonment** [1] - 24:15
**ABBE** [1] - 1:16
**Abbe** [1] - 3:6
**ability** [1] - 15:23
**able** [3] - 5:5, 16:4, 37:18
**above-entitled** [1] - 51:5
**abroad** [1] - 32:5
**abundantly** [1] - 16:10
**abuses** [1] - 46:15
**accept** [2] - 31:17, 37:6
**accepted** [1] - 19:16
**accepts** [1] - 38:22
**accurately** [1] - 32:17
**acknowledge** [1] - 12:22
**acknowledged** [1] - 36:17
**act** [1] - 46:22
**Act** [6] - 4:8, 42:16, 43:2, 44:4, 46:16, 46:17
**action** [2] - 33:13, 44:16
**actions** [5] - 12:12, 32:5, 34:21, 40:9, 40:16
**activities** [13] - 6:19, 10:21, 18:9, 27:23, 28:1, 28:9, 30:3, 31:9, 31:10, 43:21, 43:23, 43:25, 44:1
**activity** [6] - 18:20, 30:10, 31:3, 42:18, 44:17, 46:14
**acts** [1] - 35:17
**add** [1] - 7:12
**addition** [1] - 29:14
**additional** [3] - 5:14, 5:16, 15:22

**address** [12] - 7:9, 9:5, 14:19, 18:9, 19:11, 24:16, 30:12, 30:19, 32:2, 33:4, 41:20, 44:2
**addressed** [5] - 17:7, 18:6, 18:8, 27:13, 33:18
**addresses** [1] - 38:14
**addressing** [4] - 11:11, 22:11, 41:24, 42:1
**adjective** [1] - 29:21
**adopted** [6] - 7:4, 10:11, 10:13, 45:11, 45:12, 45:16
**adopting** [1] - 10:11
**advantage** [1] - 15:2
**affair** [1] - 23:19
**affairs** [2] - 25:7, 27:3
**affect** [1] - 33:2
**affidavit** [1] - 38:13
**affiliated** [1] - 3:19
**afforded** [1] - 7:25
**afternoon** [2] - 3:6, 14:24
**afterwards** [1] - 48:1
**aggressive** [1] - 28:1
**ago** [13] - 7:14, 13:3, 15:6, 17:10, 17:16, 19:4, 20:8, 23:15, 31:17, 34:16, 34:19, 35:15
**ahead** [1] - 30:16
**aided** [1] - 2:2
**aim** [2] - 33:1, 33:2
**aimed** [1] - 31:25
**aiming** [1] - 45:18
**AL** [1] - 1:4
**al** [3] - 3:3, 45:21, 46:23
**al-Qaeda** [2] - 45:21, 46:23
**allegation** [2] - 34:3, 42:22
**alleged** [3] - 31:16, 33:6, 46:14
**allow** [1] - 4:17
**allowable** [2] - 17:12, 17:13
**allowed** [1] - 22:4
**allowing** [1] - 22:6
**almost** [3] - 16:1, 20:20, 34:18
**ambiguity** [1] - 36:24
**amenable** [1] - 29:10
**amended** [1] - 23:18
**Amendment** [2] - 8:1, 8:2
**Americans** [6] - 31:23, 31:25, 32:1, 32:11, 33:7, 33:10
**Americas** [1] - 7:16
**amicus** [1] - 9:1
**amount** [1] - 18:2
**analysis** [1] - 27:16
**announce** [2] - 8:21, 49:10
**announced** [1] - 17:10
**answer** [9] - 11:1, 29:24, 36:23, 39:4, 40:20, 41:4, 41:11, 43:5, 46:9
**Anti** [6] - 4:8, 42:16, 43:2, 44:4, 46:16, 46:17
**anti** [1] - 36:7
**Anti-Terrorism** [6] - 4:8, 42:16, 43:2, 44:4, 46:16, 46:17

**anti-terrorism** [1] - 36:7
**anyway** [1] - 27:12
**appeal** [7] - 5:6, 11:10, 12:20, 14:16, 21:16, 37:18, 37:22
**Appeals** [5] - 11:15, 13:21, 14:18, 16:13, 46:10
**APPEARANCES** [1] - 1:14
**appeared** [1] - 26:12
**application** [1] - 47:8
**applied** [5] - 12:8, 17:9, 23:23, 46:13, 46:17
**applies** [2] - 16:25, 23:15
**apply** [8] - 21:13, 24:1, 27:8, 27:10, 34:24, 35:1, 46:12, 47:2
**applying** [3] - 28:3, 28:4, 45:5
**appreciate** [2] - 19:11, 50:12
**approached** [1] - 9:15
**approaching** [1] - 7:23
**Arab** [1] - 3:3
**ARAB** [1] - 1:8
**Areikat** [2] - 6:24, 47:11
**argue** [2] - 6:2, 37:17
**argued** [6] - 4:11, 5:10, 5:18, 9:18, 21:22, 48:13
**arguing** [1] - 23:24
**argument** [14] - 3:11, 5:16, 8:16, 11:5, 12:10, 14:25, 16:13, 17:22, 20:23, 22:3, 26:17, 38:9, 39:7, 48:11
**arguments** [10] - 11:10, 19:25, 22:18, 22:23, 23:12, 26:14, 46:11, 47:21, 49:23, 50:3
**arises** [1] - 44:16
**arm** [1] - 24:12
**arose** [4] - 3:18, 43:20, 48:11, 48:12
**articulated** [1] - 29:2
**ARTRIP** [1] - 1:22
**assert** [1] - 35:8
**asserted** [1] - 21:2
**assistance** [1] - 50:11
**assume** [3] - 37:6, 40:14, 44:19
**assuming** [2] - 25:5, 38:5
**at-home** [7] - 4:11, 9:7, 10:11, 17:8, 17:9, 17:10, 45:7
**ATA** [12] - 17:2, 24:3, 24:16, 26:18, 29:11, 29:17, 35:2, 44:20, 44:21, 44:22, 44:25, 45:4
**attack** [6] - 31:19, 31:24, 31:25, 33:8, 45:19, 45:21
**attacks** [1] - 17:17
**attempt** [1] - 26:22
**attention** [1] - 45:1
**Authority** [1] - 12:5
**available** [1] - 26:13
**Avenue** [1] - 1:17
**average** [2] - 50:2
**awful** [1] - 13:6

**B**

**background** [1] - 12:5

**Bank** [7] - 3:20, 3:22, 6:21, 28:9, 29:14, 33:20, 43:17
**bank** [2] - 42:23, 42:25
**banking** [5] - 27:23, 34:4, 34:6, 42:24, 45:25
**banner** [1] - 18:22
**bar** [1] - 48:1
**base** [1] - 45:24
**based** [4] - 4:8, 12:21, 44:16, 45:9
**basis** [7] - 8:7, 19:19, 21:1, 22:20, 27:15, 31:14, 33:23
**Baun** [1] - 32:25
**bear** [1] - 22:23
**became** [1] - 10:7
**becomes** [1] - 29:11
**BEFORE** [1] - 1:12
**begin** [1] - 24:19
**beginning** [1] - 5:25
**benefit** [4] - 8:3, 11:8, 14:14, 16:8
**better** [3] - 14:17, 24:5, 47:20
**between** [5] - 20:18, 23:1, 24:19, 33:17, 34:23
**billion'** [1] - 42:3
**Bin** [1] - 45:13
**bit** [1] - 12:4
**Biton** [1] - 32:21
**Bob** [1] - 3:7
**body** [1] - 17:2
**Boim** [1] - 32:3
**bomb** [1] - 31:4
**bombers** [1] - 32:17
**bombing** [5] - 3:23, 3:24, 31:19, 32:10, 47:15
**Branch** [2] - 25:7, 25:8
**breadth** [2] - 24:22, 26:18
**bridge** [2] - 13:19, 13:20
**brief** [6] - 8:25, 9:1, 9:2, 18:18, 19:9, 20:8
**briefed** [1] - 6:11
**briefing** [2] - 5:14, 5:16
**briefs** [1] - 11:21
**bring** [3] - 11:21, 31:8, 38:15
**brought** [3] - 12:6, 12:12, 17:1
**Brow** [1] - 23:3
**business** [12] - 4:15, 9:12, 9:25, 10:5, 10:7, 29:9, 42:4, 42:10, 49:18, 49:21, 49:22

**C**

**cake** [1] - 39:7
**Calder** [3] - 31:6, 31:12, 32:20
**California** [1] - 47:10
**cannot** [3] - 11:3, 35:14, 47:12
**Carolina** [1] - 41:23
**carve** [1] - 29:17
**case** [96] - 3:2, 3:16, 3:23, 4:17, 5:7, 5:13, 5:18, 5:20, 5:24, 6:1, 6:5, 6:6, 6:7, 6:12, 7:13, 7:15, 8:8, 8:19, 8:24, 9:19, 10:1, 10:2, 10:5, 10:17, 11:18, 11:21,

