## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY,      )
*et al.*,      )
     )
         **Plaintiffs,**      )
     )
         **v.**      )      **Civil Action No. 02-02280 (RJL)**
     )
THE SYRIAN ARAB REPUBLIC,      )
*et al.*,      )
     )
         **Defendants.**      )

**FILED**

NOV 2 0 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### MEMORANDUM OPINION
(November 2*0*, 2015) [#270]

In the aftermath of a February 16, 2002 suicide bombing in the Samaria region of the West Bank, plaintiffs, the victims and personal representatives of United States citizens injured and killed in the attack, initiated the instant suit against the Palestinian Authority and the Palestinian Liberation Organization (collectively, "defendants") for alleged violations of the Anti-Terrorism Act, 18 U.S.C. § 2333 *et seq.*, and related torts. *See* Compl. [Dkt. #3]. Since its inception, this case has been a study in obfuscation and recalcitrance. The parties have, at times, accused each other of every manner of skullduggery—from gamesmanship to wholesale deceit. Plaintiffs' conduct, however, has been a major source of this discord. Indeed, the docket itself is an ample, if not an overwhelming, testament to plaintiffs' consistent failure to honor the mainstay of federal practice: "the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1. Their unfortunate tactics have not escaped judicial notice. In its thirteen years presiding over the case, this Court has been witness to

plaintiffs' casual, if at times flagrant, disregard for the rules of federal procedure, to say nothing of their apparent indifference to the dictates of common civility. And yet, however fraught its trajectory, that remains the state of this litigation.

In the motion presently before the Court, defendants seek to exclude eighty-nine exhibits that, together, form the cornerstone of plaintiffs' opposition to summary judgment. *See* Defs.' Mot. for Sanctions ("Defs.' Mot.") [Dkt. #270]; Mem. of P. & A. in Supp. of Defs.' Mot. for Sanctions ("Defs.' Mem.") [Dkt. #270-1]. Plaintiffs, unsurprisingly, oppose this request. *See* Pls.' Revised Mem. of P. & A. in Opp'n to Defs.' Mot. for Sanctions ("Pls.' Opp'n") [Dkt. #274]. Upon careful review of the pleadings, the case law, and the entire record herein, the Court GRANTS in part and DENIES in part defendants' Motion for Sanctions and PRECLUDES plaintiffs from using any documents that they produced to defendants *after* the September 19, 2012 close of discovery.

## BACKGROUND

This case has a particularly long and tortured history, and the Court, in the interests of economy, will briefly recount only those portions of the record relevant to the instant dispute. In September 2011, and on joint motion of the parties, the Court entered a scheduling order, mandating the completion of fact discovery by September 19, 2012. *See* Order ¶ 5 [Dkt. #136]. On March 9, 2012, approximately six months before the close of discovery, plaintiffs served defendants with their First Request for Production. *See* Pls.' Opp'n Ex. 3 [Dkt. #272-3]. Defendants began producing documents shortly thereafter and, by August 2012, had furnished approximately 50 pages of pages of

2

material.[1]  *See* Pls.' Opp'n at 9.  On August 20, 2012, less than a month before the

discovery deadline, plaintiffs served on defendants 111 supplemental document requests

seeking additional categories of documents.[2]  *See* Pls.' Opp'n at 9; Defs.' Mem. at 16.

Defendants began producing documents in response to plaintiffs' supplemental requests

on October 21, 2012.  Pls.' Opp'n at 10-11; Pls.' Opp'n Ex. 11 [Dkt. #272-11]; Pls.'

Opp'n Ex. 13 [Dkt. #272-13].  That same month, plaintiffs, eager to obtain the discovery

that they had waited until the eleventh hour to seek, began peppering the Court with

discovery motions, seeking all manner of relief from the strictures of a discovery deadline

to which they themselves had consented.  *See, e.g.*, [Dkts. #168, #169, #172, #175, #181,

#197].  By minute orders dated December 8, 2012 and January 2, 2013, the Court

rejected each and every application, finding plaintiffs' motions both meritless and

untimely.  *See* Dec. 8, 2012 Min. Order; Jan. 2, 2013 Min. Order.