12:17, 13:10, 14:4, 14:16, 15:13, 15:15, 15:17, 15:21, 15:22, 15:25, 16:12, 16:23, 16:24, 16:25, 17:9, 18:22, 18:25, 19:1, 19:20, 19:24, 20:1, 20:12, 20:13, 20:18, 21:6, 21:19, 21:23, 22:4, 22:13, 23:2, 23:3, 25:13, 25:19, 26:4, 26:9, 26:11, 27:3, 30:7, 31:16, 32:3, 32:4, 32:22, 32:25, 34:22, 35:2, 36:3, 36:9, 36:11, 36:13, 37:16, 39:23, 40:7, 41:14, 42:3, 42:8, 42:16, 42:25, 45:2, 45:13, 46:2, 46:13, 46:14, 46:20, 47:3, 48:23
**cases** [52] - 4:8, 5:9, 6:8, 6:11, 7:18, 8:25, 9:6, 9:10, 10:10, 10:12, 12:11, 14:8, 14:11, 14:13, 16:22, 17:1, 19:12, 21:4, 21:15, 21:22, 22:1, 22:8, 22:10, 22:12, 22:17, 23:1, 26:5, 26:7, 27:1, 27:3, 30:19, 32:2, 32:8, 33:12, 33:22, 34:9, 36:7, 40:1, 42:1, 44:20, 44:21, 44:22, 45:4, 45:21, 46:13, 46:19, 47:3, 47:21, 49:12
**cast** [1] - 11:18
**category** [3] - 17:4, 17:5, 25:12
**Central** [1] - 20:12
**certainly** [6] - 7:22, 8:10, 11:24, 13:18, 36:5, 47:25
**CERTIFICATE** [1] - 51:1
**certify** [1] - 51:3
**cetera** [2] - 22:20, 34:1
**Chadbourne** [2] - 1:16, 3:7
**change** [19] - 7:22, 9:14, 10:9, 11:8, 15:13, 16:4, 16:17, 17:8, 21:24, 22:15, 22:21, 27:8, 31:5, 31:13, 34:15, 34:17, 34:18, 35:6, 39:12
**changed** [2] - 15:18, 27:9
**changer** [5] - 16:20, 26:2, 26:3, 26:6, 26:9
**changes** [3] - 12:19, 14:4, 23:11
**changing** [2] - 15:11, 27:13
**CHARLES** [1] - 1:18
**Charles** [1] - 3:10
**Chevalier** [1] - 1:20
**Circuit** [12] - 20:1, 32:3, 39:22, 39:23, 40:6, 42:22, 45:2, 45:11, 45:12, 45:16, 45:17, 46:20
**circumstances** [5] - 15:25, 16:1, 24:11, 26:25, 49:9
**cite** [4] - 7:15, 9:7, 20:1, 31:6
**cited** [2] - 8:24, 42:21
**cites** [2] - 10:10, 38:22
**cities** [1] - 43:14
**citizens** [3] - 20:25, 33:1, 33:2
**civil** [1] - 3:2
**Civil** [1] - 24:5
**claims** [1] - 22:2
**Clark** [1] - 5:21
**classes** [1] - 50:4
**classic** [1] - 42:22
**clause** [1] - 25:23
**clear** [6] - 4:3, 16:11, 24:20, 40:22, 44:12, 44:15

**clearly** [1] - 40:17
**client** [2] - 13:11, 39:11
**clients** [1] - 11:19
**clock** [2] - 15:7, 49:20
**close** [4] - 4:16, 40:10, 49:21, 49:22
**closed** [1] - 47:14
**coffee** [1] - 48:2
**collateral** [3] - 34:24, 36:6, 36:8
**collaterally** [1] - 16:3
**colleague** [1] - 5:12
**colleagues** [2] - 3:10, 44:7
**Collyer's** [1] - 32:21
**COLUMBIA** [1] - 1:2
**Columbia** [2] - 6:8, 29:13
**coming** [5] - 7:8, 9:6, 10:6, 14:9, 45:2
**commentary** [1] - 29:6
**commerce** [3] - 8:19, 9:18, 10:16
**commercial** [4] - 26:10, 27:3, 27:23, 46:14
**commitment** [3] - 19:8, 19:20, 22:5
**companies** [1] - 26:3
**companion** [1] - 6:8
**company** [2] - 25:11, 29:7
**compared** [1] - 6:18
**comparison** [2] - 7:2, 43:24
**computer** [1] - 2:2
**computer-aided** [1] - 2:2
**concern** [1] - 14:10
**concerned** [1] - 26:20
**conclude** [3] - 28:2, 33:16, 34:13
**concluded** [5] - 23:3, 27:11, 27:25, 28:7, 50:14
**conclusion** [6] - 5:8, 8:8, 29:18, 29:20, 30:6, 33:5
**concurrence** [1] - 29:5
**Condoleezza** [1] - 12:14
**conduct** [8] - 15:19, 15:22, 19:22, 34:22, 37:11, 38:11, 40:22, 45:9
**confronted** [1] - 16:19
**Congress** [1] - 23:18
**Congress'** [2] - 26:22, 26:24
**Congressional** [1] - 23:22
**connection** [4] - 4:25, 14:11, 32:18, 46:2
**consequences** [4] - 32:24, 33:13, 33:15, 50:10
**consider** [2] - 32:2, 42:8
**consideration** [2] - 24:16, 35:15
**considerations** [1] - 35:2
**considered** [3] - 26:15, 27:25, 35:19
**considers** [1] - 29:12
**consistent** [1] - 47:3
**constitute** [3] - 12:3, 37:15, 38:24
**constituted** [1] - 38:11
**constitutes** [2] - 37:11, 37:25
**constituting** [1] - 40:22
**constitutional** [6] - 7:25, 13:17, 13:22, 14:2, 14:6, 39:11
**constraints** [1] - 47:22

**constructed** [1] - 35:23
**contacts** [19] - 6:17, 6:19, 17:25, 18:2, 18:3, 18:7, 18:18, 28:7, 29:10, 30:2, 30:25, 31:2, 31:13, 36:20, 47:6, 47:9, 47:10
**contemporaneous** [1] - 39:2
**contend** [1] - 36:19
**contested** [1] - 18:5
**context** [18] - 15:5, 16:23, 17:1, 17:9, 23:16, 23:17, 24:3, 26:7, 27:2, 27:9, 27:17, 27:21, 29:22, 30:7, 35:1, 35:13, 42:5, 42:6
**continue** [3] - 36:19, 37:2, 37:3
**continues** [1] - 31:6
**continuing** [1] - 19:12
**continuous** [12] - 4:4, 9:4, 10:21, 18:9, 18:17, 27:16, 28:2, 29:9, 29:22, 42:17, 43:18, 45:7
**continuously** [1] - 9:20
**contracts** [1] - 27:23
**controlling** [6] - 5:5, 11:9, 15:11, 15:14, 16:17, 27:12
**convince** [1] - 36:5
**corporate** [1] - 26:5
**corporation** [3] - 25:10, 28:25, 46:20
**corporations** [1] - 28:25
**correct** [6] - 5:10, 20:21, 35:15, 43:12, 43:16, 51:4
**counsel** [9] - 3:4, 12:16, 15:1, 21:21, 21:23, 26:16, 48:22, 50:11
**count** [1] - 18:1
**country** [2] - 5:9, 50:11
**couple** [2] - 8:17, 48:25
**course** [4] - 12:22, 15:19, 19:15, 19:22
**COURT** [56] - 1:1, 3:13, 5:8, 5:12, 5:24, 7:10, 8:4, 8:7, 11:17, 12:1, 12:24, 14:20, 14:23, 28:10, 28:20, 30:16, 30:20, 35:20, 35:23, 36:4, 37:5, 37:9, 37:24, 38:3, 38:5, 38:12, 38:22, 39:6, 39:14, 39:21, 40:4, 40:24, 41:6, 41:9, 41:14, 41:19, 42:11, 43:3, 43:5, 43:7, 43:10, 43:13, 43:17, 44:5, 44:14, 44:20, 44:24, 46:4, 47:18, 47:20, 49:8, 49:17, 49:19, 49:21, 50:1, 50:8
**court** [2] - 38:16, 49:24
**Court** [68] - 1:22, 1:23, 3:25, 4:2, 4:17, 4:20, 5:8, 6:22, 6:23, 7:6, 7:8, 7:13, 7:17, 7:19, 7:20, 9:17, 10:1, 10:2, 10:7, 10:18, 11:15, 11:19, 12:2, 13:2, 13:5, 13:7, 13:16, 13:21, 13:22, 13:24, 14:9, 14:14, 14:18, 15:2, 16:6, 16:8, 16:13, 16:14, 20:4, 20:10, 22:6, 22:24, 24:20, 27:1, 28:17, 30:14, 31:16, 38:14, 38:22, 39:21, 40:3, 40:5, 40:15, 40:25, 41:1, 41:13, 41:25, 42:4, 42:9, 43:1, 43:22, 44:5, 44:10, 45:22, 46:1, 46:9
**Court's** [11] - 11:6, 12:21, 13:17, 13:23, 14:2, 14:6, 14:10, 14:15, 29:5, 36:21, 41:10
**Courthouse** [1] - 1:23

**COURTROOM** [1] - 3:2
**courtroom** [1] - 3:8
**courts** [16] - 7:9, 7:22, 8:25, 9:15, 10:11, 15:1, 18:22, 25:6, 25:22, 26:19, 26:23, 28:21, 35:6, 37:12, 46:17, 50:4
**Courts** [11] - 8:18, 9:12, 10:12, 10:13, 14:10, 22:1, 22:4, 22:9, 23:20, 23:21, 45:6
**covered** [1] - 46:22
**create** [1] - 26:22
**criminal** [2] - 48:24, 49:12
**criteria** [1] - 4:16
**cup** [1] - 48:2
**current** [1] - 6:24
**CV08-0496** [1] - 1:4

# D

**D.C** [14] - 1:24, 4:9, 4:13, 6:25, 7:1, 9:20, 39:22, 39:23, 40:6, 43:8, 45:11, 45:12, 45:16, 46:20
**Daimler** [54] - 4:3, 4:10, 4:12, 6:22, 6:23, 7:15, 7:18, 7:19, 7:23, 8:3, 9:2, 9:11, 9:14, 10:9, 10:18, 11:15, 15:12, 16:20, 16:22, 17:7, 22:13, 23:11, 23:14, 24:10, 24:20, 24:24, 25:10, 26:1, 26:9, 26:20, 27:7, 27:11, 27:15, 28:4, 28:10, 28:25, 30:19, 35:1, 35:8, 35:17, 41:25, 42:1, 42:3, 42:6, 46:10, 46:11, 46:12, 47:8, 47:9, 47:10, 47:12
**damn** [1] - 13:6
**Daniels** [11] - 6:13, 6:14, 7:7, 16:19, 17:13, 23:25, 27:6, 29:15, 35:10, 36:2, 44:6
**Daniels'** [1] - 7:4
**date** [2] - 5:9, 48:19
**days** [8] - 41:6, 48:6, 48:16, 48:18, 48:19, 48:20, 49:18
**DC** [2] - 1:17, 1:21
**dealing** [1] - 47:3
**dealt** [1] - 41:21
**decide** [3] - 11:13, 29:8, 48:23
**decided** [7] - 7:17, 8:17, 15:25, 20:18, 24:14, 25:22, 27:2
**decision** [13] - 4:3, 4:21, 10:10, 16:2, 20:22, 21:14, 27:14, 30:14, 31:6, 32:21, 34:15, 41:10
**decisions** [3] - 5:4, 15:2, 16:8
**declaration** [9] - 6:24, 19:7, 36:16, 38:13, 39:3, 39:5, 43:25, 46:8, 47:11
**declined** [1] - 10:18
**deemed** [1] - 29:22
**default** [10] - 11:2, 11:17, 12:11, 12:12, 21:5, 21:6, 21:19, 21:25, 22:4, 22:19
**defaults** [1] - 19:5
**defend** [1] - 11:4
**Defendant** [32] - 1:9, 1:18, 4:3, 4:23, 4:25, 9:4, 9:8, 9:10, 9:22, 9:24, 10:3, 10:19, 10:20, 16:11, 20:3, 23:4, 23:7, 28:14, 29:18, 29:19, 31:8, 32:5, 32:7,