　　On August 3, 2012, defendants, in the midst of their own document production,

propounded their First Requests for Production.  Defs.' Mot. Ex. 29 [Dkt. #270-32].  By

the close of discovery on September 19, 2012, plaintiffs had produced approximately

3,000 pages of material in response to defendants' requests.  *See* Defs.' Mot. 20.  This

---

[1] Plaintiffs argue that defendants are likewise guilty of failing to timely produce documents. *See* Pls.'
Opp'n at 9.  Specifically, plaintiffs claim that defendants initially refused to produce documents in
response to 10 of plaintiffs' 18 requests for production. *See* Pls.' Opp'n Ex. 4 [Dkt. #272-4].  On May 31,
2012, defendants made their first production, consisting of 11 pages, all of which plaintiffs deemed non-
responsive. *See* Pls.' Opp'n at 8; Pls.' Opp'n Ex. 8 [Dkt. #272-8].  Then, on June 8, 2012, defendants
produced approximately 19 pages of Arabic material. *See* Pls.' Opp'n at 8.  On July 9, 2012, defendants
made "another small production of responsive documents." Pls.' Opp'n at 9.  However, plaintiffs waited
until after the close of discovery to begin seeking, in earnest, additional materials from defendants.
[2] Unsurprisingly, the parties cannot agree on the number of requests in plaintiffs' supplemental requests.
Although plaintiffs characterize these requests as containing 111 questions, defendants aver that this
constitutes "over 200 document requests and over 45 interrogatories, including subparts." Defs.' Mem. at
16.

proved to be just the beginning of their discovery efforts.  Indeed, in the weeks, months, and even years after discovery closed, plaintiffs furnished an additional 6,627 pages of materials—an astonishing 69% of their total production—inundating the record with relevant documents well into dispositive motions practice.[3]  Defs.' Mem. at 20.

Meanwhile, on June 26, 2013, and once again on joint motion by the parties, the Court set a summary judgment briefing schedule, ordering the commencement of summary judgment by August 12, 2013.[4]  *See* June 26, 2013 Min. Order.  The Court plainly, and in its view, fairly, interpreted the parties' request for a dispositive motions schedule as a *joint* acknowledgment that discovery was complete.  *See* Mem. Order at 7 n.6 [Dkt. #266]; *see id.* at 9 (clarifying that "all discovery in this matter is CLOSED!").

Thereafter, on August 12, 2013, defendants filed a motion for summary judgment. Defs.' Mot. for Summ. J. [Dkt. #247].  Plaintiffs opposed summary judgment on November 12, 2013.  Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("plaintiffs' summary judgment opposition") [Dkt. #252].  Appended to their opposition was the Declaration of Attorney Robert J. Tolchin (the "Tolchin Declaration"), which plaintiffs use as a vehicle to authenticate reams of late-produced documents referenced in their brief.  Among the hundreds of supporting exhibits that plaintiffs filed with their brief

---

[3] I pause briefly to note that plaintiffs' productions are significant not only for their tardiness, but also for their origin.  By plaintiffs' own admission, most of "the material provided as a Rule 26 disclosure" was "originally obtained by Shurat HaDin [otherwise known as the Israeli Law Center] and subsequently provided to counsel of record."  *See* Pls.' Opp'n Ex. 4 at 27 n.4.  Defendants are troubled by this reality, given that Shurat HaDin's explicit credo is to bankrupt through litigation groups that it perceives to be terrorist threats.  *See* Defs.' Mot. Ex. 7 [Dkt. #270-10].

[4] The intervening period was not without its disputes.  Indeed, on February 14, 2013, several months after the October 19, 2012 expert disclosure deadline, plaintiffs belatedly disclosed their liability experts.  *See* Mem. Order [Dkt. #242].  Defendants moved for sanctions, and on April 11, 2013, the Court "prohibited [plaintiffs] from introducing or using, including on motion or at trial, any expert testimony from" the experts at issue.  *See id.*

were: (1) Israeli court and police records, (2) PFLP website materials, (3) Al Jazeera broadcasts, (4) United States newspapers and official reports, and (5) a small number of documents produced by the defendants in this action.  Presently at issue are eighty-nine of the exhibits to plaintiffs' summary judgment opposition, seventy-three of which plaintiffs first disclosed to defendants *after* the September 19, 2012 close of fact discovery.[5]  *See* Defs.' Suppl. Mem. in Further Supp. of their Mot. for Sanctions Ex. A [Dkt. #317-1].  Of these seventy-three exhibits, sixty-four were first disclosed by plaintiffs after the Court's January 2, 2013 Minute Order denying plaintiffs' requests for additional discovery.[6]  *See id.*  Twenty-five exhibits consist of documents appended to plaintiffs' stricken Rule 26(a)(2) expert reports.[7]  *Id.*  Three exhibits consist of documents that were withdrawn by plaintiffs pursuant to the parties' April 16, 2013 agreement.[8]  A further twenty-five exhibits contain documents that plaintiffs produced *after* defendants filed their Motion for Summary Judgment in August 2013.[9]  *See id.*

On December 26, 2013, defendants, troubled by what they viewed as a calculated attempt to thwart their defense, filed a motion for sanctions, seeking to exclude eighty-nine of plaintiffs' exhibits—the seventy-three late-disclosed documents produced by

---

[5] Ex. Nos. 15, 16, 19, 20, 26, 27, 31, 35, 37, 42, 43, 45, 50, 51, 52, 53, 54, 55, 56, 57, 59, 62, 63, 64, 65, 66, 67, 68, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79, 81, 87, 89, 91, 92, 100, 106, 109, 111, 112, 113, 115, 116, 117, 118, 119, 131, 132, 133, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 150, 167, 168, and 169.