36:12, 41:21, 41:24, 42:2, 42:15, 42:16, 45:18
**Defendant's** [1] - 10:15
**defendants** [1] - 14:25
**Defendants** [37] - 3:9, 5:20, 6:17, 9:15, 11:14, 15:21, 16:3, 16:7, 17:11, 19:3, 19:9, 19:11, 19:19, 20:17, 21:4, 21:5, 21:7, 21:21, 22:12, 22:22, 24:23, 24:24, 26:17, 26:21, 31:18, 32:9, 32:22, 33:1, 33:6, 34:6, 36:9, 36:17, 36:19, 36:25, 40:18, 41:13, 45:4
**defense** [20] - 5:22, 6:2, 8:12, 8:14, 10:16, 10:24, 10:25, 20:6, 34:22, 36:14, 36:18, 37:1, 37:8, 37:18, 37:19, 40:19, 40:20, 40:21, 41:5, 41:12
**defenses** [3] - 12:20, 19:10, 19:13
**Delaware** [1] - 28:21
**delays** [1] - 23:5
**deliberate** [3] - 45:9, 45:10, 45:17
**denied** [1] - 3:25
**denying** [1] - 21:14
**depositions** [1] - 13:8
**DEPUTY** [1] - 3:2
**Desall** [1] - 32:13
**designated** [1] - 25:8
**desire** [2] - 11:20, 19:19
**detonated** [1] - 3:20
**developed** [1] - 17:2
**devolve** [1] - 50:1
**difference** [3] - 24:19, 46:3, 47:5
**differences** [1] - 34:23
**different** [8] - 5:20, 24:10, 34:5, 34:15, 36:8, 37:5, 42:17, 44:3
**differently** [1] - 37:10
**direct** [3] - 33:19, 35:13, 45:1
**directed** [2] - 31:20, 32:10
**direction** [1] - 37:6
**directly** [1] - 34:7
**disagree** [3] - 8:17, 11:3, 11:4
**discovery** [3] - 22:9, 37:14, 47:14
**discussing** [1] - 7:19
**discussion** [4] - 38:5, 40:5, 40:14, 48:12
**discussions** [1] - 27:7
**Dismiss** [10] - 3:25, 5:23, 6:10, 6:11, 8:13, 10:23, 18:13, 18:14, 21:14, 36:13
**dismiss** [1] - 36:10
**dismissals** [1] - 21:12
**dismissed** [2] - 6:6, 45:4
**distinction** [1] - 20:18
**DISTRICT** [3] - 1:1, 1:2, 1:12
**District** [10] - 6:7, 6:13, 7:16, 16:4, 24:7, 24:8, 29:13, 35:5, 50:10
**docket** [3] - 19:21, 30:10, 36:18
**Docket** [1] - 1:4
**doctrine** [1] - 12:7
**document** [1] - 37:24
**dollar** [1] - 34:7
**done** [3] - 12:18, 15:1, 40:9

**doubt** [3] - 30:22, 37:7
**down** [1] - 15:25
**due** [23] - 7:24, 13:17, 13:22, 14:2, 16:24, 24:22, 25:2, 25:3, 25:5, 25:9, 25:23, 35:7, 39:11, 44:3, 45:5, 46:18, 46:23, 46:24, 46:25, 47:2, 47:5
**during** [2] - 48:11, 48:12

# E

**e360** [1] - 18:22
**early** [1] - 20:24
**earned** [1] - 34:10
**eat** [1] - 39:7
**economy** [1] - 11:13
**effect** [2] - 33:14, 33:19
**effects** [3] - 32:6, 32:19, 33:2
**efficiency** [1] - 11:13
**effort** [1] - 13:3
**eight** [4] - 15:6, 15:7, 17:16, 31:17
**either** [8] - 3:22, 11:22, 21:18, 31:1, 36:11, 43:15, 45:6, 45:9
**eleventh** [1] - 13:11
**Embassy** [1] - 45:20
**employed** [1] - 7:2
**employees** [2] - 7:3, 9:9, 10:21
**end** [3] - 26:18, 30:1, 32:24
**enforcement** [1] - 12:12
**engage** [3] - 12:14, 19:6, 38:18
**engaged** [1] - 4:25
**enjoyed** [1] - 46:23
**entered** [1] - 21:19
**entire** [1] - 29:12
**entities** [8] - 24:22, 24:24, 24:25, 25:15, 25:21, 31:20, 46:21, 46:23
**entitled** [14] - 8:2, 11:8, 11:9, 11:15, 12:7, 13:21, 14:14, 14:16, 37:17, 39:13, 46:10, 46:18, 46:23, 51:5
**entity** [4] - 28:11, 28:15, 29:25
**entries** [2] - 19:21, 30:10
**entry** [1] - 36:18
**equivalent** [1] - 27:19
**escaping** [1] - 47:8
**especially** [2] - 21:16, 29:11
**essence** [1] - 38:20, 44:5
**essentially** [1] - 9:9
**estopped** [2] - 16:3, 20:23
**estoppel** [5] - 20:16, 24:15, 34:24, 36:6, 36:8
**ET** [1] - 1:4
**et** [3] - 3:3, 22:20, 34:1
**event** [1] - 41:3
**eventually** [1] - 46:9
**evidence** [4] - 34:5, 43:21, 44:18, 47:14
**evidences** [1] - 19:18
**exact** [1] - 41:11
**exactly** [1] - 5:13
**example** [3] - 10:2, 42:21, 42:22
**exception** [1] - 8:2

**exceptional** [4] - 4:16, 9:24, 10:2, 42:8
**exchange** [1] - 33:17
**excluding** [1] - 6:19
**exclusively** [1] - 27:4
**Executive** [2] - 25:6, 25:8
**exemption** [1] - 46:25
**exercise** [18] - 4:5, 4:17, 4:24, 5:3, 5:6, 10:3, 10:19, 13:18, 14:2, 14:7, 36:21, 42:9, 42:14, 43:1, 43:19, 43:22, 45:22, 46:1
**exercised** [3] - 7:20, 9:13, 10:18
**exercising** [1] - 14:10
**exigent** [1] - 49:9
**existed** [1] - 18:4
**expected** [1] - 32:24
**experience** [1] - 47:25
**explained** [1] - 27:15
**explaining** [1] - 29:21
**express** [6] - 38:2, 39:19, 39:20, 40:10, 40:12, 40:22
**expressed** [4] - 7:7, 23:22, 36:24, 45:18
**expressing** [1] - 14:10
**expression** [1] - 23:23
**expressly** [3] - 36:13, 40:2, 46:7
**extend** [2] - 24:2, 26:18
**extended** [1] - 23:21
**extending** [1] - 23:19
**extra** [1] - 35:21

# F

**F.B** [1] - 1:18
**facilitate** [1] - 45:25
**fact** [17] - 8:19, 8:20, 8:24, 8:25, 10:9, 10:25, 11:11, 15:9, 15:25, 16:16, 17:14, 20:8, 35:11, 36:6, 38:24, 46:8, 47:14
**faction** [1] - 44:1
**facts** [2] - 4:15, 6:25
**factual** [1] - 7:5
**failed** [1] - 21:15
**fair** [3] - 31:7, 31:10, 32:22
**fairly** [1] - 19:24
**families** [1] - 3:24
**far** [3] - 23:20, 24:2, 24:20
**fast** [1] - 4:2
**Fayyad** [4] - 12:16, 19:7, 36:16, 46:8
**February** [2] - 3:18, 4:1
**Fed** [1] - 50:4
**Federal** [6] - 7:13, 16:21, 23:20, 23:21, 24:5, 44:10
**felt** [1] - 50:4
**Ferguson** [12] - 3:10, 3:11, 15:3, 16:20, 20:23, 23:11, 23:24, 26:3, 26:11, 27:6, 30:13, 32:1, 33:18
**FERGUSON** [43] - 1:19, 3:16, 5:10, 5:13, 6:1, 7:12, 8:6, 8:9, 11:25, 12:4, 13:15, 14:22, 35:22, 35:25, 36:5, 37:8, 37:12, 38:2, 38:4, 38:11, 38:21, 39:2, 39:9, 39:18, 39:25, 40:18, 41:4, 41:7,

41:10, 41:17, 41:20, 42:13, 43:4, 43:6, 43:9, 43:12, 43:16, 43:18, 44:12, 44:15, 44:22, 45:1, 46:6

**few** [6] - 4:10, 4:19, 30:8, 35:20, 41:22, 48:18

**Fifth** [2] - 8:1, 8:2

**file** [4] - 8:12, 36:12, 37:21, 37:24

**filed** [15] - 3:25, 4:19, 5:23, 9:1, 10:23, 13:10, 21:2, 36:9, 37:13, 39:18, 40:7, 40:8, 41:4, 41:12, 46:7

**filing** [2] - 36:16, 37:14

**finally** [1] - 33:16

**finger** [1] - 19:1

**Fiore** [1] - 4:22

**firm** [1] - 19:8

**first** [8] - 3:13, 7:8, 7:10, 8:10, 14:19, 15:8, 23:12, 36:1

**fit** [1] - 25:22

**focused** [1] - 9:2

**follow** [4] - 40:4, 40:5, 49:6, 49:11

**followed** [1] - 36:7

**following** [3] - 5:16, 24:18, 34:13

**FOR** [1] - 1:2

**foreclose** [1] - 5:6

**foregoing** [1] - 51:3

**foreign** [11] - 24:24, 25:7, 25:16, 25:17, 27:3, 29:25, 46:21, 46:22, 47:7

**foreseeability** [2] - 31:7, 32:19

**foreseeable** [1] - 45:15

**foreseeably** [1] - 32:6

**forth** [2] - 4:12, 6:25

**forum** [20] - 4:5, 4:23, 5:1, 5:2, 6:20, 8:20, 9:4, 9:9, 9:11, 9:16, 10:5, 31:15, 32:25, 41:21, 42:3, 42:4, 42:5, 42:18, 42:20