[6] Ex. Nos. 26, 27, 31, 35, 37, 42, 43, 45, 50, 51, 52, 53, 54, 55, 56, 57, 59, 62, 63, 64, 65, 66, 67, 68, 69, 71, 72, 73, 74, 75, 76, 77, 78, 79, 81, 87, 89, 91, 92, 100, 111, 112, 113, 116, 118, 119, 131, 132, 133, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 150, 167, and 168.

[7] Ex. Nos. 53, 56, 63, 64, 72, 73, 74, 75, 76, 77, 78, 79, 81, 119, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, and 145.

[8] Ex. Nos. 26, 27, and 42.

[9] Ex. Nos. 31, 37, 43, 50, 51, 52, 54, 55, 57, 59, 62, 65, 66, 67, 68, 69, 71, 91, 113, 116, 131, 146, 150, 167, and 168.

plaintiffs and a further sixteen documents produced by defendants in this action—on ground that their use violates the applicable discovery rules. *See* Defs.' Mem. Plaintiffs filed their opposition on January 21, 2014. *See* Pls.' Opp'n. I heard oral argument on July 8, 2015, *see* July 8, 2015 Min. Order, and the parties filed supplemental briefs on July 27, 2015, *See* Defs.' Suppl. Mem. in Further Supp. of the Mot. for Sanctions; Pls.' Suppl. to July 8, 2015 Hearing [Dkt. #318]. I took defendants' motion under advisement shortly thereafter.

## DISCUSSION

Discovery disputes are, "for better or worse, the daily bread of . . . district judges in the age of the disappearing trial." *Lee v. Max Int'l*, LLC, 638 F.3d 1318, 1320 (10th Cir. 2011). As a result, district court judges enjoy "wide discretion" in managing the discovery process. *Flynn v. Dick Corp.*, 481 F.3d 824, 834 (D.C. Cir. 2007). To that end, the rules of civil procedure vest district judges with the authority to define the parameters and "the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted . . . . At the same time, a district court has broad discretion in structuring discovery." (internal citations omitted)). This includes the latitude to set deadlines, resolve disputes and, when necessary, to sanction any party that runs afoul of its obligations. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976) (per curiam); *Bonds v. District of Columbia*, 93 F.3d 801, 708 (D.C. Cir. 1996) ("Under Rule 37, the district court has broad discretion to impose sanctions for discovery

6

violations."); *Bristol Petrol. Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990)

("[S]anctions have been entrusted to the district courts to enable district judges to

discharge efficiently their front-line responsibility for operating the judicial system.").

Discovery having proceeded in less than perfect harmony, this Court is now in the

unenviable position of having to determine the appropriateness of civil sanctions to

address the discovery abuses presently at issue.  Regrettably, I find that because plaintiffs

violated their discovery obligations under the Federal Rules, document preclusion is

*necessary* to remediate the considerable prejudice to defendants and to deter future

misconduct in this litigation.

## I.    Plaintiffs' Duty to Disclose Publically Available Documents

The threshold issue is whether plaintiffs were required to produce the documents

at issue.  They most assuredly were.  The Federal Rules obligate adversaries to timely

provide copies of "all documents, electronically stored information, and tangible things

that the disclosing party has in its possession, custody, or control and may use to support

its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A)(ii).  Because litigants are entitled

to "discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense," Fed. R. Civ. P. 26(b), parties may request production of any discoverable

material within "the responding party's possession, custody, or control," Fed. R. Civ. P.

34(a)(1).

Notwithstanding the broad language of the Federal Rules, plaintiffs contend that

they were not obligated to produce the disputed material because it was publicly

available.  Specifically, they argue that "the material disclosed [in their productions] was"

7

not discoverable because it "came from the public domain and was equally accessible to Defendants." Pls.' Opp'n at 24.  Under their logic, "[b]ecause Defendants could have pursued [the at-issue] documents from these same third-party sources, Plaintiffs were not obligated to disclose such material in response to Rule 34 document requests." Pls.' Opp'n at 25.  How absurd!

The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility.  A limitation of this nature would lead to patently absurd consequences.  Indeed, it would require litigants to scour the public domain for nuggets of information that their adversaries could potentially use against them—a task that is as Herculean as it is nonsensical.  Litigation is not, nor has it ever been, an elaborate parlor game of "blind man's buff." *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).  To the contrary, the federal discovery rules are designed to make litigation a "fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Id.*  A system that would require litigants to divine from an ever-increasing universe of public data what their opponents *might* use to support their claims is hardly "fair" and it is certainly not just.  It would, to put it mildly, do a grave disservice to our adversarial system.