**forums** [1] - 6:19

**forward** [11] - 3:4, 4:2, 18:24, 19:9, 19:20, 21:17, 22:13, 22:14, 26:17, 27:22, 38:13

**four** [2] - 18:11, 21:22

**fours** [1] - 20:15

**fourth** [1] - 14:25

**France** [1] - 41:22

**fraud** [1] - 48:24

**Freidman** [1] - 44:8

**Friday** [1] - 48:8

**Friedman** [12] - 5:11, 5:12, 11:11, 23:13, 24:1, 26:12, 26:15, 29:16, 32:1, 33:3, 33:18, 44:7

**Friedman's** [1] - 12:24

**front** [6] - 20:10, 22:3, 23:25, 26:12, 38:17

**full** [1] - 24:22

**fully** [2] - 6:11, 19:24

**fund** [1] - 45:24

**fundamental** [2] - 44:3, 46:3

**funded** [1] - 33:6

**funding** [3] - 34:4, 42:20, 47:16

**fundraised** [1] - 34:11

**funds** - 31:18, 31:20, 34:1, 34:7

**fungible** [1] - 34:9

## G

**game** [6] - 16:20, 23:11, 26:2, 26:3, 26:6, 26:9

**gauntlet** [2] - 35:23, 36:1

**Gels** [1] - 51:3

**GELS** [1] - 1:22

**general** [2] - 4:5, 4:17, 7:20, 7:23, 8:16, 8:22, 9:13, 10:3, 30:18, 43:22, 45:8, 47:6

**generally** [1] - 9:23, 37:21, 37:22

**generous** [1] - 35:16

**Gilmore** [9] - 5:18, 6:5, 15:25, 19:3, 20:18, 21:19, 21:23, 34:24, 36:10

**given** [2] - 28:11, 49:3

**Gonzales** [2] - 7:16, 26:4

**Goodyear** [33] - 8:16, 8:18, 8:24, 9:2, 9:5, 9:6, 9:17, 9:21, 10:11, 10:14, 10:16, 10:17, 11:16, 15:17, 16:22, 17:7, 18:4, 22:19, 23:14, 24:11, 24:20, 24:23, 26:1, 26:6, 28:4, 29:1, 30:18, 35:1, 35:8, 41:15, 41:20, 41:24

**gosh** [1] - 22:13

**Government** [3] - 17:25, 18:7, 28:9

**governments** [2] - 25:17

**granted** [2] - 6:5, 15:8

**granting** [1] - 41:2

**grounds** [1] - 22:14

**GSS** [1] - 46:20

**guess** [1] - 44:2

**gut** [1] - 26:18

## H

**Hafez** [1] - 3:19

**half** [6] - 15:24, 17:10, 17:11, 17:16, 22:8, 23:15

**halfheartedly** [1] - 18:21

**hallway** [1] - 16:1

**Hampshire** [1] - 1:17

**handful** [1] - 15:5

**handing** [1] - 30:4

**happenstantial** [2] - 31:24, 32:11

**Hardie** [1] - 20:2

**harmful** [1] - 32:23

**hat** [1] - 20:6

**head** [1] - 6:24, 11:21, 19:12

**HEARING** [1] - 1:11

**held** [5] - 10:7, 23:22, 32:23, 33:14, 37:12

**helicopters** [1] - 8:23

**hence** [1] - 15:17

**hereby** [1] - 39:16

**hesitated** [1] - 7:10

**Hezbollah** [1] - 42:23

**HIBEY** [5] - 1:19, 3:9, 49:15, 49:18, 50:7

**Hibey** [2] - 3:9, 50:6

**highlighted** [1] - 10:1

**himself** [2] - 3:20, 50:7

**hindsight** [1] - 41:17

**hold** [3] - 38:3, 43:10, 44:20

**holds** [1] - 4:22

**home** [42] - 4:11, 4:14, 6:20, 9:7, 9:21, 9:23, 9:24, 10:11, 17:8, 17:9, 17:10, 24:17, 24:18, 27:19, 28:5, 28:6, 28:8, 28:11, 28:14, 28:15, 28:18, 29:2, 29:3, 29:8, 29:13, 29:14, 29:17, 29:20, 29:22, 30:1, 30:6, 35:11, 42:12, 42:19, 43:1, 43:15, 43:17, 44:9, 44:24, 45:7

**Honor** [24] - 3:6, 3:16, 5:10, 8:9, 11:3, 12:4, 14:1, 14:24, 15:20, 18:17, 19:4, 19:5, 19:17, 20:7, 20:19, 20:21, 22:3, 26:13, 27:5, 30:8, 32:2, 47:17, 49:5, 49:15

**HONORABLE** [1] - 1:12

**hour** [1] - 13:11

**human** [1] - 46:14

**hunger** [1] - 20:2

**hurdle** [2] - 34:16, 34:19

**hurdles** [1] - 34:15

**hurt** [1] - 45:15

**Huvelle** [1] - 32:25

**hybrid** [1] - 25:24

## I

**i.e** [1] - 28:18

**idea** [1] - 35:12

**identical** [3] - 16:1, 20:20, 23:1

**identified** [1] - 47:11

**identify** [2] - 3:4, 13:1

**II** [1] - 10:5

**immunity** [4] - 6:3, 11:6, 12:7, 46:22

**impact** [2] - 32:5, 32:10

**implicit** [3] - 28:10, 40:13, 40:16

**implicitly** [1] - 40:9

**important** [5] - 4:20, 13:16, 20:13, 23:2, 40:21

**importantly** [2] - 18:25, 22:22

**incidentally** [1] - 31:15

**included** [2] - 9:1, 41:5

**incorporated** [1] - 28:16

**incorporation** [2] - 4:15, 10:4

**indeed** [2] - 23:24, 31:22

**indicate** [4] - 8:22, 17:3, 20:20, 25:6

**individuals** [1] - 21:12

**inform** [1] - 20:21

**information** [1] - 25:20

**inhabited** [1] - 31:22

**initial** [2] - 21:4, 38:8

**INJUNCTION** [1] - 1:11

**injured** [1] - 3:23

**injures** [1] - 4:23

**injury** [2] - 5:2, 45:10

**Insight** [1] - 18:22

**insignificant** [1] - 47:10

installation [1] - 45:19
instance [1] - 15:8
instances [1] - 49:9
insufficient [1] - 36:20
intent [4] - 23:22, 23:23, 24:2, 26:24
intentionality [1] - 32:18
interacting [1] - 17:25
interest [1] - 22:2
interesting [2] - 26:13, 50:8
interlocutory [3] - 13:23, 21:16, 37:21
international [2] - 8:23, 26:23
interpretation [4] - 13:22, 14:5, 14:6, 14:15
interpreted [1] - 6:23
interpreting [3] - 8:18, 41:23, 46:17
intervening [1] - 35:17
invoke [1] - 25:10
involve [1] - 40:1
involved [1] - 5:21
Iran [1] - 33:4
irrelevant [2] - 30:25, 36:7
Islands [1] - 25:16
Israel [1] - 33:10
issue [39] - 5:11, 5:15, 5:17, 6:12, 7:9, 11:12, 11:14, 16:5, 16:19, 18:6, 18:8, 19:2, 19:23, 20:11, 20:16, 22:11, 22:25, 23:8, 24:17, 24:21, 30:13, 32:19, 33:16, 35:3, 35:18, 36:2, 36:22, 37:22, 38:1, 38:6, 38:7, 38:15, 38:25, 41:15, 49:7, 49:8, 50:3, 50:8, 50:9
issued [5] - 4:20, 13:16, 20:8, 40:25, 41:1
issues [13] - 4:2, 11:21, 13:9, 15:9, 16:9, 18:10, 20:14, 21:8, 33:4, 48:10, 48:11
itself [3] - 5:1, 36:1, 42:1

## J

January [1] - 4:2
JR [1] - 1:18
Judge [49] - 5:11, 5:12, 5:18, 6:4, 6:10, 6:13, 7:4, 7:7, 8:4, 8:10, 10:10, 11:11, 12:24, 15:9, 16:2, 16:18, 16:19, 17:12, 17:13, 19:2, 20:18, 20:21, 21:9, 22:20, 22:24, 23:3, 23:13, 23:25, 26:12, 26:15, 27:5, 29:7, 29:15, 29:16, 32:1, 32:21, 32:25, 33:3, 33:17, 34:25, 35:10, 36:2, 36:4, 36:5, 44:6
JUDGE [1] - 1:12
Judges [2] - 15:17, 16:21
judgment [1] - 12:12
Judgment [7] - 6:6, 13:10, 20:9, 20:14, 22:10, 35:19, 37:15
judicial [3] - 11:13, 11:22, 11:24
July [2] - 1:6, 41:12
June [1] - 7:17
jurisdiction [103] - 3:12, 4:6, 4:7, 4:18, 4:21, 4:22, 4:24, 5:4, 5:6, 5:15, 5:22,