Courts in other circuits, bearing these principles in mind, have compelled parties to produce relevant, publicly available material that they intend to use to bolster their claims or defenses.  The Fifth Circuit recently stated that "even if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses." *Martino v.*

8

*Kiewit N.M. Corp.*, 600 Fed. App'x 908, 911 (5th Cir. 2015); *see, e.g., Phillips v. Hanover Ins. Co.*, 14cv871R, 2015 WL 1781873, at *2 n.1 (W.D. Okla., Apr. 20, 2015) ("Courts consistently hold that parties have an obligation to produce even publicly available information."); *Morgan v. Safeway Inc.*, 11cv1667(WMN), 2010 WL 2135601, at * 2 (D. Md. June 11, 2012) ("[E]ven publically available information might properly be the subject of a valid request for production of documents."); *Ochoa v. Empresas ICA, S.A.B. de C.V.*, 11cv23898, 2010 WL 3260324, at *5 (S.D. Fla. Aug. 8, 2010) ("Whether the documents are available to Plaintiffs through due diligence does not control whether [a litigant] should be compelled to produce them.").[10]  This approach is eminently sensible.  It is, not surprisingly, the approach I take here.  Accordingly, plaintiffs were obligated to produce any and all material in their possession, custody, or control—regardless of whether it was publicly available—that they deemed relevant to their case.[11]

---

[10] Plaintiffs cite several cases for the proposition that they need not produce publicly available materials. None of these cases stands for the proposition, however, that publicly available materials are categorically exempt from disclosure.  Rather, they evince the far narrower proposition that litigants do not necessarily have an obligation to produce such materials.  *See, e.g., Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 12 (D.D.C. 2007) (noting that courts "*may* limit discovery requests if the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive" (emphasis added) (internal quotation marks omitted)); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) ("It is well established that discovery *need not be required* of documents of public record which are equally accessible to all parties." (emphasis added) (internal quotation marks omitted)).  Indeed, in one of the cases plaintiffs cite, the court, after noting the "discovery need not be required of documents of public record which are equally accessible to all parties," nonetheless denied defendant's motion to exclude public "records of which it was aware and which it had authority to obtain." *Fitts v. Unum Life Ins. Co.*, 98-00617(HHK), 2007 WL 1334974, at *19 (D.D.C. May 7, 2007) (internal quotation marks omitted).

[11] Despite plaintiffs' suggestions to the contrary, the duty to produce relevant, publicly available materials extends to documents in the custody or control of third persons including, for example, Shurat HaDin. Indeed, if a "disclosing party has the right to obtain copies of those [third party] documents and anticipates that he or she will use them in support of his or her claims or defenses, the party must either produce copies of them or provide the requisite description."  6-26 MOORE'S FEDERAL PRACTICE – CIVIL § 26.22 (2015).

## II.   Appropriateness of Sanctions

Notwithstanding their obligation to produce the contested material, plaintiffs failed to do so by the close of discovery.  Defendants urge this Court to adopt any number of sanctions in response, including those sanctions available under Federal Rules 37(b)(2)(A) and 37(c)(1).  For the reasons discussed herein, I find that sanctions are warranted pursuant to Federal Rules 16(f)(1)(C) and 37(b)(2)(A) in order to remedy the harm caused by plaintiffs' misconduct and to deter future transgressions.

Rule 16(f)(1)(C) allows courts to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii) if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).  This is plainly the case here. Plaintiffs, eager to shoehorn their conduct beneath the aegis of acceptability, urge this Court to view their late productions as "supplemental disclosures" required by Federal Rule 26(e). *See* Pls.' Opp'n at 30-31.  Unfortunately for plaintiffs, I disagree.  While Rule 26(e) imposes on all litigants a duty to timely supplement their productions, it is not a safe harbor for dilatory conduct.  Quite the opposite, in fact.  Rule 26(e) states that once a party has responded to a request for production, it must supplement its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).  Rule 26(e) does *not* sanction late disclosure for late disclosure's sake.  Nor is it a license to sandbag the opposing party with reams of pertinent information on the eve of summary judgment.  Simply stated, Rule 26(e) is not, nor has

it ever been, carte blanche to ignore Court-imposed deadlines.

Plaintiffs' apparent interpretation of Rule 26(e) is anathema to the fair and orderly progress of discovery. As an initial matter, it is not "supplementation" to, as plaintiffs did here, produce the *bulk* of their discovery *after* the deadline has lapsed.[12] Plaintiffs' argument that their disclosures were calculated to comply with the Federal Rules rings especially hollow given that many of the disputed documents were available well before the September 2012 discovery deadline[13] and were produced in related actions as early as 2009.[14] *See generally* Defs.' Mot. Ex. 4. For that reason, I find that plaintiffs' productions violated this Court's scheduling order and turn now to fashioning an appropriate sanction.