6:2, 7:20, 7:23, 8:12, 8:14, 8:16, 8:22, 9:8, 9:13, 10:3, 10:13, 10:16, 10:17, 10:19, 10:24, 11:5, 11:6, 12:8, 12:9, 12:21, 13:16, 13:18, 14:3, 14:7, 14:11, 14:15, 16:10, 16:12, 16:14, 16:24, 17:18, 17:20, 17:21, 17:24, 18:10, 18:15, 19:15, 19:24, 20:5, 20:11, 21:2, 21:7, 21:8, 21:12, 22:12, 23:6, 23:20, 23:24, 24:2, 24:9, 26:19, 26:23, 27:10, 27:14, 27:20, 29:12, 30:15, 30:18, 30:24, 31:5, 31:8, 31:14, 32:6, 33:24, 34:21, 36:14, 36:18, 36:21, 37:3, 37:7, 37:18, 37:22, 39:17, 41:5, 41:13, 42:9, 42:15, 42:19, 43:2, 43:19, 43:22, 44:10, 44:17, 45:5, 45:8, 45:22, 45:23, 46:1, 46:24, 47:13
jurisdictional [5] - 12:9, 19:13, 20:14, 27:22, 40:21
jurisdictions [1] - 27:17
jury [1] - 11:22
justiciability [1] - 17:19

## K

Karrei [2] - 31:21, 33:8
keep [3] - 14:17, 14:18, 50:7
keeping [1] - 14:8
keeps [1] - 16:20
Kessler [18] - 5:18, 6:5, 8:4, 8:10, 10:10, 16:2, 16:18, 17:12, 19:2, 20:18, 20:21, 21:9, 22:24, 23:3, 36:4, 36:5, 44:7
Kessler's [1] - 22:20
key [1] - 36:8
kill [1] - 31:25
killed [4] - 3:24, 20:25, 31:25, 33:21
kind [7] - 18:20, 18:23, 26:3, 27:9, 34:20, 39:6, 48:23
kinds [3] - 8:9, 13:8, 31:10
Kiobel [1] - 14:13
Kleiman [1] - 5:13
Klinghoffer [1] - 23:19
knowingly [1] - 4:23
known [4] - 31:22, 33:6, 33:9, 33:14
Kollar [1] - 6:10
Kollar-Kotelly [1] - 6:10
Kotelly [1] - 6:10

## L

Labor [1] - 48:25
lack [1] - 45:5
lacks [1] - 41:13
Laden [1] - 45:13
last [8] - 16:6, 17:3, 20:8, 21:22, 22:11, 26:11, 30:11, 49:5
latest [1] - 15:2
Laura [1] - 3:10
LAURA [1] - 1:19
law [23] - 7:15, 8:24, 9:15, 11:9, 12:19,

14:3, 15:11, 15:14, 15:18, 16:4, 16:17, 17:2, 18:3, 22:21, 25:13, 31:5, 34:17, 34:18, 39:10, 39:13, 45:2, 47:3, 50:5
lawsuit [3] - 3:18, 43:20, 44:16
lawsuits [1] - 12:6
lawyers [1] - 28:23
leaflets [1] - 30:5
least [6] - 27:2, 27:19, 27:24, 29:13, 30:12, 50:9
leave [1] - 3:14
Lebanese [1] - 42:25
Leeche [1] - 42:21
left [1] - 14:21
Left [1] - 43:17
legal [1] - 29:20
lengthy [1] - 20:3
LEON [1] - 1:12
less [3] - 28:22, 48:9, 48:10
Lexus [1] - 7:16
Libya [2] - 45:12, 45:13
lifted [1] - 19:5, 22:5
lightly [1] - 14:1
likely [3] - 33:2, 33:13, 33:15
limit [1] - 14:2, 48:9
limited [2] - 48:10, 49:12
limits [4] - 13:17, 14:6, 14:15, 26:21
linkage [2] - 32:18, 35:13
list [2] - 20:19, 20:20
literally [1] - 20:22
litigant [1] - 12:23
litigants [1] - 37:4
litigate [11] - 11:4, 11:7, 11:20, 12:17, 12:23, 19:8, 19:19, 22:6, 37:16, 37:19, 38:15
litigated [2] - 16:5, 22:18
litigating [3] - 14:18, 37:13
litigation [9] - 12:15, 13:4, 13:7, 19:6, 19:18, 20:3, 23:4, 23:5, 38:19
litigators [2] - 12:17, 48:5
live [2] - 33:10, 33:11
lived [3] - 33:20, 33:22
lives [1] - 48:5
Livnat [1] - 6:9
LLP [1] - 1:16
lobbying [2] - 27:23, 28:1
local [3] - 4:4, 9:22, 41:25
logic [1] - 21:13
look [12] - 17:22, 19:21, 26:4, 26:14, 26:16, 27:21, 37:9, 37:10, 39:25, 42:5, 47:6, 47:9
looking [1] - 32:21
looks [1] - 31:7
lose [1] - 37:19
lost [1] - 37:17
love [1] - 39:23
loved [1] - 3:24
Lowell [4] - 3:6, 14:23, 35:20, 38:6
LOWELL [12] - 1:16, 3:6, 14:24, 28:13, 28:22, 30:17, 30:21, 47:19, 49:4, 49:14,

49:20, 49:22
**Luxemburg** [1] - 41:23

# M

**machine** [1] - 2:1
**Maen** [2] - 6:24, 47:11
**magic** [1] - 39:16
**magnitude** [1] - 12:2
**major** [1] - 43:14
**majority** [1] - 29:5
**man** [2] - 3:19, 32:13
**martyrs** [1] - 32:17
**masterminded** [1] - 33:8
**material** [3] - 27:22, 34:8, 42:23
**matter** [12] - 11:13, 12:9, 16:12, 17:18, 21:1, 21:7, 23:23, 25:18, 27:1, 40:15, 49:2, 51:5
**Mazall** [1] - 33:7
**MCALEER** [1] - 1:18
**McAleer** [1] - 3:11
**mean** [6] - 11:7, 16:25, 37:6, 39:7, 40:20, 41:25
**meaning** [1] - 4:16
**means** [7] - 16:2, 16:3, 17:24, 27:15, 28:18, 28:24, 35:18
**Meese** [1] - 25:1
**meet** [2] - 4:11, 47:12
**meets** [1] - 42:7
**Mendelsohn** [2] - 25:1, 25:19
**mention** [2] - 19:14, 20:11
**mere** [1] - 8:20
**meritorious** [2] - 19:10
**merits** [7] - 19:6, 19:18, 19:19, 22:2, 22:6, 22:18, 27:13
**message** [1] - 37:6
**met** [1] - 9:11
**might** [8] - 17:14, 24:1, 26:2, 26:5, 26:6, 26:13, 33:3, 43:18
**Miller** [1] - 1:20
**mind** [1] - 37:1
**minimal** [3] - 18:2, 18:3, 18:6
**mining** [1] - 10:6
**minister** [3] - 12:16, 38:13, 39:9
**Minister** [1] - 19:7
**minister's** [1] - 41:1
**minute** [6] - 13:12, 15:24, 30:12, 30:16, 46:4, 47:19
**minutes** [3] - 3:13, 14:20, 35:21
**mission** [4] - 4:9, 6:25, 9:20, 43:3
**missions** [1] - 7:2
**moment** [4] - 15:14, 17:6, 30:23, 50:6
**money** [7] - 32:9, 32:14, 32:15, 34:9, 34:10, 34:11
**month** [1] - 41:11
**months** [2] - 20:8, 22:11
**most** [4] - 7:3, 20:7, 35:16, 48:5
**Motion** [29] - 3:25, 4:19, 5:23, 6:5, 8:13, 10:23, 13:25, 15:6, 15:23, 17:17, 18:13, 18:14, 20:9, 21:14, 27:8, 30:8,

31:17, 34:14, 35:13, 35:19, 36:10, 36:12, 37:13, 37:17, 39:19, 40:2, 40:7, 41:2, 46:7
**Motions** [5] - 6:10, 6:11, 13:10, 37:14, 49:12
**moved** [2] - 4:10, 10:25
**moving** [1] - 11:5
**MR** [15] - 3:6, 3:9, 14:24, 28:13, 28:22, 30:17, 30:21, 47:19, 49:4, 49:14, 49:15, 49:18, 49:20, 49:22, 50:7
**MS** [42] - 3:16, 5:10, 5:13, 6:1, 7:12, 8:6, 8:9, 11:25, 12:4, 13:15, 14:22, 35:22, 35:25, 36:5, 37:8, 37:12, 38:2, 38:4, 38:11, 38:21, 39:2, 39:9, 39:18, 39:25, 40:18, 41:4, 41:7, 41:10, 41:17, 41:20, 42:13, 43:4, 43:6, 43:9, 43:12, 43:16, 43:18, 44:12, 44:15, 44:22, 45:1, 46:6
**multiple** [2] - 20:5, 42:2
**municipality** [1] - 25:15
**Mwani** [2] - 45:12, 45:20

# N

**Nairobi** [1] - 45:20
**named** [1] - 3:19
**narrow** [1] - 10:13
**national** [3] - 24:4, 35:4
**nationality** [1] - 3:18
**Nations** [1] - 18:1
**nationwide** [2] - 47:1, 47:4
**natural** [1] - 32:4
**need** [14] - 8:11, 11:13, 12:14, 16:17, 16:22, 19:11, 22:23, 28:16, 30:12, 43:23, 45:14, 45:17, 47:4, 48:12
**needed** [1] - 19:6
**needs** [2] - 39:19, 45:8
**never** [7] - 7:10, 18:6, 18:7, 18:10, 23:22, 40:5, 40:6
**New** [7] - 1:17, 6:13, 16:19, 18:1, 42:24, 43:1, 43:7
**new** [4] - 6:11, 8:21, 21:21, 48:11
**next** [2] - 41:3, 48:8
**nexus** [2] - 3:17, 34:11
**none** [2] - 19:14, 40:1
**nonetheless** [1] - 9:13
**nongovernmental** [1] - 28:1
**normal** [2] - 12:23, 35:5
**North** [1] - 41:23
**noted** [1] - 9:2
**nothing** [5] - 9:19, 11:12, 46:12, 46:16
**notice** [3] - 5:19, 31:9, 31:10
**notion** [1] - 47:1
**notwithstanding** [6] - 19:23, 22:15, 34:20, 35:17, 38:24, 43:14
**number** [6] - 6:15, 9:10, 17:17, 19:21, 45:4
**NW** [2] - 1:17, 1:20