Rule 16(f)(1)(C) allows courts to remedy violations of court orders through the issuance of any sanction authorized by Rule 37(b)(2)(A)(ii)-(vii). Rule 37(b)(2)(A)(ii) in turn permits courts to preclude the "disobedient party from supporting or opposing

---

[12] As previously stated, plaintiffs produced an astonishing sixty-nine percent of their overall discovery after September 19, 2012. The dictionary definition of "supplement" makes clear that the word connotes a far smaller production of documents than the sixty-nine percent of their overall production that they belatedly infused into the record. Black's Law Dictionary, for example, defines a "supplemental disclosure" as the "disclosure of additional facts and information," usually "because of previous unavailability." Supplemental Disclosure, *Black's Law Dictionary* (10th ed. 2014). The Oxford English Dictionary likewise defines "supplement" as "[a] thing . . . added to make good a deficiency or as an enhancement; an addition or continuation to remedy or compensate for inadequacies." Supplement, *Oxford English Dictionary* (3d ed. 2012).
[13] Indeed, over half of the disputed exhibits were created before September 19, 2012. *See generally* Defs.' Mot. Ex. 4. For example, plaintiffs' Exhibit 116, the May 5, 2002 Statement of Lafi Nasura to Israeli Police, was in plaintiffs' position as early as December 2012. *See* Defs.' Mot. Ex. 4. However, plaintiffs waited to produce this document until October 2013, after defendants filed their motion for summary judgment. *See* Defs.' Suppl. Mem. at 9.
[14] Exhibit 31 to plaintiffs' summary judgment opposition illustrates this point. Exhibit 31 is a May 20, 2004 verdict against Marwan Barghouti in *State of Israel v. Marwan Bin Khatib Barghouti*. [Dkt. #267-2]. Although plaintiffs' counsel does not recall the date on which they received this document, they have at least been aware of its existence since 2009, when it was produced in a similar action. *See* Hr'g Tr. 15:7-23, July 8, 2015 [Dkt. #319]. For reasons that are not clear to this Court, however, plaintiffs delayed producing it in this case until November 6, 2013. *See* Defs.' Suppl. Mem. at 8.

designated claims or defenses, or from introducing designated matters in evidence."
Fed. R. Civ. P. 37(b)(2)(A)(ii).[15]  The Court is mindful of the role equity plays in this
analysis and takes seriously its obligation to ensure that its actions are both "just" and
"proportional" to the discovery infraction.  *See Ins. Corp. of Ireland Ltd. v. Compagnie
des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) ("First, any sanction must be 'just';
second, the sanction must be specifically related to the particular 'claim' which was at
issue in the order to provide discovery."); *Bonds*, 93 F.3d at 808 ("The choice of
sanction should be guided by the concept of proportionality between offense and
sanction." (internal quotation marks omitted)).  Where, as here, the Court is
contemplating the exclusion of evidence critical to plaintiffs' case, it must determine
whether a sanction of this severity is warranted by the record.  *See Bonds*, 93 F.3d at 808
("[I]n cases involving severe sanctions . . . the district court [should] consider whether
lesser sanctions would be more appropriate for the particular violation.").[16]  Specifically,
this Court must decide whether the sanction is "necessary to avoid prejudice" to the
aggrieved party and, to the extent the sanction is designed to deter future abuses,
whether it is "supported by a finding of flagrant or egregious misconduct." *See id.* at

---

[15] I pause briefly to note that the sanctions enumerated under Rule 37(b)(2)(A) are neither exhaustive nor
mutually exclusive, and that the Court may impose any number or type of sanctions it deems necessary.
*See, e.g.*, *DL v. District of Columbia*, 274 F.R.D. 320, 324-25 (D.D.C. 2011) ("Rule 37 provides district
courts broad discretion to sanction a party that fails to obey an order to provide or permit discovery."
(citing cases)); *United States v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank
Accounts*, 252 F.R.D. 60, 62-63 (D.D.C. 2008) ("Sanctions are integral to the operation of the judicial
system" and Rule 37 "allows the court to apply a variety of sanctions to any *party* in a case." (emphasis in
original) (citing cases)); *Mojarad v. Aguirre*, No. Civ. A. 05-0038, 2006 WL 785415, at *10 (D.D.C. Mar.
27, 2006) ("The possible sanctions set out in Rule 36(b)(2) are not mutually exclusive; the court may
impose several of the specified sanctions at the same time.").
[16] Our Circuit has indicated that preclusion might be tantamount to the more "severe" sanction of
dismissal when it results in a "one-sided" briefing of the issues that leaves plaintiff with "little ability to
contest the [defendant's] claims." *See Bonds*, 93 F.3d at 808-09.