# O

**object** [2] - 37:2, 37:3
**objection** [2] - 23:5, 23:6
**objective** [2] - 29:23, 37:25
**obvious** [2] - 27:2, 50:9
**obviously** [1] - 43:7
**occasions** [3] - 19:4, 20:5, 30:9
**occurred** [2] - 8:5, 30:11
**October** [1] - 49:2
**OF** [3] - 1:2, 1:11, 51:1
**office** [19] - 4:4, 4:9, 4:13, 6:25, 7:1, 7:2, 9:4, 9:5, 9:9, 9:10, 9:16, 9:20, 9:22, 10:19, 10:22, 25:20, 41:21, 41:25
**offices** [2] - 42:3, 43:8
**official** [1] - 21:3
**Official** [1] - 1:23
**offsets** [1] - 34:11
**Ohio** [2] - 10:6, 25:11
**once** [3] - 19:16, 37:12, 39:18
**one** [21] - 3:24, 7:19, 8:18, 9:23, 10:15, 11:23, 16:9, 17:23, 20:10, 25:24, 27:18, 30:4, 30:12, 30:19, 31:7, 32:3, 32:4, 37:14, 40:7, 41:23, 43:15
**ones** [2] - 30:3, 49:24
**open** [1] - 7:8
**operate** [2] - 27:18, 39:9
**operating** [1] - 25:11
**operations** [1] - 42:6
**opinion** [15] - 8:4, 22:21, 27:11, 28:11, 29:5, 29:18, 38:23, 40:11, 40:25, 41:1, 48:24, 49:1, 49:6, 49:8, 49:10
**opportunities** [1] - 18:11
**opposed** [2] - 40:9, 49:24
**opposition** [2] - 18:12, 18:13
**oral** [2] - 6:14, 50:3
**order** [1] - 35:8
**organization** [3] - 31:19, 32:9, 32:14
**organizations** [1] - 21:13
**organized** [1] - 31:22
**original** [2] - 5:23, 32:20
**originally** [1] - 31:22
**otherwise** [2] - 16:14, 18:8
**outlier** [1] - 7:21
**outset** [1] - 36:13
**outside** [3] - 5:2, 18:7, 24:12
**overcome** [1] - 35:9
**overlap** [1] - 15:8
**overlapping** [1] - 15:9
**own** [2] - 12:3, 29:8

# P

**p.m** [2] - 1:7, 50:13
**PA** [21] - 3:20, 3:24, 4:7, 4:12, 4:13, 5:7, 7:3, 7:14, 7:25, 8:13, 12:13, 20:25, 24:22, 27:8, 30:1, 33:25, 36:15, 42:12, 42:17, 46:18, 46:25
**PA/PLO** [1] - 8:15
**packed** [2] - 35:21, 35:22

**pages** [5] - 18:11, 18:16, 20:11, 27:22, 48:9
**Palestinian** [2] - 12:5, 25:20
**papers** [1] - 24:25
**paradigmatically** [1] - 6:20
**paragraphs** [3] - 17:20, 18:14, 21:11
**Park** [1] - 3:7
**Parke** [1] - 1:16
**participated** [1] - 20:3
**participates** [1] - 23:4
**participating** [1] - 19:23, 37:13
**particular** [6] - 14:25, 15:21, 29:25, 33:11, 33:12, 48:14
**particularly** [1] - 18:1
**parties** [2] - 47:23, 50:10
**partners** [1] - 3:10
**party** [2] - 40:1, 40:21
**passed** [1] - 23:18
**past** [16] - 23:12, 24:14, 24:15, 27:5, 30:23, 34:16, 34:19, 34:21, 34:25, 35:3, 35:6, 35:9, 35:11, 35:12
**PATTY** [1] - 1:22
**Patty** [4] - 48:16, 48:17, 49:3, 51:3
**pay** [1] - 32:16
**payments** [2] - 32:16, 33:7
**pays** [2] - 32:15
**pending** [4] - 5:17, 6:7, 6:9, 20:10
**people** [6] - 7:3, 15:18, 34:3, 37:18, 45:14, 45:15
**percent** [2] - 33:10, 33:11
**period** [1] - 20:4
**Perkins** [1] - 10:1
**permission** [1] - 23:10
**permit** [1] - 40:16
**person** [4] - 17:20, 25:14, 30:4, 32:14
**personal** [55] - 4:6, 4:7, 4:17, 4:21, 4:22, 5:4, 5:6, 5:14, 5:22, 6:2, 7:20, 7:23, 8:12, 8:13, 8:16, 8:22, 9:8, 9:13, 10:3, 10:15, 10:24, 11:5, 12:8, 12:9, 16:10, 16:14, 16:24, 17:20, 19:8, 19:14, 20:5, 20:11, 21:1, 21:8, 21:11, 22:12, 23:5, 24:1, 24:8, 27:10, 34:21, 36:14, 36:18, 36:21, 37:2, 37:3, 37:7, 37:18, 37:22, 39:17, 41:5, 41:13, 44:10, 45:5, 46:24
**persons** [3] - 25:4, 35:7
**persuasive** [1] - 22:6
**PFLP** [5] - 31:19, 32:15, 32:16, 33:6, 34:1
**Philippine** [1] - 10:6
**phrase** [1] - 32:22
**physical** [1] - 31:2
**picayune** [1] - 34:23
**pick** [1] - 25:18
**PIO** [1] - 25:20
**pizzeria** [1] - 3:20
**place** [18] - 4:14, 4:15, 9:12, 9:23, 9:25, 10:4, 10:7, 28:18, 31:21, 32:10, 33:8, 33:12, 39:10, 42:10, 42:12, 44:24

**places** [4] - 29:4, 29:8, 29:10, 43:10
**Plaintiff** [4] - 26:10, 31:14, 33:19, 33:20
**Plaintiff's** [3] - 18:13, 37:1, 46:11
**Plaintiffs** [18] - 1:5, 1:16, 3:7, 3:18, 3:22, 4:11, 9:18, 11:12, 22:17, 26:8, 33:21, 36:11, 36:17, 42:21, 43:20, 43:23, 46:19, 47:12
**Plaintiffs'** [2] - 40:1, 44:16
**planning** [2] - 45:19, 45:21
**plead** [1] - 48:7
**pleading** [5] - 18:20, 37:2, 41:3, 47:24, 48:6
**pleadings** [4] - 11:18, 21:10, 38:8, 50:2
**PLO** [25] - 3:20, 3:25, 4:7, 4:9, 4:12, 4:14, 5:7, 7:14, 7:25, 8:13, 9:20, 20:25, 24:22, 26:5, 27:8, 27:16, 29:25, 33:24, 33:25, 36:15, 42:12, 42:17, 43:3, 46:18, 47:1
**PLO/PA** [1] - 44:8
**plus** [1] - 47:5
**point** [16] - 12:24, 13:1, 15:14, 15:16, 15:24, 16:23, 17:14, 20:16, 21:20, 23:2, 26:8, 33:5, 34:22, 36:8, 48:14, 49:5
**pointed** [9] - 20:9, 20:12, 20:13, 22:17, 23:13, 24:25, 25:1, 25:12, 34:2
**pointing** [1] - 26:25
**points** [1] - 24:19
**political** [4] - 12:7, 12:18, 17:19, 33:24
**posit** [1] - 42:16
**position** [8] - 7:24, 10:12, 11:3, 12:5, 42:11, 42:13, 43:13, 44:13
**possible** [2] - 24:2, 37:24
**possibly** [1] - 16:10
**post** [2] - 7:18, 8:24
**posture** [1] - 12:12
**PR** [1] - 28:1
**practical** [2] - 48:22, 49:2
**practice** [1] - 49:5
**precedence** [1] - 25:19
**precedent** [1] - 40:12
**preference** [1] - 19:17
**PRELIMINARY** [1] - 1:11
**premier** [1] - 25:7
**prepared** [1] - 38:16
**presence** [8] - 4:4, 9:4, 9:8, 24:6, 27:17, 28:2, 31:2, 45:7
**presences** [1] - 43:14
**present** [5] - 3:11, 12:25, 24:8, 30:9, 30:24
**preservation** [3] - 38:25, 39:2, 39:3
**preserve** [2] - 36:25, 37:11
**preserved** [7] - 6:3, 10:25, 11:1, 17:15, 38:7, 38:9, 46:8
**preserving** [2] - 36:17, 40:19
**pretty** [1] - 49:11
**price** [1] - 45:11
**Prime** [1] - 19:7

**prime** [4] - 12:16, 38:13, 39:9, 41:1
**principal** [5] - 4:14, 9:12, 9:25, 10:4, 42:10
**private** [1] - 26:3
**procedurally** [1] - 49:4
**Procedure** [1] - 24:5
**proceed** [1] - 12:22
**Proceedings** [1] - 2:1
**proceedings** [3] - 22:9, 50:13, 51:4
**process** [32] - 7:24, 11:22, 11:24, 12:15, 13:4, 13:13, 13:17, 13:22, 14:2, 16:24, 17:24, 24:23, 25:2, 25:3, 25:5, 25:9, 25:23, 35:7, 38:19, 39:11, 44:3, 45:5, 46:18, 46:19, 46:23, 46:24, 46:25, 47:2, 47:4, 47:5
**produced** [1] - 2:1
**proper** [1] - 40:7
**proportionality** [1] - 42:7
**proposing** [1] - 6:16
**protection** [2] - 7:25, 39:12
**provide** [3] - 7:15, 26:22, 34:1
**provided** [4] - 5:15, 6:14, 6:23, 31:18
**providing** [1] - 42:23
**public** [1] - 22:2
**Puerto** [1] - 25:15
**pull** [1] - 20:5
**purpose** [3] - 23:19, 32:12, 43:19, 44:20, 44:25
**purposes** [3] - 24:8, 30:24, 44:22
**put** [5] - 18:24, 19:1, 26:17, 27:22, 29:6
**puts** [1] - 20:15

## Q

**Qaeda** [2] - 45:21, 46:23
**quarreling** [1] - 17:23
**questioning** [3] - 38:7, 38:8, 40:8
**questions** [2] - 15:20, 27:7
**quit** [1] - 37:20
**quite** [2] - 6:15, 35:23
**quote** [11] - 19:6, 19:10, 20:2, 26:17, 26:18, 29:3, 30:1, 36:19, 40:10
**quoted** [1] - 23:3