809. In exercising its discretion, the Court may consider the nature of the resulting

prejudice, "whether deterrence is necessary to protect the integrity of the judicial

system," and what effect, if any, plaintiffs' "dilatory or contumacious conduct [has had]

on the court's docket." *Id.* at 808; *see Bristol Petrol. Corp.*, 901 F.2d at 167 (same).

Unfortunately for plaintiffs, each of these factors weighs in favor of precluding from the

record the documents they untimely produced.

### A. Prejudice to Defendants

I begin by analyzing the prejudicial effect of plaintiffs' conduct. A litigant's

failure to abide by discovery deadlines is prejudicial when it prevents the opposing party

from timely reviewing relevant evidence. *See Moore v. Napolitano*, 723 F. Supp. 2d 167,

181-82 (D.D.C. 2010) (finding prejudice where the opposing party failed to timely

produce relevant documents); *Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 262

(D.D.C. 2009) ("Plaintiff's conduct has severely prejudiced Defendants by preventing

them from reviewing any documentary evidence relating to Plaintiff's damages or alleged

defenses to counterclaims."). This principle applies with special force where, as here, a

party's late disclosures alters its adversary's well-settled theory of the case. *See DCFS*

*USA, LLC v. District of Columbia*, 803 F. Supp. 2d 29, 37 (D.D.C. 2011) (finding

sanctions appropriate because "discovery has long since been closed, [and the aggrieved

party] has justifiably relied on a theory of the case now altered" by opposing counsel's

late disclosures). Unfortunately for plaintiffs, I find that their failure to timely produce

responsive documents was categorically prejudicial.

Plaintiffs contend that "neither Mr. Tolchin's Declaration nor any of Plaintiffs'

exhibits could have caused even the slightest hiccup in Defendants' litigation strategy" because "many of the documents Defendants now seek to strike" are publicly available materials that "were in fact produced by Defendants in other cases or *should have been produced by Defendants* in response to Plaintiffs' discovery requests." Pls.' Opp'n at 32. Plaintiffs' position, however, is simply not supported by the law. First, the mere fact that certain of these documents were produced by defendants in other cases does not ameliorate the prejudice caused by plaintiffs' untimely productions here. It is preposterous to suggest that knowledge, however atmospheric, of certain documents ensures a fair and equal discovery process for the party that is blindsided by their eleventh hour production. It surely does not. Existential awareness has never been, nor will it ever be, a substitute for production. *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 255 F.R.D. 645, 652 (N.D. Iowa 2009) (finding that defendant was prejudiced by the "belated inclusion of information" because plaintiff's untimely disclosures offered "a different picture of the relevant issues"). Second, and as I discussed at length, the public availability of certain documents does not render plaintiffs' failure to timely produce them harmless. It does nothing of the sort. *See Nightlight Sys., Inc. v. Nitelites Franchise Sys. Inc.*, 04cv2112 (CAP), 2007 WL 4563875, at *7 (N.D. Ga. May 11, 2007) (rejecting plaintiffs' argument that defendants were not harmed by the untimely disclosure of publicly available documents because "[w]hile defendants may have access to the internet, the defendants are not obligated to scour the internet to find web pages that the plaintiffs may rely on"). Third, plaintiffs' failure to timely provide relevant material hampered defendants' ability to test these documents

14

through the discovery process.  Indeed, by producing documents after the close of fact discovery, plaintiffs effectively *precluded* defendants from taking any additional depositions to further investigate the late-breaking disclosures.  Fourth, and finally, plaintiffs' actions materially altered the evidentiary landscape after defendants filed for summary judgment relief.

Exhibit 31 to plaintiffs' summary judgment opposition—the 2004 verdict in the case of *State of Israel v. Marwan Bin Khatib Barghouti*—illustrates these points with particular clarity.  Plaintiffs use this public document, which contains a narrative of the PLO's alleged terrorist activities, to support their contention that defendants perpetrated terrorist attacks in Israel.  *See* Pls.' Stmt. of Material Facts ¶ 74 [Dkt. #252-1].  From plaintiffs' perspective, it provides a link, however tenuous, between defendants and the Karnei Shomron bombing at issue here.  Nonetheless, and despite its apparent significance to their case, plaintiffs failed to produce this document until November 2013, well *after* defendants filed their motion for summary judgment.  *See* Defs.' Suppl. Mem. at 8.  Not only did this preclude defendants from deposing additional witnesses about its significance, but the timing of the disclosure prevented defendants from addressing the document in their opening brief.  Conduct of this ilk is neither just nor fair, and it is certainly a far cry from "civil."  The Court simply will not place its imprimatur on actions that appear calculated not only to undermine defendants' case, but also to perpetuate a litigation already a decade in the making.  For that reason, I find plaintiffs' conduct highly prejudicial.