## R

**rabbit** [1] - 20:6
**railroad** [1] - 13:14
**raise** [7] - 8:12, 8:13, 11:9, 12:20, 15:23, 37:19, 41:15
**raised** [14] - 5:22, 6:1, 6:12, 8:15, 10:23, 17:20, 21:7, 26:14, 30:13, 31:3, 33:20, 33:21, 40:2, 41:4
**raising** [4] - 20:14, 23:14, 40:19, 48:11
**Ramsey** [2] - 5:21, 5:24
**random** [1] - 33:8
**rare** [1] - 49:11
**rather** [2] - 19:12, 47:6
**Re** [2] - 45:3

**reach** [2] - 8:8, 8:20
**reached** [1] - 5:8
**read** [4] - 6:15, 6:16, 26:20, 26:21
**reading** [1] - 10:13
**real** [3] - 7:21, 9:14, 10:9
**reality** [2] - 48:5, 48:22
**really** [5] - 13:14, 18:23, 29:11, 44:3, 50:3
**reason** [5] - 15:10, 15:11, 21:13, 30:22, 37:6
**reasoning** [1] - 8:11
**reasons** [6] - 8:17, 15:3, 15:5, 17:12, 28:7, 32:8
**rebuttal** [4] - 3:14, 14:21, 14:22, 18:16
**rebuttals** [1] - 48:7
**rebutted** [1] - 18:10
**received** [1] - 5:19
**recently** [1] - 5:15
**recitation** [1] - 20:7
**recollection** [2] - 11:18, 38:18
**reconsideration** [3] - 4:10, 15:10, 30:23
**Reconsideration** [9] - 4:20, 14:1, 15:6, 15:23, 27:9, 30:8, 31:18, 34:14, 35:14
**record** [14] - 3:5, 7:5, 17:15, 18:12, 18:16, 29:15, 29:16, 30:5, 31:16, 32:13, 33:9, 33:25, 34:5, 51:4
**regulation** [1] - 14:5
**reinstitute** [1] - 13:4
**rejected** [3] - 10:15, 15:3, 45:17
**relied** [2] - 12:2, 13:5
**relief** [4] - 12:13, 20:4, 22:9, 22:16
**relocate** [1] - 10:6
**reluctance** [1] - 7:7
**rely** [8] - 5:5, 11:15, 13:21, 14:16, 19:12, 39:13, 46:10, 46:19
**relying** [4] - 8:23, 36:11, 38:23, 41:1
**remaining** [1] - 6:12
**remember** [5] - 11:23, 17:1, 23:16, 29:17, 34:7
**remind** [2] - 40:24, 40:25
**reminding** [1] - 16:6
**rent** [2] - 32:15, 34:1
**reopen** [2] - 21:6, 21:25
**repeat** [1] - 42:1
**replies** [1] - 48:7
**reply** [1] - 18:18
**reported** [1] - 2:1
**REPORTER** [1] - 51:1
**Reporter** [2] - 1:22, 1:23
**representation** [1] - 11:20
**representations** [2] - 12:1, 13:2, 41:2
**representatives** [1] - 33:25
**represented** [1] - 5:21
**REPUBLIC** [1] - 1:8
**Republic** [1] - 3:3
**require** [2] - 31:2, 45:6
**required** [4] - 11:2, 37:4, 42:18, 47:24
**requires** [1] - 40:22

**reservation** [1] - 37:25
**reserve** [3] - 14:21, 14:22, 36:22
**reserved** [1] - 36:23
**resident** [2] - 4:23, 5:2
**residents** [1] - 3:22
**resolution** [1] - 38:16
**resolve** [2] - 11:21, 38:19
**resolved** [1] - 13:9
**resolving** [1] - 22:2
**respect** [2] - 46:11, 47:13
**respectively** [1] - 21:3
**respond** [3] - 21:18, 48:13, 49:23
**responsibilities** [1] - 47:22
**responsibility** [1] - 25:7
**responsible** [1] - 32:23
**retained** [2] - 12:16, 21:21
**Rice** [1] - 12:14
**RICHARD** [2] - 1:12, 1:19
**Richard** [1] - 3:9
**Rico** [1] - 25:15
**rights** [8] - 12:20, 24:23, 25:2, 25:3, 25:5, 25:9, 26:2, 46:14
**rise** [1] - 45:10
**RJL** [1] - 1:5
**RMR** [1] - 1:22
**Roberts** [1] - 14:9
**Room** [1] - 1:23
**rounds** [1] - 48:7
**routinely** [3] - 8:18, 46:17, 47:4
**rubric** [1] - 25:22
**Rule** [5] - 10:24, 36:9, 36:12, 37:13, 39:18
**rule** [14] - 7:8, 8:3, 8:11, 8:21, 17:8, 17:9, 17:10, 42:14, 44:3, 44:6, 44:8, 45:11, 45:12
**ruled** [9] - 10:20, 24:21, 25:4, 27:24, 30:8, 35:10, 36:2, 44:7
**rules** [1] - 35:5
**Rules** [1] - 24:5
**ruling** [5] - 6:14, 13:23, 35:15, 49:6, 49:10
**rulings** [6] - 11:6, 12:21, 12:22, 13:7, 13:16, 24:25
**run** [2] - 13:14, 35:24

## S

**S-corporations** [1] - 28:25
**Sadek** [1] - 3:19
**Safra** [1] - 6:9
**sake** [3] - 38:5, 40:4, 40:14
**Salam** [2] - 12:16, 36:16
**saw** [1] - 22:20
**school** [1] - 50:5
**Schultz** [1] - 25:21
**SCOTT** [1] - 1:4
**Scott** [1] - 3:3
**sea** [2] - 7:22, 10:9
**Seadrill** [1] - 7:16
**SEC** [1] - 18:21

**Second** [2] - 45:2, 45:16
**second** [7] - 17:24, 21:19, 21:25, 22:4, 28:24, 30:13, 42:22
**Secretary** [1] - 12:13
**securities** [1] - 48:24
**see** [2] - 19:22, 39:24
**seeing** [1] - 14:9
**seeking** [3] - 22:9, 33:23, 36:15
**sense** [3] - 29:7, 40:15, 40:17
**sentence** [1] - 20:10
**series** [3] - 4:8, 12:8, 27:6
**serious** [1] - 50:9
**served** [3] - 21:2, 24:7
**service** [8] - 17:23, 24:12, 35:4, 47:2, 47:3, 47:4, 47:5
**services** [2] - 24:5, 45:25
**set** [2] - 4:12, 6:25
**setting** [1] - 18:16
**settlement** [1] - 3:21
**seven** [2] - 17:16, 34:15
**Seventh** [1] - 32:3
**SHABTAI** [1] - 1:4
**Shabtai** [1] - 3:2
**SHATSKY** [1] - 1:4
**Shatsky** [2] - 3:3, 3:23
**shoe** [1] - 8:23
**shoes** [2] - 48:1, 48:3
**Shomron** [2] - 31:21, 33:8
**shootings** [1] - 20:24
**shorthand** [1] - 2:1
**show** [6] - 17:16, 22:25, 43:20, 43:23, 45:14, 45:17
**showed** [1] - 18:21
**showing** [3] - 7:1, 10:10, 43:25
**shown** [1] - 35:12
**shows** [3] - 24:19, 30:5, 31:16
**sic** [1] - 23:13
**side** [3] - 3:14, 30:19, 30:21
**sides** [1] - 26:16
**significance** [1] - 20:13
**significant** [5] - 6:18, 27:18, 30:3, 34:23, 47:9
**similar** [1] - 36:7
**similarities** [1] - 22:25
**simultaneous** [1] - 49:15
**Sisso** [2] - 32:4, 33:4
**sit** [1] - 21:22
**situation** [9] - 9:3, 9:19, 9:24, 13:15, 24:4, 28:11, 40:1, 41:20, 41:24
**six** [2] - 20:8, 48:24
**six-week** [1] - 48:24
**small** [1] - 7:1
**so-called** [1] - 32:17
**Socolow** [1] - 23:13
**Sokolow** [2] - 27:6, 36:3
**someplace** [2] - 28:15, 29:2
**sometimes** [1] - 14:3
**somewhere** [3] - 9:24, 25:14, 28:12
**soon** [2] - 41:7, 41:9

sorry [1] - 35:4
sort [6] - 5:22, 14:8, 17:3, 31:12, 43:24, 45:6
sorts [1] - 46:13
sought [7] - 11:17, 12:13, 20:4, 21:5, 21:11, 21:25, 24:12
sounds [1] - 44:14
Southern [1] - 6:13
sovereign [4] - 6:3, 12:7, 25:13, 46:22
speaks [1] - 36:1
special [10] - 8:1, 17:1, 17:3, 17:5, 23:17, 24:16, 35:2, 44:4, 46:12, 46:16
specific [20] - 4:21, 4:24, 5:4, 5:14, 18:10, 30:14, 30:24, 31:5, 31:14, 33:17, 33:23, 42:14, 42:18, 43:19, 44:17, 45:8, 45:22, 46:1, 47:13
specifically [1] - 38:14
specify [1] - 11:23
speeches [1] - 33:24
sponsored [1] - 31:19
staff [1] - 43:10
staffing [1] - 27:24
standard [6] - 13:22, 24:4, 28:4, 37:25, 46:24
standards [1] - 46:18
Starbucks [1] - 48:2
start [3] - 16:6, 16:16, 35:25
started [1] - 12:11
starting [1] - 48:25
state [4] - 25:13, 27:2, 46:21, 47:7
State [1] - 12:14
statements [2] - 19:3, 34:20
States [28] - 4:9, 5:3, 6:18, 14:12, 18:2, 18:9, 20:12, 23:20, 24:13, 26:24, 28:3, 28:8, 28:12, 29:12, 30:1, 31:3, 31:11, 34:5, 35:10, 36:20, 42:12, 44:9, 44:25, 46:2, 47:6, 47:16, 50:4
STATES [2] - 1:1, 1:12
states [2] - 25:16, 25:17
States' [1] - 20:25
statistics [1] - 33:9
status [2] - 25:8, 25:14
statute [5] - 14:5, 23:17, 24:12, 26:22, 40:12
still [8] - 13:19, 13:20, 30:23, 33:3, 37:17, 37:19, 40:3, 43:1
stop [1] - 29:6
storm [1] - 19:17
story [1] - 34:5
strain [1] - 20:17
strategic [1] - 17:11
stream [3] - 8:18, 9:18, 10:16
Street [1] - 1:20
strong [1] - 22:1
stronger [1] - 19:2
subject [7] - 12:9, 16:12, 17:18, 21:1, 21:7, 23:23, 28:17
subjective [2] - 29:18, 29:23
submission [1] - 22:10