## B. Deterrence

Deterrence likewise favors a stringent remedy. It is well-settled that "[t]he district court's interest in deterrence is a legitimate one, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *See Bonds*, 93 F.3d at 808 (internal quotation marks omitted). Deterrence is an especially important consideration where, as here, a party has exhibited "protracted recalcitrance" throughout the discovery process. *See Jankins v. TDC Mgmt. Corp. Inc.*, 21 F.3d 436, 445 (D.C. Cir. 1994) (finding that sanctions were appropriate "[g]iven the defendants' willful misconduct" and the need "to deter misconduct by others"); *Moore*, 723 F. Supp. 2d at 184 (finding that severe sanctions were appropriate because lesser sanctions had not deterred the defendant's "history of protracted recalcitrance").

This is not the first time the Court has reprimanded plaintiffs' obduracy. Although there are several examples of their misconduct, only a few will suffice to explain the Court's reasoning here. On September 12, 2012, defense counsel inadvertently produced a privileged document. Decl. of John C. Eustice at ¶¶ 12, 14 [Dkt. #170-4]. Defendants, upon realizing their mistake, promptly sought its destruction. *See Defs.'* Mem. at 11-12 & n.8. Their request, however, went unheeded, forcing defendants to seek judicial intervention. *See Mot. of Def. the Palestinian Authority for Return or Destruction of an Inadvertently Produced Document [Dkt. #170]. On January 2, 2013, the Court ordered plaintiffs to return the document. Jan. 2, 2013 Min. Order. Plaintiffs did not immediately comply. *See Pls.'* Mot. for a Stay [Dkt. #212]. Instead, it was only after this Court

scheduled a contempt hearing that plaintiffs finally destroyed the errant document. *See* Defs.' Report on Compliance Required of Pls. [Dkt. #224].

Unfortunately, this was not an isolated transgression. On February 14, 2013, four months *after* the October 2012 deadline, plaintiffs submitted their expert reports notwithstanding this Court's explicit warnings not to do so. Frustrated by their "repeated and unsuccessful attempts to submit overdue liability experts," I sanctioned plaintiffs by precluding them "from introducing such experts' testimony in evidence." *See* Mem. Order at 3 [Dkt. # 242]. Plaintiffs, apparently determined to have the last word, filed several of the documents appended to the stricken reports as exhibits to their summary judgment opposition. *See* Defs.' Suppl. Mem. Ex. A. They see nothing wrong with their actions. Instead, plaintiffs claim that the Court's Order excluded only "expert *testimony*," and not the documents underpinning their expert reports. Pls.' Opp'n at 29 (emphasis in original). This interpretation is too clever by half and is, in all events, woefully inaccurate. By recasting this Court's discovery sanction as an invitation to late file non-testimonial expert documents, plaintiffs flagrantly disregarded both the letter and the spirit of this Court's Order.

Similar antics surrounded plaintiffs' pursuit of a subpoena on non-party Arab Bank, PLC. In that instance, plaintiffs issued a subpoena ten months into the discovery period and persisted, for several months after the close of discovery, to enforce their subpoena. Mem. Order [Dkt. #266]. This Court, frustrated by plaintiffs' "dilatory and unforthcoming conduct" and their persistence of additional discovery despite the

"seeming acknowledgement that discovery was closed," ordered plaintiffs to cease and desist the subpoena process. *Id.* at 6.

Against this patchwork of discovery infractions, plaintiffs made nearly seventy percent of their document production *after* the close of discovery and did so notwithstanding this Court's numerous warnings that the discovery deadline was an immutable one. I am hard-press to view their conduct as anything other than shoddy gamesmanship. Plaintiffs' habit of creatively interpreting—and at times, altogether ignoring—this Court's admonishments simply cannot be tolerated. For that reason, sanctions are necessary not only to remedy the prejudice to defendants but also to stop a pattern of misconduct that has become all too rote.

### C. Prejudice to the Judicial System

The final factor, prejudice to the judicial system, likewise weighs in favor of a broad evidentiary preclusion. Parties cannot "pick and choose when to comply with a court order depending on counsel's unilaterally determined excuses or justifications not to comply with the order. The order is either obeyed or appealed." *Moore v. Chertoff*, 255 F.R.D. 10, 34 (D.D.C. 2008), *objections overruled sub nom. Moore v. Napolitano*, 723 F. Supp. 2d 167 (D.D.C. 2010) (internal quotation marks omitted). There is, moreover "importance *per se* in not allowing a party to ignore orders" to ensure that the litigation process does not "descend into chaos." *Id.* (internal quotation marks omitted); *see also Perez v. Berhanu*, 583 F. Supp. 2d 87, 91 (D.D.C. 2008) (imposing a sanction to remedy counsel's "disrespect" for the judicial system, which was demonstrated by their failure to, among other things, respond to the opposing parties' discovery requests and to abide by

18

the discovery deadline).  Where, as here, a party's conduct has interfered with the Court's ability to preside over an orderly and efficient discovery process, the equities certainly warrant sanctions.