submissions [1] - 49:16
submit [3] - 47:23, 48:6, 48:8
submitted [1] - 43:25
subsequent [3] - 21:9, 40:6, 40:8
subsequently [4] - 38:1, 38:10, 38:25, 39:15
substantial [2] - 4:25, 43:24
substantially [1] - 26:21
sudden [1] - 13:13
sue [1] - 27:16
sued [4] - 21:1, 30:9, 31:10, 32:7
suffice [1] - 35:5
sufficient [4] - 4:5, 4:24, 5:3, 8:21
suggested [2] - 29:16, 33:3
suicide [1] - 32:17
suit [3] - 28:17, 29:10, 44:25
Summary [7] - 6:5, 13:10, 20:9, 20:14, 22:10, 35:19, 37:14
superseded [1] - 46:20
supplement [2] - 48:13, 48:21
supplemental [4] - 5:16, 5:19, 47:23, 48:6
support [3] - 10:12, 34:8, 42:23
Suppression [1] - 49:12
Supreme [17] - 4:2, 4:20, 13:16, 13:21, 14:9, 14:14, 15:2, 16:8, 16:14, 27:1, 28:17, 29:5, 30:14, 39:21, 40:5, 41:25, 43:22
survey [1] - 8:24
surveyed [1] - 7:17
surveying [1] - 7:14
survive [1] - 32:19
survives [1] - 33:3
Syrian [1] - 3:3
SYRIAN [1] - 1:8
system [2] - 38:16, 42:24
systematic [12] - 4:4, 10:21, 18:8, 18:17, 27:17, 28:2, 29:9, 29:21, 30:2, 42:18, 43:18, 45:7
systems [1] - 34:4

test [17] - 4:11, 6:15, 6:17, 6:22, 7:4, 7:5, 7:6, 9:7, 9:11, 10:11, 29:1, 42:7, 45:6, 45:7, 45:16, 45:17, 47:12
testimony [1] - 18:12
Texas [2] - 7:13, 26:4
textbook [1] - 10:2
THE [57] - 1:2, 1:12, 3:13, 5:8, 5:12, 5:24, 7:10, 8:4, 8:7, 11:17, 12:1, 12:24, 14:20, 14:23, 28:10, 28:20, 30:16, 30:20, 35:20, 35:23, 36:4, 37:5, 37:9, 37:24, 38:3, 38:5, 38:12, 38:22, 39:6, 39:14, 39:21, 40:4, 40:24, 41:6, 41:9, 41:14, 41:19, 42:11, 43:3, 43:5, 43:7, 43:10, 43:13, 43:17, 44:5, 44:14, 44:20, 44:24, 46:4, 47:18, 47:20, 49:8, 49:17, 49:19, 49:21, 50:1, 50:8
theory [1] - 31:12
thereafter [1] - 41:9
therefore [2] - 34:13, 44:9
thinking [2] - 21:17, 50:6
thinks [1] - 6:16
third [1] - 41:12
thoughtful [1] - 22:21
three [9] - 10:10, 14:20, 15:17, 17:10, 17:11, 19:4, 23:15, 34:18, 36:19
three-and-a-half [3] - 17:10, 17:11, 23:15
ticking [1] - 15:7
timely [5] - 36:9, 36:12, 39:18, 40:2, 46:7
tiny [1] - 44:1
tire [1] - 25:10
tires [2] - 8:20, 41:22
title [1] - 38:12
today [2] - 3:8, 48:12
together [1] - 5:4
Tolchin [1] - 3:7
took [2] - 21:4, 27:6
top [1] - 17:5
tort [1] - 31:3
tortured [1] - 45:14
towards [2] - 18:1, 31:20
town [1] - 3:21
track [1] - 36:7
tragedy [1] - 23:18
TRANSCRIPT [1] - 1:11
transcript [11] - 2:1, 6:16, 26:12, 36:1, 48:16, 48:17, 48:19, 48:20, 49:3, 49:23, 51:4
transcription [1] - 2:2
treat [1] - 40:20
trees [1] - 49:25
trial [1] - 48:25
true [1] - 31:17
trumps [1] - 14:3
try [2] - 20:17, 26:18
trying [4] - 13:1, 15:1, 30:19
Tuesday [1] - 5:11
turn [3] - 23:10, 32:21, 37:1

**T**

table [1] - 21:22
tailor [1] - 50:3
talisman [1] - 25:4
talks [1] - 32:4
tangible [1] - 19:18
tantamount [1] - 40:17
targeting [4] - 33:7, 45:9, 45:10, 45:18
Taylor [1] - 3:23
temporary [1] - 10:7
ten [2] - 37:16, 48:6
Tenth [1] - 20:1
terms [1] - 9:15
territory [1] - 24:12
Terrorism [6] - 4:8, 42:16, 43:2, 44:4, 46:16, 46:17
terrorism [10] - 8:1, 17:1, 26:5, 26:23, 34:4, 34:9, 36:7, 42:20, 45:13, 45:25

turns [1] - 18:4
two [19] - 5:4, 6:8, 8:9, 13:16, 15:2, 17:19, 17:23, 18:14, 19:16, 21:5, 21:11, 21:20, 22:8, 23:1, 27:1, 29:10, 32:2, 43:14, 45:14
two-and-a-half [1] - 22:8

## U

U.S [29] - 1:23, 3:17, 7:16, 9:1, 12:6, 12:13, 12:15, 14:6, 14:10, 26:10, 33:1, 33:2, 33:19, 33:25, 34:4, 43:20, 43:24, 44:16, 45:9, 45:10, 45:14, 45:15, 45:19, 45:20, 45:21, 45:24
UN [1] - 43:3
unclear [1] - 44:18
under [22] - 6:22, 7:6, 8:1, 8:11, 13:19, 13:20, 17:2, 18:3, 24:9, 25:22, 28:4, 28:25, 29:11, 31:4, 35:5, 35:14, 35:16, 35:17, 39:10, 43:2, 47:3
undertake [1] - 13:25
undoing [1] - 15:7
unique [4] - 24:3, 24:24, 25:14, 26:25
United [29] - 4:9, 5:3, 6:18, 14:12, 18:1, 18:2, 18:9, 20:25, 23:20, 24:13, 26:24, 28:3, 28:8, 28:12, 29:12, 30:1, 31:3, 31:11, 34:4, 35:10, 36:20, 42:12, 44:9, 44:25, 46:2, 47:6, 47:16, 50:4
UNITED [2] - 1:1, 1:12
unless [2] - 39:22, 46:21
unusual [1] - 13:15
up [6] - 3:14, 11:14, 14:16, 28:23, 32:24, 46:4
upset [1] - 28:23
uses [1] - 32:22
uttered [1] - 39:16

## V

vacate [3] - 10:25, 11:5, 11:17
Vacate [1] - 41:2
vacation [1] - 49:1
vacatur [2] - 36:16, 41:10
various [1] - 23:7
vastly [1] - 24:10
venue [2] - 24:4, 35:4
versus [12] - 3:3, 4:22, 7:16, 18:21, 20:2, 25:1, 25:21, 33:4, 33:22, 45:11, 45:13, 47:10
view [2] - 6:22, 36:2
viewed [1] - 7:20
village [1] - 33:12
Virgin [1] - 25:16
virtually [1] - 23:1

## W

wait [2] - 48:17, 49:6
waited [4] - 15:19, 17:11, 22:19, 27:12
waive [7] - 10:24, 16:11, 38:1, 39:16, 40:2, 46:8

waiveable [3] - 16:11, 34:21, 37:8
waived [11] - 18:23, 19:24, 22:22, 23:8, 36:13, 37:7, 38:10, 39:1, 39:11, 39:15, 40:21
waiver [28] - 8:5, 8:10, 8:14, 11:12, 12:3, 12:19, 19:2, 23:9, 23:12, 24:14, 35:25, 36:2, 36:3, 36:24, 37:11, 37:15, 38:2, 38:11, 38:24, 39:19, 40:3, 40:6, 40:8, 40:16, 40:17, 40:23, 46:6
waivers [1] - 15:22
Walden [7] - 4:22, 30:14, 31:5, 31:13, 32:20, 44:18
wants [1] - 29:8
War [1] - 10:5
warning [1] - 32:23
warrant [1] - 36:21
Washington [7] - 1:17, 1:21, 1:24, 4:8, 4:13, 6:25, 9:20
wasted [1] - 49:24
water [3] - 13:6, 13:19, 13:20
ways [3] - 21:8, 28:9, 39:7
week [4] - 7:14, 26:11, 47:23, 48:24
weeks [3] - 4:10, 4:19, 49:1
welcome [1] - 48:14
West [6] - 3:20, 3:22, 6:20, 28:9, 29:14, 33:20
whatsoever [2] - 46:2, 47:14
whereas [1] - 6:3
whichever [2] - 38:14, 48:22
whole [2] - 8:19, 27:6
win [1] - 7:6
wish [3] - 39:16, 48:3, 48:4
word [1] - 17:20
words [5] - 31:4, 38:17, 39:16, 40:9, 40:16
World [1] - 10:5
worldwide [3] - 42:6, 43:24, 44:1
worth [1] - 42:4
wrap [1] - 46:4
write [1] - 48:23
writings [1] - 18:12

## Y

year [1] - 16:9
years [23] - 3:17, 13:3, 15:6, 15:7, 15:17, 16:9, 17:3, 17:10, 17:11, 17:16, 19:4, 21:5, 21:20, 22:8, 23:15, 27:14, 27:25, 31:17, 34:16, 34:18, 35:15, 37:16
yesterday [1] - 6:4
York [6] - 6:13, 16:19, 18:1, 42:24, 43:1, 43:7
yourself [1] - 3:4