### III.   Scope of the Sanction

Having concluded that Rule 37 document preclusion is warranted, what sanction is proportional to the harm?  It is incumbent, of course, on all federal district courts to ensure that the chosen sanction is appropriately tailored to reflect both the harm at issue and the interests at stake.  Courts are therefore "obliged to consider whether the more severe sanction [is] necessary to further interests other than deterrence, or if not, whether a less severe sanction would have been more proportionate to the nature [of the party's] discovery violation and its effects on the litigation. " *Bonds*, 93 F.3d at 809; *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988) ("Before the extreme sanction of preclusion may be used by the district court, a judge . . . must consider less drastic responses.").

With these considerations in mind, I begin by considering the appropriateness of defendants' request for relief.  Defendants ask this Court to strike the Tolchin Declaration and to preclude plaintiffs from relying on eighty-nine of the exhibits appended to their summary judgment opposition, sixteen of which are documents produced by defendants themselves.  I agree, as an initial matter, that plaintiffs should be precluded from relying on the Tolchin Declaration as well as on the documents that they untimely produced in this litigation.  But I see no reason to restrict my Order to plaintiffs' seventy-three late-produced exhibits.  Rather, because prejudice will result from plaintiffs' reliance on *any*

documents that were produced after the discovery deadline, this Court will preclude plaintiffs from using any and all documents that were produced after September 19, 2012.[17] Defendants' quest to strike *their own* documents, however, is a nonstarter. Defendants cannot use their motion for sanctions as a mechanism to excise potentially inculpatory documents that they themselves produced. That is simply not the purpose— or the prerogative—of civil sanctions. For that reason, the Court will restrict its sanction to the preclusion of the Tolchin Declaration and plaintiffs' late-produced documents.

There are two primary reasons for tailoring the sanction in this fashion. First, less onerous sanctions plainly would not suffice. Discovery abuses have played an unfortunately prolific role in this ligation, forcing the Court to issue numerous reprimands and discovery sanctions. Regrettably, these less extreme corrective actions— including, for example, the Court's April 11, 2013 Order striking plaintiffs' belated expert reports and its subsequent November 19, 2013 Memorandum Order compelling plaintiffs to cease and desist their third party subpoena efforts—have not deterred plaintiffs' misconduct. Indeed, they appear to have had no impact whatsoever. Furthermore, based on plaintiffs' history of narrowly interpreting this Court's orders, were the Court to limit preclusion to a mere seventy-three late-produced exhibits appended to plaintiffs' summary judgment opposition, it is highly likely that plaintiffs would return with reams of other untimely evidence that is equally prejudicial to

---

[17] This applies even to documents that were created after the close of discovery. It would, of course, have been impossible for plaintiffs to timely produce documents that were not in existence prior to September 2012. However, because plaintiffs never once sought leave of the Court to introduce these late-produced exhibits into the record, I find that their preclusion is likewise warranted. Going forward, plaintiffs must seek leave of the Court to introduce any documents that were *created after* September 19, 2012.

defendants' case.  Accordingly, the Court is confident that a less stringent sanction would not meet the needs of justice.

Second, document preclusion has the benefit of remediating the prejudice to defendants without precluding a trial on the merits.  At the summary judgment phase, plaintiffs remain free to introduce non-excluded documentary evidence and to rely on admissible deposition testimony.  Should this case proceed to trial, they may call fact witnesses vital to their case, cross-examine defendants' witnesses, and make opening and closing statements.  To be sure, this Court's order does not have either the actual or the practical effect of dismissal.  It merely allows the parties to proceed as they would have had plaintiffs complied fully with their obligations.  Therefore, I find a broad evidentiary preclusion both just and proportional to the misconduct at issue here and hope that this sanction puts to rest some of the unfortunate bitterness occasioned by this litigation.

## CONCLUSION

Accordingly, for all of the foregoing reasons, the Court GRANTS in Part and DENIES in part defendants' Motion for Sanctions.  The court GRANTS the motion as it pertains to plaintiffs' exhibits and hereby excludes all documents produced by plaintiffs in this action after September 19, 2012.  The Court DENIES the motion as it pertains to the sixteen exhibits that defendants produced in this action.  Plaintiffs shall be given the opportunity to reconstitute their Opposition to Defendants' Motion for Summary Judgement, excluding from that motion and any supporting exhibits, affidavits, declarations, or statements of material facts, any and all documents produced by plaintiffs after September 19, 2012.  Defendants shall likewise be given the opportunity to

reconstitute their Reply in further support of their Motion for Summary Judgment. To that end, the parties shall jointly, within 14 days of the date of this Memorandum Opinion, submit a proposed schedule for reconstituting their Summary Judgment papers in accordance with this ruling. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge